dgh                                                                    1

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Elouise Cobell                    .  Docket No. CA 96-1285 RCL
                                  .
          Plaintiff,              .
                                  .  Washington, D.C.
     vs.                          .  Friday, November 6, 1998
                                  .  2:07 p.m.
Bruce Babbitt,                    .
                                  .
          Defendant.              .
. . . . . . . . . . . . . . . .   .


Transcript of Hearing On Discovery Motions
Before the Honorable Royce C. Lamberth
United States District Judge


APPEARANCES:

For the Plaintiff:              Robert Peregoy, Esq.
                                Dennis Gingold, Esq.
                                Keith Harper, Esq.
                                Lorna Babby, Esq.


For the Defendant:              Lewis Weiner, Esq.
                                Edith Blackwell, Esq.
                                Connie Lundgrin, Esq.



Court Reporter:                 WILLIAM D. MC ALLISTER
                                Official Court Reporter
                                Room 4806-B, U.S. Courthouse
                                333 Constitution Avenue, N.W.
                                Washington, D.C. 20001-2803
                                (202) 371-6446



Proceedings reported by stenomask, transcript produced
from dictation



Pages 1 through 29

EXHIBIT 2
Defendants' Motion for a Protective Order
Regarding Plaintiffs' Notice of Deposition
of David L. Bernhardt

dgh

## PROCEEDINGS

1

2         THE CLERK:  This is the case in the matter of

3   Civil Action No. 96-1285, Cobell v. Bruce Babbitt, Mr. Peregoy

4   and Mr. Gingold, Mr. Harper and Ms. Babby for the plaintiff.  M.

5   Weiner, Ms. Blackwell and Ms. Lundgrin for the defendant.

6         THE COURT:  I have some initial comments I want to

7   make and I do have some questions I want to ask counsel.

8         Regarding the last round of the discovery disputes, it

9   appears to me the court now having ruled on the questions, a lot

10  of that is moot.  The one part of it that is not moot is this

11  notion as to whether or not these individuals who were noticed

12  for depositions have to appear as government employees in

13  Washington, and I had two comments to make about that.

14        First, I don't know what's happened to the notion that

15  I was trying to set forth in May about civility, but I don't

16  think that the plaintiff should have noticed those depositions

17  without a discussion about dates with the defendants first and

18  perhaps this other question could have been surfaced at the same

19  time about capacities, if there had been that kind of

20  discussion.

21        In any event, I would expect that dates can be agreed

22  upon.  Both sides profess that they are willing to agree upon

23  dates, and I would expect that dates could be agreed upon by a

24  civil discussion between counsel.

25        As to the question of the depositions being noticed to

1  named the people without their titles, I think the defendants

2  have the better of that argument, and I think there should be

3  re-notices with the name of the individual and their title which

4  then makes it clear that they're appearing as an agent of the

5  government.  And under my prior order, then they would have to

6  appear here in Washington as the agent of the government, and I

7  would think that you ought to sit down and talk about those

8  names and proper titles and dates, and within five days of

9  today, try to come to some agreement on those so that the re-

10  notices can be accepted and there can be no further debate about

11  all of that.

12         If there is any further debate, my notion is to move

13  the next scheduled status date from the November 17th probably

14  to the 23rd at 2:00 if all counsel were available and any

15  continuing dispute about this last round, I would then resolve

16  it -- I'm sorry, November 23rd 2:00 p.m. status, would everyone

17  be available then?

18         MR. WEINER:  Yes, Your Honor.

19         MR. GINGOLD:  Yes, Your Honor.

20         MR. WEINER:  Your Honor, a point of clarification,

21  five days, I assume you mean next Friday?

22         THE COURT:  Right.  Five business days.

23         Then, with that understanding, the Motion to Quash and

24  for a Protective Order filed on the 26th, I guess, and the

25  Motion for Protective Order on the 23rd are all denied without

dgh

4

1  prejudice to revisiting the issues if it becomes necessary at

2  the November 23rd hearing.

3         Now, in terms of the other pending motions that relate

4  to the prospective relief case, I have the motions filed in July

5  that regard the third formal request for production of documents

6  and the Motion for Protective Order that relates to that third

7  formal request for production, and in connection with that, the

8  argument as to whether or not the government needs to go through

9  and make their formal claims of privilege as to any of those

10  documents that it does not produce, and my determination is that

11  I would want to see those privilege claims and privilege logs

12  before I rule on those questions.

