UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ELOUISE PEPION COBELL, et al.,** ) <br> on their own behalf and on behalf of ) <br> all those similarly situated, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> **GALE A. NORTON,** ) <br> Secretary of the Interior, et al., ) <br> ) <br> Defendants. ) <br> ) | Civil Action No 96-1285 (RCL) |

### MEMORANDUM AND ORDER

On December 10, 2004, the United States Court of Appeals for the District of Columbia Circuit issued an opinion, Cobell v. Norton, No. 03-5314, slip op. (D.C. Cir. Dec. 10, 2004) ("Cobell XIII"), in which it vacated the "historical accounting" portion of the Structural Injunction issued by this Court on September 25, 2003, see generally Cobell v. Norton, 283 F. Supp. 2d 66 (D.D.C. Sept. 23, 2003) ("Cobell X"), in reliance on Public Law 108-108, adopted November 10, 2003. Public Law 108-108 provided, in pertinent part, that:

> nothing in the American Indian Trust Management Reform Act of 1994, Public Law 103-412, or in any other statute, and no principle of common law, shall be construed or applied th require the Department of the Interior to commence or continue historical accounting activities with respect to the Individual Indian Money Trust until the earlier of the following shall have occurred: (a) Congress shall have amended the American Indian Trust Management Reform Act of 1994 to delineate the specific historical accounting obligations of the Department of the Interior with respect to the Individual Indian Money Trust; or (b) December 31, 2004.

Pub. L. No. 108-108 (Nov. 10, 2003).

1

After reviewing the relevant legislative history, the Court of Appeals reasoned that by including this language in the statute, Congress gave "Interior temporary relief from any common law or statutory duty to engage in historical accounting for the [Individual Indian Money Trust] accounts," Cobell XIII, No. 03-5314, slip op. at 7, in anticipation Congress' formulation of a solution to the issues in this case by the end of 2004. See id., slip op. at 7–8. "In Pub. L. No. 108-108, Congress in effect gave itself until December 31, 2004 'to develop a comprehensive legislative solution to what has become an intractable problem.'" Id. at 12 (quoting H.R. Conf. Rep. 108-330, at 118). The Court of Appeals concluded that the historical accounting provisions of this Court's Structural Injunction were "without legal basis" as long as Public Law 108-108 remained in effect. Id. at 12. However, "absent Congressional action by [December 31, 2004], obviously Pub. L. No. 108-108 will cease to bar the historical accounting provisions of the injunction." Id.

The Court of Appeals expressly declined to review the lengthy findings of fact and conclusions of law upon which this Court based the "historical accounting" provisions of its September 25, 2003 Structural Injunction, and it did not address "the issues that would be relevant if the district court ... reissued those provisions" after December 31, 2004. Cobell XIII, No. 03-5314, slip op. at 12. Instead, after finding that Public Law 108-108 deprived the "historical accounting" provisions of the Structural Injunction of its basis in law and vacating those provisions for that reason, the Court of Appeals turned to a discussion of the other, "conceptually separable" provisions of the Structural Injunction. That portion of the Cobell XIII opinion is not relevant for the present purpose, and the Court will require additional briefing from both parties before taking any action with respect to the effect of Cobell XIII upon the

remainder of the Court's September 25, 2003 Structural Injunction.

Of course, December 31, 2004 has come and gone, and no legislative solution to the issues in this litigation is available or in the offing. Therefore, the Court is bound, by its findings of fact and conclusions of law set forth in its September 25, 2003 Memorandum Opinion, see generally Cobell X, 283 F. Supp. 2d 66, to reissue without modification the "historical accounting" provisions of its structural injunction. Because the Court of Appeals did not disturb the findings of fact and conclusions of law upon which the "historical accounting" provisions of this Court's Structural Injunction are predicated, those findings and conclusions are fully incorporated by reference herein.[1] These findings of fact and conclusions of law form the legal basis for the injunction issued today.[2]

---

[1] The Court's Memorandum Opinion accompanying its September 25, 2003 Structural Injunction was, at the time of its issuance, the longest written opinion ever issued by our Court. For the sake of judicial economy, the findings and conclusions comprising the bulk of that opinion will not be repeated, or even summarized, here. The Court's reincorporation of the September 25, 2003 Memorandum Opinion by reference functions as a substitute for full reissuance of that Opinion to accompany the Order issued this date.

