## Expert Report of David B. Lasater

### Qualifications

My name is David B. Lasater. I am a Senior Managing Director in the Forensic and Litigation Consulting practice of FTI Consulting, Inc. My business address is 3 Times Square, 11th Floor, New York, NY 10036.

I have a Ph.D. from the University of Texas at Austin, August 1982, in accounting research methodologies, capital markets, and quantitative methods. I have a Masters degree in Professional Accounting from the University of Texas at Austin, May 1979, and a Bachelors degree in Business Administration, accounting, from the University of Houston, December 1973.

I am a licensed Certified Public Accountant in Texas and New York. I am a member of the American Statistical Association, the American Economic Association, and the American Institute of Certified Public Accountants. My resume is attached as Exhibit 1.

I have given expert statistical testimony in Federal and state courts, including deposition and courtroom testimony in the *Cobell* matter in 1998 and 2003. The matters in which I have given testimony in at least the most recent four years are reflected in a list attached as Exhibit 2.

I have been asked to evaluate the statistical sampling dimensions of the Department of the Interior's May 31, 2007 "Plan for Completing the Historical Accounting of Individual Indian Money Accounts" ("May 31, 2007 Plan") plan to provide a historical accounting for Individual Indian Money accounts.

FTI Consulting, Inc., is compensated at a rate of $500 per hour for my time on this project. I estimate that the amount of time I will have spent prior to the submission of this report has totaled over 100 hours. My personal compensation is not dependent on the outcome of the case.

### Background

1.  My understanding of Interior's May 31, 2007 plan is that it builds on "The Historical Accounting Plan for Individual Indian Money Accounts," ("the January 6, 2003 plan"). I previously submitted two expert reports and testified about the statistical feasibility of the January 6, 2003 plan. I incorporate by reference my previous reports.

2.   At the time of the January 6, 2003 Plan, two substantial studies had been reported about the financial reliability of the historical system of account maintenance and the related receipts and disbursements in the trust accounting systems:

    (a)  The Tribal Reconciliation Project completed in or about 1995, and
    (b)  Revised Interim Final Report of Joseph R. Rosenbaum, November 19, 2001.

Since 2003, the Litigation Support projects undertaken by the Department of Interior have added substantial information about IIM trust transaction reliability.

## Opinions

1.   Interior's conclusion is reasonable that little additional overall insight about the quality of IIM transaction bookkeeping in the electronic era would be obtained through further testing beyond the Litigation Support projects.

2.   Results from the May 31, 2007 sampling plan, reflecting the Litigation Support projects, will provide reasonable assurance as to the reliability of individual account transactions listings in the electronic era at the rates of incidence and dollar size of error discovered.

3.   The methodology proposed for testing transactions in the paper ledger era is reasonable.

4.   The proposed difference testing to evaluate statistically whether the paper ledger and electronic era transactions were processed by the same quality of bookkeeping is sound.

## Bases for my opinions

The bases for my opinions are:

1.   My understanding of the objectives of a historical accounting in this case,

2.   My general knowledge of the IIM accounting systems and categories of supporting documentation,

3.   My training and professional accounting experience,

4.   My training, familiarity with the literature, and experience in the design and implementation of statistical sampling plans for testing the reliability of accounts and transactional data and databases, and

5. My training and experience with interpreting the results to the larger accounting population from which the samples were drawn.

I have considered the following in forming my opinions:

1. Interior's January 6, 2003 and May 31, 2007 plans for conducting and producing a historical accounting to IIM account holders,

2. My observation during several weeks in Spring 2004 of the computer-based Account Reconciliation Tool ("ART") applied in the pilot reconciliation of Alaska Region transactions, and a preliminary interim analysis of the progress of that study,

3. My previous reports and transcripts of my testimony in this case,

4. The American Institute of Certified Public Accountants' ("AICPA") literature on the audits of service organizations that process transactions for user organizations,

5. The Tribal Reconciliation Project,

6. Revised Interim Final Report of Joseph R. Rosenbaum, November 19, 2001, and

7. Numerous reports produced by the statistical and other contractors reflected in the Administrative Record. (The listing of reports I have considered is attached as Exhibit 3.)

In addition, since the filing of the May 31, 2007 Plan, I have conferred with Office of Historical Trust Accounting ("OHTA") Deputy Director Jeffrey Zippin and Department of Interior Assistant Deputy Secretary Abraham Haspel, and members of National Opinion Research Corporation ("NORC"), including Susan Hinkins, Robin Lee, Patrick Baier, and Ali Mushtaq. I have also conferred with FTI Managing Director Michelle Herman and with lawyers from the Department of Justice and Interior's Office of the Solicitor.

