IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELOUISE PEPION COBELL; PENNY CLEGHORN;  THOMAS MAULSON; and JAMES LOUIS LAROSE, all on their own behalf and on behalf of all persons similarly situated,<br><br>                         Plaintiffs,<br><br>        v.<br><br>KEN SALAZAR, Secretary of the Interior; LARRY ECHOHAWK, Assistant Secretary of the Interior – Indian Affairs; and H. TIMOTHY GEITHNER, Secretary of the Treasury,<br><br>                         Defendants. | Case No. 1:96 CV 01285 - JR |

AMENDED COMPLAINT TO COMPEL THE UNITED STATES TO DISCHARGE TRUST DUTIES AND TO RECOVER RESTITUTION, DAMAGES, AND OTHER MONETARY RELIEF FOR DEFENDANTS' BREACHES OF TRUST

Pursuant to Rule 15 of the Federal Rules of Civil Procedure and with the consent of Defendants, the Plaintiffs amend their Complaint against the Defendants as follows:

GENERAL NATURE OF THE ACTION

1.      This action is brought to redress gross breaches of trust by the United States, acting by and through the Defendants, with respect to the money, land and other natural resource assets of more than 450,000 individual Indians.

2.      Involved in this action are accounts commonly referred to as Individual Indian Money ("IIM") accounts. As is more fully set forth herein below, IIM accounts include money, which is the property of individual Indians, held by the United States as trustee on their behalf. Such accounts at the time of filing this action  reflected a balance of more than Four Hundred and Fifty Million Dollars ($450,000,000.00), and more than Two Hundred and Fifty Million Dollars ($250,000,000.00) passes through them each

year; the true totals would be far greater than those amounts, but for the breaches of trust herein complained of.

3.      Involved as well are funds that were collected or should have been collected by the federal government as trustee for individual Indians (commonly referred to as individual Indian moneys ("IIM")), and the resources, including land, held in trust for individual Indian trust beneficiaries.  Defendants have mismanaged those funds, land, and resources in breach of their trust duties and, thereby, have prevented Plaintiffs from receiving income to which they are entitled.

4.      Defendants, the officers charged with carrying out the trust obligations of the United States, and their predecessors, have grossly mismanaged, and continue grossly to mismanage, such trusts and trust assets in at least the following respects, among others:

(a)      They have failed to keep adequate records and to install an adequate accounting system, including but not limited to their failure to install an adequate accounts receivable system;

(b)      They have destroyed records bearing upon their breaches of trust;

(c)      They have failed to account to the trust beneficiaries with respect to their money;

(d)      They have lost, dissipated, or converted to the United States' own use the money of the trust beneficiaries; and

(e)      They  either have unlawfully obstructed the appointment of a qualified and competent  Special Trustee or  unlawfully have prevented the Special Trustee for American Indians, appointed pursuant to the American Indian Trust Fund Management Reform Act of 1994 ("the 1994 Act"), P.L. 103-412, 108 Stat. 4239, codified to 25 U.S.C. §§ 162a(d) and 4001-4061, from carrying out duties and responsibilities conferred upon him by law to correct their unlawful practices and procedures with respect to IIM accounts.

(f)      They have mismanaged trust funds held or to be held for individual Indians in the following respects:

(1)      They have failed to collect or credit funds owed under leases, sales, easements or other transactions, including without limitation, having failed to collect or credit all money due, to audit royalties and  to collect interest on late payments;

(2)      They have failed to invest trust funds;

(3)      They have underinvested trust funds;

(4)      They imprudently have mismanaged and invested trust funds;

(5)      They have made erroneous or improper distributions or disbursements of trust funds, including to the wrong person or account;

(6)      They have charged excessive or improper administrative fees;

(7)      They have misappropriated, or failed to take steps to prevent the misappropriation of, trust funds;

(8)       They have withheld unlawfully the distribution and disbursement of trust funds;

(9)      They have deposited trust funds above FDIC insurance coverage in accounts in failed depository institutions, resulting in lost principal and interest;

(10)     They have failed to control, or investigate allegations of theft, embezzlement, misappropriation, fraud, trespass, and other misconduct regarding trust assets and have failed to make restitution or seek compensation for same;

(11)     They have failed to pay or credit to IIM Accounts accrued interest, including interest on special deposit accounts;

(12)     They have lost funds and investment securities as well as income or proceeds earned from such funds or securities;

(13)     They have lost funds through accounting errors;

(14)     They have failed to deposit or disburse funds in a timely fashion; and

(15)     They have engaged in conduct of like nature and kind arising out of Defendants' breaches of trust in connection with mismanagement of IIM Trust funds.

(g)      They have mismanaged land and resources, including oil, natural gas, mineral, timber, grazing, and other resources and rights (the "resources"), on, and corresponding subsurface rights, in land held in trust for the benefit of Plaintiffs in the following respects:

(1)      They have failed to lease land, approve leases, or otherwise make trust lands or assets productive;

(2)     They have failed to obtain fair market value for leases, easements, rights-or-way or sales;

(3)     They have failed to prudently negotiate leases, easements, sales or other transactions;

(4)     They have failed to impose and collect penalties for late payments;

(5)     They have failed to include or enforce terms which require that land and other natural resources be conserved, maintained, or restored;

(6)     They have permitted loss, dissipation, waste, or ruin, including failing to preserve trust land whether involving agriculture (including but not limited to failing to control agricultural pests), grazing, harvesting (including but not limited to permitting overly aggressive harvesting); timber lands (including  but not limited to failing to plant and cull timber land for maximum yield), and oil, natural gas, mineral resources or other resources (including but not limited to failing to manage oil, natural gas, or mineral resources for maximum production);

(7)     They have allowed the misappropriation of trust assets;

(8)     They have failed to control, investigate allegations of, or obtain relief in equity and at law for, trespass, theft, misappropriation, fraud or misconduct regarding trust land;

(9)     They have failed to correct boundary errors, survey or title record errors, and have failed to properly apportion and track allotments; and

(10)    They have engaged in conduct of like nature and kind arising out of their breaches of trust in connection with mismanagement of trust lands.

