UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

# Important information about the $3.4 billion Indian Trust Settlement

For current or former IIM account holders,
Owners of land held in trust or restricted status, or their heirs

*A federal court authorized this notice. You are not being sued.*

For Notice in Spanish, Call or Visit Our Website (to be translated into Spanish)

For Notice in Navajo, Call or Visit Our Website (to be translated into Navajo)

- A proposed Settlement has been reached in *Cobell v. Salazar*, a class action lawsuit about individual Indian land, funds and other assets held in trust by the federal government. Courts decided that the federal government has violated its trust duties, including a duty to account for Individual Indian Money trust funds. The Settlement will resolve claims that the government violated its trust duties by (a) mismanaging individual Indian trust funds and other assets, (b) improperly accounting for those funds, and (c) mismanaging trust land and other assets. The individual Indian trust land is called "allotted" land and owners are from time to time referred to as "beneficiaries," "allottees," or "landowners."

- You may be part of this Settlement with certain rights in this Settlement if you are an:
    - Individual Indian Money ("IIM") account holder (even if the account currently is not active or open),
    - Individual Indian who has or had an ownership interest in land held in trust or in restricted status,
    - Heir to a deceased IIM account holder or individual landowner.

- The Settlement establishes funds worth approximately $1.5 billion to pay individual Indian trust beneficiaries for past accounting problems and resolve historical asset mismanagement claims. Settlement and administrative expenses, incentive fees and expenses of the Class Representatives, and legal fees and expenses will be paid out of these settlement funds. Another $1.9 billion will be used primarily to buy up interests in trust lands that are owned by many people ("fractionated interests").

- Congress has passed legislation authorizing the Settlement and provided funding for it. The President has signed the legislation into law.

- The Court in charge of this case still has to decide whether to approve the Settlement. Payments will be made if the Court approves the Settlement and after any appeals are resolved. If the Settlement is approved by the Court, the majority of individual Indian trust beneficiaries will get at least $1,500.

**QUESTIONS? CALL TOLL-FREE 1-800-961-6109 OR VISIT WWW.INDIANTRUST.COM**

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

- The Settlement also creates an Indian Education Scholarship Fund worth up to $60 million to improve access to higher education for Indian youth.

**Your legal rights are affected whether you act or do not act, so please read this notice carefully.**

| These rights and options—and the deadlines to exercise them—are explained in this notice. | |
|---|---|
| You can object to or comment on the Settlement. | *see* Question 30 |
| You can go to a hearing and ask the Court to speak about the Settlement. | *see* Question 36 |
| You may also have the right to exclude yourself from part of the Settlement. | *see* Question 27 |

- The full details of the Settlement can be found in a document called the Settlement Agreement, and subsequent modifications to it, which can be found on the web at www.IndianTrust.com.

| WHAT THIS NOTICE CONTAINS |
|---|

**BASIC INFORMATION** ………………………………………………………………………..**PAGE 5**
    1.    Why did I get this notice?
    2.    What are Individual Indian Money ("IIM") accounts?
    3.    Who is affected by this Settlement?
    4.    What is this lawsuit about?
    5.    Why is there a Settlement?

**WHO IS IN THE SETTLEMENT** ...............................................................................................**PAGE 6**
    6.    Who is part of the Settlement?
    7.    Are there exceptions to being included?
    8.    If I had an IIM account that is now inactive or never existed, does this Settlement affect me?
    9.    I'm not sure if I'm included in the Settlement.

**THE SETTLEMENT BENEFITS—WHAT YOU GET**.............................................................**PAGE 8**
    10.    What does the Settlement provide?
    11.    What is highly fractionated land?
    12.    How much will my payment be if I'm a Historical Accounting Class Member?
    13.    How much will my payment be if I'm a Trust Administration Class Member?
    14.    How will the Accounting/Trust Administration Fund be distributed?
    15.    What happens to any funds left in the Accounting/Trust Administration Fund?
    16.    What is the Trust Land Consolidation Fund?
    17.    How much money can I get from selling my land?
    18.    How can I sell my land?
    19.    What happens to land when owners cannot be located?
    20.    How long will the Trust Land Consolidation Fund continue?
    21.    How will the Indian Education Scholarship Fund work?
    22.    How will the Indian Education Fund be administered?
    23.    How does this Settlement affect trust reform?

