**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MARILYN KEEPSEAGLE, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 1:99CV03119 |
| ) | (EGS) |
| ) | |
| TOM VILSACK, Secretary, United States ) | |
| Department of Agriculture, ) | Judge: Emmet G. Sullivan |
| ) | Magistrate Judge: Alan Kay |
| Defendant. ) | |
| ) | |

**SETTLEMENT AGREEMENT**

## TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................... 1

II.     DEFINITIONS ............................................................................................... 1

III.    RECITALS ..................................................................................................... 8

IV.     THE SETTLEMENT CLASS ........................................................................ 9

V.      NOTICE ....................................................................................................... 10

VI.     DISMISSAL AND SETTLEMENT AGREEMENT ..................................... 10

VII.    FUNDING ..................................................................................................... 11

VIII.   MORATORIUM ON ACCELERATIONS, FORECLOSURES, AND OFFSETS ......... 13

IX.     NON-JUDICIAL CLAIMS PROCESS ......................................................... 14

X.      THE DUTIES OF CLASS COUNSEL .......................................................... 32

XI.     AUDIT OF CLAIMS .................................................................................... 32

XII.    PROGRAMMATIC RELIEF ........................................................................ 33

XIII.   COURT SUPERVISION OF THE SETTLEMENT AGREEMENT &
        ENFORCEMENT PROCEDURES ................................................................ 38

XIV.    PROCEDURES GOVERNING APPROVAL OF THIS  SETTLEMENT
        AGREEMENT ............................................................................................... 40

XV.     ATTORNEYS' FEES, CLASS REPRESENTATIVE SERVICE AWARDS,
        EXPENSES, AND COSTS ............................................................................ 42

XVI.    CONDITIONS THAT RENDER SETTLEMENT AGREEMENT VOID OR
        VOIDABLE ................................................................................................... 44

XVII.   EFFECT OF SETTLEMENT AGREEMENT IF VOIDED ............................. 44

XVIII. RELEASES ..................................................................................................... 45

XIX.    NO ADMISSION OF LIABILITY ................................................................. 45

i

XX.     CONTACT INFORMATION FOR THE SECRETARY AND FSA.............................. 46

XXI.    INTEGRATION ................................................................................................ 46

XXII.   MODIFICATION ............................................................................................... 47

XXIII.  DUTIES CONSISTENT WITH LAW AND REGULATIONS..................................... 47

XXIV.   DUTY TO DEFEND ........................................................................................... 47

XXV.    HEADINGS ..................................................................................................... 47

XXVI.   SEVERABILITY................................................................................................ 47

XXVII.  COUNTERPARTS.............................................................................................. 47

888856.5 5

## SETTLEMENT AGREEMENT

### I.        INTRODUCTION

This is a class action, *Keepseagle v. Vilsack*, No. 1:99CV03119 (D.D.C.) ("the Case"), brought by Plaintiffs against the Secretary of the U.S. Department of Agriculture ("the Secretary" or "USDA") under the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691-1691f, alleging that USDA discriminated against Native Americans in its farm loan and farm loan servicing programs.  In the interest of resolving the dispute between the parties without the expense, delay, and inconvenience of further litigation of the issues raised in this action, and in reliance upon the representations, mutual promises, covenants, and obligations set out in this Settlement Agreement, and for good and valuable consideration also set out in this Settlement Agreement, and subject to Rule 60(b), Fed.R.Civ.P., the parties, through their undersigned counsel of record, hereby stipulate and agree as follows:

### II.       DEFINITIONS

Unless otherwise noted, as used in this Settlement Agreement:

A.        A "Claimant" is any individual who submits a claim and/or seeks an award under this Settlement Agreement.  A "co-claimant" is any individual who submits a claim or seeks an award with a claimant, or whom the Neutral determines should have submitted his or her claim jointly with another claimant.  Claimants shall be deemed co-claimants, eligible for consideration for one, shared award, where the individuals were, or would have been, co-applicants to the loan application which is the subject of the claim.  For example, co-operators, spouses, or business partners who farmed or ranched together in one farm operation, would be co-claimants.

B.        The "Claim Deadline" is 180 calendar days from the Effective Date.

C.        A "Claim Determination" is the binding and final result of a Track A or a Track B adjudication and represents whether a Class Member is eligible to receive an award as a result of the Non-Judicial Claims Process, and if so, the amount of the award. A Claim Determination is shown on a Track A Claim Determination Form (Ex. A) or a Track B Claim Determination Form (Ex. B).

D.        The "Claims Administrator" is a class action claims administration company suggested by Class Counsel and approved by the Court.  Class Counsel propose Epiq Systems, 10300 SW Allen Blvd., Beaverton, OR  97005.

E.        The "Class" is all persons who are Native American farmers and ranchers who (1) farmed or ranched or attempted to farm or ranch between January 1, 1981 and November 24, 1999; (2) applied to the USDA for participation in a farm loan program during that same time period; and (3) during the same time period filed a discrimination complaint with USDA either individually or through a representative

with regard to alleged discrimination that occurred during the same time period.

The phrase "filed a discrimination complaint with the USDA" in subsection (3) of Section II.E above shall include discrimination complaints filed with the Federal Trade Commission ("FTC") after November 3, 1992, and complaints made orally or in writing with other persons if evidence meeting the standard set out in Section IX. C or Section IX.D, as appropriate, establishes that the recipient of the complaint forwarded it to the USDA.  In determining whether the evidence establishes a complaint was forwarded to the USDA, the Track A and Track B Neutrals shall consider all of the available evidence including representations made to the putative claimant and presumptions of regularity that attach to the conduct of government officials (including tribal government officials).  To be cognizable, the complaint forwarded to the USDA must have identified the claimant and claim with sufficient specificity to put the USDA on notice of the identity of the claimant and the nature of his/her claim.

The phrase "applied to the USDA" may include, for purposes of "Track A" a *bona fide* effort to apply for a loan, as discussed in IX.C.2.a-3(1)-(5)

Where used in this Settlement Agreement, the Class refers, individually and collectively, to the Class Representatives, the Class, and each Member of the Class as well as their heirs, administrators, personal representatives, successors, and/or assigns.

F.    "Class Counsel" are the following attorneys: Joseph M. Sellers, Christine E. Webber, Peter Romer-Friedman of Cohen Milstein Sellers & Toll PLLC; David J. Frantz of Conlon, Frantz & Phelan, LLP; Paul M. Smith, Katherine A. Fallow, Michael Brody, Jessica Ring Amunson, and Carrie Apfel of Jenner & Block, LLP; Anurag Varma of Patton Boggs LLP; Phillip L. Fraas of Stinson, Morrisson and Hecker; and Sarah Vogel of Sarah Vogel Law Partners..

G.    "Class Representatives" are, or have been, Luke Crasco, Gene Cadotte, Keith Mandan, Porter Holder, George Keepseagle, Marilyn Keepseagle, Claryca Mandan, John Fredericks, Jr., and Basil Alkire.

H.    "Cost Cap" is $20,000,000, and represents the maximum amount of Implementation Costs that the Secretary will pay under this Settlement Agreement.

I.    "Cy Pres Beneficiary" is any non-profit organization, other than a law firm, legal services entity, or educational institution, that has provided agricultural, business assistance, or advocacy services to Native American farmers between 1981 and the Execution Date that will be proposed by Class Counsel and approved by the Court.

J.    "Cy Pres Fund" is a fund administered by Class Counsel designated to hold any leftover funds under paragraph 7 in Section IX.F of this Settlement Agreement.

888856.5 5                                            2

K.      "Debt Relief Award" means elimination by USDA of all of a Debt Relief Award Recipient's outstanding Farm Loan Obligations, held as of the date of a Track A Award or a Track B Award, subject to an $80,000,000 cap and, therefore, a potential reduction pursuant to Section IX.E of this Settlement Agreement. Elimination of such obligations would not make the Class Member ineligible to be considered for new loans from USDA.

L.      "Debt Relief Award Recipient" is a class member, who prevails under either Track A or Track B, who had any outstanding Farm Loan Obligations during the class period.

M.      "Debt Relief Tax Award" is an award made in recognition of a Class Member's expected tax liability for his or her Debt Relief Award in an amount equal to 25% of the principal of the Class Member's Debt Relief Award.

N.      "Designated Account" means any bank account, set up by Class Counsel and held for the benefit of the Class, at a Designated Bank that is (1) insured by the Federal Deposit Insurance Corporation up to the applicable limits, (2) a segregated trust account that is not subject to claims of a bank's creditors, or (3) invested in U.S. Treasury securities.

O.      "Designated Bank" means a bank that has a Veribanc (www.veribanc.com) rating of Green with three stars and one for which neither the bank nor any of its senior officers appear in the Excluded Parties List System (www.epls.gov), which is a list of entities and individuals suspended or debarred from doing business with the federal government.

P.      "District Court" and "Court" mean the U.S. District Court for the District of Columbia, unless the context reveals otherwise.

Q.      "Effective Date" – is the date upon which, if the Agreement is not voided under Section X, an order providing final approval of this Agreement under Federal Rule of Civil Procedure 23(e) becomes non-appealable, or, in the event of any appeals, upon the date of final resolution of said appeals. When this Agreement refers to the date on which the Agreement became "Effective," such date is the Effective Date.

R.      "Execution Date" is the date on which this Settlement Agreement has been signed by or on behalf of all of the Parties.

S.      "Farm Loan Obligation" encompasses only direct operating loans, direct farm ownership loans, emergency loans, economic emergency loans, and all amounts due thereunder, including principal, interest, penalties and charges, and debts restructured through any Part 766 (formerly Part 1951-S) loan or other farm loan program servicing options.

T.     "Farm Loan Programs" are USDA programs to make and service loans to owners and/or operators, as authorized by statute or pursuant to USDA regulations.

U.     "Fee Award" is the total amount approved by the Court for the payment of Attorney's Fees.

V.     "FSA" refers to the Farm Service Agency, an agency of USDA, and FSA predecessor agencies including the Farmers Home Administration.

W.     "Final Accounting" is an accounting prepared and signed by the Claims Administrator after all funds in the Designated Account have been disbursed.  The Final Accounting shall identify: (1) the number and amount of all awards the Claims Administrator has caused to be paid to Class Members; (2) the Implementation Costs incurred under the Settlement Agreement; and (3) the amount of any leftover funds paid into the Cy Pres Fund.  The Final Accounting shall also identify the total amount of implementation funds the Secretary has provided to Class Counsel, for the benefit of the Class, under this Settlement Agreement and the status of these funds.

X.     "Final Approval Date" is the date on which the District Court enters an order providing final approval of this Settlement Agreement under Rule 23(e), Fed.R.Civ.P.

Y.     "Implementation Costs" are the administrative costs associated with implementing this Settlement Agreement, including the fees and costs of the Track A and Track B Neutrals, the Track B Expert, the Claims Administrator, costs incurred under Section IX, and the costs necessary to provide notice of this Settlement Agreement to the Class.  With the exception of those specified above, Implementation Costs do not include attorney's fees, costs, and expenses.

Z.     "Individual Counsel" are counsel, other than Class Counsel, retained by Claimants to represent them in the Non-Judicial Claims Process.

AA.    "IRS" is the Internal Revenue Service.

BB.    "Native American" means:

1) any citizen of the United States, United States non-citizen national, or a qualified alien who is enrolled in any Indian tribe, band, nation, or other organized group or community, including any Alaska Native village or regional or village corporation as defined in or established pursuant to the Alaska Native Claims Settlement Act (85 Stat. 688) (43 U.S.C. 1601 *et seq.*), which is recognized as eligible for the special programs and services provided by the United States to Indians because of their status as

Indians; or

2) any citizen of the United States, United States non-citizen national, or a qualified alien who is enrolled in any Indian group that has been formally recognized as an Indian tribe by a State legislature or by a State commission or similar organization legislatively vested with State tribal recognition authority; or

3) any citizen of the United States who is enrolled in any Indian tribe or "Native group" according to 43 U.S.C. § 1602.(c) and (d) that had an open letter of intent to petition the United States for Federal recognition; or

4) any citizen of the United States, United States non-citizen national, or a qualified alien who can show that, prior to November 24, 1999, he/she identified himself/herself as Native American. Such self-identification may be established (a) by documentation, such as an application for loan or loan servicing assistance submitted to USDA prior to or within the Class Period, or (b) through a credible written narrative, submitted under penalty of perjury, in which the individual describes in detail the circumstances establishing his/her Native American ancestry sufficient to persuade the Track A or Track B Neutral of its genuineness and authenticity. Such a narrative can include recounting a prior instance in which the claimant identified himself/herself as Native American to a governmental entity, such as the U.S. Census Bureau.