13         And so, I want to set a date, and I would think we

14  could set a date of 30 days from today which would then be

15  December 6th.  It is a Sunday, so we would do it December 7th

16  for that production and then anything that's not produced, be

17  accompanied by a proper privilege log by December 7th which in

18  effect gives the government the enlargement of time but denies

19  the protective regarding the third formal request.

20         MR. WEINER:  Your Honor, with regard to the 30 days,

21  given the voluminous nature of the documents that are requested

22  and the exercise that is going to be required to go through each

23  one to create a privilege log because they requested attorneys

24  documents, 30 days, I've been advised is going to be an

25  insufficient amount of time for my client to collect those

dgh

1  documents with the other discovery obligations that we have in

2  this case.

3         THE COURT:  Okay.  A motion to further extend the time

4  beyond December 7th, I will address at the November 23rd

5  hearing, and whatever evidence you can give me about volume and

6  that sort of stuff, you should be able to assess that by the

7  23rd and give me some information that would let the court make

8  an informed judgement about whether that should be extended

9  beyond December 7th.

10        Now, the last remaining issue goes to the search for

11 documents relating to the plaintiffs, the named plaintiffs and I

12 take it that in one filing by the defendants they said

13 defendants have waited until now to begin the statistical sample

14 because we didn't want to bear the unreasonable burden of

15 producing documents for two separate statistical samples.  If we

16 begin our physical sampling, then we can include the five named

17 plaintiffs in the search for additional documents.

18        Since, obviously in light of my ruling, each side is

19 going to have its own statistical sampling or whatever, I don't

20 know how that impacts on the search for the remaining documents

21 for the named plaintiffs.

22        But the first question is whether the court will

23 modify its prior orders requiring those documents to be

24 produced.  The court will not and that motion is denied.

25        The second question is then when the government can

1  bring itself into compliance with the prior orders requiring the

2  documents to be produced as to the named plaintiffs and again

3  perhaps you can tell me more at the November 23rd hearing how

4  you expect to go about bringing yourself into compliance.

5       And I think you have to figure out how you're going to

6  go forward now that you're not going to have a joint sampling

7  search.  You'll have to figure out how you're going to go about

8  doing the search and we can cover that at the November 23rd

9  hearing as well, unless you want to say something further about

10 that today.  You're not required to, but you may, if you wish.

11      [Pause.]

12      THE COURT:  All right.  Then the last issue I have is

13 this remaining issue on the retrospective relief in the

14 defendant's Motion for Protective Order on the attorney's

15 depositions and the other depositions where the plaintiffs were

16 seeking information that would help in establishing a trial date

17 for the bifurcated part of the case regarding retrospective

18 relief.

19      It seemed to me that it would make more sense for the

20 court to simply have the information about what sort of

21 remaining production and discovery has to be done for the

22 retrospective case in order to set a date and then the court can

23 simply a date, so that I don't know that this kind of discovery

24 is either all that helpful or all that useful, and I would think

25 that I could simply have a hearing and we'll talk about how much

1   time it would take for everyone to explain their positions about

2   what discovery we need, but I would think if I did a two- or a

3   three-hour hearing on the 23rd, we might well be able to simply

4   get the information and set the date, if the plaintiffs have in

5   mind what information you need for the retrospective case and

6   the government can have knowledgeable people here that can

7   answer what kind of search time we're talking about to actually

8   produce those.

9        My notion would be at the end of the 23rd to have

10   enough information that I would just set a date for the second

11   phase of the trial with some notion of what is going to be

12   required to get all the production of documents and whatever

13   else is necessary for both sides to go to that second phase of

14   the trial.

15        Does that pose any problems for either side?  And if

16   you think it would take longer than a couple of hours, we could

17   do these prospective things that day and do that the next day.

18   I don't know what kind of time frame you would have in mind to

19   educate the court about what we're talking about in terms of

20   searches and so on.

21        MR. WEINER:  Your Honor, given the fact that the 23rd

22   is on a Monday and the type of hearing that you are talking

23   about with respect to retrospective relief would require us to

24   bring people in from out of town and we would prefer to do it on

25   two separate days.

dgh

8

1          THE COURT:  Okay.

2          MR. WEINER:  We can marshal the resources that we need

3    that are here in Washington for the hearing on the 23rd and have

4    the other on the 24th.