[2] Prior to issuing its September 25, 2003 Structural Injunction, and upon consideration of the parties' submissions and the entire record in this case, the Court determined that certain specific periods of time were sufficient for the defendants to complete the various tasks that they were ordered to complete in the Structural Injunction. See Cobell X, 283 F. Supp. 2d at 291–94 (setting forth the "timetable" for completion of the tasks required by the Structural Injunction). For example, the Court determined that a period of three-hundred seventy (370) days from the date on which the Structural Injunction was issued would be a sufficient amount of time for Interior to:

> complete (1) their accounting of all judgment accounts and per capita accounts in the Trust, as described in the Accounting Plan, (2) their indexing of all Trust-related records located at federal records facilities in Albuquerque, New Mexico and Lee's Summit [Missouri], as described in the Accounting Plan, and (3) their system tests of the Trust relating to (a) electronic data gaps and (b) the system conversion from the Integrated Records Management System ("IRMS") to the Trust Funds Accounting System ("TFAS"), as described in the Accounting Plan.

Cobell X, 283 F. Supp. 2d at 291–92. The determination of the appropriate time intervals for completion of each of the tasks set forth in the Structural Injunction was the product of deliberation and precise calculation, and the Court will not today alter its findings in that regard. However, the Court recognizes that while Interior surely began working on the tasks set forth in the Court's September 25, 2003 Structural Injunction immediately after that Order was issued; the Court of Appeals' November 12, 2003 order staying this Court's Structural Injunction likely brought Interior's work to a halt. The Court will therefore reissue the historical accounting provisions of its September 25, 2003 Structural Injunction and give Interior the same amounts of time, from today, in which to complete the various tasks set forth in the Structural Injunction issued herein. However, the Court will subtract from these time periods

Importantly, while the Cobell XIII court held that the issuance of several portions of the September 25, 2003 Structural Injunction were beyond the equitable power of this Court, each such holding depended crucially on the specific nature of the injunction provision in question. See, e.g., Cobell XIII, No. 03-5314, slip op. at 24–25 (discussing the Court's distinct orders requiring Interior to (1) finalize the Comprehensive Plan; and (2) implement the Comprehensive Plan; upholding the former provision and vacating the latter as beyond this Court's authority); id. at 27–32 (addressing other specific provisions individually). Given the fact-sensitive nature of the Court of Appeals' decisions regarding the outer bounds of this Court's equitable authority, and given that the specific provisions of the "historical accounting" portion of the September 2003 Structural Injunction were never addressed specifically on the merits; it follows that there is no ruling from the Court of Appeals obstructing this Court's authority, sitting as a Court of Equity, to issue injunctive relief of the kind set forth in the "historical accounting" portion of the September 2003 Structural Injunction.

The Court thus sets forth the following Order.

## 1. Structural Injunction

In accordance with the foregoing, the Court hereby issues the following structural injunction:

**I.     Definitions**

For purposes of this structural injunction:

---

the fifty-two (52) days that elapsed between the issuance of the Structural Injunction on September 25, 2003 and the issuance of the stay pending appeal on November 12, 2003, as the Court presumes that Interior was working toward completion of the various tasks set forth in the Structural Injunction during that time. The deadlines set forth in Section 1(IV) of the Order issued herein will reflect these recalculated time periods.

A. "Interior defendants" shall mean the Secretary of the Interior, and the Assistant Secretary of the Interior for Indian Affairs, who are defendants in the present action in their official capacities.

B. "Trust" shall mean the Individual Indian Money ("IIM") Trust.

C. "Plaintiffs" shall mean all present and former beneficiaries of the Trust.

D. "The 1994 Act" shall mean the Indian Trust Fund Management Reform Act, Pub. L. No. 103-412, 108 Stat. 4239.

E. "Order" shall mean the present structural injunction.

F. "Accounting Plan" shall mean The Historical Accounting Plan for Individual Indian Money Accounts, which was filed by the Interior defendants with this Court on January 6, 2003.

G. "Accounting Standards Manual" shall mean the Accounting Standards Manual dated May 9, 2003, which the Interior defendants filed with this Court as Defendants' Exhibit 59 during the Phase 1.5 trial in the present action.

**II.    General Provisions**

A. The Interior defendants, their agents, employees, successors in office, and any others acting in concert with them are hereby enjoined from failing to implement fully and within the times prescribed each of the provisions of this Order.

B. If at any time, the Interior defendants' implementation of this Order is affected by a provision in this Order that is susceptible to more than one reasonable interpretation, then the Interior defendants may file a motion requesting that the Court clarify the provision at issue. If the Interior defendants do not file such a motion, then the Interior defendants shall construe the

provision at issue in accordance with the reasonable interpretation that is most consistent with the "most exacting fiduciary standards" demanded of a trustee.