**Discussion of my opinions**

The Interior/NORC Litigation Support projects for testing the reliability of IIM transactions, as defined in the January 6, 2003 and May 31, 2007 Plans, have included:

1. Reconciling Judgment and Per Capita accounts[1],

2. Reconciling all land-based account transactions of amounts $100,000 or greater, and

---

[1] As of the date of the 2007 Plan, 86% of the 96,823 accounts had been reconciled (2007 Plan, Part 2, p. 12).

3. Reconciling samples of land-based account transactions of amounts less than $100,000.

Sampling transactions and then testing for agreement the sampled transactions to source documentation is a generally accepted procedure for evaluating the reliability of the transaction characteristic(s) for which the sample has been drawn.  In general, the larger the random sample of the transaction population, the greater the confidence that the characteristics identified from the sample are descriptive of the whole population. However, the economics of sampling and testing the sampled units often create a rational basis for concluding that no more work is justified in many statistical sampling settings.

The Interior/NORC sampling in the Litigation Support project and the May 31, 2007 Plan are designed to test the correctness of the IIM transaction recording by dividing the historical population into bookkeeping eras (i.e., electronic era and paper ledger era), dollar strata, and geographic region, and then sampling from the strata. Stratification is a generally accepted method of reducing the size of a sampling effort while holding constant the desired levels of confidence about the sample results.

Interior's conclusions about IIM transaction bookkeeping during 1985-2000

The January 6, 2003 Plan was not able to be implemented due to Congressional and Judicial limitations.  Interior then continued its Litigation Support work on IIM transaction data.  The Litigation Support work was not designed to supplant or replace the January 6, 2003 Plan.  Rather, it was designed to systematically gather information about the quality of the IIM transaction bookkeeping in the electronic era.

From the Litigation Support work, substantial, systematic knowledge has been obtained about the quality of IIM land-based transaction bookkeeping during 1985-2000. Summarily, transaction testing followed the same overall approach as the January 6, 2003 Plan of stratifying the transaction population between a certainty stratum and sampled strata.  The Litigation Support work was performed within a certainty stratum of transactions $100,000 or greater and sampled transactions less than $100,000.[2]

The transaction testing of the certainty stratum--all 2,099 large-dollar (i.e., $100,000 or greater) electronic era transactions--amounted to tests of approximately $483 million throughput in IIM accounts.

The sample-based transaction testing of approximately 4,500 transactions of less than $100,000 each amounted to sample-based tests of approximately $5.1 million of the total $1,713 million of IIM throughput from this dollar-category of transactions.

---

[2] The January 5, 2003 Plan used $5,000 as the dollar-size partition for the certainty stratum.

Based on the reconciliation results of the stratified sample, NORC estimates, with 99% confidence, that credits to the IIM trust accounts are understated by no more than $86 million.[3]

In each testing stratum described above, differences were discovered. However, systematic bias favoring or disfavoring the account holders was not discovered.

Moreover, as a result of three elements--

    (a) the low error incidence rates,
    (b) the relative small dollar differences of the discovered errors, and
    (c) the testing cost per transaction,

--Interior has concluded that no further testing is justified. I concur.

I note that the population tested includes accounts and transactions identified to date through OHTA's Data Completeness Validation ("DCV") project. That project includes the discovery and restoration of transactions not previously identified in the NORC-sampled electronic era transaction population. I understand that the population of restored transactions will be tested for its statistical similarity to the already-sampled account and transaction population. This approach will reasonably allow adjustments, if necessary, to any prior assurance reporting to the trust beneficiaries.


Interior's approach to the reliability of IIM transaction bookkeeping in the paper ledger era

Interior plans to sample accounts and transactions from the approximately 65,000 accounts identified (to date) in the electronic era that were open at October 25, 1994, and were opened prior to the start of the electronic era in or about 1985.[4]   The plan to digitize account-specific paper ledgers related to those sampled accounts and then to reconcile a sample of the transactions from those ledgers is a statistically valid and cost-conscious first step to developing a sample population for reliability transaction testing.