5.     By this action the more than 450,000 individual Indian trust beneficiaries seek, *inter alia*, the aid of this Court to compel Defendants to take action wrongfully withheld and otherwise comply with governing law, to review their acts with respect to the IIM accounts, to direct them to institute prudent trust practices, to direct them to restore trust funds, lands, and other resources wrongfully lost, dissipated, or converted, and to recover in restitution and through damages monies arising out of Defendants' breaches of trust, including their continuing mismanagement of trust assets.

6.     This action is limited to IIM Trust funds and other assets held in trust by the Federal Government and its agents for the benefit of individual Indians.

4

7.     Plaintiffs have no adequate administrative remedies. Plaintiffs repeatedly have requested Defendants to comply with their fiduciary obligations and redress the breaches of trust herein complained of, without success. Moreover, as is more fully set forth herein below, Plaintiffs supported the passage of legislation directed at redressing some of the wrongs herein complained of, and such legislation has been enacted by Congress; yet Defendants have refused to obey the mandate of Congress through their obstruction of the appointment of a qualified and competent Special Trustee, or by undermining efforts of two qualified and competent Special Trustees hereinafter described to bring Defendants activities into compliance with law. Plaintiffs have exhausted all avenues of redress other than this action. Only this Court may provide to Plaintiffs the relief to which they are entitled.

II.     <u>THE PARTIES</u>

A.     <u>The Plaintiffs</u>

8.     Plaintiff Cobell is an enrolled member of the Blackfeet Indian Tribe and is the beneficiary of funds held in an IIM account or otherwise.  She has experienced losses from the mismanagement of her trust funds and assets.

9.     Plaintiff Cleghorn is an enrolled member of the Mescalaro Apache Tribe and is a beneficiary of funds held in an IIM account or otherwise.  She has experienced losses from the mismanagement of her trust funds and assets.

10.     Plaintiff Maulson is an enrolled member of the Lac du Flambeau Chippewa Tribe (Wisconsin) and was in the past a beneficiary of funds held in an IIM account or otherwise.  Defendants have no record of his IIM account as well as the funds held therein.  He has experienced losses from the mismanagement of his trust funds and assets.

11.     Plaintiff LaRose is an enrolled member of the Winnebago Tribe of Nebraska and is the beneficiary of funds held in an IIM account or otherwise.  He has experienced losses from the mismanagement of his trust funds and assets.

12.     All Plaintiffs bring this action on their own behalf and on behalf of all persons similarly situated, as is more fully set forth under "Class Action Allegations" herein below.

B.     <u>The Defendants</u>

13.     Defendant Salazar is Secretary of the Interior and chief executive officer of the Department of the Interior ("Interior"), and as such is charged by law with carrying out the fiduciary duties and responsibilities of the United States as trustee-delegate for the named Plaintiffs and all other beneficiaries whose assets are held in IIM accounts or otherwise.

14.     Defendant EchoHawk is Assistant Secretary of Interior -- Indian Affairs and head of the Bureau of Indian Affairs within Interior (hereinafter sometimes called "BIA" or "the Bureau"), and as such is the delegate of Defendant Salazar for carrying out certain of his responsibilities with respect to IIM accounts.

15.     Defendant Geithner is Secretary of the Treasury, and as such is a trustee-delegate of the United States and custodian of the moneys held in IIM accounts and elsewhere at Treasury and by its agents, is responsible for maintaining certain records in connection therewith, and has certain investment responsibilities with respect thereto.

III.    JURISDICTION

16.     This Court has jurisdiction over this action under 28 U.S.C. § 1331, in that it is an action arising under the Constitution and laws of the United States, and under 28 U.S.C. § 1361, in that it is an action in the nature of an action of mandamus to compel an officer or employee of the United States to perform fiduciary duties owed to Plaintiffs.

IV.    TRUST OBLIGATIONS OF THE UNITED STATES AND OF DEFENDANTS WITH RESPECT TO INDIVIDUAL INDIAN TRUST ACCOUNTS

17.     The bulk of the funds held by the United States in trust for IIM trust beneficiaries is derived ultimately from income from individual land allotments that are controlled and held in trust by the government.  Such allotments date from the era, lasting until 1934, when it was the policy of the United States to break up Indian tribes and tribal lands.  In implementation of such policy, on many reservations the bulk of tribal land was divided into tracts normally of 80 or 160 acres (called "allotments") and the tracts were patented to individual Indians, with legal title thereto held by the United States as trustee

for the allottee.  In many instances, such tracts produce income from, e.g., the lease of tracts for grazing or farming purposes, the sale of timber from tracts, and the grant of oil, gas, or mineral mining rights.  The income so derived forms the core of the IIM accounts here involved.

18.    Further, moneys from one or more of the following additional sources may be contained in, or have passed through, IIM accounts:

(a)    Funds originally held in trust for a tribe which were distributed per capita to tribe members;

(b)    Per capita distributions of funds appropriated to meet judgments of the Indian Claims Commission and courts and in settlement of claims;

(c)    Income from investment of funds;

(d)    Money paid from tribal funds to equalize allotments;

(e)    Proceeds of sales of allotments;

(f)    Compensation for rights-of-way and easements;

(g)    Rent for allotments of aged, infirm, or incompetent allottees;

(h)    Proceeds of sales of allotments of incompetent Indians;

(i)    Money due to incompetent or orphan Indians;

(j)    Money accruing from the Department of Veterans Affairs government agencies to minors or incompetent adults;

(k)    Apportionment or allotment of pro rata shares of tribal or trust funds; and

(l)    Per capita annual payments to members of certain specified tribes.