**HOW TO GET A PAYMENT**……………………………………………..............................**PAGE 12**
    24.    How can I get a payment?
    25.    When will I get my payment?

**REMAINING IN THE SETTLEMENT**……………………………………..........................**PAGE 12**
    26.    Do I need to do anything to remain in the Settlement?
    27.    What am I giving up as part of the Settlement?

**EXCLUDING YOURSELF FROM THE SETTLEMENT** ......................................................**PAGE 13**
    28.    What if I don't want to be in the Settlement?
    29.    How do I get out of the Trust Administration Class?

**OBJECTING TO OR COMMENTING ON THE SETTLEMENT**.........................................**PAGE 14**
    30.    How can I object to or comment on the Settlement?
    31.    What's the difference between objecting to and excluding myself from the Settlement?

**THE LAWYERS REPRESENTING YOU** ...............................................................................**PAGE 15**
    32.    Do I have a lawyer in the case?
    33.    How will the lawyers be paid?

**THE COURT'S FAIRNESS HEARING**...................................................................................**PAGE 16**
    34.    When and where will the Court decide whether to approve the Settlement?
    35.    Do I have to come to the hearing?
    36.    May I speak at the hearing?

**QUESTIONS? CALL TOLL-FREE 1-800-961-6109 OR VISIT WWW.INDIANTRUST.COM**

**GETTING MORE INFORMATION** ................................................................................................**PAGE 16**
      37.      How do I get more information?

**BASIC INFORMATION**

### 1. Why did I get this notice?

You received this notice because Interior Department records show that: (a) you are now or have been an Individual Indian Money ("IIM") account holder, or (b) you have an individual interest in trust land, or (c) you have requested that this notice be mailed to you. A Court authorized this notice because you have a right to know about a proposed Settlement of this class action lawsuit and about your options, before the Court decides whether the Settlement is fair and to give final approval to the Settlement. This notice explains the lawsuit, the Settlement, and your legal rights.

Judge Thomas F. Hogan, of the United States District Court for the District of Columbia, is currently overseeing this case. The case is known as *Cobell v. Salazar*, No. 1:96cv01285, and is a class action lawsuit.

In a class action lawsuit, one or more people called Class Representatives (in this case, Elouise Cobell and others) sue on behalf of other people who have similar claims. The people together are called a "Class" or "Class Members." The people who sued—and all the Class Members like them—are called the Plaintiffs. The people they sued (in this case, the Secretaries of the Interior and Treasury and the Assistant Secretary-Indian Affairs (together called the "federal government")) are called the Defendants. One court resolves the issues for everyone who remains in the Class.

### 2. What are Individual Indian Money ("IIM") accounts?

IIM accounts primarily contain money collected by the federal government from farming and grazing leases, timber sales, mining, oil and gas production, and other activities on trust land, as well as certain per capita distributions. The funds in IIM accounts are held in trust by the federal government for the benefit of individual Indians.

### 3. Who is affected by this Settlement?

The Settlement will affect all Class Members (*see* Question 6). Class Members include individual Indian trust beneficiaries, which means those individuals who:
- Had an IIM account anytime from approximately 1985 through September 30, 2009, or
- Had an individual interest in land held in trust or restricted status by the U.S. government as of September 30, 2009

The estate of a deceased individual described above whose account was in probate status as of September 30, 2009 is included. Probate means you have asked a court to transfer ownership of the landowner's property after he or she died.

This Settlement does not relate to certain historical claims or any future claims of Class Members. It does not relate to claims tribes might have against the federal government.

### 4. What is this lawsuit about?

The Settlement resolves claims that the federal government violated its trust duties to individual Indian trust beneficiaries. The claims fall into three areas:

- Historical Accounting Claims state that the federal government violated its trust duties by not providing a proper historical accounting relating to IIM accounts and other trust assets.
- Trust Administration claims include:
    - Fund Administration Claims state that the federal government violated its trust duties and mismanaged individual Indian trust funds.
    - Land Administration Claims state that the federal government violated its trust responsibilities for management of land, oil, natural gas, mineral, timber, grazing, and other resources.