Membership in an Indian tribe for purposes of paragraphs (1) – (3), above, shall be defined by the law or rules of the Indian tribe in which the individual claims to be a member. Such membership can be demonstrated by providing a copy of an official tribal document that states that the individual is a member of an Indian tribe, such as (a) an identification card that states that the person is currently an enrolled member of the Indian tribe, or (b) a letter or statement from the tribal government that states that the person is regarded as a member of the Indian tribe.

CC.    "Non-Judicial Claims Process" means the claim processes set forth in Section IX of this Settlement Agreement.

DD.    "Parties" means the Plaintiffs and the Secretary.

EE.    "Plaintiffs" are the individual plaintiffs named in *Keepseagle v. Vilsack*, No. 1:99CV03119 (D.D.C.), the members of the Class, and the Class Representatives.

FF.     "Preliminary Approval Date" is the date on which the District Court enters a Preliminary Approval Order under Rule 23(e), Fed.R.Civ.P.

GG.     "Preliminary Accounting" is an accounting prepared and signed by the Claims Administrator after receipt of all completed Claim Determination Forms.  The Preliminary Accounting shall identify: (1) the number and amount of all Final Track A Liquidated Awards, Final Track A Liquidated Tax Awards, Final Track B Awards, and Debt Relief Tax awards (shown in Part II of the completed Track A and Track B Determination Forms); (2) the Implementation Costs incurred to date; (3) a good faith estimate of Implementation Costs necessary for the Claims Administrator to perform its final duties under this Settlement Agreement; and (4) the amount of the Fee Award.

HH.     "Preliminary Accounting Date" is the date that the Secretary receives the Preliminary Accounting.

II.     "Preponderance of the evidence" is such relevant evidence as is necessary to prove something is more likely true than not true.

JJ.     "Prevailing Claimant" is any individual whose Track A or Track B claim is approved under the Non-Judicial Claims Process set forth in Section IX, together with any co-claimants.

KK.     "Secretary" is, individually and collectively, Thomas Vilsack, in his official capacity as Secretary of USDA, his predecessors and successors as Secretary of USDA, USDA, its agencies, instrumentalities, agents, officers, and employees.

LL.     "Secretary's Counsel" is the U.S. Department of Justice.

MM.     "Substantial evidence" is such evidence that a reasonable person might accept as adequate to support a conclusion after taking into account other evidence in the record that fairly detracts from that conclusion.  Substantial evidence is a lower standard of proof than a preponderance of the evidence.

NN.     "Track A" is a non-judicial claims process by which a submitted claim is reviewed by a Track A Neutral based on the criteria delineated in Section IX.C.

OO.     "Track A Neutral" is a third party claims adjudication company suggested by Class Counsel and approved by the Court to determine the merits of the claims submitted under Track A.  Class Counsel propose JAMS, 2 Embarcadero Center, Suite 1100, San Francisco, California, to serve as the Track A Neutral.

PP.     "Track A Award" is a combination of a Track A Liquidated Award and a Track A Liquidated Tax Award.  Track A Awards are subject to reduction under paragraph 2, subsection b of Section IX.F.  A "Final" Track A Award refers to the amount

specified in Part II of a Track A Claim Determination Form.  A Final Track A Award is the Award calculated by the Claims Administrator under paragraph 2, subsection b of Section IX.F.

QQ.  "Track A Individual Counsel Fee" is a fee negotiated between Claimant and his or her Individual Counsel, subject to the Track A Individual Counsel Fee Cap, which the Claimant agrees to pay to Individual Counsel if he or she obtains a Track A Award and which Individual Counsel agrees to accept in full satisfaction for the fees, expenses, or costs associated with work performed on behalf of the Claimants in obtaining that Award.  The Track A Individual Counsel Fee will be paid only from the Final Track A Award, if any, and not from any other funds in the settlement.

RR.  "Track A Individual Counsel Fee Cap" is the maximum Track A Individual Counsel Fee set by the Court, not to exceed 2% of a Track A Claimant's Final Track A Award.

SS.  "Track A Liquidated Award" is $50,000 per Track A Prevailing Claimant, regardless of the number of the Prevailing Claimant's prevailing claims.  Track A Liquidated Awards are subject to reduction under paragraph 2, subsection b of Section IX.F.  A "Final" Track A Liquidated Award refers to the amount specified in Part II of a Track A Claim Determination Form.  A Final Track A Liquidated Award is the Award calculated by the Claims Administrator under paragraph 2, subsection b of Section IX.F.

TT.  "Track A Liquidated Tax Award" is an award made in recognition of a Prevailing Claimant's expected tax liability for his or her Track A Liquidated Award in an amount equal to 25% of the Prevailing Claimant's Track A Liquidated Award.  Track A Liquidated Tax Awards are subject to reduction under paragraph 2, subsection b of Section IX.F.  A "Final" Track A Liquidated Tax Award refers to the amount specified in Part II of a Track A Claim Determination Form.  A Final Track A Liquidated Tax Award is the Award calculated by the Claims Administrator under paragraph 2, subsection b of Section IX.F.

UU.  "Track B" is a non-judicial claims process by which a claim is reviewed by a Track B Neutral based on the criteria delineated in Section IX.D.

VV.  "Track B Award" is the amount of actual damages, up to $250,000, for which the Track B Neutral determines that a Prevailing Claimant is eligible under the applicable standards for Track B, subject to reduction under paragraph 2 subsection a of Section IX.F.  A "Provisional" Track B Award refers to the amount specified by the Track B Neutral in Part II of a Track B Determination Form (Ex. B).  A "Final" Track B Award refers to the amount specified in Part II of a Track B Claim Determination Form after the Claims Administrator performs any calculation required under paragraph 2, subsection a of Section IX.F, after receipt of all

Provisional Track B awards.

WW.   "Track B Cap" is $50,000,000.

XX.   "Track B Expert" is an experienced agricultural economist hired by the Track B Neutral to assist the Track B Neutral in assessing economic damage claims made by Class Members.

YY.   "Track B Fee" is a fee negotiated between a Claimant and his or her Counsel, whether Class Counsel or Individual Counsel, subject to the Track B Fee Cap, which the Claimant agrees to pay if he or she obtains a Track B Award and which Counsel agrees to accept in full satisfaction for the fees, expenses, or costs associated with work performed on behalf of the individual Claimant in obtaining that Award.  The Track B Fee will be paid only from the Final Track B Award, if any, and not from any other funds in the settlement

ZZ.   "Track B Fee Cap" is the maximum Track B Fee set by the Court, not to exceed 8% of a Track B Claimant's Final Track B Award.

AAA.   "Track B Neutral" is a third-party claims adjudication company suggested by Class Counsel and approved by the Court to determine the merits of the claims submitted under Track B.  Class Counsel propose JAMS, 2 Embarcadero Center, Suite 1100, San Francisco, California, to serve as the Track B Neutral.

BBB.   "United States" is, individually and collectively, the Executive Branch of the United States, its agencies, instrumentalities, agents, officers, and employees.

CCC.   "USDA" is the United States Department of Agriculture.

## III.   RECITALS

A.   On November 24, 1999, Plaintiffs filed suit against USDA under, *inter alia*, the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691-1691f, alleging that USDA discriminated against Native Americans in its farm loan and farm loan servicing programs.

B.   On September 28, 2001, the Court issued an order certifying a class for purposes of declaratory and injunctive relief under Rule 23 and defining the class as:

> All Native American farmers and ranchers, who (1) farmed or ranched between January 1, 1981 and November 24, 1999; (2) applied to the USDA for participation in a farm program during that period; and (3) filed a discrimination complaint with the USDA either individually or through a representative during the time period.

C.     Between 2004 and 2009, the parties engaged in significant discovery in the Action. This discovery included the exchange and review of millions of pages of hard copy and electronic documents, more than 40 depositions of Plaintiffs' non-expert witnesses, more than 50 depositions of the Secretary's non-expert and 30(b)(6) witnesses, the exchange of numerous reports from several experts on both sides, and 8 expert depositions.  As of November 2009, discovery in the case was essentially completed.

D.     In order to bring the Case to a close FOREVER and FINALLY, the Parties have determined to settle the Case, including all claims that the proposed Class and Class Members have brought or could have brought in the Case.

E.     The Plaintiffs believe that the terms of this Settlement Agreement are fair, reasonable, and adequate; that this Settlement Agreement provides substantial benefits to the proposed Class and the Class Members; and that settlement of the Case on the terms set forth in this Settlement Agreement is in the best interests of the proposed Class and the Class Members.

F.     The Secretary expressly denies any wrongdoing, as alleged in the Case or otherwise, and does not admit or concede any actual or potential fault, wrongdoing or liability in connection with any facts or claims that have been or could have been alleged in the Case.  Nonetheless, the Secretary considers it desirable to settle the Case on the terms set forth in this Settlement Agreement because it will avoid disruption to USDA due to the pendency and defense of the Case, and it will avoid the substantial expense, burdens, and uncertainties associated with litigation of the Case.

G.     Accordingly, the purpose of this Settlement Agreement is to make a full, complete, and final resolution of all claims and causes of action that have been or could have been asserted against the Secretary by the proposed Class and the Class Members in the Case arising out of the conduct alleged therein.

H.     NOW, THEREFORE, in reliance on the mutual promises, covenants, releases, and obligations as set out in this Settlement Agreement, and for good and valuable consideration, the Parties hereby stipulate and agree to resolve all claims that were or could have been at issue in this matter.

## IV.    THE SETTLEMENT CLASS

A.     The Parties agree, for purposes of this Settlement Agreement only, to a Federal Rule 23(b)(3), Fed.R.Civ.P., opt-out class, as defined *supra*.

B.     If this Settlement Agreement is approved by the Court, all persons within the Class are bound by its terms, except those Class Members who effectively exercise a right to opt out of the Class and the settlement.  Class Members who elect to opt out must

do so in writing, in the manner and by the date specified in the Notice of Proposed
Class Action Settlement and Fairness Hearing (Ex. I).

## V.    NOTICE

A.    Attached to this Settlement Agreement is a Notice of Proposed Class Action
Settlement and Fairness Hearing ("Notice") in long form (Ex. I) and short form (Ex.
J).  The Notice contains a brief description of the claims advanced by the plaintiff
class and the Secretary's denial of liability for such claims, a summary of the terms
of the proposed settlement, and a notice of a fairness hearing to be held pursuant to
Rule 23(e), Fed. R. Civ. P.  Should the Court give preliminary approval to the
Settlement Agreement, the Plaintiffs will issue the Notice to members of the class
by the best means practicable, as set forth in Section V.B, below.

B.    Plaintiffs intend to contract with Kinsella Media, LLC ("KM") to provide notice to
the Class Members.  For this settlement, Plaintiffs have advised USDA and the
Court that KM has developed a four-part notice program that includes (1) direct
notice to potential class members for whom address information is available
pursuant to Section V.C below, (2) paid media (including broadcast, print and
Internet advertising), (3) earned media through press releases sent to national print
outlets and tribal newsletters, and (4) third party outreach to over 1,100 entities
affiliated with the agricultural and/or Native American community to request their
participation in the Notice Program.  In addition, KM will develop an Informational
Web Site to provide a constant source of information and assistance for Class
Members.

C.    Within 5 days after the Preliminary Approval Date and authorization by the Court
for the Secretary to provide the Claims Administrator the information identified in
this paragraph, USDA shall prepare and deliver to the Notice Administrator a
computer disk (or other electronic format) containing the information needed to
facilitate Notice to Class Members.  Such information shall include for each loan or
loan application included in USDA's electronic, active PLAS or DLS databases
where a borrower or applicant is identified as Native American, the name; social
security number; and last-known address of the borrower(s).

D.    The Notice and the Informational Web Site will include information on how to
obtain a claim form.

## VI.    DISMISSAL AND SETTLEMENT AGREEMENT

A.    The Class agrees to the dismissal of the Case with prejudice under Rules 41(a)(1)
and 23(e), Fed.R.Civ.P., subject to the terms of the Settlement Agreement and to the
Court's continuing jurisdiction as set forth in Section XIII.  In accordance with the
terms of this Settlement Agreement, the Plaintiffs will move for dismissal of the

Case with prejudice to be effective on the Final Approval Date.