5          THE COURT:  Is that agreeable to the plaintiffs?

6          MR. GINGOLD:  Yes, Your Honor.

7          THE COURT:  If we do it that way, we do it on 10:00

8    a.m. on the 24th for retrospective discovery issues and setting

9    a date for that trial and we would go the 23rd at 2:00 p.m. on

10   the prospective issues that we've talked about here today.

11         Then is there anything else we need to cover today?

12         MR. WEINER:  Yes, Your Honor, there is.

13         As you know, Your Honor, we received a copy of the

14   court's order yesterday and it is clear that order does give the

15   parties some much needed direction on what to go and thank you

16   for that.

17         The opinion does raise some questions in our mind

18   about the scope of permissible discovery.  It seems that the

19   hearings on the 24th --

20         THE COURT:  Oh, I'm sorry, that reminds me.  You had

21   one other point that I didn't specifically cover.

22         I did not intent, and one of the reasons for having

23   monthly discovery conferences and statuses, I did not intend for

24   any of the presumptive limits in our local rules to apply to

25   this case.  I understand the prior comment at a status only

dgh

9

1 dealt with interrogatories but I don't intend for any of those

2 presumptive limits to apply.  They're just presumptions for a

3 court to tailor to the case and I'm doing the tailoring by being

4 here every month and seeing you all every month.

5          MR. WEINER:  Thank you.

6          THE COURT:  So, you can forget all of those arguments

7 about presumptive limits.

8          MR. WEINER:  Thank you for that clarification, Your

9 Honor.

10          The court's order of yesterday does address a great

11 many issues.  It also raises some questions in our mind about

12 the scope of discovery going forward.  What discovery is

13 permissible in light of the fact there are APA claims, non-APA

14 claims, whether in fact we have to and when we would have to

15 submit an administrative record.

16          THE COURT:  I agree.

17          MR. WEINER:  And in that regard, it is unclear today,

18 right now, what our obligations are with responding to

19 plaintiff's oversized discovery requests that we received on the

20 last day for discovery and so on.

21          THE COURT:  I meant to say I would extend that date.

22 You asked for an extension and I would extend that date to

23 December 1st.  And then if you think you have beyond December

24 the 1st, on that date we can take that up as a Motion to Extend

25 it again at that same hearing on the 23rd.  So that gives you an

1  additional two weeks beyond your November 17th or whatever it

2  was.

3          MR. WEINER:  Thank you, Your Honor.

4          Within the scope of the discovery that was served on

5  defendants, however, is a series of discovery requests relating

6  solely to the government's High Level Implementation Plan.

7  Among the questions we have and we can either address them I

8  guess piecemeal today or have the opportunity to have more than

9  an opportunity to read the decision once or twice and deal with

10  them on the 23rd.

11          But, for example, now the court has defined the High

12  Level Implementation Plan as final agency action, are plaintiffs

13  entitled to extra record review of the HLIP, the High Level

14  Implementation Plan.  It would seem that extra record review

15  would be inconsistent with the court's finding that that is

16  final agency action and the court's review would not be de novo

17  but rather on the record that would be submitted by the

18  government.

19          THE COURT:  If I reach the APA issue.

20          MR. WEINER:  Right.  Which would then leads me to the

21  next question.  We have an order in this case that bifurcates

22  between what we have call prospective and retrospective.  Among

23  the options now could be that perhaps a more appropriate

24  bifurcation, and I have not thought this through fully, would be

25  between statutory and non-statutory claims.  And I don't know if

1    the court anticipates that we will address all of these issues

2    on the 23rd.

3            THE COURT:  I think we can.

4            MR. WEINER:  It also appears that the court in its

5    November 5th order anticipates some Motion for Summary Judgment

6    briefing, yet the existing scheduling order doesn't account for

7    that.

8            THE COURT:  I understand.  I looked at the old orders

9    to see if it did and it does not.  I think we've got to get all

10   of the discovery completed and then put that into the process, I

11   agree, if the parties think that it would be fruitful.

12           MR. WEINER:  Well, I think that perhaps one thing that

13   might be fruitful is if let's say by the 17th which is the date

14   the original scheduling order was held, that perhaps each party

15   could submit a proposed scheduling order or a proposed

16   management plan.