      C. If at any time, it appears to the Plaintiffs that the Interior defendants are interpreting any provision of this Order too narrowly or otherwise incorrectly, the Plaintiffs may file a motion requesting that the Court clarify the provision at issue.

      D. The Interior defendants shall administer the Trust in compliance with applicable Tribal law and ordinances.

      E. The relief awarded in this Order is supplemental to any relief awarded heretofore in the present litigation, including but not limited to the relief awarded in the Court's Memorandum Opinion and accompanying Order issued December 21, 1999, as affirmed by the D.C. Circuit in Cobell v. Norton, 240 F.3d 1081 (D.C. Cir. 2001).

**III.  Historical Accounting**

      A. Pursuant to the 1994 Act, the Interior defendants shall provide the Plaintiffs with an accurate accounting of all money in the Trust held in trust for the benefit of the Plaintiffs, without regard to when the funds were deposited. The Interior defendants shall conduct a historical accounting of the Trust, in accordance with the timetable provided in section IV of this Order. The historical accounting of the Trust shall be undertaken in accordance with the Accounting Plan, except to the extent that any portion of the Accounting Plan is inconsistent with any portion of this Order.

      B. Pursuant to the 1994 Act, the Interior defendants shall retrieve an retain all information concerning the Trust that is necessary to render an accurate accounting of all money

in the Trust held in trust for the benefit of the Plaintiffs. As affirmed by the D.C. Circuit, the Interior defendants are under an obligation to recover missing trust records where possible, and to develop plans and procedures sufficient to ensure that all aspects of the accounting process are carried out. Accordingly, within sixty (60) days of the date of this Order, the Interior defendants shall file with the Court, and serve upon the Plaintiffs, a detailed plan explaining the manner in which the Interior defendants shall: (1) determine which records related to the Trust are likely to be possessed by entities outside of the federal government; (2) identify the records related to the Trust maintained by such entities; and (3) issue subpoenas, where appropriate, to ensure that records related to the Trust will be preserved. Within thirty (30) days of the date that this plan is filed with the Court, the Plaintiffs may submit a brief in response to the plan, which brief may include an alternative or supplemental plan to the plan submitted by the Interior defendants.

C. Within ninety (90) days of the date of this Order, the Interior defendants shall file with this Court, and serve upon the Plaintiffs, a detailed plan containing a timetable for completion of their collection and indexing of all records related to the Trust. This plan shall include a complete explanation of whether the indexing methods proposed in the Accounting Plan for indexing records related to the Trust located in Albuquerque, New Mexico and in Lee's Summit, Missouri, shall be used for indexing the remaining records related to the Trust that are held by the federal government.

D. The historical accounting of the Trust conducted by the Interior defendants shall account for all funds in the Trust deposited or invested pursuant to the Indian Reorganization Act of 1938, 48 Stat. 984, regardless of whether such funds were deposited or invested before or after October 25, 1994.

E.  The historical accounting of the Trust conducted by the Interior defendants shall account for all funds deposited or invested in the Trust since the passage of the General Allotment Act of 1887, 24 Stat. 388.

F.  The historical accounting of the Trust conducted by the Interior defendants shall account for all funds deposited or invested in the Trust, regardless of whether such funds were deposited or invested during the lifetimes of beneficiaries of the Trust who are now deceased.

G.  The historical accounting of the Trust conducted by the Interior defendants shall account for all assets held by the Trust since the passage of the General Allotment Act of 1887, 24 Stat. 388.

H.  The historical accounting of the Trust conducted by the Interior defendants shall account for all monies paid to beneficiaries of the Trust in conjunction with direct-pay leases and contract entered into by such beneficiaries.

I.  The historical accounting of the Trust conducted by the Interior defendants shall account for all funds deposited or invested in the Trust, regardless of whether the assets generating such funds were or are administered or managed by one or more Indian Tribes, pursuant to a contract, compact, or other cooperative agreement created in accordance with the Indian Self-Determination Act and Education Assistance Act of 1975, Pub. L. No. 93-638, 88 Stat. 2203, as amended.

J.  The historical accounting of the Trust conducted by the Interior defendants shall account for all property interests that escheated from beneficiaries of the Trust pursuant to the Indian Land Consolidation Act, 96 Stat. 2519, as amended ("ILCA"), and that reverted back to any beneficiary of the Trust prior to the completion of the historical accounting of the Trust.

Additionally, all property interests that escheated from beneficiaries of the Trust pursuant to the ILCA and that reverted back to any beneficiary of the Trust after the completion of the historical accounting of the Trust must be accounted for in one of the subsequent accounting reports to that beneficiary, the issuance of which has been mandated by the 1994 Act.