The proposed second step of testing for differences (at the 95% level of confidence) between the electronic era and the paper ledger era is a statistically valid and cost-conscious[5] step for extending the assurance statements about the IIM bookkeeping system's reliability in the electronic era to the paper era for the 65,000 accounts. The

---

[3]   NORC memorandum to Bert T. Edwards, January 26, 2007, p. 2, fn. 2.
[4]   2007 Plan, Part 2, p. 22.
[5]   In the current setting, the cost of sampling additional units in the paper ledger era has been compared by Interior to the cost of improved information at, e.g., 99% confidence, about the paper ledger-era transactions.

proposed 95% threshold for the differences test is a generally accepted threshold for such tests.

Further, I understand that if the differences between the electronic era and paper ledger era results are statistically significant (at the 95% confidence level), the assurance statements delivered to the recipients of the historical account statements may need to be bifurcated between electronic ledger era reliability assurances and paper ledger era reliability assurances.

* * *

The opinions I have expressed in this report are based on the information received by me to date.  I may receive additional information that may be relevant to the Interior/NORC plan.  In the event that new information becomes available, I will evaluate it to determine whether to amend or supplement my opinions and this report.


Respectfully submitted,

David B. Lasater

August 16, 2007



# David Lasater, Ph.D., CPA
Exhibit 1

Senior Managing Director - Forensic and Litigation Consulting

david.lasater@fticonsulting.com

**Houston**
1001 Fannin
Suite 525, First City Tower
Houston, TX 77002
Tel: (713) 353-5434
Cell: (713) 306-9429
Fax: (832) 667-5059

**New York**
3 Times Square
11th Floor
New York NY 10036
Tel: (212) 499-3639
Fax: (212) 499-3610

**Certifications**
Certified Public Accountant

**Professional Affiliations**
American Economic Association

The American Statistical Association

The American Accounting Association

The American Institute of Certified Public Accountants

**Education**
Ph.D. in Accounting Research, Capital Markets, and Quantitative Methods, Masters in Professional Accounting, The University of Texas at Austin

B.B.A. in Accounting, University of Houston

David Lasater is a senior managing director in the FTI Forensic and Litigation Consulting practice and is based in Houston and New York. Mr. Lasater has 26 years of experience providing financial, statistical and economic advisory services. He has provided expert testimony in federal, state and administrative matters.

His case experience includes securities class action, employment class action, accountants' malpractice, intellectual property, breach of contract, breach of trust, lender liability, product liability, predatory pricing, fraudulent conveyance, franchise termination and U.S. Tax Court cases.

Mr. Lasater's expertise includes the application of statistical, econometric, financial economic and accounting analyses in litigation and nonlitigation assignments. He has advised, reported and testified in litigation assignments ranging from class certification to sampling designs to economic liability and damages determinations. He has advised and reported extensively in merger and acquisition business and business segment valuations.

In the tax disputes area, he has provided assistance to counsel in the IRC Section 482 matters, Revenue Procedure 81-70, and options-based transactions. He has also advised counsel and industry in sampling procedures for evaluating sales tax and other event-based tax questions.

Mr. Lasater's industry experience includes financial services, manufacturing, assembly, distribution, telecommunications, energy, engineering R&D, entertainment, pharmaceutical and chemical, environmental, software development, federal and state government agency operations and healthcare.

Prior to joining FTI, Mr. Lasater was a partner in KPMG's Forensic Dispute Advisory Services practice and national coordinator for the practice's securities litigation and employment class action services.

Mr. Lasater holds a B.B.A. from the University of Houston (1973), a masters in professional accounting (1979) and a Ph.D. in accounting research, capital markets, and quantitative methods (1982) from the University of Texas in Austin.

**F T I**

**David B. Lasater**
**Fed. R. Civ. P. 26(a) Disclosures**

**Trial testimony:**

*Honeywell, Inc. v. American Flywheel Systems, Inc.* (1996) (Arizona State Court)
*Johnny Reynolds v. Alabama Department of Transportation* (1996, 1997) (Federal District Court – Middle District Alabama)
*Cynthia Stix-Bennett v. James D. Bennett.* (1998) (Connecticut State Court)
*FDIC v. Arthur Andersen* (1998) (AAA - Arbitration)
*Taylor Publishing Co., Inc. v. Jostens* (1998) (Federal District Court - Eastern District of Texas)
*Eloise Pepion Cobell, et al., v. Bruce Babbitt* (1998) (Federal District Court – District of Columbia)
*Eloise Pepion Cobell, et al., v. Gale Norton* (2003) (Federal District Court – District of Columbia)
*Martin v. City of Birmingham* (2001) (Federal District Court – Northern District of Alabama)
*Syndicated Communication Venture Partners IV, LP v. Baystar Capital, LP, et al.,* (2006) (Supreme Court, New York, New York County)