19.    As trustee of the funds held in such accounts, the United States owes, continuously since it first exercised pervasive control over individual Indian Trust lands at the inception of the IIM Trust, and has owed, certain fundamental fiduciary duties and responsibilities to the account holders as trust beneficiaries, including but not limited to the duty:

(a)    To maintain adequate books and records with respect to such accounts; including, without limitation, records as to leases and other contractual arrangements giving rise to income from allotments, and as to investments of moneys, held in trust;

(b)     To maintain adequate records as to the ownership of such accounts; including, without limitation, records as to the devolution of rights in and to such accounts, by assignment, bequest, devise, intestate succession, or otherwise;

(c)     To maintain adequate systems and controls to guard against error and dishonesty, by, without limitation, maintaining an accurate accounts receivable system and separating the billing and collection functions;

(d)     To invest such funds as permitted by law, and to deposit them in such federally insured depositary institutions as are permitted by law; to exercise prudence in the selection of such investments and depositary institutions as are authorized by law; and, within the constraints of law and prudence, to maximize the return on such investments and deposits;

(e)     To account regularly and accurately to the beneficiaries, to give them upon request accurate information as to the state of their accounts, and to pay to them on demand such amounts as they may be entitled to; and

(f)     To refrain from self-dealing and benefiting from the management of the trust funds.

20.     The proper discharge by Defendants of the trust responsibilities of the United States with respect to IIM accounts was reconfirmed and restated, in part, by § 101 of the 1994 Act, 25 U.S.C. § 162a(d), as including, without limitation:

(a)     Providing adequate systems for accounting for and reporting trust fund balances;

(b)     Providing adequate controls over receipts and disbursements;

(c)     Providing periodic, timely reconciliations to assure the accuracy of accounts;

(d)     Determining adequate cash balances;

(e)     Preparing and supplying account holders with periodic statements of their account performance and with balances of their account which shall be available on a daily basis;

(f)     Establishing consistent, written policies and procedures for trust fund management and accounting; and

(g)   Providing adequate staffing, supervision, and training for trust fund management and accounting.

## V.   TRUST OBLIGATIONS OF THE UNITED STATES AND OF DEFENDANTS WITH RESPECT TO INDIVIDUAL INDIAN TRUST FUNDS

21.   With respect to IIM Trust lands controlled by the government or its agents, the United States, as trustee, and Defendants, as Trustee-Delegates, unconditionally are obligated to collect IIM Trust funds and manage such funds solely for the benefit of the individual Indian beneficiaries.  Such trust obligations include:

(a)   Collecting IIM Trust funds pursuant to a lease, easement, right-of-way,  royalty contract, bonus agreement, and similar contracts and encumbrances relating to the use or sale of individual Indian trust lands and subsurface rights;

(b)   Prudently managing and investing IIM Trust funds;

(c)   Distributing and disbursing IIM Trust funds in a timely manner to each    beneficiary and crediting such funds to the correct IIM account in the correct amount;

(d)   Charging  reasonable and only statutorily authorized administrative fees;

(f)   Preventing and mitigating  misappropriation, unlawful conversion, loss, fraud, waste, abuse, and theft and taking action to remedy such theft, embezzlement, misappropriation, fraud, trespass, and other misconduct;

(g)    Enforcing leases, royalty contracts, bonus agreements, rights-of-way, easements and similar contracts and encumbrances; and seeking recoveries for theft, embezzlement, misappropriation, fraud, trespass, and other misconduct;

(h)   Timely crediting and paying over to beneficiaries all interest accruing on IIM Trust funds held by the government and its agents;

(i)   Safeguarding investment securities and the income earned therefrom; and

(j)   Establishing and implementing prudent accounting procedures to prevent loss and theft.

## VI.   TRUST OBLIGATIONS OF THE UNITED STATES AND OF DEFENDANTS WITH RESPECT TO  TRUST LAND AND NATURAL RESOURCES

22.     With respect to Trust lands controlled by the government and its agents, the United States, as trustee, and Defendants, as Trustee-Delegates, are obligated as fiduciaries to manage land and resources, including oil, natural gas, mineral, timber, grazing and other resources and subsurface rights solely for the benefit of individual Indians.  Such trust obligations include:

(a)     Leasing trust land and otherwise prudently contracting for the use of trust lands and the sale of subsurface rights and natural resources;

(b)     Ensuring fair market value for leases, royalty agreements, easements, rights-of-way, other encumbrances, and sales;

(c)     Imposing and collecting penalties for late payments pursuant to lease, royalty agreement, or encumbrance;.

(d)     Preventing loss, dissipation, waste, or ruin of trust land, subsurface rights, and other natural resources;

(e)     Preventing misappropriation;

(f)     Ejecting trespassers and preventing and mitigating losses from trespass, theft, misappropriation, fraud or other misconduct;

(g)     Correcting boundary, survey, and title record errors; and

(h)     Properly apportioning and prudently tracking allotments.

VII.    BREACHES OF TRUST BY THE UNITED STATES AND OF DEFENDANTS WITH RESPECT TO IIM TRUST ACCOUNTS.

23.     Through September 30, 2009, the United States, acting through the Defendants, consistently and egregiously has failed to comply with these and other responsibilities of a trustee and continues to do so.  Such breaches of trust include, without limitation:

(a)     Failure ever to reconcile IIM Accounts and audit the IIM Trust, so that Defendants are unable to provide accurate account balances or to determine how much money that should have been collected and credited to IIM Accounts was not collected or was diverted to improper ends;

(b)     The loss, destruction, and corruption of records from which amounts that should have been credited to IIM accounts could be determined;

(c)    Failure to establish an accounts receivable system, so that Defendants have no way of confirming that the income due from the trust assets, and other funds that should have been credited to IIM accounts, has in fact been collected;

(d)    Failure to separate billing and collection functions or to install other systems necessary to guard against diversion of beneficiaries' funds;

(e)    Failure to maintain accurate ownership records, so that Defendants have no way of determining to whom the income that has been collected belongs;

(f)    Failure to provide regular accurate reports to beneficiaries to tell them the correct amounts and sources of their income;

(g)    Failure to exercise prudence and observe the requirements of law with respect to investment and deposit of IIM Trust funds, and to maximize the return on investments within the constraints of law and prudence; and

(h)    Engaging in self-dealing and benefiting to the detriment of beneficiaries from the mismanagement of the trust funds.