The federal government denies all these claims. It says it has no legal responsibility for these claims and owes nothing to the Class Members.

### 5. Why is there a Settlement?

The Settlement is an agreement between the Plaintiffs and the federal government. Settlements end lawsuits. This does not mean the Court has ruled in favor of either side. The parties wish to resolve their differences and realize that many Class Members are elderly and dying and need to receive compensation. In addition, large numbers of Class Members currently live in poverty. So, after 14 years of litigation, both sides want to settle the lawsuit so individual Indian trust beneficiaries receive compensation for their claims. The Settlement will also help the federal government reduce future administration expenses and accounting issues. Class Representatives and lawyers representing them believe that the Settlement is reasonable under the circumstances.

## WHO IS IN THE SETTLEMENT?

### 6. Who is part of the Settlement?

The proposed Settlement affects individual Indians across the country, including members of most federally recognized tribes west of the Mississippi River. The Settlement includes two groups or "Classes." An individual may be a member of one or both Classes. Most people included in the Settlement are members of both Classes.

Historical Accounting Class

- Anyone alive on September 30, 2009,
- Who had an open IIM account anytime between October 25, 1994 and September 30, 2009, and
- Whose account had at least one cash transaction (that was not later reversed).

**Note to heirs:**
- The estate of an IIM account holder who was deceased as of September 30, 2009is included in the Historical Accounting Class if the IIM account (or its related probate account) was open as of that date.
- The heirs of any Class Member who died after September 30, 2009, but before distribution of any Settlement funds, will receive that Class Member's Settlement payments through probate.

Trust Administration Class

- Anyone alive on September 30, 2009, and who
    - Had an IIM account recorded in currently available electronic data in federal government systems ("Electronic Ledger Era") anytime from approximately 1985 to September 30, 2009, or
    - Can demonstrate ownership interest in trust land or land in restricted status as of September 30, 2009.
- The estate of any deceased beneficiary whose IIM account or other trust assets had been open in probate as reflected in the federal government's records as of September 30, 2009.

**Note to heirs**:
- The heirs of any Class Member who died after September 30, 2009, but before distribution of any Settlement funds, will receive that Class Member's Settlement payments through probate.

### 7. Are there exceptions to being included?

The Historical Accounting Class does not include individuals who filed a separate lawsuit before June 10, 1996, against the federal government making a claim for a complete historical accounting.

The Trust Administration Class does not include individuals who filed a separate lawsuit or who were part of a certified class in a class action lawsuit making a Funds Administration Claim or a Land Administration Claim against the federal government before **December 10, 2010.**

### 8. If I never had an IIM account or my IIM account is now inactive or closed, does this Settlement affect me?

It could. If you are included in the Historical Accounting Class and/or the Trust Administration Class as defined in Question 6, this Settlement does affect you.

If you **are NOT currently receiving quarterly or annual IIM account statements**, you should fill out a claim form and mail it to the address on the form. You can also submit your claim form online at www.IndianTrust.com. You may be asked to provide additional information to demonstrate your membership in the Historical Accounting Class and/or the Trust Administration Class. Claims must be postmarked or submitted online no later than **Month 00, 0000.**

### 9. I'm not sure if I'm included in the Settlement.

If you are not sure whether you are included in one or both Classes or you are unsure if the federal government has your current address, you should call toll-free 1-800-961-6109 with questions or visit www.IndianTrust.com. You may also write with questions to Indian Trust Settlement, P.O. Box 9577, Dublin, OH 43017-4877. If you believe that you should be considered a member of either Class, but are not receiving quarterly or annual IIM account statements, you must fill out a claim form and mail it to the address on the form, postmarked no later than Month 00, 2011 so the Court can determine whether you are included in the Settlement.