B.      The Parties agree to the entry of this Settlement Agreement and will move for entry of the Settlement Agreement to be effective on the Final Approval Date.

## VII.   FUNDING

A.      Class Counsel shall, within seven (7) calendar days of the Preliminary Approval Date, notify the Secretary and the Secretary's Counsel in writing of the identity of the Designated Account and Designated Bank and provide any and all information necessary and appropriate to direct any and all deposits provided for in this Settlement Agreement.

B.      <u>Implementation Costs.</u>  Within fifteen (15) calendar days of the Preliminary Approval Date, the Secretary shall provide the U.S. Department of the Treasury with all necessary forms and documentation to direct a payment of $5,000,000 to Class Counsel for Implementation Costs, for the benefit of the Class, in accordance with and subject to the following conditions:

   1.      The Secretary shall direct the deposit of these funds into the Designated Account.  Class Counsel shall provide the Secretary in writing with the information necessary to direct the deposit;

   2.      Class Counsel shall use these funds solely for Implementation Costs provided for in this Settlement Agreement; and

   3.      Class Counsel shall provide the Secretary with monthly written reports related to the expenditure of the funds provided in this Section.  The monthly reports, which may be submitted on the Monthly Disbursement Reporting Form (Ex. E), shall identify (a) to whom Class Counsel has paid the funds, (b) the amount of such payment, (c) when the funds were paid, and (d) for what purpose the payment has been made, with reference to this Settlement Agreement.

C.      If Class Counsel determines that the $5,000,000 is insufficient to cover the Implementation Costs, Class Counsel may submit additional written requests to the Secretary for up to three additional payments of $5,000,000 each, to be used for Implementation Costs, subject to the conditions in Section VII.B.  Class Counsel must submit a separate request for each of the additional payments, and for the final request must explain why the additional funding is warranted.

D.      The Secretary shall, within thirty (30) calendar days of an additional written request specified in Section VII.C, provide the U.S. Department of the Treasury with all necessary forms and documentation to direct the payment of the requested funds to Class Counsel, for the benefit of the Class, in accordance with and subject to the

conditions in Section VII.B.

E.   <u>Attorneys' Fee Award and Class Representative Service Awards.</u>  The Secretary's Counsel shall, within fifteen (15) calendar days of the Effective Date, and subject to the approval of the Court, provide the U.S. Department of the Treasury with all necessary forms and documentation to direct a payment to Class Counsel, for the benefit of the Class, the Fee Award, and to direct payment to the Class Representatives for the Class Representative Service Awards subject to the following conditions:

    1.   The United States shall direct the deposit of the Fee Award funds into a Designated Account.  The United States shall direct the deposit of the Class Representative Service Awards into a separate Designated Account. Class Counsel shall provide the Secretary in writing with the information necessary to direct the deposits; and

    2.   Class Counsel shall use these funds solely to pay (a) the Fee Award and (b) the Class Representative Service Awards.

F.   <u>Compensation Fund Payment.</u>  The Secretary's Counsel shall, within sixty (60) calendar days of the Effective Date, provide the U.S. Department of the Treasury with all necessary forms and documentation to direct a payment to Class Counsel, for the benefit of the Class, the Total Compensation Fund, which is $680,000,000 minus the Fee Award and the Class Representative Service Awards, subject to the following conditions:

    1.   The United States shall direct the deposit of these funds into a Designated Account.  Class Counsel shall provide the Secretary's Counsel in writing with the information necessary to direct the deposit;

    2.   Class Counsel shall use these funds solely to pay Final Track A Liquidated Awards, Final Track A Liquidated Tax Awards, Final Track B Awards, and Debt Relief Tax Awards to, or on behalf of, Class Members pursuant to the Non-Judicial Claims Process; and

    3.   Class Counsel shall provide the Secretary with written quarterly reports related to the expenditure of the funds provided in this Section.  The quarterly reports, which may be submitted on the Quarterly Disbursement Reporting Form (Ex. E), shall identify (a) to whom Class Counsel has paid the funds, (b) the amount of such payment, (c) when the funds were paid, and (d) for what purpose the payment has been made, with reference to this Settlement Agreement.  If Class Counsel has expended funds to pay Final Track A Liquidated Awards, Final Track A Liquidated Tax Awards, Final Track B Awards and Debt Relief Tax Awards during the reporting period, Class Counsel shall also identify the number of such awards.

G.     Once the funds paid by the Secretary's Counsel under this Settlement Agreement are deposited into the Designated Accounts, the United States has no liability whatsoever for the protection or safeguard of the deposited funds, regardless of bank failure, fraudulent transfers, or any other fraud or misuse of the funds.

H.     Nothing in this Settlement Agreement shall limit in any way the duties owed by Class Counsel to the Class under any applicable law, including any law governing counsel's management or handling of client funds.

I.     The funds that the United States pays, and the Debt Relief that the Secretary makes, pursuant to this Settlement Agreement are inclusive of damages and other monetary relief, attorney's fees, expenses, costs, tax payments, interest, and costs, and are the only funds to be paid by the Secretary and/or the United States under this Settlement Agreement.

J.     The limitations on funding in this Settlement Agreement apply notwithstanding a determination by the Class Representatives, the Class, or Class Counsel that the funds made available under this Settlement Agreement are inadequate to pay claims submitted pursuant to the Non-Judicial Claims Process, attorney's fees, expenses, and costs incurred under this Settlement Agreement, and/or Implementation Costs incurred under this Settlement Agreement.

K.     The Class Representatives, the Class, and/or Class Counsel may not terminate this Settlement Agreement because the Class Representatives, the Class, and/or Class Counsel assert that the Cost Cap is inadequate, and neither the Class Representatives nor Class Counsel shall be permitted to amend, alter, or reduce their obligations and duties under this Settlement Agreement in any manner.  The Class Representatives and Class Counsel agree to continue with implementation of this Settlement Agreement notwithstanding the amount of Implementation Costs incurred under this Settlement Agreement.  The Secretary shall have no responsibility for Implementation Costs above the Cost Cap.

L.     The Class will have sole responsibility to comply with their own applicable federal, state, and local tax requirements that arise as a result of this Settlement Agreement. Class Counsel will have sole responsibility to comply with their own applicable federal, state, and local tax requirements that arise as a result of this Settlement Agreement.

## VIII.   MORATORIUM ON ACCELERATIONS, FORECLOSURES, AND OFFSETS

A.     Upon preliminary approval of the Settlement Agreement, FSA farm loan program debts held by borrowers who are identified as Native Americans in the Service Center Information Management System or its successor database, or who file claims pursuant to this agreement, will be considered under review, and USDA shall suspend all collection efforts by FSA as to such debts, including all efforts to

seize personal property, requests or renewal of requests for internal administrative offsets of other farm program payments, referrals, or renewal of referrals, to the Department of the Treasury for the Treasury Offset Program or cross-servicing, actions to accelerate loan accounts, and actions to foreclose on real or personal property.  Any debt that was referred to the Department of the Treasury prior to the date of the preliminary approval of the Settlement Agreement remains valid and legally enforceable, and will be collected in accordance with applicable laws.  For debts held by those identified persons in the Service Center Information Management System who do not participate in the claims process, this moratorium on collection action will end at the end date of the claims application period.

B.      USDA and/or Secretary's Counsel will within ten (10) days of Preliminary Approval Date, issue written and electronic notice to its Finance Office, all Farm Service Agency state and district offices and FSA Service Centers and to United States Attorney's Offices and/or the Executive Office of United States Attorneys of the terms of this moratorium on foreclosures, accelerations and offsets.  USDA will instruct the Finance Office and FSA offices to immediately implement these provisions.

C.      For Claimants, the Secretary agrees to refrain from (1) accelerating, (2) foreclosing, or (3) using administrative offsets, of any FSA Farm Loan Program loan held by each and every Claimant from the date on which the Settlement Administrator informs USDA of that Claimant's claim until 30 calendar days after the Preliminary Accounting Date or until the claim is denied, whichever is earlier.

D.      This Section does not:

1.      Prohibit the Secretary from taking any action up to, but not including, acceleration, foreclosure or offset that is necessary to protect his interests or service a loan under applicable law;

2.      Prohibit a United States Attorney from proceeding with a foreclosure already referred to him/her by USDA if the United States Attorney determines in his/her sole discretion not to suspend the foreclosure pursuant to this moratorium.

## IX.      NON-JUDICIAL CLAIMS PROCESS

A.      GENERAL REQUIREMENTS

1.      To obtain a Claim Determination under this Settlement Agreement, a Claimant must submit a Complete Claim Package to the Claims

888856.5 5                                                      14

Administrator by the Claim Deadline, or, for those Claimants who are asked for supplemental information, within 60 days of the date of such notice of an incomplete claim package, or the Claim Deadline, whichever is later.  The submission date shall be the date of postmark if the Claim Package is sent via first-class mail, the date of deposit if sent by courier or overnight delivery, and the date of transmission if sent electronically.

2.     Election of Remedies:  In addition to this case, there are other cases pending in which discrimination in the USDA Farm Loan Program was alleged.  Those cases include: *Pigford v. Vilsack*, No. 97-1978 (PLF) (D.D.C.) (alleging discrimination against African American farmers) , *In Re Black Farmers Discrimination Litigation*, No. 08-0511 (MC) (D.D.C) (also known as "*Pigford II*")(alleging discrimination against African American farmers who filed untimely claims), *Love v. Vilsack*, No. 00-2502 (RBW) (D.D.C.) (alleging discrimination against women farmers), and *Garcia v. Vilsack*, No. 00-2445 (RBW) (D.D.C.)(alleging discrimination against Hispanic farmers).

Individuals who filed claims in the *Pigford v. Vilsack* case are deemed to have elected to pursue their claims in that action and have waived any right to obtain relief through this Settlement.  Individuals who filed claims or requests to file late claims in *Pigford* and were then encompassed *by Pigford II*, will waive their right to pursue a claim through this Settlement unless they withdraw their claim or their request to file a late claim before the deadline has passed by which claims must be filed through this Settlement.  Individuals who file claims in connection with the *Love v. Vilsack* or the *Garcia v. Vilsack* cases will waive their right to pursue a claim through this Settlement unless they withdraw their claim before the deadline has passed by which claims must be filed through this Settlement. Individuals who opt out of any of the above-identified cases and have pursued judicial or administrative remedies are deemed to have hereby waived their right to pursue a claim for relief under this Settlement.  The United States hereby agrees to settle with members of this case on the premise that only one award will be made to an individual for alleged discrimination under ECOA during the time period of January 1, 1981 and November 24, 1999, and that this Settlement is a compromise of all claims.  Such individuals will be identified by the Claims Administrator as follows:

a.     Once the Court enters an order permitting the United States to disclose the information described in this paragraph, for purposes of identifying persons who have submitted claims in *Pigford II*, *Love* or *Garcia*, the Secretary and/or the Secretary's Counsel shall provide to the Claims Administrator on a monthly basis a list of

persons who have submitted or do submit claims in those cases, including names, addresses, social security numbers, and the date on which the claim was deemed to be submitted, and will update this list on a monthly basis through the conclusion of the *Keepseagle* claims process to reflect any withdrawals of claims as well as any additional claims made in those cases.

b.    For purposes of identifying persons who submitted claims in *Pigford*, Class Counsel will provide to the Claims Administrator a list of persons who have submitted claims, including names, addresses, social security numbers, and the date on which the claim was deemed to be submitted.

c.    The claim form (Ex. C) will require each Claimant to acknowledge whether they are participants in any of the above-identified cases.

3.    "Complete Claim Package" is:

a.    A completed Claim Form (Ex. C), and the Claimant's declaration, under penalty of perjury, that each of the statements provided by the Claimant is true and correct;

b.    For a Claimant who seeks Debt Relief, a statement that the Claimant seeks such an award and an executed Authorization to Disclose Debt Information Form (Ex. D);

c.    For a Claimant who is deceased, (i) a death certificate, and (ii) either (A) proof of current legal representation, or (B) in a situation in which a legal representative has not yet been appointed, a sworn statement describing why the submitting individual believes he or she will be appointed the legal representative of the Claimant's estate; and

d.    For a Claimant unable to submit a claim on his or her own behalf due to a physical or mental limitation, (i) proof of legal representation or (ii) a sworn statement describing why the Claimant is unable to submit a claim on his or her own behalf and why the submitting individual asserts a right to do so on the Claimant's behalf.