17           I know we've been down that road once before.  But

18   with the guidance offered by the November 5th hearing, perhaps

19   that would give the court an anticipation of the 23rd, some idea

20   as to (a) how the courts are interpreting the November 5th order

21   which may require some additional elucidation.  And second, what

22   we are planning to do in light of that and we would submit that

23   the 17th would give us enough time with the other things we have

24   on our plate to do that.

25           THE COURT:  I don't have any problem with that.  Does

dgh

12

1 that sound all right to you?

2        MR. GINGOLD:  Yes, Your Honor.

3        MR. WEINER:  Your Honor, there are some other issues

4 that I think need to be addressed at this point for purposes of

5 efficiency.  As the court may be aware, we have taken some

6 depositions in this case.  Those depositions have been thwarted

7 to a great extent by plaintiff's conduct in those depositions in

8 refusing to allow witnesses to answer questions without the

9 assertion of privilege.

10        As you may recall in plaintiff's memorandum regarding

11 the sampling approach, they announced to the court that

12 plaintiff's had abandoned statistical sampling because it was

13 unworkable and had adopted their own approach.

14        THE COURT:  I thought they said they adopted joint?

15        MR. WEINER:  No.  They said, "The fact that the

16 mathematical sampling approach hitherto investigated has proven

17 unfeasible, of course, does not leave plaintiffs without a

18 remedy.  A remedy, accordingly we have gone back to the drawing

19 board to develop with Price, Waterhouse, Coopers a different

20 method of proving the corrections that should be applied to the

21 account.  We will apply this method in the traditional way of

22 the adversary system."

23        THE COURT:  Meaning they picked their own samples.

24        MR. WEINER:  Right.  When we asked -- No.  They have

25 said they're not going to use statistical sampling.

dgh

1          THE COURT:  All right.

2          MR. WEINER:  But when we asked plaintiff's expert

3    about their plan, they were instructed by their attorney not to

4    answer the question, not on any assertion of any privilege.  I'm

5    flabbergasted that they would instruct a witness without the

6    assertion of privilege not to answer a question relating to a

7    plan that they have alleged in a pleading before this court they

8    have adopted.  The witness first said we haven't adopted a plan,

9    which led me to believe, well, did you mislead the court or are

10   you misleading me now.  And then when I pressed the issue, they

11   were instructed by their attorneys not to answer the question.

12   That is highly improper, Your Honor.

13          We are entitled to know what their plan is for

14   purposes of, if nothing else, recommending a trial date to the

15   court.  They've told the court they could go to trial in six

16   months, based upon this plan.  They won't let me find out what

17   this plan is.  That's improper.

18          THE COURT:  Okay.

19          MR. WEINER:  We asked plaintiffs questions regarding

20   their funding sources.

21          THE COURT:  Who is the witness?

22          MR. WEINER:  The witness was Jessica Pollner, P-O-L-L-

23   N-E-R.

24          THE COURT:  Okay.

25          MR. WEINER: We asked the same witness, the funding

dqh

1  sources of plaintiff's funds for the litigation.  They

2  instructed the witness not to answer, not based on the assertion

3  of any privilege.  When we asked what the basis of the objection

4  was, we were told because plaintiff's fear that that funding

5  source or foundation may be subject of some harassment by some

6  source.

7       Your Honor, we're entitled to find out that

8  information to find out who the real party in interest in the

9  case is.  Again, there was no assertion of privilege that would

10 otherwise properly frame an instruction to a witness not to

11 answer.  These instructions to have witnesses not to answer the

12 question without foundation of privilege have continued.

13      Yesterday, we were trying to take the deposition of

14 another Price, Waterhouse employee.  Plaintiff on the record

15 said that they would refuse to allow the witness to answer any

16 questions about plaintiff's statistical sampling plan.

17      Your Honor, it's relevant.  It's discoverable.  It's

18 not privileged.  It relates to matters that have been put before

19 the court and that we need in order to make recommendations to

20 the court.  Plaintiff's instructions are improper and are

21 unnecessarily delaying these depositions.  They refuse to allow

22 the witness to answer any questions in which he was expressing

23 an opinion.

24      Your Honor, when plaintiffs have submitted to the

25 court a witness list of 120 witnesses, when we asked two of

1    these witnesses if the subject matter they were going to testify

2    about is what is indicated in the witness list, they said, I

3    don't know.  We don't know what we're going to testify about.

4    No one asked us.  We haven't decided yet.

5            And we said, what else will you testify.  They were

6    instructed not to answer.  It was premature.  When we asked them

7    their opinion about things, they were instructed not to answer.