 K.  The historical accounting of the Trust conducted by the Interior defendants shall not make use of any statistical sampling procedure to verify the existence of any transactions that have occurred during the existence of the Trust, except as part of an audit of the historical accounting of the Trust.

 L.  The historical accounting of the Trust conducted by the Interior defendants shall include a verification process conducted by professional accountants using the representations in the Accounting Standards Manual to verify the existence of each individual transaction occurring during the existence of presently-existing or previously-existing accounts within the Trust through the use of supporting documentation.  The Interior defendants shall use only the version of the Accounting Standards Manual that the Interior defendants filed with the Court as Defendants' Exhibit 59 during the Phase 1.5 trial in the present action, unless changes to the Accounting Standards Manual have been approved by the Court.

 M.  The accounting statements that shall be transmitted by the Interior defendants to each living beneficiary of the Trust after the Interior defendants have completed their historical accounting of the Trust shall include a description of the assets belonging to each living beneficiary of the Trust or his or her predecessors in interest; a description of all changes to the assets belonging to each living beneficiary of the Trust or his or her predecessors in interest during the existence of the Trust, and a description of the assets belonging to each living

beneficiary of the Trust.

  N.  Within ninety (90) days of the date of this Order, the Interior defendants shall file with the Court, and serve upon the Plaintiffs, a plan describing in detail each of the five system tests described on page III-18 of the Accounting Plan.  If any of these five system tests will involve the usage of sampling techniques, the plan shall provide a detailed description of the specific technique to be utilized, including the sample size and sampling method.  Within thirty (30) days after the filing of this plan, the Plaintiffs may submit a brief in response to the plan, which brief may include an alternative or supplemental plan to the plan submitted by the Interior defendants.

  O.  Within sixty (60) days of the date of this Order, the Interior defendants shall file with the Court, and serve upon the Plaintiffs, a plan describing in detail each of the quality control (QC) measures described in Appendix C of the Accounting Plan that have already been implemented.  The plan shall also describe in detail each of the QC measures that the Interior defendants will undertake in conjunction with their historical accounting of the Trust.  Within thirty (30) days after the filing of this plan, the Plaintiffs may submit a brief in response to the plan, which brief may include an alternative or supplemental plan to the plan submitted by the Interior defendants.

  P.  Within one hundred twenty (120) days of the date of this Order, the Interior defendants shall file with the Court, and serve upon the Plaintiffs, a plan that analyzes the use of industry production databases such as PI/Dwights and computer software such as Geographic Information System ("GIS") in conjunction with the historical accounting of the Trust that will be performed by the Interior defendants.  The plan shall include an analysis of the use of such

production databases and software as a means of filling gaps in the records relating to the Trust, and an analysis of the potential usefulness of such production databases and software as a test or verification of the completeness of the historical accounting of the Trust that will be performed by the Interior defendants.  If the Interior defendants decide not to use such production databases and software in conjunction with their historical accounting of the trust, the plan shall explain, in detail: (1) which measures the Interior defendants have already implemented or will implement that will function as an adequate means of filling gaps in the records relating to the Trust and testing or verifying the completeness of the historical accounting of the Trust that will be performed by the Interior defendants; and (2) why the use of such production databases and software will not serve as an appropriate supplement to such measures.  Within thirty (30) days after the filing of this plan, the Plaintiffs may submit a brief in response to the plan, which brief may include an alternative or supplemental plan to the plan submitted by the Interior defendants.

### IV.     Timetable

A.     <u>Historical Accounting</u>

1. By January 6, 2006 the Interior defendants shall complete: (1) their accounting of all judgment accounts and per capita accounts in the Trust, as described in the Accounting Plan; (2) their indexing of all Trust-related records located at federal records facilities in Albuquerque, New Mexico, and Lee's Summit, Missouri, as described in the Accounting Plan; and (3) their system tests of the Trust relating to: (a) electronic data gaps; and (b) the system conversion from the Integrated Records Management System ("IRMS") to the Trust Fund Accounting System ("TFAS"), as described in the Accounting Plan.

2. By January 6, 2007 the Interior defendants shall complete: (1) their accounting of all transactions in all land-based accounts in the Trust from the Electronic Records Era (1985–present), as described in the Accounting Plan; and (2) their system test of the Trust relating to the system conversion from paper records to the IRMS, as described in the Accounting Plan.

3. By January 6, 2008 the Interior defendants shall complete: (1) their accounting of all transactions in all land-based accounts in the Trust from the Paper Records Era (1887–1985), as described in the Accounting Plan; and (2) their system tests of the Trust relating to interest calculations, postings, and ownership, as described in the Accounting Plan.