**Deposition testimony:**

*Johnny Reynolds v. Alabama Department of Transportation*  (1996, 2002)  (Federal District Court – Middle District Alabama)
*Honeywell, Inc. v. American Flywheel Systems, Inc.* (1996) (Arizona State Court)
*In re: JWP, Inc.* (1996) (Federal District Court – Southern District of New York)
*Frontline Systems, Inc. v. Fasfax, Inc.* (1996) (Federal District Court – Arizona)
*Eloise Pepion Cobell, et al., v. Bruce Babbitt* (1998) (Federal District Court – District of Columbia)
*Eloise Pepion Cobell, et al., v. Gale A. Norton* (2003) (Federal District Court – District of Columbia)
*Shaun Neal, et al., v. City of Detroit Law Department* (1999) (Michigan State Court)
*Couldock & Bohan, Inc. v. Societe Generale Corp.* (1999) (Federal District Court – Connecticut)
*Senior Industries, Inc. v. Thomas & Betts, Inc.* (2000) (Federal District Court – Northern Illinois)
*Bridenstine, et al. v. Kaiser-Francis Oil Co.* (2000) (Oklahoma State Court – Beaver County)

*Johnston Industries, Inc., et al. v. Milliken & Co., Inc., et al.* (2000) (Alabama State Circuit Court)

*Rowland W. Day, II v. Meyer, Duffy & Assoc., Inc.* (2001) (Federal District Court – Southern District of New York)

*Air & Gas Technologies, Inc. v. Atlas Copco Compressors, Inc.* (2001) (Federal District Court – New Jersey)

*Ohaus Management Group, Inc. d/b/a Chester Precision v. Worthington Precision Metals, Inc.* (2002) (Federal District Court – Connecticut)

*Paradigm Packaging, Inc. v. Communisis, PLC, et. al.* (2003) (Federal District Court – Southern District of New York)

*Syndicated Communication Venture Partners IV, LP v. Baystar Capital, LP, et al.,* (2006) (Supreme Court, New York, New York County)

*Celebrity Cruises, Inc., et al. v. Essef Corporation, et al.* (2006) (Federal District Court – Southern District of New York)

*Avondale Mills, Inc. v. Norfolk Southern Corp., et al.* (2007) (Federal District Court – South Carolina, Aiken Division)

**David B. Lasater**
**Fed. R. Civ. P. 26(a) Disclosures**

**Publications:**

"Causation and  Damages in Federal Securities Cases," published in the proceedings of *Shareholder Litigation Against Directors & Officers*, ALI-ABA (Washington, D.C., May 1992).

"Option Pricing and Business Valuation," published in the proceedings of *Business Litigation*, Defense Research Institute, (New York, May 1999).

Exhibit 3

**Materials considered**

Audit Sampling, 2001, New York: AICPA

Cochran, W.G., Sampling Techniques, 3rd., 1977, New York: John Wiley.

Guy, D.M., Carmichael, D.R., and Whittington, O.R., Audit Sampling, 1994, New York: John Wiley.

Hansen, M.H., Hurwitz, W.N., and Madow, W.G., Sample Survey Methods and Theory, 1953: John Wiley.

Kish, Leslie, Survey Sampling, 1965, New York: John Wiley.

Liu, Y. and Scheuren, F., "Median Balanced Designs: Part I – Theory" (undated manuscript)

Thompson, S.K. and Seber, G. A., Adaptive Sampling, 1996: John Wiley.

Historical Accounting Project, Department of Interior (May 31, 2007)

The Historical Accounting Plan For Individual Indian Money Accounts, Department of Interior (January 6, 2003)

Administrative Record Documents (document number, author, title)

| | | |
|---|---|---|
| 38 | | Office of Historical Trust Account Coding and Imaging Manual, Rev. 3 (3/30/2007) |
| 39 | | Electronic Coding and Imaging Examples  (3/30/2007 |
| 382 | FTI | Data Completeness Validation Interim Status Report (6/12/2007) |
| 386 | Reznick | Review by Reznick Group of Settlement Packages (6/08/2006) |
| 427 | Thompson | Report on the Use of Adaptive Sampling in the Historical Trust Accounting of Individual Indian Money Transactions (8/14/2003) |
| 457 | NORC | Drawing the Account Sample for the Litigation Support (2/23/2004) |
| 458 | NORC | Analysis of the Alaska Sample (6/2004) |
| 459 | NORC | Alaska Region Sample Design Report (2/2004) |
| 460 | NORC | A Statistical Evaluation of Preliminary Eastern Region Sample Results (3/2004) |