24.    The consequences of these and other acts of mismanagement in breach of trust include, but are not limited to, the following:

(a)    As of the close of fiscal 1995, there were more than 387,000 IIM accounts, among which there were at least 15,599 duplicate accounts with the same number;

(b)    There were many duplicate accounts with the same name;

(c)    Twelve separate databases of accounts were maintained and there was no common database;

(d)    In 1996, at the time of the Complaint's filing, there were more than 54,000 accounts containing over $46,000,000, for individuals with no address or no correct address;

(e)    In 1996, out of more than 48,000 accounts containing more than $159,000,000 supposedly held in trust for minors until they reach the age of 18, over 15,000 accounts, containing more than $24,000,000, were held for persons who in fact were over 18;

(f)    In 1996, more than $122,000,000 was held in nearly 22,000 accounts which were supposedly temporary repositories pending determination of ownership of the

funds; more than 4000 of these accounts, containing over $3,000,000, had no activity for l8 months;

(g)    In 1996, there were more than 21,000 accounts with more than $36,000,000 for persons who had died; at least 2,400 of these were for closed estates, yet more than $600,000 due to heirs under such estates had still not been distributed; and

(h)    In 1996, there were more than 280 overdraft accounts totaling over $325,000.

25.    Plaintiffs have reason to believe that the present situation is significantly worse. Moreover, the foregoing list includes only some examples already admitted by Defendants. On information and belief, there are many other consequences of Defendants' mismanagement in breach of trust which are presently unknown to Plaintiffs and which can only be brought to light and corrected with the aid of this Court.

26.    The representative Plaintiffs, and all other members of the class, thus do not know, and have no way of ascertaining, and unless this Court grants the relief here sought will in the future have no way of knowing or ascertaining, the true state of their accounts; what amounts should have been credited to their accounts and should be so credited in the future; what amounts should have been paid to them and should be paid in the future; or how much of their money has been or will be diverted or converted to other uses.

VIII.   BREACHES OF TRUST BY THE UNITED STATES AND DEFENDANTS
        WITH RESPECT TO MISMANAGEMENT OF IIM TRUST FUNDS

27.    Through September 30, 2009, the United States, through Defendants, consistently and egregiously has failed to discharge prudently its fiduciary duties as trustee in its management of IIM Trust funds ("Funds Administration Claims").  Such breaches of trust consist of:

(a)    The failure to collect or credit funds owed under leases, sales, easements or other transactions, including without limitation, the failure  to collect or credit all money due, the failure to audit royalty payments,  and failure to collect interest on late payments;

(b)     The failure to invest IIM Trust funds, timely and otherwise; ;

(c)     Under investment;

(d)     Imprudent management and investment;

(e)     Erroneous and otherwise improper distributions or disbursements and deposits; including to the wrong beneficiary and into the wrong account;

(f)     Excessive or improper administrative fees;

(g)     Misappropriation;

(h)     The loss of principal deposited and interest accrued on funds held in failed depository institutions;

(i)     The failure to investigate and prosecute allegations of theft, embezzlement, misappropriation, fraud, trespass or other misconduct as well as the failure to mitigate and obtain compensation or other relief therefore;

(j)     The failure to pay or credit accrued interest, including interest accruing on funds held  in special deposit accounts and IIM accounts;

(k)     The loss of funds and securities purchased with such funds, by accounting error or otherwise as well as income related thereto;

(o)     The failure to deposit and disburse funds in a timely manner; and

(m)     Conduct of like nature and kind arising out of Defendants' breach of trust and mismanagement of IIM trust funds.

## IX.     BREACHES OF TRUST BY DEFENDANTS WITH RESPECT TO MANAGEMENT OF TRUST LAND AND OTHER NATURAL RESOURCES

28.     Through September 30, 2009, the United States, through Defendants, consistently and egregiously has failed to discharge prudently its fiduciary duties as trustee in its management and administration of Individual Indian Trust land and other

natural resources ("Land Administration Claims").  Such breaches of trust by Defendants consist of:

(a)     The failure to lease trust land  and otherwise prudently contract for the use of trust lands and sale of subsurface rights and other natural resources;

(b)     The failure to obtain fair market value in its lease or sale of IIM Trust lands, subsurface rights, and other natural resources;

(c)     The failure to negotiate prudently leases, royalty and bonus agreements, easements, rights-of-way, similar encumbrances and sales contracts;

(d)     The failure to impose, enforce, and collect penalties for late payments pursuant to the terms of leases, royalty agreements, other contracts, and encumbrances;

(e)     The failure to include in, or enforce the terms of, leases and other contracts that require conservation, maintenance, and restoration;

(f)     The failure to prevent loss, dissipation, waste, or ruin of trust land, subsurface rights, and other natural resources, specifically including the failure  to preserve trust land, whether involving agriculture (including but not limited to failing to control agricultural pests), grazing, harvesting (including but not limited to permitting overly aggressive harvesting); timber lands (including  but not limited to failing to plant and cull timber land for maximum yield), and oil, natural gas, mineral resources or other resources (including but not limited to failing to manage oil, natural gas , or mineral resources for maximum production);

(g)     The failure to prevent and mitigate loss, waste, ruin, and misappropriation, whether through ejectment of trespassers or otherwise to prevent and mitigate such losses from trespass, theft, misappropriation, fraud or other misconduct;

(h)     The failure to correct boundary errors, survey and title record errors, and  properly to apportion and track allotments; and

(i)     Conduct of like nature and kind arising out of Defendants' breach of trust and mismanagement of IIM trust lands, subsurface rights, and other natural resources.