**THE SETTLEMENT BENEFITS—WHAT YOU GET**

**10. What does the Settlement provide?**

The Settlement will provide:
- $1.412 billion Accounting/Trust Administration Fund, plus a $100 million Trust Administration Adjustment Fund, plus any earned interest, to pay for historical accounting and trust administration claims. This money will also pay for the cost of administering and implementing the Settlement, as well as other expenses (*see* Question 13).
- $1.9 billion Trust Land Consolidation Fund to purchase highly "fractionated" individual Indian trust lands (*see* Question 11). The program will allow individual Indians to get money for land interests divided among numerous owners. Land sales are voluntary. The purchased land will be used for the benefit of the related tribe.
- Up to $60 million for an Indian Education Scholarship Fund to help Native Americans attend college or vocational school. This money will come out of the $1.9 billion Trust Land Consolidation Fund and will be based upon the participation of landowners in selling these highly fractionated land interests.

More details are in a document called the Settlement Agreement, which is available at www.IndianTrust.com.

**11. What is fractionated land?**

Fractionated land is a parcel of land that has many owners, often hundreds of owners. Frequently, owners of highly fractionated land receive very little money from that land.

**ACCOUNTING/TRUST ADMINISTRATION FUND**

**12. How much will my payment be if I'm an Accounting Class Member?**

Each member of the Historical Accounting Class will receive $1,000. This is a per-person, not a per-account, payment.

**13. How much will my payment be if I'm a Trust Administration Class Member?**

It depends on how much income you've collected into your IIM account. Each member of the Trust Administration Class will receive a baseline payment of $500. The $100 million in the Trust Administration Adjustment Fund will be used to increase the minimum payment for Trust Administration Class members. The current estimate is that will raise the minimum payment to Trust Administration Class members to about $800. Individuals with an IIM account open between 1985 and September 30, 2009 may receive more than $800. This payment is separate from, and in addition to, the $1,000 payment to individuals in the Historical Accounting Class.

The calculation uses an average of the 10 highest years of income in your IIM account – this is called your Assigned Value. That will determine your share of the trust administration fund, which is estimated to be $850 million to $1 billion. The exact dollar amount you will get cannot be known with certainty at this time because it is based on (a) the recorded income deposited to your IIM account over a period of

time, and (b) the amount of money that will be left in the Accounting/Trust Administration Fund after deducting:

- All of the $1,000 payments to Historical Accounting Class Members, and

- Attorneys' fees, their expenses, including expense reimbursements and possibly incentive fees to Class Representatives (*see* Question 33) and the costs of administering and implementing the Settlement.

Congress has determined that payments to Trust Administration Class members should be increased for individual's whose payment is calculated to be:

- Zero; or
- Greater than zero (but only if you would have received a smaller Stage 2 payment (*see* Question 14) than Trust Administration Class members whose payment is calculated to be zero),

**For example**, if you were supposed to receive a base payment of $500, your payment might be increased to $800.  If your neighbor was supposed to receive a base payment of $600, his payment might be increased to $800.

The following are estimated calculations and are in addition to the $1,000 you will receive as a member of the Historical Accounting Class.  Your final Trust Administration payment could be more or less.

- If your Assigned Value is between $0 and $5,000, you may receive between $800 and $1,250.00.
- If your Assigned Value is between $5,000.01 and $15,000, you may receive between $1,250.01 and $2,500.
- If your Assigned Value is between $15,000.01 and $30,000, you may receive between $2,500.01 and $5,000.
- If your Assigned Value is between $30,000.01 and $75,000, you may receive between $5,000.01 and $15,000.
- If your Assigned Value is between $75,000.01 and $750,000, you may receive between $10,000.01 and $150,000.
- Individuals with an Assigned Value greater than $750,000.01 may receive more than $150,000.

If your account shows fewer than ten years of income, a zero dollar amount will be used in the years for which no income has been recorded.  Reversed transactions and transfers between an individual's accounts will not be included in that calculation.

### 14. How will the Accounting/Trust Administration Fund be distributed?

If the Settlement is approved, there will be two distributions.

Stage 1 – The $1,000 payments to Historical Accounting Class Members will be distributed shortly after the Settlement is approved and the Court's order becomes final.  For those Class Members who cannot be found, their payment will be deposited in a Remainder Account until the Class Member is located and can demonstrate his or her ownership interest.  If a Class Member cannot be located prior to the conclusion of the distribution process, his or her funds will be transferred to the Indian Education Scholarship Fund (*see* Question 21).