4.    A Claimant may be represented in this Claims Process by Class Counsel or Individual Counsel, or the Claimant may submit a claim without counsel.  Class Counsel shall provide Track A Claimants with assistance in preparing and submitting the forms (done by paralegals and/or contract attorneys under the supervision of Class Counsel), unless that Claimant

elects to be represented by Individual Counsel or elects to submit a claim without counsel.  For Track A, if a Claimant elects to be represented by Individual Counsel, the Claimant must make separate arrangements to pay Individual Counsel.  Such payment shall be subject to the terms of this Settlement Agreement and the Track A Individual Counsel Fee Cap.  For Track B, if a Claimant elects to be represented by either Class Counsel or Individual Counsel, the Claimant must make separate arrangements to pay Class Counsel or Individual Counsel.  Such payment shall be subject to the terms of this Settlement Agreement and the Track B Fee Cap.  An attorney who serves as Individual Counsel consents to the terms of this Settlement Agreement and agrees to abide by all orders of the Court in this Case.

5.    In the case of a Claimant who is deceased, the legal representative of the Claimant's estate may submit a claim on the Claimant's behalf.  If there is no legal representative, any other individual who asserts a right to be the legal representative of the Claimant's estate may submit a claim on the Claimant's behalf.  If there is no legal representative and more than one individual submits a claim on behalf of the Claimant, the Track A Neutral handling the Claimant's Claim shall decide which of the individuals is entitled to pursue the claim on the Claimant's behalf, and this decision shall be final and non-reviewable, subject to paragraph 7 below.

6.    In the case of a Claimant who is unable to submit a claim on his or her own behalf due to a physical or mental limitation, the Claimant's legal representative may submit a claim on the Claimant's behalf.  If there is no legal representative, any other individual who asserts a right to be the legal representative may submit a claim on the Claimant's behalf.  If there is no legal representative and more than one individual submits a claim on behalf of an individual who is unable to submit a claim on his or her own behalf, the Track A Neutral handling the Claimant's Claim shall decide which of the individuals is entitled to pursue the claim on the Claimant's behalf, and this decision shall be final and non-reviewable, subject to paragraph 7 below.

7.    If a claim submitted under paragraphs 5 or 6 above prevails, and a legal representative for the Claimant or the Claimant's estate has not yet been appointed, the Claimant's Track A Award or Track B Award shall be held for up to one year in a separate account established by Class Counsel for the benefit of the Claimant or the estate until a legal representative to whom the funds may be disbursed is appointed.  The Claims Administrator may extend this period, up to 180 days, upon receipt of proof that a probate petition is pending in the appropriate Court. Regardless of who the Neutral decides would be permitted to submit the

claim under paragraph 5 or 6, payment will be made on behalf of such successful claims only to a duly recognized legal representative as set forth in this paragraph.

8.    A Claimant's election of Track A is irrevocable and exclusive.  A Claimant's election of Track B is irrevocable and exclusive, except as provided in paragraph 6 of Section IX.B.

9.    The Claim Determinations, and any other determinations made under this Non-Judicial Claims Process are final and are not reviewable by the Claims Administrator, the Track A Neutral, the Track B Neutral, the District Court, or any other party or body, judicial or otherwise.  The Class Representatives and the Class agree to forever and finally waive any right to seek review of the Claim Determinations, and any other determinations made under this Non-Judicial Claims Process.  Nothing in this Settlement Agreement shall preclude the United States from exercising its lawful authority to investigate or otherwise pursue criminal or civil misconduct arising from the claims process.

10.   Except as specified in paragraph 5 of Section IX.B and paragraph 2 subsection a of Section IX.A, the Secretary and/or the United States shall have no role in the Non-Judicial Claims Process.

11.   All Track A Liquidated Awards, Track A Liquidated Tax Awards, Track B Awards and Debt Relief Tax Awards shall be paid from the Designated Account.  Debt Relief Awards shall be written off directly by the Secretary, and shall not be paid from the Designated Account.

12.   The Secretary and/or the United States shall not be liable to pay the Claims Administrator, the Track A Neutral, the Track B Neutral, the Track B Expert, or any of their employees and agents.  Subject to the Cost Cap, all fees, costs, and expenses incurred by the Claims Administrator, the Neutrals, the Track B Expert, and any of their employees and agents shall be paid from the Designated Account as Implementation Costs.

13.   The Secretary and/or the United States shall have no obligation to provide any information, documents, or discovery to the Class, Class Members, or Class Counsel, except as provided in paragraph 5 of Section IX.B and paragraph 2 subsection a of Section IX.A, or as otherwise required by law.

14.   The Claims Administrator shall send all correspondence and all payments to Claimants, Class Members, and/or their Counsel by first-class mail, postage prepaid.

15.   Class Counsel, the Claims Administrator, and the Neutrals will take

reasonable steps to protect private personal and financial information submitted to them under this Settlement Agreement.

16.     The Claims Administrator and the Track A and B Neutrals shall report periodically to Class Counsel any issues of concern that arise in the course of the execution of their duties.

B.     REVIEW OF THE CLAIM SUBMISSION AND THE CLASS MEMBERSHIP DETERMINATION

1.     Upon receipt of a claim, the Claims Administrator shall first determine whether the Claimant's submission satisfies the Claim Deadline and whether the submission is a Complete Claim Package.  The Claims Administrator shall make every reasonable effort to complete this determination within ten (10) days of receipt of the claim.

2.     For each Claimant who has submitted an incomplete Claim Package or for each Claim Package that the Claims Administrator is unable to determine whether it is complete, the Claims Administrator shall send to the Claimant and his or her Counsel a completed Your Claim Package is Not Complete Form (Ex. F).  A Claimant shall have 60 calendar days from the date of postmark of such a Form, or until the Claim Deadline, whichever is later, to submit, either by first-class mail, postage prepaid, or electronically, a Complete Claim Package.  There shall be no exceptions to or extensions of the time frames set forth in this paragraph, and the failure of a Claimant to provide any requested materials within the specified time frames will result in that Claimant's obtaining a final and unreviewable adverse determination.

3.     For each Claimant whose claim is untimely submitted, the Claims Administrator shall return the Claim Package to the Claimant and his or her Counsel with a completed You Have Not Submitted Your Claim On Time Form (Ex. G).  This determination is final and not reviewable by the Claims Administrator, the Track A Neutral, the Track B Neutral, the District Court, or any other party or body, judicial or otherwise.

4.     For each Claimant who the Claims Administrator determines to have submitted a timely Complete Claim Package and who elects Track A, the Claims Administrator shall complete Part I of a Track A Claim Determination Form (Ex. A) and shall send the Track A Claim Determination Form and the Class Member's Complete Claim Package electronically to the Track A Neutral.

5.     For Class Members seeking Debt Relief who submit an Authorization to Disclose Debt Information Form (Ex. D), the Claims Administrator shall

complete the Authorization to Disclose Debt Information Form received from the Class Member, shall send it, along with the Class Member's completed Claim Form, to the FSA, and shall request that FSA (i) confirm whether the Class Member has an outstanding Farm Loan Obligation; and (ii) provide a list of all outstanding loans the individual has had and, for all outstanding loans, the applicable loan(s) balances and loan payoff amount(s) for a Debt Relief Award, including the year each loan was issued.  Further, FSA shall search PLAS data available through its easily-accessible electronic data sources and, to the extent such information is contained in such easily-accessible electronic data sources, identify any Class Member who received a prior write-down or write-off of a farm loan program loan within the Class Period and the year(s) that each prior write-down or write-off occurred. Within sixty (60) calendar days of receipt of the request or as soon thereafter as is practicable, FSA will return the Authorization to Disclose Debt Information Form to the Claims Administrator with the requested information.  The Claims Administrator shall submit the completed Authorization to Disclose Debt Information Form to the Track A or Track B Neutral reviewing the Class Member's Claim, and shall send a copy to the Class Member, and the Class Member's Counsel, if applicable.

6.     Within ten (10) days after the Claim Deadline, for each Claimant who elects Track B, the Claims Administrator shall send the Class Member a notice in writing informing the Class Member of the total number of Class Members who submitted Complete Claims Packages under Track B by the Claim Deadline.  For Track B claims received after the Claims Deadline but which are considered timely pursuant to paragraph 2 of this subsection, this notice shall be sent within ten (10) days of receipt of the Complete Claims Package.  Such notification shall also remind each Class Member of: (a) the definition of Track B Awards; (b) the Track B Cap; (c) the evidentiary requirements for Track B claims; and (d) the possibility that a Class Member's Track B Award will be reduced if the total of all Track B Awards exceeds the Track B Cap.  Such notification shall also inform the Class Member that the Class Member may change his or her election to Track A by so notifying the Claims Administrator in writing within thirty (30) days of the postmark of the notification from the Claims Administrator.  If a Track B Class Member does not so notify the Claims Administrator, his or her claim shall be treated as a Track B claim.

7.     For each Claimant who elects Track B on the Claim Form (Ex. C) and who the Claims Administrator determines to have submitted a timely Complete Claim Package, the Claims Administrator shall complete Part I of a Track B Claim Determination Form (Ex. B) and shall send the Form and the Class Member's claim electronically to the Track B Neutral.

8.      For each Claimant who the Claims Administrator determines to have submitted a timely Complete Claims Package and who elects Track A under on the Claim Form (Ex. C), the Claims Administrator shall follow the procedure in Section IX.C., below.

9.      The Claims Administrator shall make every reasonable effort to complete his or her other duties under this Section within sixty (60) days of receipt of a Complete Claim Package.

C.      TRACK A

1.      For each Claimant asserting a claim under Track A, the Track A Neutral shall determine whether the Claimant has established, by substantial evidence, that each of the following elements is satisfied:

a.      The Claimant is a Native American who farmed or ranched, or attempted to farm or ranch between January 1, 1981 and November 24, 1999;

b.      The Claimant (i) owned or leased, or (ii) attempted to buy or lease (using the loan which is the subject of part c. immediately below), or (iii) had grazing rights on, or authorization to use, farm or ranch land;

c.      The Claimant applied, or attempted to apply, for a specific farm credit transaction(s) at a USDA office between January 1, 1981, and November 24, 1999;

d.      The farm loan(s) for which the Claimant applied was denied, provided late, approved for a lesser amount than requested, encumbered by a restrictive condition(s), or USDA failed to provide an appropriate loan service(s);

e.      At least one instance of conduct defined under sub-paragraph d above, or in paragraph 3 below occurred either during the period January 1, 1981, through December 31, 1996, or during the period November 24, 1997, through November 24, 1999;

f.      USDA's treatment of the loan or loan servicing application(s) led to economic damage to the Claimant; and

g.      The Claimant "filed a discrimination complaint with the USDA" as defined in Section II.E of this Agreement, on condition that the complaint was filed during the period January 1, 1981, through June 30, 1997, or during the period November 24, 1997, through

November 24, 1999.

2.     For each Claimant, the Track A Neutral must make an additional determination that the Claimant has established, by substantial evidence, that:

     a.     The Claimant made a *bona fide* effort to apply for credit or did apply.  Such application or *bona fide* effort may be established by evidence of:

          (1)     the year in which the Claimant applied or attempted to apply and the general time period within that year (*e.g.*, late fall, early spring, sometime in January, February, or March);

          (2)     the type and amount of loan or loan servicing for which the Claimant applied or attempted to apply;

          (3)     how the Claimant planned to use the funds (*e.g.*, identification of crops, equipment, acreage, etc.);

          (4)     how the Claimant's plans for a farm operation were consistent with farming operations in that county/area in that year; and

          (5)     the location where the Claimant made efforts to seek credit assistance.

3.     For each Claimant who asserts that he or she attempted to apply for a loan, the Track A Neutral must make an additional determination that the Claimant has established, by substantial evidence, that USDA actively discouraged the application.  Examples of evidence of active discouragement include but are not limited to:

     a.     statements by a USDA official that, at the time the Claimant wanted to apply, there were no funds available and therefore no application would be provided;

     b.     statements by a USDA official that, at the time the Claimant wanted to apply, there were no application forms available;

     c.     statements by a USDA official that, at the time the Claimant wanted to apply, USDA was not accepting or processing applications;

d.      statements by a USDA official that the Claimant would not qualify for a loan or loan servicing and thus should not bother applying; or

e.      statements by a USDA official that a Claimant must seek a loan from the Bureau of Indian Affairs, rather than through FSA.