8            THE COURT:  I don't know that you can ask the witness

9    what they expect to testify about.  You're talking about a

10   nonexpert?

11           MR. WEINER:  Both the experts and the non-experts,

12   they were instructed not to answer.

13           THE COURT:  Well, it may be different for the expert.

14   But I mean, you an ask a witness what they know.

15           MR. WEINER:  I certainly can, Your Honor.  I'm also

16   entitled to ask the witness about his opinions, even if it's a

17   fact witness.

18           THE COURT:  I agree.  But I don't think you can ask a

19   witness what they expect to testify about.

20           MR. WEINER:  Your Honor, we were trying to understand

21   what the source of the identification of the subject matter was

22   in the witness list.

23           THE COURT:  Well, wouldn't that normally be posed by

24   interrogatory to a party?

25           MR. WEINER:  It could be, Your Honor, but we were

dgh

16

1    doing it through deposition.  But in any event, it was a proper

2    question.  The witness was instructed not to answer the

3    question.  I cannot explain any justification nor could

4    plaintiffs counsel.

5           THE COURT:  Well, how could the witness answer that

6    question without getting into attorney work product?

7           MR. WEINER:  Well, I'm trying to find out what facts

8    the witness has about things that they could testify about.

9           THE COURT:  I understand.  You can ask that, but when

10   you ask them what they expect to testify about, wouldn't that

11   necessarily involve their discussion with the attorney?

12          MR. WEINER:  Possibly, Your Honor, but that wasn't the

13   basis upon they were instructed not to answer.

14          But again, I asked the witness, one witness, an

15   alleged fact witness, he said he was testifying based upon

16   documents he had reviewed.

17          In a sense and there is case law to support this

18   proposition, that witness is a limited expert with respect to

19   the documents.  We're entitled to ask the witness about his

20   opinions of the relevance of the documents, the documents he has

21   reviewed and he hasn't reviewed.  Again, those questions were

22   blocked.

23          I know of no foundation or no basis to instruct a

24   witness in a deposition not to answer a question because

25   plaintiffs don't like the questions that are being asked if

dgh

1 that's what's happening here.

2      There is another issue that has arisen, Your Honor,

3 that I must bring up at this point that is not in any of the

4 materials that we've filed with the court.

5      We have been advised that one of plaintiff's counsel,

6 Bob Peregoy called Donna Irwin, who is the Director of the

7 Office of Trust Funds Management, and asked her about discovery

8 issues.

9      Plaintiffs know that Ms. Irwin is the Director of the

10 Office of Trust Funds Management.  They have disposed her and

11 they know that she is represented by counsel in this case and

12 they called her for the specific reason of asking her if they

13 asked for certain documents in discovery, would she know what

14 they were asking for.

15      Your Honor, that is as clear a violation of the ethics

16 rules as I can imagine.  I recognize that there are exceptions

17 to Rule 4.2 that cover contact by people who know another is

18 represented by counsel, but this contact is clearly outside the

19 scope of that exception.  This falls within the purview of, I

20 believe subparagraph 7 of Rule 4.2, that precludes discussions

21 with someone an attorney knows to be represented by counsel for

22 purposes of litigation.  That's why the conduct was done.  Your

23 Honor, we request, to the extent we can now --

24      THE COURT:  She is not a party.

25      MR. WEINER:  Your Honor, under your definition of a

dgh

1    party, she is within our control.

2            THE COURT:  I understand.

3            MR. WEINER:  She is the Director of the of Trust Funds

4    Management.

5            THE COURT:  I understand.

6            MR. WEINER:  She is not named as a party, but they

7    know her in this litigation in her capacity as the Director of

8    Trust Funds Management to be represented by us.  If plaintiffs

9    had any questions about what discovery they wanted, they're

10   obligated to go through us.  They contacted her for the express

11   purpose of saying, if we ask for a document, will you know what

12   it is, can you start gathering those documents.  That is highly

13   improper, Your Honor, and we request that the specific -- a

14   request for production of documents that plaintiffs requested

15   and got through this impermissible be struck.  This is

16   effectively fruit of the poison tree.

17           THE COURT:  I'm not striking anything without a

18   written motion.

19           MR. WEINER:  We will then file a written motion, but I

20   think the plaintiffs need to be accountable to the court for

21   their actions, especially when they rise to the level of

22   egregiousness such as is this.