4. By January 6, 2009 the Interior defendants shall complete their cleanup of all special deposit accounts in the Trust, as described in the Accounting plan.

B.     Amendment of the Timetable

1. Within ninety (90) days of the date of this Order, the Interior defendants shall file with this Court, and serve upon the Plaintiffs, a detailed proposed timetable for the completion of their historical accounting of the Trust.  This timetable shall include specific dates for the Interior defendants' completion of important milestones in their historical accounting of the Trust, including the completion of the collection process, accounting process, and reporting process. The proposed timetable shall include a detailed explanation as to why each of the selected dates were chosen.  Within thirty (30) days after the filing of this proposed timetable, the Plaintiffs may submit a brief in response, which brief may include an alternative or supplemental timetable to the timetable submitted by the Interior defendants.

2. Within ninety (90) days of the date of this Order, the Interior defendants shall file with this Court, and serve upon the Plaintiffs, a timetable for the completion of the entire indexing process for Trust-related records to be undertaken as part of the Interior defendants' historical accounting of the Trust. The timetable shall include a detailed explanation of how the indexing methods proposed in the Accounting Plan for indexing the Trust-related records located in Albuquerque, New Mexico, and Lee's Summit, Missouri differ, if at all, from the indexing methods that the Interior defendants will use to index boxes of Trust-related records held by the federal government that are not located at Albuquerque, New Mexico and Lee's Summit, Missouri.

3. The Interior defendants may submit to this Court a motion to amend the portions of the above timetable relating to the Interior defendants' completion of the accounting of the land-based accounts in the Trust and for the historical accounting of the Trust as a whole. If the Interior defendants submit such a motion, it shall be served upon the Plaintiffs, and shall include specific dates for the Interior defendants' completion of their accounting of the land-based accounts in the Trust and of the historical accounting as a whole, as well as a detailed explanation of their reasons for selecting these specific dates. Within fifteen (15) days after the submission of any such motion by the Interior defendants, the Plaintiffs may file a brief in response to that motion.

4. Any amendments to the above-described timetable at the behest of either of the parties shall only be considered if requested upon motion, and shall only be approved by the Court for good cause shown.

5. The Interior defendants shall inform the Court immediately if they receive any

information that might affect their compliance with the above-described timetable; and shall notify the Court upon becoming aware of any other circumstances that might affect their ability to comply with the above-described timetable.

V.     **Retention of Jurisdiction**

This Court shall retain jurisdiction over the present matter until March 27, 2011.  This retention of jurisdiction shall be subject to any motion for an enlargement of time that may be submitted by either party.

## 2.  Denial of Stay Pending Appeal

This case has been pending since 1996, and the injunctive relief granted today was previously granted on September 25, 2003.  The issues presented have already been fully briefed and orally argued to a panel of the Court of Appeals.  However, due to a delay directed by Congress in a bizarre and futile attempt at legislating a settlement of this case, the merits of this Court's September 25, 2003 Structural Injunction have still not been decided.  This Court will not grant a stay pending appeal of today's Order.  The defendants have not demonstrated to this Court that they are entitled to such relief.

As this case approaches its ninth year, it is this Court's hope that the defendants' next appeal will be truly expedited, and will lead to the resolution of these legal issues.  Elderly class members' hopes of receiving an accounting in their lifetimes are diminishing year by year by year as the government fights—and re-fights—every legal battle.  For example, the defendants continue to contend today that this is a simple record-review Administrative Procedures Act

case—a proposition that has been squarely rejected by this Court on more than one occasion, as well as by three different Court of Appeals panels in <u>Cobell VI</u>, <u>Cobell XII</u>, and <u>Cobell XIII</u>.

In this case the government has not only set the gold standard for mismanagement, it is on the verge of setting the gold standard for arrogance in litigation strategy and tactics.

I request that the Court of Appeals expedite this case while there is still a chance to provide meaningful relief to these Indians who have been so grievously wronged by the government's misconduct.

Accordingly, it is hereby

ORDERED that a stay of today's Order pending appeal is DENIED.

### 3.  <u>Additional</u> <u>Briefing</u>

In accordance with the foregoing, it is hereby

ORDERED that the parties must file, within twenty (20) days of this date, briefs setting forth their respective positions concerning the effect of the <u>Cobell XIII</u> decision upon all provisions of this Court's September 25, 2003 Structural Injunction other than the historical accounting provisions of the September 25, 2003 Structural Injunction reissued herein.

SO ORDERED.


Signed by Royce C. Lamberth, United States District Judge, February 23, 2005.