| | | |
|---|---|---|
| 461 | NORC | Eastern Region Sample Design and Selection (9/29/2003) |
| 462 | NORC | Eastern Oklahoma Region Sample Design Report (2/2004) |
| 463 | NORC | The Great Plains Region Sample Design Report (2/2004) |
| 464 | NORC | Litigation support Accounting Project Interim Report on Debit Transactions (5/2004) |
| 465 | NORC | Reconciliation of the High Dollar and National Sample Transactions From Land-Based Accounts (12/28/2004) |
| 466 | NORC | Midwest Region Sample Design Report (2/2004) |
| 467 | NORC | Navajo Region Sample Design Report (3/2004) |
| 468 | NORC | Northwest Region Sample Design Report (3/2004) |
| 469 | NORC | Pacific Region Sample Design Report (2/2004) |
| 470 | NORC | The Rocky Mountain Region Sample Design Report (2/2004) |
| 471 | NORC | Southern Plains Region Sample Design Report (2/2004) |
| 472 | NORC | Southwest Region Sample Design Report (2/2004) |
| 473 | NORC | Western Region Sample Design Report (2/2004) |
| 475 | NORC | The Role Statistics and Statistical Sampling in the Individual Indian Monies (IIM) Historical Accounting (5/29/2007); memo to Bert T. Edwards [OHTA] from Fritz Scheuren [NORC] |
| 476 | NORC | Initial Hypothesis Testing approach for the Paper Ledger Era (5/25/2007); memo to Bert T. Edwards [OHTA] from Fritz Scheuren [NORC] |
| 477 | NORC | Sample Design Planning Report 2007 (3/15/2007), memo to Bert T. Edwards [OHTA] from Fritz Scheuren [NORC] |
| 478 | NORC | Procedures for Imaging and Coding Documents (1/1/2003) |
| 479 | NORC | Median Balancing (10/1/2003) |
| 480 | NORC | A Statistical Estimate of Receipts Credited to IIM Trust Funds (7/30/2002) |

482  NORC   Calculating Confidence Intervals When the Non-Sampling Error is
             Measured by Statistical Quality Assurance (9/1/2004)

483  NORC   Mersenne Twister Technical Documentation (7/1/2004)

484  NORC   Quality Control Support for Grant Thornton (7/1/2004)

487  NORC   "Land to Dollar" completeness test at Horton Agency (Potatatomi
             Tribe), memo to Jeffrey P. Zippin [OHTA] from Susan Hinkins
             [NORC] (3/31/2007)

489  NORC   Government Monitoring of the Indian Service  Special Disbursing
             Agents' Accounts:  A Quality Assessment Based on the Settlement
             Packages, 1890-1950  (3/31/2007)

491  NORC   Reconciliation Results of  the Remaining High Dollar Transactions
             for the Litigation Support Accounting Project (1/31/2006)

492  NORC   Reconciliation of the High Dollar and National Sample Transactions
             from Land-Based IIM Accounts (All Regions): Litigation Support
             Accounting Project for the Electronic Records Era (1985-2000)
             (9/30/2005)

494  NORC   Qualitative Meta-Analysis of Audit Reconciliation Studies on Indian
             Trust Accounts: Volume II  Bibliography and Index  (6/23/2006)

495  NORC   Qualitative Meta-Analysis of Audit Reconciliation Studies on Indian
             Trust Accounts: Volume I  Summary  (6/23/2006)

497  NORC   Assurance Level Options (99%, 95%, 90%)  (1/29/2007) Memo to
             Jeffrey P. Zippin [OHTA] from Fritz Scheuren  [NORC]

499  NORC   The Litigation Support Accounting (LSA) Project Results and the
             Sampling Plan Submitted to the U.S. District Court (1/26/2007)
             Memo to Jeffrey P. Zippin [OHTA] from Fritz Scheuren [NORC]

501  NORC   Sampling IIM Transactions in the Paper Records Era (11/6/2006)
             Memo to Jeffrey P. Zippin [OHTA] from Fritz Scheuren [NORC]

507  Angel   Missing Treasury Certificates of Settlement (9/1/2006), memo to Bert
             T. Edwards [OHTA] from Frank Sapienza [Reznick] and Edward
             Angel [Morgan Angel]

543  Edwards   OHTA Summary of Review of GAO and Treasury "Settlement
                Packages" (11/8/2006)