X.. DEFENDANTS' UNDERMINING OF CONGRESSIONALLY MANAGED ACTION TO CORRECT CERTAIN ELEMENTS OF THEIR BREACHES OF TRUST

    A.    The American Indian Trust Fund Management Reform Act of 1994

    29.    Congress has recognized the gross breaches of trust here complained of, as have the General Accounting Office and the Office of Management and Budget ("OMB").  The OMB has consistently placed the financial management of Indian trust funds as a "high risk liability" to the United States.  In 1992 the House Committee on Government Operations, after several years of investigation and Congressional hearings, issued a report entitled "Misplaced Trust:  The Bureau of Indian Affairs' Mismanagement of the Indian Trust Fund."  Ultimately, in 1994 Congress enacted the 1994 Act for the benefit of Plaintiffs and all other beneficiaries of IIM accounts (as well as the beneficiaries of tribal trust funds).

    30.    The 1994 Act created the office of Special Trustee for American Indians as a sub-cabinet level officer (Executive Level II or higher pay scale) appointed by the President by and with the advice and consent of the Senate, reporting directly to the Secretary of the Interior.  25 U.S.C. § 4042.  Congress's stated purposes in creating that office were, *inter alia*, "to provide for more effective management of, and accountability for the proper discharge of, the Secretary's trust responsibilities to . . . individual Indians," "to ensure that reform of such practices in the [Interior] Department is carried out in a unified manner," and "to ensure the implementation of all reforms necessary for the proper discharge of the Secretary's trust responsibilities to . . . individual Indians." 25 U.S.C. § 4041.

    The statutory responsibilities of the Special Trustee include, *inter alia*:

(a)     To prepare "a comprehensive strategic plan for all phases of the trust management business cycle that will ensure proper and efficient discharge of the Secretary's trust responsibilities to. . . individual Indians," including "identification of all reforms to the policies, procedures, practices and systems . . . of the Bureau" and other relevant Interior Department elements "necessary to ensure the proper and efficient discharge of the Secretary's trust responsibilities. . ."  25 U.S.C. §§ 4043(a)(1) and (2) (A);

(b)     To "oversee all reform efforts within the Bureau" and other relevant Interior Department elements "to ensure the establishment of policies, procedures, systems and practices to allow the Secretary to discharge his trust responsibilities . . . " 25 U.S.C. § 4043(b)(1);

(c)     To "monitor the reconciliation of . . . Individual Indian Money trust accounts to ensure that the Bureau provides the account holders with a fair and accurate accounting of all trust accounts," 25 U.S.C. § 4043(b)(2)(A);

(d)     To "ensure that the Bureau establishes appropriate policies and procedures, and develops necessary systems, that will allow it . . . properly to account for and invest, as well as maximize," subject to requirements of law, "the return on the investment of all trust fund monies," and "to prepare accurate and timely reports to account holders . . . on a periodic basis regarding all collections, disbursements, investments, and return on investments related to their accounts," 25 U.S.C. § 4043(b)(2) (B); and

(e)     To ensure that "the policies, procedures, practices, and systems of the Bureau" and other relevant elements "related to the discharge of the Secretary's trust responsibilities are coordinated, consistent, and integrated, and that the [Interior] Department prepares comprehensive and coordinated written policies and procedures. ," 25 U.S.C. § 4043(c)(1); "that the Bureau imposes standardized trust fund accounting procedures throughout the Bureau . . .," 25 U.S.C. § 4043(c)(2); "that the trust fund investment, general ledger, and subsidiary accounting systems of the Bureau are integrated and that they are adequate to support the trust fund investment needs of the Bureau," 25 U.S.C. § 4043(c)(3); that records, asset management, and accounting systems of the Bureau and other relevant elements of the Interior Department interface

appropriately, and that "the Bureau of Land management and the Bureau provide Indian landholders with accurate and timely reports on a periodic basis that cover all transactions related to leases of Indian resources," 25 U.S.C. § 4043(c)(4).

31.    The powers conferred on the Special Trustee by the 1994 Act to enable him to carry out his responsibilities include development of an annual consolidated trust management program budget proposal "that would enable the Secretary to efficiently and effectively discharge his trust responsibilities and to implement the comprehensive strategic plan." 25 U.S.C. § 4043(c)(5)(A).  The Special Trustee has broad powers with respect to such budget, and funds appropriated for trust management which are included in the Trust Management Program Budget may not be reprogrammed without his consent.  25 U.S.C. § 4043(c)(5).

32.    Moreover, the 1994 Act confers on the Special Trustee "access to all records, reports, audits, reviews, documents, papers, recommendations, files and other material, as well as to any officer and employee, of the [Interior] Department and any office or bureau thereof," as he "deems necessary for the performance of his duties." 25 U.S.C. § 4043(e).

33.    The 1994 Act also provides for a nine-member Advisory Board to the Special Trustee, including five trust fund account holders (including IIM account holders); two members with practical experience in trust fund and financial management; one member with practical experience in fiduciary investment management; and one member from academia with knowledge of general management of large organizations. 25 U.S.C. § 4046.