Stage 2 – Payments to Trust Administration Class Members will be distributed after it is determined that substantially all the Trust Administration Class Members have been identified and the payments have been calculated (*see* Question 12).

## 15. What happens to any funds left in the Accounting/Trust Administration Fund?

After all payments are made, any money that is left over will be contributed to the Indian Education Scholarship Fund (*see* Question 20).

**TRUST LAND CONSOLIDATION FUND**

## 16. What is the Trust Land Consolidation Fund?

Over time, through generations, Indian trust lands owned by individuals have been fractionated into smaller and smaller undivided ("fractionated") ownership interests. According to government calculations, owners historically have received very little money and the cost to administer the IIM account frequently has been more than what is paid out to individual Indians.

The $1.9 billion Trust Land Consolidation Fund will provide individual Indians with an opportunity to get money for the fractionated land. As an additional incentive for owners to sell their land interests, an amount above the fair-market value will be paid into the Indian Education Scholarship Fund (*see* Question 21).

The Trust Land Consolidation Fund will be used for four things: (1) to purchase the fractionated land interests, (2) to carry out the Trust Land Consolidation Program, (3) to further Trust Reform efforts (*see* Question 22), and (4) to set aside up to $60 million for Indian scholarships. At least 85% of the Fund will be used to purchase land. The Department of the Interior will consult with tribes to identify fractional interests that the Department may want to consider purchasing.

## 17. How much money can I get from selling my land?

The Department of the Interior will offer fair market value for fractionated trust land.

## 18. How can I sell my land?

The procedures for selling trust land have not been determined at this point. Once those procedures have been determined, the Department of the Interior will attempt to contact individual Indian trust beneficiaries who own fractionated interests that it wishes to purchase.

## 19. What happens to land when owners cannot be located?

For fractionated interests that the Department of the Interior wishes to purchase, but whose owners cannot be located, Interior will attempt to find missing Class Members, including through the publication of notice in appropriate newspapers and newsletters for a period of at least six months. Five years after the Settlement is granted final approval, Class Members whose whereabouts are unknown, after diligent efforts have been made by the federal government to locate them, will be assumed to have consented to

the transfer of their fractionated interests and their Indian Land Consolidation Funds will be deposited into an IIM account.

| 20. How long will the Trust Land Consolidation Fund continue? |
|---|

The Department of the Interior will have up to 10 years from the date the Settlement is granted final approval to purchase the fractionated trust land.  Any money remaining in the Land Consolidation Fund after that time will be returned to the U.S. Treasury.

### INDIAN EDUCATION SCHOLARSHIP FUND

| 21. How will the Indian Education Scholarship Fund work? |
|---|

The Indian Education Scholarship Fund will provide money for Native American students to attend college and vocational school.  It will be funded in three ways:

- Up to $60 million will come from the Trust Land Consolidation Fund in connection with the purchase of fractionated interests in trust land.  Contributions will be as follows:

| Land Purchase Price | Contribution to Fund |
|---|---|
| Less than $200 | $10 |
| Between $200 - $500 | $25 |
| More than $500 | 5% of the purchase price |

The amount paid into the Indian Education Scholarship Fund is in addition to the fair market value amount that will be paid to the individual Indian landowner.

- Any remaining funds in the Accounting/Trust Administration Fund, after all distributions and costs relating to the Settlement are paid, will be transferred to the Indian Education Scholarship Fund.

- Any payments for Class Members that remain unclaimed for five years after Settlement is approved will be transferred to the Indian Education Scholarship Fund.  This transfer will not occur for money being held for minors and adults who are mentally impaired, legally disabled, or otherwise in need of assistance.

| 22. How will the Indian Education Scholarship Fund be administered? |
|---|

A non-profit organization chosen by the parties will administer the Indian Education Scholarship Fund.  A special board of trustees will oversee the Fund.  The trustees will be selected by the Secretary of the Interior, the representative Plaintiffs, as well as the non-profit. The Secretary will select his trustees only after consulting with tribes and after considering names of possible candidates timely offered by tribes.