4.      The Track A Neutral's determination shall be based solely on the materials submitted by the Claimant and, if applicable, the information provided by FSA in response to a completed Authorization to Disclose Debt Information Form.

5.      The Claims Administrator shall ensure that the Track A Neutral has access to alternate electronic templates for completing Part II of the Track A Claim Determination Form ("Summary of Claim Determination") (Ex. A), for Track A claims which are approved ("Track A Approval Version") and denied ("Track A Denial Version").

6.      If the Track A Neutral determines that the Claimant has satisfied the elements listed above for a credit claim, the Neutral shall complete the Track A Approval Version of Part II Summary of Claim Determination on the Class Member's Track A Claim Determination Form (Ex. A).  If the Track A Neutral determines that the Claimant has not satisfied the elements listed above, the Neutral shall complete the Track B Denial Version of Part II Summary of Claim Determination on the Track A Claim Determination Form (Ex. A).  The Neutral shall make every reasonable effort to complete this determination and send the Track A Claim Determination Form electronically to the Claims Administrator within thirty (30) calendar days of receipt of the claim or within ten (10) calendar days of receipt of the Authorization to Disclose Debt Information Form, whichever is later.

D.      TRACK B

1.      For each Claimant asserting a claim under Track B, the Track B Neutral shall determine whether the Claimant has established, by a preponderance of the evidence and through documentary evidence admissible under the Federal Rules of Evidence (subject to paragraph 2 of this Section ), each of the following elements:

a.      The Claimant is a Native American who farmed or ranched, or attempted to farm or ranch, between January 1, 1981, and November 24, 1999;

b.      The Claimant owned or leased, attempted to own or lease, or had grazing rights on or authorization to use farm or ranch land;

c.     The Claimant applied for a specific farm credit transaction(s) at a USDA office between January 1, 1981, and November 24, 1999. An attempt to apply for a farm credit transaction is insufficient;

d.     The farm loan(s) or servicing option for which the Claimant applied was denied, provided late, approved for a lesser amount than requested, encumbered by a restrictive condition(s), or USDA failed to provide an appropriate loan service(s);

e.     The treatment of the Claimant's loan or loan servicing application(s) by USDA was less favorable than that accorded a specifically identified, similarly situated white farmer(s) and at least one instance of less favorable treatment occurred either during the period January 1, 1981, through December 31, 1996, or during the period November 24, 1997, through November 24, 1999;

f.     USDA's treatment of the loan or loan servicing application(s) led to economic damage to the Claimant; and

g.     The Claimant "filed a discrimination complaint with the USDA" as defined in Section II.E of this Agreement, on condition that the complaint was filed during the period January 1, 1981, through June 30, 1997, or during the period November 24, 1997, through November 24, 1999.

2.     Notwithstanding the requirement that each element in Track B be established by a preponderance of the evidence and with documentary evidence admissible under the Federal Rules of Evidence,

a.     Any of the following elements may be established by a credible sworn statement based on personal knowledge by an individual who is not a member of the Claimant's family:

(1)     the identity of a similarly situated white farmer; and

(2)     that the Claimant filed a discrimination complaint with the USDA.

This sworn statement need not be admissible under the Federal Rules of Evidence but must establish these facts by a preponderance of the evidence.

b.     Proof that Claimant is a Native American shall be consistent with the requirements of Section II.BB, above.  If a Claimant is a

member of a federally- or state-recognized tribe, then such membership must be established by documentary evidence as identified in Section II.BB.  If a Claimant identified himself/herself as Native American prior to November 24, 1999, such self-identification may be established (a) by documentation, such as an application for loan or loan servicing assistance submitted to USDA prior to or within the Class Period, or (b) through a credible written narrative, submitted under penalty of perjury, in which the individual describes in detail the circumstances establishing his/her Native American ancestry sufficient to persuade the Track B Neutral of its genuineness and authenticity, as described in Section II.BB.

c.      The Claimant's loan application and supporting documents forming the basis of the Claimant's claim are deemed admissible upon a sworn statement by the Claimant that the loan application and supporting documents were submitted to FSA contemporaneously with the date of the application.  FSA documents that were provided to the Claimant in response to the Claimant's loan application are also deemed admissible upon a sworn statement by the Claimant that the Claimant received the FSA documents in response to the Claimant's loan application; and

d.      Nothing in this Section precludes a Claimant from submitting expert testimony to explain the documentary evidence submitted by the Claimant with respect to paragraph 1, subsection f of this Section.

3.      Once the Claimant has submitted documentary evidence admissible under the Federal Rules of Evidence or other evidence as provided for above in paragraphs 1 and 2 of this Section on each element, the Track B Neutral may consider the materials submitted by the Claimant, the opinion and analysis by the Track B Expert, and any other information or material deemed appropriate for consideration by the Track B Neutral.

4.      The Claims Administrator shall ensure that the Track B Neutral has access to alternate electronic templates for completing Part II of the Track B Claim Determination Form ("Summary of Claim Determination") (Ex. B), for Track B claims which are approved ("Track B Approval Version") and denied ("Track B Denial Version").

5.      If the Track B Neutral determines that the Claimant has satisfied the elements listed above, the Neutral shall complete the Track B Approval Version of Part II Summary of Claim Determination on the Claimant's

Track B Claim Determination Form (Ex. B).  If the Track B Neutral determines that the Claimant has not satisfied the elements listed above, the Neutral shall complete the Track B Denial Version of Part II, Summary of Claim Determination on the Track B Claim Determination Form (Ex. B).  The Neutral shall make every reasonable effort to complete the determination and send the Track B Claim Determination Form electronically to the Claims Administrator within thirty (30) calendar days of receipt of the claim.

E.     DEBT RELIEF

1.     Each Class Member who receives either a Track A or Track B Award and who has outstanding debt with USDA shall be entitled to a Debt Relief Award as defined in this Settlement Agreement.

2.     The Claims Administrator shall determine the amount of the Debt Relief for each Prevailing Claimant entitled to Debt Relief by determining the sum of all outstanding loans identified by USDA pursuant to paragraph 5, Section IX.B.

3.     Each Class Member who receives a Debt Relief Award shall be paid a Debt Relief Tax Award in an amount equal to 25% of the amount of the principal extinguished by the Prevailing Claimant's Final Debt Relief Award.  The Claims Administrator shall send to the IRS, on behalf of each prevailing Claimant (Track A or Track B) who receives a Debt Relief Award, the amount of the Class Member's Debt Relief Tax Award.  The Claims Administrator shall provide the Class Member's counsel, or the Class Member directly if the Class Member has no counsel, notice that such payment(s) has been made.  When transmitting payment of Track A Liquidated Tax Awards to the IRS, the Claims Administrator shall provide the IRS with the name, address, and Social Security or Taxpayer Identification Number of the Class Member on whose behalf the payment is being made.

4.     The total of all Debt Relief Awards under this Settlement Agreement is subject to an $80,000,000 cap.  This amount does not include the separate Debt Relief Tax Awards.

5.     If the total amount of Debt Relief which all Prevailing Claimants could receive exceeds the $80,000,000 cap, the Claims Administrator shall proceed as follows:

a.     The Claims Administrator will identify all Prevailing Claimants who obtained a loan from USDA on or before November 24, 1999 based upon the information provided by FSA pursuant to

26

paragraph 5, Section IX.B.  This will be referred to as the "Pre-1999 Group."

b.    The Claims Administrator will identify all Prevailing Claimants who first obtained a loan from USDA after November 24, 1999 based upon the information provided by FSA pursuant to paragraph 5, Section IX.B.  This will be referred to as the "Post-1999 Group."

c.    Ninety percent of the Debt Relief cap, or $72 million, will be initially allocated to the Pre-1999 Group, and 10%, or $8 million, will be initially allocated to the Post-1999 Group.

d.    If the total of all debt outstanding for the Pre-1999 Group is more than $72 million, the Claims Administrator will divide each Pre-1999 Group Prevailing Claimant's total outstanding debt by the sum total of all outstanding debt for the Pre-1999 Group to obtain that Pre-1999 Group Prevailing Claimant's "pro rata percentage share of debt relief."  Then, the Claims Administrator shall multiply each Prevailing Claimant's pro rata percentage share of debt relief by $72 million to obtain that Prevailing Claimant's Debt Relief Award.

e.    If the total of all debt outstanding for the Pre-1999 Group is less than $72 million, then each Pre-1999 Group Prevailing Claimant will receive his or her full Debt Relief Award, and any unused Pre-1999 Group debt relief funds will be transferred to the Post-1999 Group.

f.    If the total of all debt outstanding for the Post-1999 Group is more than $8 million, the Claims Administrator will divide each Post-1999 Group Prevailing Claimant's total outstanding debt by the sum total of all outstanding debt for the Post-1999 Group to obtain that Prevailing Claimant's "pro rata percentage share of debt relief."  Then, the Claims Administrator shall multiply each Post-1999 Group Prevailing Claimant's pro rata percentage share of debt relief by $8 million to obtain that Prevailing Claimant's Debt Relief Award.

g.    If the total of all debt outstanding for the Post-1999 Group is less than $8 million, then each Post-1999 Group Prevailing Claimant will receive his or her full Debt Relief Award, and any unused Post-1999 Group debt relief funds will be transferred to the Pre-1999 Group if the Pre-1999 Group did not receive full Debt Relief Awards.

F.     DISTRIBUTION OF CLAIM DETERMINATIONS AND SETTLEMENT FUNDS

1.     On a monthly basis, the Claims Administrator shall provide to the Secretary and to Class Counsel a written report, which may be provided on the Monthly Claim Determination Reporting Form (Ex. H), that includes: (a) the name, address, and Social Security or Taxpayer Identification Number of each Class Member who has completed the claims process; (b) the Class Member's FSA Account Number, and (c) whether the Class Member prevailed.

2.     Within thirty (30) calendar days of receipt of all Track A and Track B Claim Determination Explanation Forms, the Claims Administrator shall calculate: (a) the sum of all Track A Liquidated Awards and Track A Liquidated Tax Awards; (b) the sum of all Provisional Track B Awards; (c) the sum of all Final Track A Liquidated Awards, Final Track A Liquidated Tax Awards, and Final Track B Awards, as calculated below; (d) the Implementation Costs incurred to date; and (e) a good faith estimate of Implementation Costs necessary for the Claims Administrator to perform its final duties under this Settlement Agreement.

In order to calculate each Class Member's Final Award(s), the Claims Administrator shall do as follows:

a.     Determine the Track B Awards:

(1)     If the sum total of all Track B Awards is less than the Track B Cap of $50,000,000, then the Class Member's Final Track B Award shall be equal to the Provisional Track B Award.

(2)     If the sum total of all Track B Awards exceeds the Track B Cap of $50,000,000,

(a)     The Claims Administrator shall divide each Class Member's Track B Award by the sum total of all Track B Awards to obtain that Class Member's "Track B Percentage."

(b)     The Claims Administrator shall multiply each Class Member's Track B Provisional Award by the Track B Percentage to obtain the Class Member's Final Track B Award.

(3)     The Claims Administrator shall calculate the Total Track B

888856.5 5                                      28

Awards as either the Track B Cap of $50,000,000 or the sum of all Track B Awards to Class Members if the total of all Track B Awards is less than the Track B Cap of $50,000,000.

b.    After determining the Total Track B Awards, the Claims Administrator shall calculate the Track A Awards as follows:

(1)    The Claims Administrator shall calculate the Available Track A Funds.  The Available Track A Funds is $680,000,000 minus the Fee Award, the Class Representative Service Awards, the Total Track B Awards, and the sum of the Debt Relief Tax Awards.

(2)    The Claims Administrator shall calculate the sum of Track A Awards by combining the sum of all Track A Liquidated Awards and Track A Liquidated Tax Awards.

(3)    If the Available Track A Funds is equal to or greater than the sum of Track A Awards, each prevailing Track A Class Member's Track A Liquidated Award is deemed to be the Final Track A Liquidated Award and his or her Track A Liquidated Tax Award is deemed to be the Final Track A Liquidated Tax Award.

(4)    If the Available Track A Funds is less than the sum of Track A Awards, then the Claims Administrator shall divide the Available Track A Funds by the sum of Track A Awards to obtain a percentage ("the Percentage").  Each prevailing Track A Class Member's Final Track A Liquidated Award shall be equal to the Percentage multiplied by the Track A Liquidated Award.  Each prevailing Track A Class Member's Final Track A Liquidated Tax Award shall be equal to the Percentage multiplied by the Track A Liquidated Tax Award.