23           THE COURT:  Okay.  Any other issues you want to raise?

24           MR. WEINER:  Not at this time, Your Honor.  We will

25   work with plaintiff's counsel to get new notices out to the

 1   individuals.  We will make the individuals available for

 2   deposition in Washington assuming that they are here in their

 3   official capacity.

 4          THE COURT:  All right.

 5          MR. GINGOLD:  Your Honor, Mr. Weiner has raised

 6   several issues which I think we need to address, in addition to

 7   a couple of other additional issues.

 8          With regard to the last which has been characterize as

 9   an egregious violation of D.C. Bar Rules, I would like to point

10   out that first, Ms. Irwin requested through another Native-

11   American Rights Fund attorney that Mr. Peregoy give her a call

12   with regard to obtaining certain public information.

13          Mr. Peregoy contacted the D.C. Bar office, discussed

14   with them the issues with regard to contacting employees of the

15   Department of Interior under circumstances identical to this and

16   was given clearance to discuss with the Department of Interior

17   employees this information, and after thoroughly review the

18   issues, the telephone call was made in response to the request

19   by Ms. Irwin.

20          So to characterize this as egregious, we think is

21   unfortunately consistent with this litigation as jumping the gun

22   without understanding all of the facts.

23          THE COURT:  Well, you know, I understand because I

24   have some familiarity with the issue that government officials

25   are still government officials and the public can talk to

dgh

20

1  government officials.  But, you know, when there's litigation

2  ongoing, I would hope that counsel could talk to each other

3  about these kinds of matters before calling bar counsel and

4  seeing if bar counsel says, no, you won't be disciplined if you

5  do it.

6        Something is degenerating here when you all can't talk

7  to each other and I don't know how to get that back on track,

8  but we're going to have a trial here.  The government now knows

9  it from my opinion yesterday.  So, I mean, you all need to get

10 back on track that there has to be a way to work together to get

11 this case tried without charges and countercharges and claims of

12 bar violations and you all running to see whether or not it

13 would be a bar violation.  You've got to work together some way

14 or we're never going to get this case tried.

15       And it's in the plaintiff's interest to get it tried

16 promptly.  It's in the government's interest to try to work with

17 you and they're going to have to work with you.  They've been on

18 some pipe dream about this case was going to go away, but they

19 now know it's not going to go away after my ruling yesterday.

20 So you all are going to have to figure out how to work together

21 in this case.

22       And all of this stuff about calling up the bar and

23 seeing if it would be unethical and I agree it's not, and then

24 they're making charges of ethical violations aren't going to

25 lead anywhere except side tracking with a lot of paper on

1  extraneous issues like all of this stuff I read last night.  You

2  all have to got to figure how to work together, both sides do,

3  because this case is going to trial.

4         And cooperatively, it will go to trial sooner from the

5  plaintiff's point of view.  Uncooperatively, I agree the trial

6  will be delayed, but, you know, the government doesn't want to

7  head down that road with me and the government knows me.  They

8  know they don't want to head down that road with me.

9         MR. GINGOLD:  Thank you, Your Honor.  We will endeavor

10  to do everything possible to work cooperatively with the

11  government going forward.  There has been some problems.

12         THE COURT:  I think maybe both sides need to rethink

13  where you are and have a good meeting next week and talk about

14  where you are, because there needs to be a dose of realism and I

15  think my 50 pages yesterday should engender a dose of realism

16  about where this case is headed.

17         MR. GINGOLD:  Thank you.  With regard to a couple of

18  issues in addition that Mr. Weiner has raised.  The issues with

19  regard to the witnesses in the depositions are understood by us

20  a bit differently than understood by Mr. Weiner.

21         We had a situation where we have been trying to comply

22  with the court's scheduling order.  We have noticed our

23  depositions, that's correct, prior to discussing the time and

24  dates with the government.  In every single deposition notice

25  that we've issued in the past, we have worked with the

dgh

22.

1  government and accommodated every possibility of an

2  inconvenience either for counsel or for the witnesses.

3         THE COURT:  I agree.

4         MR. GINGOLD:  That is what we were fully intending to

5  do with regard to these notices.

6         THE COURT:  But the more civil way to practice is to

7  call first and that is what I encourage lawyers to do.  That's

8  why I made my initial comments.