34.    The 1994 Act requires that the Special Trustee be appointed by the President, with Senate confirmation, "from among individuals who possess demonstrated ability in general management of large governmental or business entities and particular knowledge of trust fund management, management of financial institutions, and the investment of large sums of money." 25 U.S.C. § 4042(b)(1).  Such a person was in fact found and appointed, in the person of Paul Homan, a major figure in banking and trust and fiduciary management, with extensive experience in large-scale turnarounds of troubled banking operations, who has served in such posts as chief executive officer of Riggs National Bank, executive vice-president of Continental Illinois Trust Company,

17

Senior Deputy Controller of Controller of the Currency. He in turn appointed a qualified Advisory Board, of which Plaintiff Cobell had been elected Chair.

B.  <u>Defendants' Undermining of the Special Trustee's Implementation of the American Indian Trust Fund Management Reform Act of 1994</u>

35.  The then Secretary of Interior, Bruce Babbitt, and Assistant Secretary of Interior Indian Affairs, Ada Deer, vigorously opposed the adoption of the 1994 Act, which created the office of Special Trustee and established his authority and responsibilities.  Since its enactment, among other things, by a unanimous vote in the House of Representatives, and since the first Special Trustee took office in 1995, such Defendants, individually and in combination and conspiracy with employees of the Department of the Interior, have willfully and purposefully obstructed and harassed efforts of the Special trustee to carry out his mandate under the 1994 Act.  Plaintiffs are not presently aware of all the forms, subtle as well as overt, which such obstruction and harassment has taken, but are aware of at least the following forms:

(a)  At the close of Fiscal Year 1995, they had $24,000,000 in uncommitted appropriated funds which could have been reprogrammed with the approval of congressional committees and applied to the work of the Special Trustee; rather than apply such funds, they returned them to the Treasury;

(b)  They refused to request adequate funds for Fiscal Year 1996 for the work of the Special Trustee mandated by the 1994 Act;

(c)  They prevented the Special Trustee from preparing the strategic plan mandated explicitly by the 1994 Act;

(d)  They refused to permit the Special Trustee to conduct the technology and use survey necessary to carry out his duties mandated by the 1994 Act;

(e)  They prevented the Advisory Board from meeting to conduct its functions mandated by the 1994 Act; and

(f)  They refused to permit the Special Trustee to employ adequate staff and expert consultants necessary to carry out his duties mandated by the 1994 Act.

C.  <u>Defendants have obstructed the appointment of a qualified and competent Special Trustee and the position has been vacant for more than one year</u>

(a)     Since this administration took office, the Interior Defendants in breach of trust duties owed by the United States have obstructed or discouraged the appointment of candidates who meet the qualifications set forth in 1994 Act in order to conceal the nature and scope of continuing breaches of trust and serious problems in trust reform, notwithstanding that $5 billion has been spent on trust reform as a result of this litigation.

XI.     CLASS ACTION ALLEGATIONS

36.     This action is brought on behalf of two classes of individual Indians:

(a)     The Historical Accounting Class.  The "Historical Accounting Class" consists of those individual Indian beneficiaries (exclusive of those who prior to the filing of the Complaint on June 10, 1996 had filed actions on their own behalf stating a claim for historical accounting) alive on September 30, 2009 and who had an IIM account open during any period between October 25, 1994 and September 30, 2009, which IIM account had at least once cash transaction credited to it at any time as long as such credits were not later reversed.  Beneficiaries deceased as of September 30, 2009 are included in the Historical Accounting Class only if they had an IIM account that was open as of September 30, 2009.   The estate of any beneficiary in the Historical Accounting Class who dies after September 30, 2009, but before distribution is included in the Historical Accounting Class.

(b)     Trust Administration Class.  The "Trust Administration Class" consists of those individual Indian beneficiaries (exclusive of persons who filed actions on their own  behalf, or a group of individuals who were certified as a class in a class action, stating a Funds Administration Claim or a Land Administration Claim prior to the filing of the Amended Complaint) alive as of September 30, 2009 and who have or had IIM accounts in the "Electronic Ledger Era" (currently available electronic data in systems of the Department of the Interior dating from approximately 1985 to the present), as well as individual Indian beneficiaries who, as of September 30, 2009, had a recorded or other demonstrable beneficial  ownership interest in land held in trust or restricted status, regardless of the existence of an IIM account and regardless of the proceeds, if

any, generated from the trust land.  The Trust Administration Class does not include beneficiaries deceased as of September 30, 2009, but does include the estate of any deceased beneficiary whose IIM trust accounts or IIM trust interest had been open in probate as of September 30, 2009.   The estate of any beneficiary in the Trust Administration Class who dies after September 30, 2009 but before distribution is included in the Trust Administration Class.

37.     <u>Numerosity</u>. Each class is in excess of 300,000 individual Indians.

38.     <u>Common questions</u>. Questions of law and fact common to each class include, but are not limited to:  the legal standards governing the trust obligations of the United States with respect to the funds in IIM accounts; management of IIM and management of trust land and resources; what accounting, recordkeeping, reporting, and other practices are, have been, and will for the future be, necessary to achieve compliance with such standards; the extent to which, if at all, the Defendants have complied with such standards and have implemented or failed to implement such practices; the measures necessary to be taken in order to correct past breaches of trust and bring the activities of Defendants into compliance with the law for the future; and the nature, extent, and lawfulness of the Defendants' interference with the exercise of the statutory responsibilities of the Special Trustee. The commonality of these questions to all members of the class is reinforced by the fact that IIM moneys are pooled for investment purposes.

39.     <u>Typicality</u>. The claims of the representative Plaintiffs and all other members of the classes arise from the same practices and course of conduct of the Defendants and are based on the same legal theory.

40.     <u>Legislative Authorization and Confirmation.</u>   On **[January __, 2010]**, legislation was enacted and signed into law that expressly authorizes and confirms the jurisdiction of the United State District Court to resolve the claims set forth in this Complaint for the Classes stated herein.

41.     <u>Fair and adequate representation</u>.