**INDIAN TRUST REFORM**

### 23. How does this Settlement affect Indian trust reform?

Reform of the Indian trust management and accounting system should continue in the future. The Settlement Agreement allows some funds in the Trust Land Consolidation Fund to be used to pay costs related to the work of a commission on Indian trust administration and reform. In the future, Class Members will still be able to bring claims against the federal government for trust reform.

**HOW TO GET A PAYMENT**

### 24. How can I get a payment?

To be eligible for any payments under the Settlement, you must be a member of one or both Classes. If you are not receiving quarterly or annual IIM account statements and you believe you are a member of either Class, you will need to fill out a claim form. The claim form describes what you need to provide to prove your claim and receive a payment. Please read the instructions carefully, fill out the claim form and mail it postmarked by **Month 00, 2011**, to:

> Indian Trust Settlement
> P.O. Box 9577
> Dublin, OH 43017-4877

If you are denied participation, there will be an opportunity to submit additional documentation.

### 25. When will I get my payment?

Payments will be made after the Court grants final approval of the Settlement, and any appeals are resolved.

**REMAINING IN THE SETTLEMENT**

### 26. Do I need to do anything to remain in the Settlement?

You do not have to do anything to remain in the Settlement unless you are not receiving quarterly IIM account statements. In that case, you will need to fill out and return a claim form in order to get a payment.

### 27. What am I giving up as part of the Settlement?

If the Settlement becomes final, you will give up your right to sue the federal government for the claims being resolved by this Settlement. The specific claims you are giving up against the federal government are described in Section A, paragraphs 14, 15, and 21 of the Settlement Agreement. You will be "releasing" the federal government and all related people as described in Section I of the Settlement Agreement. The Settlement Agreement is available at www.IndianTrust.com.

If you did not receive an IIM account statement for 2009, you may request your IIM account balance as of September 30, 2009 by calling 888-678-6836.  If you request your IIM account balance, you are agreeing to the balance provided by Interior unless you exclude yourself from the Settlement (*see* Question 28).

The Settlement Agreement describes the released claims with specific descriptions, so read it carefully.  If you have any questions, you can talk to the law firms listed in Question 32 for free or you can talk to your own lawyer at your own expense.

### EXCLUDING YOURSELF FROM THE SETTLEMENT

**28.  What if I don't want to be in the Settlement?**

By law, you cannot exclude yourself from the Historical Accounting Class, if you are a member.  You can only exclude yourself from the Trust Administration Class.  If you don't want to be in that part of the Settlement, you must take steps to exclude yourself.  This is sometimes called "opting out."  By excluding yourself, you keep the right to file your own lawsuit.  Or you can join any other person who opted out and bring a separate lawsuit against the federal government on any Trust Fund Administration or Land Administration Claims that you may have.

If you choose to exclude yourself from the Trust Administration Class,

- You will not receive any money for your Fund Administration and Land Administration Claims.
- You will not be bound by the Court's ruling and will keep your right to sue the federal government for these Claims.
- You cannot object to or comment on this aspect of the Settlement as far as it concerns the Trust Administration Class.

If you are a member of the Historical Accounting Class:

- You **cannot** exclude yourself.
- If the Court approves the Settlement, you will not be able to sue the federal government about the Historical Accounting Claims.
- You will receive a $1,000 payment.
- You can object to and/or comment on the terms of the Settlement.

**29.  How do I get out of the Trust Administration Class?**

To exclude yourself, you must send a letter by mail saying that you want to be excluded from *Cobell v. Salazar*.  Be sure to include your full name, telephone number, social security number, IIM account number(s) (if any), and your signature.  You can't ask to be excluded on the phone or at the website. You must mail your exclusion request so that it is postmarked by **Month 00, 2011** to:

> Indian Trust Exclusions
> PO Box 9419
> Dublin, OH 43017-4519

Please note that the share of money you would have received if you had stayed in the Trust Administration Class will be removed from the $1.512 billion Accounting/Trust Administration Fund and given back to the federal government.