3.    Within thirty (30) calendar days of receipt of all Track A or Track B Claim Determination Forms, the Claims Administrator shall:

a.  For prevailing Track A or Track B Claims, record the Final Track A Awards, Final Track B Awards, Debt Relief Award, and Debt Relief Tax Award in Part II of the prevailing Class Members' Track A and Track B Claim Determination Forms.  This action shall be limited to the arithmetical computation prescribed under IX.E, if applicable, and paragraph 2 of IX.F, above, and shall not alter the substantive

determination on the merits made by the Track A Neutral or Track B Neutral on any individual Track A or Track B claim;

b.   For all Track A or Track B claims, the Claims Administrator shall finalize the formatting of the Track A or Track B Claim Determination Forms;

c.   Prepare the Preliminary Accounting and submit it to Class Counsel and the Secretary.

4.   Within thirty (30) calendar days of the date that the Preliminary Accounting provided for in Section IX.F.3(c) is submitted, the Claims Administrator shall:

a.   Send to each prevailing Track A Class Member who retained Class Counsel or proceeded without counsel the Class Member's Track A Claim Determination Form and a check payable to the Class Member in the amount of the Class Member's Final Track A Liquidated Award.  The Claims Administrator shall also send to the Individual Counsel for each Track A Class Member who retained Individual Counsel the Class Member's Track A Claim Determination Form and a check jointly payable to the Class Member and his or her Individual Counsel in the amount of the Final Track A Liquidated Award.

b.   Send to each prevailing Track B Class Member the Class Member's Track B Claim Determination Form and a check payable to the Class Member in the amount of the Final Track B Award.  The Claims Administrator shall also send to the Individual Counsel for each Track B Class Member who retained Individual Counsel the Class Member's Track B Claim Determination Form and a check jointly payable to the Class Member and his or her Individual Counsel in the amount of the Final Track B Liquidated Award.

c.   Send to each Track A or Track B Class Member who did not prevail, who retained Class Counsel or proceeded without counsel the Class Member's Track A or Track B Claim Determination Forms.  The Claims Administrator shall also send to the Individual Counsel for each Track A or Track B Class Member who retained Individual Counsel the Class Member's Track A or Track B Claim Determination Form.

d.   Send to the IRS, on behalf of each prevailing Track A Class Member, the amount of the Class Member's Final Track A

Liquidated Tax Award.  The Claims Administrator shall provide the Class Member's counsel, or the Class Member directly if the Class Member has no counsel, notice that such payment(s) has been made.  When transmitting payment of Track A Liquidated Tax Awards to the IRS, the Claims Administrator shall provide the IRS with the name, address, and Social Security or Taxpayer Identification Number of the Class Member on whose behalf the payment is being made.

e.  Send to the FSA, on behalf of each prevailing Track A and Track B Class Member, notice of the amount of the Class Member's Debt Relief Award.  The Claims Administrator shall inform the Class Member's counsel, or the Class Member directly if the Class Member has no counsel, that such notice to the FSA has been made.  When transmitting notice of Track A or Track B Debt Relief to FSA, the Claims Administrator shall provide FSA with the name, address, and Social Security or Taxpayer Identification Number of the Class Member who received the award as well as the FSA Account Number of the loan to which the credit should be made.

5.  Within sixty (60) calendar days of the date of the last payment made by the Secretary pursuant to Section VII.C, the Claims Administrator shall cause to be paid from the Designated Account any outstanding Implementation Costs up to the Cost Cap.

6.  All checks distributed under this Section, exclusive of those that are directly deposited, will be valid for 180 calendar days from the date of issue.  The funds corresponding to any check that remains uncashed 181 calendar days from its date of issue shall be distributed *pro rata* to all prevailing Class Members, unless the total amount of uncashed checks is less than $250,000, in which case the unclaimed funds shall be distributed pursuant to paragraph 7, below.  The Claims Administrator shall send a check made payable to the Class Member in the amount of the *pro rata* distribution, if applicable.  These checks will be valid for 180 calendar days from the date of issue.  Notwithstanding any other provision, no Class Member shall receive a total cash payment of more than his or her Provisional Track A Award or Provisional Track B Award.

7.  In the event there is a balance remaining in the Designated Account after the last check has been cashed, the last check has been invalidated due to passage of time, and after the passage of time set forth in paragraph 7 of

Section IX.A, the Claims Administrator shall direct any leftover funds to the Cy Pres Fund.  Class Counsel may then designate Cy Pres Beneficiaries to receive equal shares of the Cy Pres Fund.  The Claims Administrator shall send to each Beneficiary, via first class mail, postage prepaid, a check in the amount of the Beneficiary's share of the Cy Pres Fund.  Designations shall be for the benefit of Native American farmers and ranchers, upon recommendations by Class Counsel and approval by the Court.

8.    Within 200 calendar days of making all payments set forth in this Section, the Claims Administrator shall prepare the Final Accounting and submit it to Class Counsel and the Secretary.

## X.    THE DUTIES OF CLASS COUNSEL

A.    Class Counsel shall:

1.    Perform all duties set forth in Rule 23, Fed.R.Civ.P., those ordered by the Court, and those provided for in this Settlement Agreement;

2.    Provide assistance without additional charge to Claimants who elect to submit claims under Track A;

3.    Provide notice of this Settlement Agreement to Class Members pursuant to Section V;

4.    Answer Class Member questions;

5.    Provide information to Class Members regarding the status of claims processing or the distribution of the funds provided under this Settlement Agreement; and

6.    Perform other such duties as may be incidental to proper coordination of this Settlement Agreement.  Class Counsel shall have no obligation to perform any legal work for any Class Member related to the probate of a Class Member's estate, including the appointment of executors or legal representatives.

## XI.    AUDIT OF CLAIMS

A.    In addition to other measures within the claims process designed to protect against fraud, USDA or a third-party contractor of the agency may audit the claims submitted pursuant to this Agreement.  Such audit would not interfere with the timely completion of

the claims process and disbursement of settlement funds in accordance with the schedule prescribed in this Agreement.  As a result of any audit conducted, USDA and/or any other government agency may, to the full extent permitted by law, make referrals for investigation or prosecution or prosecute or take other enforcement action to address any evidence of fraud.  Nothing in this Settlement Agreement shall preclude the United States from exercising its lawful authority to investigate or otherwise pursue criminal or civil misconduct arising from the claims process.

## XII.   PROGRAMMATIC RELIEF

A.   THE COUNCIL FOR NATIVE AMERICAN FARMING AND RANCHING

1.   **Establishing the Council.**  Subject to and contingent upon meeting all requirements of the Federal Advisory Committee Act ("FACA"), USDA will take steps to establish a Council for Native American Farming and Ranching ("Council"), comprised of Native American leaders and senior officials of the Farm Service Agency and USDA.

2.   **The Council's Purpose.**  The Council is expected to discuss issues related to the participation of Native American farmers and ranchers in USDA farm loan programs and to transmit recommendations concerning any changes to FSA regulations or internal guidance or other measures that would eliminate barriers to program participation for Native American farmers and ranchers.

3.   **The Council is Subject to FACA.**  USDA reserves to itself all discretion required by FACA, including, but not limited to, the determination as to whether establishment of the Council is in the public interest, consultation with the General Services Administration ("GSA"), final authority to appoint Council members except as otherwise expressly set forth in this Agreement, and discretionary re-authorization of the Council.

4.   **Composition and Selection of the Council.**  The Council will be composed of fifteen members.

a.   **Selection of Native American representatives:**  Of those members, no fewer than eleven will be selected to represent the interests of Native American farmers and ranchers.  Class Counsel may nominate up to eleven individuals to fill the slots designated for members who represent the interests of Native American farmers and ranchers.  The Secretary will select no fewer than five members of the Council from the individuals nominated by Class Counsel, as long as Class Counsel do not fail to nominate at least

five individuals to serve on the Council and at least five individuals nominated by Class Counsel meet the requirements in FACA and regulations applicable for service on a committee created under FACA.  All candidates proposed by Class Counsel will be given due consideration by the Secretary.  If any candidate proposed by Class Counsel is disqualified by the Secretary, then Class Counsel shall have the opportunity to nominate a replacement candidate(s).

b.      **Members who represent the USDA:** Council membership shall include the following senior officials of USDA: (1) the Director, Office of Tribal Relations or his or her delegate, (2) the FSA Administrator or his or her delegate, (3) the Assistant Secretary for Civil Rights or his or her delegate, and (4) the Deputy Administrator for Farm Loan Programs or his or her delegate.  In the event that these job titles change or are eliminated during the Term of this Agreement, these roles will be filled by other senior management officials appointed by the Secretary.

5.      **Council Meetings and Procedures.**  USDA will schedule Council meetings no fewer than two times each fiscal year and determine the locations of those meetings.  If the USDA or Council determines that a meeting cannot be held as scheduled, the USDA will re-schedule the meeting for a date within the fiscal year if such a date is appropriate.  The Council shall establish procedures for its operation.

a.      **Quorum.** A minimum of 8 members shall be present or participating by telephone or other electronic means such as video conferencing to constitute a quorum.

b.      **Reimbursement of costs and other payments to Council members.**  In the event that Council meetings require travel, the USDA will reimburse Council members for reasonable travel expenses consistent with federal regulations and agency policy. Council members who represent the interests of Native American farmers and ranchers will be paid an amount not less than $100 per day for time spent away from their employment or farming or ranching operation, subject to the availability of funds.  If there is a shortfall of appropriated funds for the Council for the payment of travel expenses or honoraria, USDA will notify Council members as soon as reasonably practicable.

B.      USDA OMBUDSPERSON FOR NATIVE AMERICAN AND OTHER SOCIALLY DISADVANTAGED FARMERS AND RANCHERS.

1.    **Establishing an Ombudsperson.**  USDA will create a USDA Ombudsperson position to address issues relating to Native American farmers and ranchers, as well as other socially disadvantaged farmers or ranchers.

2.    **Duties of the Ombudsperson.**  The Secretary will assign the Ombudsperson such duties as he decides, in his discretion, are appropriate Such duties may include, but are not limited to, reviewing statistics from farm loan program and USDA program data systems; tracking the frequency, type, and location of civil rights complaints; serving as a point of contact and coordination for Federal Advisory Committees, individual producers, the Office of Tribal Relations, and other senior officials at USDA; referring systemic programmatic issues raised by the Council for Native American Farming and Ranching or the Ombudsperson on his or her own initiative to the USDA Office of the Inspector General for audit or investigation; and referring individual complaints of discrimination to the Office of the Assistant Secretary for Civil Rights (OASCR) for processing.

C.    REPORTS & INVESTIGATIONS.

1.    In order to aid in its efforts to identify and address areas where its Farm Loan Program might or might not fully and fairly serve Native Americans, the USDA agrees regularly to collect and evaluate data that will permit a comparison between the volume of loans sought by Native Americans and the volume of loans awarded to Native Americans.

   a.    Data will be collected and evaluated for each State, on a State-wide basis; and

   b.    For the following States, additional data will be collected on a county-wide basis (in alphabetical order): Alabama, Arizona, Arkansas, California, Colorado, Montana, Nevada, New Mexico, North Dakota, Oklahoma, South Dakota, Texas, Utah, Washington, Wyoming.

2.    The results of this collection and evaluation of data, by county and state, will be reported at least semi-annually to the USDA Ombudsperson, to the Council and to Class Counsel. If the Council determines, in its sole discretion, that significant and unexplained disparities exist between the volume of loan sought by, and the volume awarded to, Native Americans as compared with Caucasian applicants who receive loans, the Council may request that USDA investigate the circumstances surrounding the disparity and, if USDA considers any action relative thereto to be

warranted, USDA will take whatever action it considers to be appropriate to improve the delivery of service provided to Native Americans. The USDA retains sole discretion whether to investigate and whether to take any actions or actions relative thereto.

**3.** The USDA may, in its sole discretion, report to the Ombudsperson, to the Council and/or to Class Counsel the results of investigation(s) relative to the matters addressed in paragraph 1 of this subsection, above, and any actions it has taken or proposes to take in response to any such investigation.

**4.** The Council, or any member, the Ombudsperson and/or Class Counsel may refer to the USDA Inspector General any concerns they may have about any disparity reported relative to the matters addressed in paragraph 1 of this subsection, any investigation by USDA relative to such matters and/or any action taken by USDA in response to any such investigation.