9         MR. GINGOLD:  Your Honor, we will do that, Your Honor.

10 We do not want to get into all of other squabbles in that regard

11 which are too numerous to mention and burden this court.

12        However, there is a serious issue with regard to the

13 witnesses' depositions, we need some guidance on.

14        THE COURT:  Okay.

15        MR. GINGOLD:  There were Price, Waterhouse witnesses

16 that were deposed this week.  One is Jessica Pollner, who is the

17 principal statistical expert of Price, Waterhouse, Coopers.  The

18 other is Jeffrey Rampel (Ph), who is a third year professional

19 staff member at Price, Waterhouse, Coopers.

20        We understood the scheduling order because of the time

21 constraints to focus on obtaining information relative to the

22 first component of the case which is fixing the system.

23        We have not endeavored to obtain additional

24 information in this regard with regard to the second component

25 of the case because of the fact we have a trial scheduled for

dgh

1   March 15th.   Tight schedule, we all know that and we're trying

2   to stick to it.

3         As of right now, the government has even provided us

4   with a witness list.

5         Now, the government hasn't seemed to pay much

6   attention to the requirements of the scheduling orders.   The

7   government, as I understood their briefs that were recently

8   filed, indicated that the burdens that have been placed on them

9   based on our discovery requests have made it difficult for them

10   to comply within the time periods established.

11         In the course of the last two depositions this week,

12   in the first deposition there were seven government lawyers

13   there.   Second deposition, there were six government lawyers.

14         Out of approximately seven to seven and a half hours

15   of the first deposition, Ms. Pollner was asked probably five to

16   six hours of questions unrelated to fixing the system or related

17   to the expert opinion that is to be prepared relative to fixing

18   the system and provided to the Department of Justice on or

19   before December the 15th.

20         In the context of the difficulty we have had, number

21   one, we have no expert opinion written yet.   We are preparing

22   it.   To provide information with regard to an expert opinion on

23   fixing the system from a statistician who stated repeatedly that

24   she was not an expert on fixing the system did not seem

25   reasonable at that point in time for her to answer.

dgh

24

1          Number one, she claimed she wasn't competent to answer

2   the question, and number two, without regard to whatever Price,

3   Waterhouse, Coopers is doing, they have not prepared it yet.

4   They are considering various things and we have not even met

5   with Price, Waterhouse, Coopers with regard to that report.

6          So we felt after hours and hours of questioning with

7   that regard, with the continuation of Ms. Pollner's deposition

8   on Monday with regard to the statistical analysis which is

9   unrelated to the first part of the case, we think it's highly

10  inappropriate at this point in time, Your Honor.

11          With regard to Mr. Rampel, Mr. Rampel has no authority

12  on behalf Price, Waterhouse, and he stated it repeatedly, to

13  offer any opinions with regard to any of the issues he's working

14  on.

15          Numerous questions were asked as late as five minutes

16  after 6:00 last night about Mr. Rampel's understanding or

17  involvement in the statistical sampling issues in this case.

18          While we did have a break for lunch and we did have a

19  lunch for us all to review your opinion yesterday, Your Honor,

20  nevertheless the deposition from 9:00 or 9:20 in the morning

21  until 6:05 in the evening on questions that he has no authority

22  to answer, on questions that he is not an expert on, we think is

23  inappropriate to say the least, and at a certain point in time

24  we had to step in and stop this.

25          If the government doesn't have --

1          THE COURT:  The problem with that is, if the answer to

2    the question at a noted deposition is not privileged, then the

3    way to stop is to ask the court, which you can do orally by

4    contacting my chambers, for a protective order and I'll schedule

5    a prompt hearing on it.

6          It's really not to just instruct the witness not to

7    answer.  On a matter not privileged, you've got to either recess

8    the deposition and maybe you can agree on when you'll present

9    the question to me or if you can't agree, contact my chambers

10   and ask for an oral hearing on the Motion for Protective Order.

11   But on non-privileged matters, that's the only option you really

12   have opened to you.

13          I take it from your comments here today, you would

14   like a protective order about continuing the deposition of

15   Pollner and Rampel?

16          MR. GINGOLD:  That's correct, Your Honor.

17          THE COURT:  And I'll give you that until I can hear

18   the matter and I can either hear it the 23rd or the 24th.

19          MR. GINGOLD:  Thank you, Your Honor.  We also have

20   depositions scheduled of another Price, Waterhouse witness, Ms.