(a)     All named Plaintiffs are or have been beneficiaries of the trust obligations herein involved, are or have been owners of IIM accounts, and like all owners of IIM accounts are unable to know whether their account balances are what they should have

been in the absence of the breaches of trust herein complained of.  Additionally, each has experienced the mismanagement of their IIM moneys, trust lands and resources and the impact of the breaches of trust set forth above.

(b)   Plaintiff  Elouise Cobell, the lead representative Plaintiff, is a recognized leader in Indian affairs with substantial experience both in financial management and in Indian matters generally, and is project director of the Individual Indian Moneys Trust Correction, Recovery, and Capacity-Building Project of Blackfeet Reservation Development Fund, Inc., a project that is directly supportive of the present effort and is further devoted to development and improvement of Indian capacity to manage funds and achieve self-sufficiency. Ms. Cobell is a recipient of the 1997 "Genius Grant" from the John D. and Catherine T. MacArthur Foundation's Fellowship Program.  In 2005, she received a "Cultural Freedom Fellowship" from the Lannan Foundation, an award that cited her persistence in bringing to light the government's "more than a century of government malfeasance and dishonesty."  In 2007, she was one of ten people given the AARP Impact Award (for making the world a better place).  She is a graduate of Great Falls Business College and attended Montana State University. She has two honorary doctorates, one from Montana State University, Bozeman, Montana, and another from Rollins College, Winter Park, Florida. Her professional background is in accounting. She was one of the lead organizers of Native American Bank, N.A., the only national bank located on a reservation that is owned by Indian tribes. She serves as Chair of the Board of Directors of the bank and is active in its management, and with her husband she manages a ranch producing cattle, wheat, and barley. She served for 13 years as Treasurer of the Blackfeet Indian Tribe, and has served as Controller of the tribe. She has held various positions with the Native American Finance Officer Association. She has served as Chair of the Intertribal Monitoring Association on Indian Trust Funds. She is a member of the board of the Montana Community Foundation; is a member of the executive board of Women and Foundation/Corporate Philanthropy; and is Chair of the National Rural Development and Finance Corporation. She served  the first Chair of the Special Trustee Advisory Board, appointed under the 1994 Act, 25 U.S.C. § 4046.

(c)   Plaintiff Penny Cleghorn is a beneficiary of an IIM account, the owner of interest in lands held in trust by the United States and is an enrolled member of the

Mescalero Apache Tribe.  She resides in Apache, Oklahoma.  Ms. Cleghorn has been in the field of Indian Education since 1991 and currently serves as an Assistant to the Principal at the Riverside Indian School located in Anadarko, Oklahoma.  Ms Cleghorn is a graduate of Cameron University in Lawton, Oklahoma, where she earned a degree in Business Administration, with a minor in Art, in 1986.

(d)     Plaintiff Thomas Maulson is an enrolled member of the Lac du Flambeau Chippewa Tribe (Wisconsin), of which he has served as tribal chairman since October 1992. He is a recognized leader in Indian affairs. He also currently is the president of the Great Lakes Inter-Tribal Council, an association of the Indian tribal governments in Wisconsin. He has been the national spokesman for the Great Lakes Indian Fish and Wildlife Commission, and was elected by nine Indian tribes to serve as chairman of the Voight Task Force, organized to protect Indian hunting, fishing and gathering rights in a three-state area.  From 1960 to 1963 he served in the United States armed forces. After receiving an honorable discharge, he returned to the Lac du Flambeau Reservation and worked as a tribal police officer and later as a tribal fish and game warden. Since then he has been self-employed, operating several successful businesses. From 1983 to 1989 he served two terms as his Tribe's first tribal judge, having attended the National Judicial College at the University of Nevada, Reno. In addition to his extensive tribal government experience, he has served in several state government positions, including his 1992 election as Vilas County supervisor, State Tourism Committee, and Vilas County Mining and Solid Waste Committee.

(e)     Plaintiff James Louis LaRose is an enrolled member of the Winnebago Tribe of Nebraska, of which he has served as tribal councilman and tribal chairman during various periods beginning in 1971. He is a recognized leader in Indian affairs. He is a past board member and chairman of the Nebraska Indian Inter-Tribal Development Corporation, a statewide consortium of Nebraska Indian tribes dedicated to facilitating individual and tribal economic self-sufficiency. He is also the former chairman of the Nebraska Indian Commission, and since 1971 has served as a board member of Americans for Indian Opportunity. In the 1970s he led the organizational effort which culminated in the establishment of Nebraska Indian Community College, of which he served as chief administrator in the formative years. He is a past vice-chairman of the

American Indian Higher Education Consortium, the national association of the twenty-eight tribal colleges in the United States. Since 1992, he has served as the intergovernmental liaison specialist of the Winnebago Tribe of Nebraska, and concurrently is the director of the Winnebago Bison Project, a tribal program to foster and restore a sustainable buffalo herd on the Winnebago Reservation. He holds A.A. and B.S. degrees in education.

(f)     Class Counsel are experienced in the substantive and procedural law involved in the case. They include Dennis M. Gingold, lead counsel, an experienced banking lawyer; Thaddeus Holt, an experienced big-case and class-action litigator; William Dorris, David Smith, Keith Harper, Adam Charnes, and Elliott Levitas, , each Partners or Counsel at Kilpatrick Stockton LLP with extensive litigation experience; and Justin Guilder, an associate in the Washington office of Kilpatrick Stockton LLP.

(g)     In addition, the services of Geoffrey Rempel, a certified public accountant who had been associated with the accounting firm of Price Waterhouse LLP, has been retained full time in this litigation. Mr. Rempel has extensive experience in evidence analysis and expert testimony in banking and fiduciary matters, with expertise in such fields as banking and fiduciary activities; data gathering and evaluation; internal controls, accounting practices, systems, and standards in government; information systems (particularly government), financial systems, and distributed systems; and modeling and statistical analysis.