## OBJECTING TO OR COMMENTING ON THE SETTLEMENT

### 30. How can I object to or comment on the Settlement?

Any Class Member may comment on or object to the Settlement. However, if you exclude yourself from the Trust Administration Class, you may only object to, or comment on, other parts of the Settlement that you do not like. Also, you may comment on or object to fee and expense requests for Class Counsel and incentive awards and expenses for Class Representatives and other amounts that may be awarded by the Court (see Question 33 below). If you object to any part of the Settlement you must give reasons why. You may also comment favorably on any part of the Settlement. To object or comment, send a letter stating:

    a) The case name (*Cobell v. Salazar*) and case number (1:96cv01285);

    b) Your full name, address, telephone number, IIM Account Number(s) and signature;

    c) Comments you have about any aspect of the Settlement, including (1) fee and expense requests for Class Counsel, (2) incentive awards and expenses for Class Representatives, or (3) other fees and expenses that may be awarded. Your comments must state the specific reasons why you are objecting to the Settlement, and

    d) Any legal support or factual evidence that you wish to bring to the Court's attention, any grounds to support your status as a Class Member, and whether you intend to appear at the Fairness Hearing.

Mail your comments or objection to these three different places postmarked no later than **Month 00, 2011**:

| COURT | CLASS COUNSEL | DEFENSE COUNSEL |
|---|---|---|
| Clerk's Office<br>United States District Court<br>for the District of Columbia<br>333 Constitution Avenue, N.W.<br>Washington, D.C. 20001 | | Robert E. Kirschman<br>Dept of Justice, Civil Div.<br>P.O. Box 875<br>Ben Franklin Station<br>Washington, DC 20044 |

At your own expense, you may also appear at the Fairness Hearing to comment on or object to any aspect of the fairness, reasonableness, or adequacy of the Settlement. (See Question 36).

### 31. What's the difference between objecting to and excluding myself from the Settlement?

You object to the Settlement when you disagree with some part of it but you wish to remain a Class Member. An objection allows the Court to consider your views. On the other hand, exclusion or "opting out" means that you do not want to be part of the Trust Administration Class or share in the benefits of that part of the Settlement. Once excluded, you lose any right to object to any part of the Settlement that relates to the Trust Fund Administration Claims or the Land Administration Claims, because those parts of the case no longer affect you. If you exclude yourself, you are free to bring your own lawsuit for those claims.

## THE LAWYERS REPRESENTING YOU

### 32. Do I have a lawyer in the case?

The Court has appointed these lawyers to represent you and other Class Members as "Class Counsel," including:

| | |
|---|---|
| Dennis Gingold<br>607 14th Street NW, Suite 900<br>Washington, DC  20005-2018 | Keith Harper<br>Kilpatrick Stockton LLP<br>607 14th Street NW, Suite 900<br>Washington, DC  20005-2018 |

You will not be charged personally for these lawyers. If you want to be represented by another lawyer, you may hire one to appear in Court for you at your own personal expense.

### 33. How will the lawyers be paid?  Do the Class Representatives get paid extra?

The amount of attorneys' fees, expenses and costs to be paid to Class Counsel will be decided by the Court in accordance with controlling law, giving due consideration to the special status of Class Members as beneficiaries of a federally created and administered trust.  The amounts awarded will be paid from the Accounting/Trust Administration Fund.

In accordance with the Settlement Agreement, plaintiffs have filed a Notice with the Court to state the amount of fees, expenses, and costs they will assert through December 7, 2009.  Plaintiffs' Notice states the following:

1. On December 7, 2009 the parties signed an Agreement on Attorneys' Fees, Expenses and Costs, stating in their motion for attorneys' fees, expenses and costs that plaintiffs may not assert that Class Counsel should be paid more than an additional $99,900,000.00.  In response, defendants may not assert that Class Counsel should be paid less than $50,000,000.00. This Agreement is available at www.IndianTrust.com.

2. Plaintiffs' petition will assert that Class Counsel should be paid $99.9 million for fees, expenses and costs through December 7, 2009.

3. Class Counsel are working pursuant to contingency fee agreements, which provide that Class Counsel shall be paid a combined total of 14.75% of the funds that are created for the benefit of the classes.  Applying that percentage to the $1,512,000,000 to be deposited into the Settlement Account would result in an award of $223,020,000.00 for Class Counsel.