D.    ENHANCED SERVICES FOR NATIVE AMERICANS

**1.**    **Enhancing Services.**  USDA, through efforts of FSA and the Office of Tribal Relations ("OTR"), will enhance the service for Native American farmers and ranchers by establishing 10 to 15 regional venues that will do the following:

a.    Teach intensive financial, business and marketing planning skills and understanding of basic and advanced farm and ranch business management skills to Native American farmers and ranchers.

b.    Teach leasing requirements for tribal trust and restricted lands to Native American farmers and ranchers in coordination with the Bureau of Indian Affairs; and

c.    Support the deployment of tribal agriculture advocates and technical assistance providers in key locations throughout Indian Country, who will serve alongside consolidated sub-offices at Tribal headquarters, tribal agriculture FSA liaisons, third party regional employees, and others.

2.    The USDA will develop and release a plain language customer's guide on how to apply for farm loans and farm loan servicing.

3.    Subject to the availability of funds, as determined by USDA, USDA shall fund consolidated sub-offices at Tribal Headquarters on Indian

888856.5 5                                                36

Reservations, selected by the Secretary after a needs assessment by the Secretary or his delegate. Demonstration of Tribal cultural competency shall be a requirement for employment as a Program Manager or Director in the Tribal sub-offices. Subject to the availability of funds, USDA will employ Program Directors to direct the operations of the sub-offices at Tribal headquarters and, to the extent funds are available, each office will be staffed with a Program Director, Extension Agent, and support staff. USDA will defray the cost of overhead, including the cost of office space. The purpose of the sub-offices shall include, but not be limited to, conducting training, providing technical assistance, and loan outreach and assistance.

4. **Reporting on USDA's Enhanced Services.** USDA shall report on the activities of these regional venues to the Council at each of the Council's meetings.

E. LOAN SERVICING AND RECEIPT OF FUTURE LOANS.

1. For each Prevailing Claimant who is delinquent in payment on a FSA loan, USDA will offer an additional round of loan servicing to each such claimant within 120 days of (a) the Claims Determination, or (b) the distribution of a Debt Relief Award to each such claimant, whichever date is later.

2. If a Prevailing Claimant has a farm program loan discharged as a result of this Agreement, that discharge shall not adversely affect the claimant's eligibility for farm program loans or loan servicing in the future.

3. If a Prevailing Claimant previously received a write-down or write-off of a farm program loan pursuant to a debt settlement of a loan issued within the class period that would have been discharged under this Agreement, then the previous debt settlement will not adversely affect the prevailing claimant's eligibility for farm program loans or loan servicing in the future. The amount of debts settled and/or discharged prior to this Settlement Agreement and referenced in this paragraph do not count against the $80,000,000 cap on debt relief.

F. REVIEWING USDA'S FARM LOAN PROCEDURES AND POLICIES.

1. Within 90 days after Preliminary Approval of this Agreement by the Court, representatives from FSA and the Office of Tribal Relations will meet twice with Class Counsel to engage in consultation on the contents of FLP Handbooks, instructions and administrative notices.

2.      The USDA will make whatever revisions or changes to the contents of the FLP Handbooks, instructions and administrative notices, if any, it concludes are warranted.

3.      After the Council for Native American Farming and Ranching is appointed, Class Counsel will direct any comments or proposals to revision to FSA handbooks, instructions, or notices to the Council for Native American Farming and Ranching and to the Office of Tribal Relations for further ongoing review and consideration by USDA and the Council.

G.      TERM OF PROGRAMMATIC RELIEF

The Programmatic Relief specified in this paragraphs A, B, C, D and F of Section XII, above, shall be provided for a period of five (5) years.  Nothing in this Settlement Agreement shall preclude USDA from maintaining the same, or comparable, programmatic structures and functions for such additional time beyond this five (5) year period as USDA determines, in its sole discretion, to be appropriate.

XIII.   **COURT SUPERVISION OF THE SETTLEMENT AGREEMENT & ENFORCEMENT PROCEDURES**

A.      **Court Supervision.**  The Court shall retain jurisdiction over this action beyond the date of final approval of this Agreement only as set forth below and, with respect to paragraphs 1 through 5 below, only for a period of five years from the date of final approval of this Agreement.

1.      **Non-Judicial Claims Process**.  The Court shall retain jurisdiction over this action to supervise the distribution of the Fund and to ensure that Debt Relief Awards issued by the Track A and Track B Neutrals are applied by USDA, subject to both the limitations provided in IX.E of this Agreement and not to exceed the cap of $80 million.  This continuing jurisdiction will continue until final payment from the Fund and application of the debt relief.  The Court shall have no other role in supervising the provision of debt relief or the methods used to cancel outstanding debt owed to USDA, and shall have no role in resolving any disputes between a Class Member and the United States concerning the provision of debt relief.

2.      **Council on Native American Farming and Ranching**.  The Court shall retain jurisdiction over this action to ensure that the USDA creates the Council on Native American Farming and Ranching, as set out in Section XII.A of this Agreement, and limited by FACA, and that USDA schedules Council meetings in accordance with the scheduling provisions set out in

paragraph 5 of Section XII.A.  The Court shall have no role in supervising the substance of the Council meetings, the composition of the Council, the outcome of the Council meetings, how USDA responds to Council recommendations, or any administrative or budgetary matters involving the Council.

3. **Supplemental Services on Indian Reservations.**  The Court shall retain jurisdiction over this action to supervise whether the USDA conducts within the term of the Agreement an internal assessment concerning the subject of whether a consolidated sub-office or sub-office(s) at Tribal headquarters on Indian Reservations are needed and where such sub-office(s) should be placed.  The Court shall have no role in supervising the content or quality of the internal assessment, requesting or demanding any actions based upon the recommendations contained in the internal assessment, or in supervising USDA office placement or the delivery of USDA services.

4. **Customer's Guide.**  The Court shall retain jurisdiction over this action to supervise whether the USDA releases a customer's guide on how to apply for farm loan programs and farm loan servicing within the term of the Agreement. The Court shall have no role in supervising the content development or quality of the customer's guide.

5. **Moratorium.**  The Court shall retain jurisdiction over this action to supervise whether, pursuant to Section VIII of this Settlement Agreement, the Farm Service Agency issued written or electronic notice to its Finance Office and all Farm Service Agency state and district offices and FSA service centers and to the United States Attorneys' Offices and/or the Executive Office of the United States Attorneys specifically within thirty (30) days of preliminary approval.  The Court shall have no role in supervising the administrative implementation of the moratorium and shall have no role in resolving any disputes between a Class Member and Defendants concerning this issue.

Other than the provisions expressly described above and subject to the limitations agreed upon by the parties above, the Court will not retain jurisdiction over any aspect of this action, or in connection with the enforcement of any of its provisions, after the date of the final approval of this Agreement.

B. **Enforcement of the Settlement Agreement.**  Before seeking any order by the Court concerning any alleged violation of the provisions of this Settlement Agreement that are enforceable by the Court, the parties must comply with the following procedures:

1.   The party seeking enforcement of any of the provisions of this Settlement Agreement that are enforceable by the Court shall serve on the opposing party a written notice that describes with particularity the term(s) of the Settlement Agreement that are alleged to have been violated, the specific errors or omissions upon which the alleged violation is based, and the corrective action sought. The party alleging the violation shall not inform the Court of the allegation at that time.

2.   The parties shall make their best efforts to resolve the matter in dispute without the Court's involvement.  If requested to do so, the party who served the notice shall provide to his opponent any information and materials available to the noticing party that support the violation alleged in the notice.  Upon receipt of a notice, the counsel for the parties agree to meet and confer, and otherwise to work with their clients within forty-five (45) days to respond to the allegation (or 60 days to respond to an allegation of non-compliance regarding debt relief).  If the opposing party fails to respond to a notice of non-compliance within forty-five (45) days (or 60 days in the case of an allegation of non-compliance regarding debt relief), or the parties otherwise cannot resolve the issue, the party who served the notice of violation pursuant to subparagraph (1), above, may move for enforcement of the provisions of this Settlement Agreement that are enforceable by the Court as early as seventy-five (75) days after the date on which the notice was served (or 90 days after the date on which the notice was served in the case of an allegation of non-compliance regarding debt relief).  If, and only if, the plaintiffs prevail in securing enforcement of a contested term of the Agreement over which the Court has retained jurisdiction, the Court may award them reasonable attorneys' fees and costs.

## XIV.  PROCEDURES GOVERNING APPROVAL OF THIS  SETTLEMENT AGREEMENT

A.   Within five calendar days of the Execution Date, the Plaintiffs shall submit this Settlement Agreement and its Exhibits to the District Court along with a motion for its preliminary approval.  The Motion shall specifically request that the Court set a hearing on the Motion and be accompanied by a proposed Preliminary Approval Order, a proposed Settlement Notice, and a proposed Settlement Notice Plan.  The Motion shall specifically request that the Court:

1.   Certify the claims for monetary relief, for settlement purposes only, pursuant to Rule 23(b)(3), Fed.R.Civ.P. in addition to maintaining the class already certified pursuant to Rule 23(b)(2), Fed. R. Civ.P., for the purpose of allowing the pursuit of declaratory and injunctive relief.   Class Counsel and Class Representatives as defined in Sections II.F and II.G of

this Settlement Agreement, respectively,  will be appointed to represent the class in its pursuit of monetary relief under Rule 23(b)(3);

2.     Grant preliminary approval to the Settlement Agreement and its attachments and authorize issuance of the notice attached;

3.     Approve the Plaintiffs' selection of a Notice Administrator, Claims Administrator and Neutrals to perform the duties set forth in this Settlement Agreement within the cost limitations set out in this Settlement Agreement.

4.     Approve the Parties' plan for dissemination of notice of this Settlement Agreement pursuant to Rule 23(e)(1), Fed.R.Civ.P.;

5.     Set the Track A Individual Counsel Fee Cap and the Track B Fee Cap;

6.     Set a date and procedure by which objections from Class Members must be filed;

7.     Set a date for the Fairness Hearing at which time the Court will determine whether the Settlement Agreement should be approved under Rule 23(e), Fed.R.Civ.P.;

8.     Authorize the Secretary to disburse to Class Counsel, for the benefit of the Class, the funds specified in Section VII and order that the expenditure of such funds for purposes of this Settlement Agreement are a proper and consistent use of the funds, and that the Secretary shall not be liable in any other context or proceeding for these funds in the event that the Settlement Agreement becomes void or is voided.

B.     No later than three (3) business days before the Fairness Hearing, the Notice Administrator shall file with the District Court a declaration confirming compliance with the Notice procedures approved by the Court.

C.     At the Fairness Hearing, the Parties will jointly request that the District Court finally approve this Settlement Agreement pursuant to Rule 23(e), Fed.R.Civ.P., and order the items in paragraph A of this Section.  The Parties agree to take all actions necessary to obtain approval of this Settlement Agreement.

D.     In the event the Court approves the Settlement Agreement as fair and reasonable to the class as a whole pursuant to Rule 23 (e), Fed. R. Civ. P., the parties will ask the Court to enter the Settlement Agreement in order that it may become effective as of the Final Approval Date.

1.     Within three business days of the entry of the order approving the

Settlement Agreement, the Plaintiffs will ask the Court to dismiss this action with prejudice pursuant to Rules 41(a)(1) and 23(e), Fed.. R. Civ. P., except to the extent the Court exercises continuing jurisdiction as set forth in Section XIII above.

## XV.   ATTORNEYS' FEES, CLASS REPRESENTATIVE SERVICE AWARDS, EXPENSES, AND COSTS

A.   As part of the Motion for Preliminary Approval of this Settlement Agreement, Plaintiffs will move the Court to approve the Track B Fee Cap and the Track A Individual Counsel Fee Cap and to set the amount of the Track B Fee Cap and the Track A Individual Counsel Fee Cap, except that the amount of the Track A Individual Counsel Fee Cap shall not exceed 2% of a Track A Claimant's Final Award and a Track B Fee Cap shall not exceed 8% of a Track B Claimant's Final Award.

B.   Plaintiffs will ask the Court to approve an award of attorneys' fees and costs to Class Counsel, payable as part of the common fund awarded to the Class, with the understanding that the Plaintiffs may seek, and the Court may award, such attorneys' fees and costs the total amount of which shall be at least 4% and not more than 8% of $760,000,000.  The Secretary reserves the right to respond to the petition for an award of attorneys' fees and expenses that the plaintiffs will file in connection with the settlement.  In the event the Secretary files a response, it will do so no earlier than the last date on which any objections from class members are due to be filed with the Court.