21   Gooding, on Monday.  My expectation is the same approach is

22   going to be needed in her regard, and we would request --

23          THE COURT:  What is her name?

24          MR. GINGOLD:  Laura Gooding.  G-O-O-D-I-N-G.  And it's

25   important in this regard when we provided the defendants with

dgh

1  our witness list, we identified Ms. Pollner and Mr. Rampel and

2  Ms. Gooding as fact witnesses with regard to fixing the system,

3  not expert witnesses and only fact witnesses with regard to

4  their observations made during the site visits.  The way the

5  language of the witness list is written, it is with regard to

6  agency or area office trust practices essentially and it's only

7  with regard to their observations there.

8          In fact there has been no discussions with Price,

9  Waterhouse about the scope of their testimony, the nature of the

10 testimony.  The witnesses specifically stated that if they were

11 to testified they were expected to testify on what they

12 observed.

13         Nevertheless, after six or seven or eight hours of

14 questioning, much of which was substantially beyond that -- we

15 probably should have called you, Your Honor, but nevertheless we

16 terminated the deposition.  We will endeavor to call your honor

17 in the future.

18         THE COURT:  I will temporarily stay those until the

19 November 23rd hearing then.

20         MR. GINGOLD:  Thank you, Your Honor.  In that regard,

21 there's one more point.  We have provided or will provide Ms.

22 Cobell, the named plaintiff in the case, for deposition on the

23 16th based on an agreement with counsel.

24         The issue with regard to the name foundations that

25 have provided funding for this case was asked of these fact

dgh

1  witnesses, and in addition we expect that same question to be

2  asked of Ms. Cobell, and we would like the court to consider

3  this issue specifically.

4          THE COURT:  Do you need a Motion for Protective Order

5  which ought to be in writing as to that kind of an issue.

6          MR. GINGOLD:  We will do that, Your Honor.

7          THE COURT:  As soon as you get it filed, then you can

8  rely on having filed the Motion for Protective Order to protect

9  her from answering those questions on the 16th.

10          MR. GINGOLD:  Thank you, Your Honor.

11          THE COURT:  Until I rule on the question of whether

12  that's an appropriate line of questions.

13          MR. GINGOLD:  Thank you, Your Honor.

14          THE COURT:  But you need your written Motion for

15  Protective Order filed before that deposition on the 16th.  And

16  in this instance, having discussed, I won't insist that it

17  granted but just be filed.

18          MR. GINGOLD:  Thank you very much, Your Honor.

19          THE COURT:  All right.  Any other issues you want to

20  raise, Mr. Weiner?

21          MR. WEINER:  Yes, Your Honor.

22          Your Honor, in the context of the protective orders

23  that you've just described to regarding Ms. Pollner's

24  deposition, the government is prejudiced by that significantly.

25          We know nothing about plaintiff's proposed plan.  They

1  refused to allow the witness, their expert who testified that

2  she is the statistical expert who will testify about their plan,

3  to tell us what it is, what it anticipates.

4           We're now expected to show up on the 24th for a

5  hearing on dates setting the retrospective relief that

6  incorporates their plan, and yet when we try to take discovery

7  from their witness who can tell us what their plan was, they

8  refused to allow her to testify, and now, we're not going --

9           THE COURT:  Well, you're in the same position then

10  where you wouldn't let any of your people testify and they came

11  in and moved on that.

12           MR. WEINER:  Your Honor, they  have the discovery.

13  They know everything there is to know about our system.

14           THE COURT:  Any other issue you want to raise?

15           MR. WEINER:  Yes, Your Honor.  I do think that

16  plaintiffs' characterization of our depositions is terribly

17  misleading and we would like to set the straight on that.

18           THE COURT:  File them with me.  Anything else you want

19  to raise?

20           MR. WEINER:  Again, Your Honor, we would request an

21  opportunity to have the opportunity to find out what their

22  statistical plan is before we have to recommend a trial date to

23  this court on the 24th.

24           THE COURT:  You don't have to recommend any date.  I'm

25  going to ask facts and I'll decide the date.  I'm not asking you

1  for any recommendation.

2           I'll see you all on the 23rd.

3       (Proceedings concluded at 2:46 p.m.)

4                    CERTIFICATE OF REPORTER

5           I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT

6  FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

WILLIAM D. MCALLISTER          COPY
OFFICIAL COURT REPORTER