42.     <u>Risk of inconsistent or varying adjudication</u>.   Substantially all IIM accounts are held for the beneficiaries by the Defendants on essentially the same basis and subject to the same obligations and responsibilities of the United States and the Defendants. Moreover, the funds in such accounts are held by Defendants, and invested, in a common pool.  Defendants' inadequate recordkeeping and other incompetent systems management affect all IIM account holders alike. The duties and obligations of the Defendants need to be ascertained, and adequate systems and controls need to be installed, with respect to all beneficiaries alike, and inconsistent determinations by different courts at the suit of different Plaintiffs with respect to such systems and controls would establish incompatible standards of conduct for the Defendants.

Moreover, Plaintiffs' beneficial land ownership interests generally are fractionated and undivided and suffer from the same mismanagement and breaches of trust, including without limitation inadequate recordkeeping, accounting and management systems, and trust management staff.  Further, Defendants' fiduciary duties and trust obligations apply to all beneficiaries alike and are governed by the same composite statutory trust instrument, e.g., relevant legislative enactments that set forth explicit embedded trust duties of the United States.  Accordingly, no beneficiary can obtain full restitution or be made whole unless the rights of each member of the class are vindicated. Finally, inconsistent determinations by different courts at the suit of different Plaintiffs with respect to such systems and controls would establish incompatible standards of conduct for the Defendants.

## COUNT ONE

43.     Plaintiffs reallege the allegations of ¶¶ 1-42 above.

44.     The acts of Defendants herein alleged constitute final agency action and the unlawful withholding of action.  Plaintiffs and each of them have suffered legal wrong and are aggrieved and adversely affected thereby.  Plaintiffs are entitled to review thereof under 5 U.S.C. § 702.

45.     Defendants have breached their trust responsibilities by failing to provide an accounting to beneficiaries of IIM Trust funds.

46.     Plaintiffs are entitled to relief ordering that Defendants provide a complete and accurate accounting of all IIM Trust assets from the inception of the trust to the present.

## COUNT II

47.     Plaintiffs reallege the allegations of ¶¶ 1-46 above.

48.     Defendants have breached their trust duties in the management of IIM Trust funds.

49.     By reason of that breach, Plaintiffs are entitled to restitution, damages, and other appropriate legal and equitable relief.

## COUNT III

50.     Plaintiffs reallege the allegations of ¶¶ 1-49 above.

51.     Defendants have breached their trust responsibilities in the management of individual Indian Trust lands subsurface rights and other natural resources.

52.     By reason of that breach, Plaintiffs are entitled to restitution, damages and other appropriate legal and equitable relief.

WHEREFORE, Plaintiffs respectfully pray the Court as follows:

1.     For an order certifying the named Plaintiffs under Rule 23(b)(1)(A) and (b)(2) of the Federal Rules of Civil Procedure as representatives of the Historical Accounting Class.

2.     For an order certifying the named Plaintiffs under Rule 23(b)(1)(A) and (b)(3) of the Federal Rules of Civil Procedure as representatives of the Trust Administration Class.

3.     For a decree construing the trust obligation of Defendants to members of the class, declaring that Defendants have breached, and are in continuing breach, of their trust obligations to class members, and directing the institution of accounting and other practices in conformity with such obligations.

4.     For a decree ordering a complete and accurate historical accounting and directing the Defendants to make whole, correct, and restate the IIM accounts of class members.

5.     For an award of restitution, damages and other legal and equitable relief arising out of Defendants' breach of their trust responsibilities in the management of IIM, Trust land, subsurface rights, and other natural resources.

6.     For an award of Plaintiffs' costs of suit including, without limitation, attorneys' fees and other costs and expenses incurred, including costs associated with expert assistance, as well as appropriate incentive awards for the named plaintiffs.

7.     And for such other, further, or different relief as plaintiffs may be entitled to in the premises.

Respectfully submitted,


_____
DENNIS M. GINGOLD

D.C. Bar No. 417748
607 14th Street, N.W.
9th Floor
Washington, D.C. 20005
202 824-1448

WILLIAM DORRIS
Georgia Bar No. 225987
Admitted *Pro Hac Vice*
ELLIOTT LEVITAS
D.C. Bar No. 384758
KILPATRICK STOCKTON LLP
1100 Peachtree Street
Suite 2800
Atlanta, GA 30309
404 815-6450

DAVID COVENTRY SMITH
N.C. Bar No. 12558
Admitted *Pro Hac Vice*
ADAM H. CHARNES
KILPATRICK STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC 27101
336 607-7300

KEITH M. HARPER
D.C. Bar No. 451956
Justin Guilder
KILPATRICK STOCKTON LLP
Suite 900
607 14th Street, NW
Washington, DC 20005-2018
202 508-5844

Thaddeus Holt
P.O. Box 440
Point Clear, Alabama 36564
251-990-7495


Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I, Geoffrey Rempel  hereby certifies that on the ___ day of January 2010, a copy of this AMENDED COMPLAINT TO COMPEL THE UNITED STATES TO DISCHARGE  TRUST DUTIES AND TO RECOVER RESTITUTION, DAMAGES, AND OTHER MONETARY RELIEF FOR DEFENDANTS' BREACHES OF TRUST in the above-captioned case was served on the following via facsimile, pursuant to agreement, to:

Thomas Perrilli
Associate Attorney General
Michael F. Hertz
Deputy Assistant Attorney General
J. Christopher Kohn
Robert E. Kirschman, Jr.

Attorneys
Commercial Litigation Branch
Civil Division
P,O. Box 875
Ben Franklin Station
Washington, D.C. 20044-0875

Attorneys for Defendants

Earl Old Person (Pro se) (served via facsimile)
Blackfeet Tribe
P.O. Box 850
Browning, MT 59417
Facsimile: (406) 338-7530

I further certify that all parties required to be served have been served.

_____
Geoffrey Rempel