4. The Court is not bound by any agreed upon or requested amounts, or the contingency fee agreements between Class Representatives and Class Counsel.  The Court has discretion to award greater or lesser amounts to Class Counsel in accordance with controlling law, giving due consideration to the special status of Class Members as beneficiaries of a federally created and administered trust.

The Agreement on Attorneys' Fees, Expenses and Costs, as modified, also provides that Class Counsel may be paid up to $12 million for work, expenses and costs after December 7, 2009.  Class Counsel will not be entitled to be paid such amounts unless the Settlement is given final approval by the Court.  All

such requests for fees, expenses, and costs after December 7, 2009 are to be based on Class Counsel's actual billing rates and are subject to approval of the Court, following an opportunity for Class Members to object and defendants to respond.

Plaintiffs will file a petition for payment of attorneys' fees and a memorandum of points and authorities in support of that request no later than **MONTH 00, 2011**.  That petition and memorandum will also be available at www.IndianTrust.com.  As required by the Agreement on Attorneys' Fees, Expenses and Costs, at the same time Plaintiffs file the petition for attorneys' fees, they will also file statements regarding Class Counsel's billing rates, as well as contemporaneous, where available, and complete daily time, expense, and cost records supporting that petition.  Those records will thereafter be available at the Clerk's Office, United States District Court for the District of Columbia, 333 Constitution Ave. NW, Washington, DC 20001.

Plaintiffs have also filed a notice with the Court that they will seek incentive awards and expense reimbursements for the Class Representatives as follows:

| | |
|---|---|
| Elouise Pepion Cobell | $2,000,000.00 |
| James Louis Larose | $ 200,000.00 |
| Thomas Maulson | $ 150,000.00 |
| Penny Cleghorn | $ 150,000.00 |

The requested amounts are in addition to payments the Class Representatives will be entitled to as Class Members.  Any amounts awarded will be paid from the Accounting/Trust Administration Fund.

Plaintiffs will file a petition for payment of those incentive awards and a memorandum of points and authorities in support of that request no later than **MONTH 00, 2011**.  That petition and memorandum will also be available at www.IndianTrust.com.

Class members and Defendants may object to or comment on plaintiffs' requests for Class Counsel and Class Representatives (*see* Question 30 above). After considering the objections and comments of Defendants and Class Members, the Court will determine the amounts of (a) attorneys' fees, expenses and costs and (b) plaintiffs' incentive awards and expense reimbursement in accordance with controlling law giving due consideration to the special status of Class Members as beneficiaries of a federally created and administered trust.

## THE COURT'S FAIRNESS HEARING

**34.  When and where will the Court decide whether to approve the Settlement?**

The Court will hold a Fairness Hearing at (time) on **Month 00, 2011**, at the United States District Court for the District of Columbia, Third Street and Constitution Avenue NW, Washington, DC.  The hearing may be moved to a different date or time without additional notice, so it is a good idea to check www.IndianTrust.com or call 1-800-961-6109.

At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate.  If there are objections, the Court will consider them. The Court will also consider how much to pay the lawyers representing Class Members and whether to award any additional payment to the Class Representatives.  After the hearing, the Court will decide whether to approve the Settlement.  We do not know how long these decisions will take.

### 35. Do I have to come to the hearing?

No.  Class Counsel will answer any questions the Court may have.  But you are welcome to come at your own expense.  If you send an objection or comment, you don't have to come to Court to talk about it.  As long as you mailed your written objection on time, the Court will consider it.  You may also pay another lawyer to attend on your behalf, but it's not required.

### 36. May I speak at the hearing?

Yes.  You may ask the Court for permission to speak at the Fairness Hearing.  You may appear at the Fairness Hearing to comment on or object to any aspect of the fairness, reasonableness, or adequacy of the Settlement.

## GETTING MORE INFORMATION

### 37. How do I get more information?

This notice summarizes the proposed Settlement.  More details are in the Settlement Agreement.  You can get a copy of the Settlement Agreement and the subsequent modifications to it at www.IndianTrust.com.  You may also write with questions to Indian Trust Settlement, P.O. Box 9577, Dublin, OH 43017-4877.  You can also register for updates and get a claim form at the website, or by calling the toll free number, 1-800-961-6109.