C.   Subject to the Court's approval, the parties agree that Class Representative Service Awards, referred to in Section VII, may be awarded.  Class Counsel intend to recommend awards in the following amounts:

1.   Luke Crasco shall receive $100,000.

2.   Gene Cadotte shall receive $100,000.

3.   Keith Mandan shall receive $100,000.

4.   Porter Holder shall receive $100,000.

5.   George Keepseagle shall receive $100,000.

6.   Marilyn Keepseagle shall receive $100,000.

7.   Claryca Mandan shall receive $200,000.

8.      Estate of John Fredericks, Jr. shall receive $75,000.

9.      Estate of Basil Alkire shall receive $75,000.

The Secretary reserves the right to comment on the amount of the Service Awards.

The receipt of a Class Representative Service Award shall not affect in any way the Class Member's award or debt relief under Section IX.E.

Any payments awarded to these Class Representatives shall be subject to approval by the Court, and any modification or reduction of any award sought by such a Class Member shall not affect the validity of the other terms of this Decree.

D.      The Court's determination of the Fee Award, the Track A Fee Cap, and the Track B Fee Cap shall be conclusive, and neither the Class, nor Class Counsel, nor the Secretary shall appeal the decision.

E.      The Class Representatives, the Class, and/or Class Counsel may not terminate this Settlement agreement because the Class Representatives, the Class, and/or Class Counsel assert that the amount of the Fee Award, the Track A Individual Counsel Fee Cap, or the Track B Fee Cap is inadequate.

F.      The Class Representatives, the Class, and Class Counsel release, acquit, and forever discharge any claim that they may have against the United States for attorney's fees, expenses, or costs associated with their representation of the Plaintiffs, the Class, or any member of the Class in the Case or under this Settlement Agreement. Furthermore, by accepting any payment in connection with services provided in connection with this Agreement, Individual Counsel release(s), acquit(s), and forever discharge(s) any claims that they may have against the United States for attorney's fees, expenses or costs associated with their representation of the Plaintiffs, the Class, or any Member of the Class in the Case or under this Settlement Agreement.

G.      If a person preparing a claim on a Claimant's behalf seeks the Claimant's award as a representative of the Claimant's estate, Class Counsel and Individual Counsel may, but are not required to, represent that Claimant in any probate proceedings. The fee for such probate work is outside the scope of this Settlement Agreement and is not subject to any limitation on attorney's fees, expenses, or costs contained within this Settlement Agreement.

## XVI.  CONDITIONS THAT RENDER SETTLEMENT AGREEMENT VOID OR VOIDABLE

This Settlement Agreement shall be void if it is disapproved by a final Court order not subject to any further review.

## XVII.  EFFECT OF SETTLEMENT AGREEMENT IF VOIDED

A.   Should this Settlement Agreement become void,

1.   The Secretary will not object to reinstatement of this action in the same posture and form as it was pending immediately before the Court granted preliminary approval of the Settlement Agreement.

2.   All negotiations in connection herewith, and all statements made by the Parties at or submitted to the District Court during the Fairness Hearing shall be without prejudice to the Parties to this Settlement Agreement and shall not be deemed or construed to be an admission by a Party of any fact, matter, or proposition.

3.   The Secretary retains all defenses, arguments, and motions as to all claims that have been or might later be asserted in the Case, and nothing in this Settlement Agreement shall be raised or construed by any Plaintiffs, Claimants, the Class Representatives, the Class, or Class Counsel, to defeat or limit any defenses, arguments, or motions asserted by the Secretary.  Neither this Settlement Agreement, nor the fact of its having been made, nor any exhibit or other document prepared in connection with this Settlement Agreement, shall be admissible, entered into evidence, or used in any form or manner in discovery in the Case or in any other action or proceeding for any purpose whatsoever if they are objected to by the Secretary.

4.   With the exception of the Release provided in subsection 5, below, Plaintiffs, Claimants, and Class Members shall retain all rights, claims, causes of action, arguments, and motions as to all claims that have been or might later be asserted in the Case, and nothing in this Settlement Agreement shall be raised by the Secretary or the Secretary's Counsel to defeat or limit any rights, claims, causes of action, arguments, or motions asserted by any Claimants and/or the Class.  With the exception of the Release provided in subsection 5, below, neither this Settlement Agreement, nor the fact of its having been made, nor any exhibit or other document prepared in connection with this Settlement Agreement, shall be admissible, entered into evidence, or used in any form or manner in discovery, over the objection of any Plaintiffs, Claimants, and/or the Class in the Case or in any other action or proceeding for any purpose

whatsoever.

5.      The Plaintiffs hereby RELEASE, WAIVE, ACQUIT, and FOREVER
DISCHARGE the United States and the Secretary from, and are hereby
FOREVER BARRED and PRECLUDED from prosecuting, any and all
claims, causes of action, or requests for any monetary relief, including, but
not limited to, damages, tax payments, debt relief, costs, attorney's fees,
expenses, and/or interest that, whether presently known or unknown,
related to the funds that the Secretary has paid pursuant to Section VII.
Neither the Plaintiffs nor Class Counsel shall be obligated to repay any
Implementation Costs paid to them by the Secretary under Sections VII.B,
VII.C and/or VII.E.

## XVIII. RELEASES

The Class Representatives, the Class, and its Members and their heirs, administrators,
successors, and assigns (the "Class Releasors") hereby RELEASE, WAIVE, ACQUIT,
and FOREVER DISCHARGE the United States and the Secretary (the "Government
Releasees") from, and are hereby FOREVER BARRED and PRECLUDED from
prosecuting, any and all claims, causes of action, or requests for any injunctive and/or
monetary relief, including, but not limited to, damages, tax payments, debt relief, costs,
attorney's fees, expenses, and/or interest, whether presently known or unknown, that
have been or could have been asserted in the Case by reason of, with respect to, in
connection with, or which arise out of, any matters alleged in the Case that the Class
Releasors, or any of them, have against the Government Releasees, or any of them.

## XIX.  NO ADMISSION OF LIABILITY

A.      Neither this Settlement Agreement nor any order approving it is or shall be
construed as an admission by the Secretary and/or the United States of the truth of
any allegation or the validity of any claim asserted in the Case, or of the liability of
the Secretary and/or the United States, nor as a concession or an admission of any
fault or omission of any act or failure to act, or of any statement, written document,
or report heretofore issued, filed or made by the Secretary and/or the United States,
nor shall this Settlement Agreement nor any confidential papers related hereto and
created for settlement purposes only, nor any of the terms of either, be offered or
received as evidence of discrimination in any civil, criminal, or administrative
action or proceeding, nor shall they be the subject of any discovery or construed by
anyone for any purpose whatsoever as an admission or presumption of any
wrongdoing on the part of the Secretary and/or the United States, nor as an
admission by any Party to this Settlement Agreement that the consideration to be
given hereunder represents the relief which could have been recovered after trial.

1.      The Secretary and the United States deny liability and damages as to each
of the claims and requests for damages that were or could have been raised

in the Case, and this Settlement Agreement does not constitute, and may not be construed as, a determination or an admission of a violation of any law, rule, regulation, policy, or contract by the Secretary and/or the United States, the truth of any allegation made in the Case, or the validity of any claim asserted in the Case.  This Settlement Agreement does not constitute, and may not be construed as, a determination or an admission that the Secretary and/or the United States is liable in this matter, that the Class or any Member is a prevailing party, that the Class or any Member was substantially justified in any claim or position, or that any claim, defense, or position of the United States was substantially unjustified.

2.      Neither the determination to pay money nor the payment of money under the Non-Judicial Claims Process shall be deemed to be a finding of fact, conclusion of law, or an admission of liability or damages by the Secretary and/or the United States, and any such determination to pay money or the payment of money under the Non-Judicial Claims Process shall not be admissible in any civil, criminal, or administrative action or proceeding, nor shall it be construed by anyone for any purpose whatsoever as an admission or presumption of any wrongdoing on the part of the Secretary and/or the United States, nor as an admission by any Party to this Settlement Agreement that the consideration to be given hereunder represents the relief which could have been recovered after trial.

3.      Nothing herein shall be construed to preclude the use of this Settlement Agreement to enforce the terms thereof.

## XX.   CONTACT INFORMATION FOR THE SECRETARY AND FSA

A.      The reports, forms, transmissions, accountings, and documentation that must or may be provided to the Secretary under this Settlement Agreement shall be sent via electronic transmission or overnight delivery to (1) Counsel of Record for the Secretary in the Case, and (2) General Counsel, U.S. Department of Agriculture, 1400 Independence Avenue SW, Washington, DC  20250.

B.      The reports, forms, transmissions, accountings, documentation, and checks that must or may be provided to FSA under this Settlement Agreement shall be sent via electronic transmission or overnight delivery to Deputy Administrator, Farm Loan Programs U.S. Department of Agriculture, Farm Service Agency, 1400 Independence Avenue SW, Washington, DC 20250, STOP 0520.

## XXI.  INTEGRATION

This Settlement Agreement and its Exhibits constitute the entire agreement of the Parties, and no prior statement, representation, agreement, or understanding, oral or written, that is not contained herein, will have any force or effect.

888856.5 5                                              46

## XXII.  MODIFICATION

This Settlement Agreement may be modified only with the written agreement of the Parties and with the approval of the District Court, upon such notice to the Class, if any, as the District Court may require.

## XXIII. DUTIES CONSISTENT WITH LAW AND REGULATIONS

Nothing contained in this Settlement Agreement shall impose on the Secretary any duty, obligation, or requirement, the performance of which would be inconsistent with federal statutes or federal regulations in effect at the time of such performance.

## XXIV. DUTY TO DEFEND

The Parties to this Settlement Agreement shall defend against any challenges to it in any forum.

## XXV.  HEADINGS

The headings in this Settlement Agreement are for the convenience of the Parties only and shall not limit, expand, modify, or aid in the interpretation or construction of this Settlement Agreement.

## XXVI. SEVERABILITY

Should any non-material provision of this Settlement Agreement be found by a court to be invalid or unenforceable, then (A) the validity of other provisions of this Settlement Agreement shall not be affected or impaired, and (B) such provisions shall be enforced to the maximum extent possible.

## XXVII.        COUNTERPARTS

This Settlement Agreement may be executed in counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.

**AGREED:**

For the Plaintiffs:

Respectfully submitted,

Joseph M. Sellers, Bar No. 318410
Christine E. Webber, Bar No. 439368
Peter Romer-Friedman, Bar No. 993376
COHEN MILSTEIN SELLERS &
TOLL PLLC
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

David J. Frantz, Bar No. 202853
CONLON, FRANTZ & PHELAN
1818 N Street, N.W.
Suite 400
Washington, DC 20036-2477
Telephone: (202) 331-7050
Facsimile: (202) 331-9306

Paul M. Smith, Bar No. 358870
Katherine A. Fallow, Bar No. 462002
Jessica Ring Amunson, Bar No. 497223
Carrie F. Apfel, Bar No. 974342
JENNER & BLOCK LLP
1099 New York Ave., N.W.
Suite 900
Washington, DC 20001-4412
Telephone: (202) 639-6000
Facsimile: (202) 639-6066

Anurag Varma, Bar No. 471615
PATTON BOGGS LLP
2550 M Street, N.W.
Washington, DC 20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315

Phillip L. Fraas
STINSON MORRISON HECKER
1150 18th St. NW, Suite 800
Washington, DC 20036
Telephone: (202) 785-9100
Facsimile: (202) 785-9163

Sarah Vogel
SARAH VOGEL LAW PARTNERS
222 N. 4th St.
Bismarck, ND 58501
Telephone: (701)221-2911
Facsimile: (701) 221-5842

*Attorneys for Plaintiffs*

Dated: ___11/1/10___

For the Secretary:

TONY WEST
Assistant Attorney General

RONALD C. MACHEN JR.
United States Attorney
Civil Division, Room E4216
555 Fourth Street NW
Washington, DC  20530
Telephone:  (202) 514-7170

_____

Joshua E. Gardner
Attorney, Federal Programs Branch
Civil Division
20 Massachusetts Avenue NW, Room 6146
Washington, DC  20001
Telephone:  (202) 514-1944

Dated:  November 1, 2010

**SO ORDERED**

Dated:  _____


_____
United States District Judge