**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | ) | |
| In re BLACK FARMERS DISCRIMINATION | ) | |
| LITIGATION | ) | Misc. No. 08-mc-0511 (PLF) |
| | ) | |
| | ) | |

# SETTLEMENT AGREEMENT

## February 18, 2010

# TABLE OF CONTENTS

I.  DEFINITIONS ................................................................................................ 1

II.  RECITALS .................................................................................................... 9

III.  THE SETTLEMENT CLASS ...................................................................... 12

IV.  DISMISSAL AND FUNDING .................................................................... 12

V.  ACCELERATIONS AND FORECLOSURES ............................................ 17

VI.  NON-JUDICIAL CLAIMS PROCESS ...................................................... 17

    A.  GENERAL REQUIREMENTS ....................................................... 19

    B.  REVIEW OF THE CLAIM SUBMISSION AND THE CLASS MEMBERSHIP DETERMINATION ................................................ 22

    C.  TRACK A ......................................................................................... 25

    D.  TRACK B ......................................................................................... 27

    E.  DISTRIBUTION OF CLAIM DETERMINATIONS AND SETTLEMENT FUNDS ................................................................... 29

VII.  THE DUTIES OF CLASS COUNSEL ...................................................... 35

VIII.  PROCEDURES GOVERNING APPROVAL OF THIS AGREEMENT ................. 39

IX.  ATTORNEY'S FEES, EXPENSES, AND COSTS .................................... 41

X.  CONDITIONS THAT RENDER AGREEMENT VOID OR VOIDABLE ............. 42

XI.  EFFECT OF AGREEMENT IF VOIDED .................................................. 43

XII.  RELEASES .................................................................................................. 44

XIII.  NO ADMISSION OF LIABILITY .............................................................. 45

XIV.  CONTACT INFORMATION FOR THE SECRETARY AND FSA ......................... 46

XV.  INTEGRATION ........................................................................................... 46

XVI.  MODIFICATION ......................................................................................... 46

XVII.  DUTIES CONSISTENT WITH LAW AND REGULATIONS ................................ 46

XVIII. CONTINUING JURISDICTION ................................................................. 47

XIX.  DUTY TO DEFEND .................................................................................... 47

XX.  HEADINGS .................................................................................................. 47

XXI.  SEVERABILITY ......................................................................................... 47

XXII.  COUNTERPARTS ...................................................................................... 47

i

**EXHIBITS**

| | |
|---|---|
| EXHIBIT A | "TRACK A" CLAIM DETERMINATION FORM |
| EXHIBIT B | "TRACK B" CLAIM DETERMINATION FORM |
| EXHIBIT C | CLAIM FORM |
| EXHIBIT D | AUTHORIZATION TO DISCLOSE DEBT INFORMATION FORM |
| EXHIBIT E | QUARTERLY DISBURSEMENT REPORTING FORM |
| EXHIBIT F | YOUR CLAIM PACKAGE IS NOT COMPLETE |
| EXHIBIT G | YOU HAVE NOT SUBMITTED YOUR CLAIM ON TIME |
| EXHIBIT H | YOU ARE NOT A CLASS MEMBER |
| EXHIBIT I | QUARTERLY CLAIM DETERMINATION REPORTING FORM |

<u>**SETTLEMENT AGREEMENT**</u>

This Settlement Agreement ("Agreement") is entered into between the Plaintiffs, by and through Plaintiffs' Counsel, and the Secretary of the U.S. Department of Agriculture ("the Secretary" or "USDA"), by and through the Secretary's Counsel, to resolve, fully and forever, the claims raised or that could have been raised in the cases consolidated in *In re Black Farmers Discrimination Litigation*, No. 08-mc-511 (D.D.C.), including, but not limited to, the claims asserted under Public Law No. 110-234 and/or 110-246, § 14012 (2008).

## I.  DEFINITIONS

Unless otherwise noted, as used in this Agreement:

A.  "2008 Funds" are the funds ($100,000,000) designated by Congress in Public Law No. 110-234 and/or 110-246, § 14012(i)(1) (2008).

B.  A "Claimant" is any individual who submits a claim and/or seeks an award under this Agreement.

C.  The "Claim Deadline" is 180 calendar days from the Final Approval Date.

D.  A "Claim Determination" is the binding and final result of Track A and Track B and represents whether, and what amount, a Class Member is eligible to receive as a result of the Non-Judicial Claims Process.  A Claim Determination is shown on a Track A Claim Determination Form (Ex. A) or a Track B Claim Determination Form (Ex. B).

E.  The "Class" is all individuals: (1) who submitted late-filing requests under Section 5(g) of the *Pigford* Consent Decree after October 12, 1999, and before June 19, 2008; but (2) who have not obtained a determination on the merits of their discrimination complaints, as defined by Section 1(h) of the Consent Decree. Where used in this Agreement, the Class refers, individually and collectively, to the Class Representatives, the Class, and each Member of the Class as well as their heirs, administrators, personal representatives, successors, and/or assigns.

F.  "Class Counsel" are the attorneys appointed by the Court under Federal Rule of Civil Procedure 23(g) to represent the Class.

G.  A "Class Membership Determination" is the binding and final result of the Class membership analysis undertaken by the Claims Administrator under Section VI.B.4.

1

H.  "Common Benefit Fees" are reasonable attorney's fees, expenses, and costs for the work Plaintiffs' Counsel have performed on behalf of the Class as a whole, including negotiation of this Agreement, and the work Class Counsel agrees to perform on behalf of the Class as a whole as set forth in this Agreement. Common Benefit Fees do not include Track A Individual Counsel Fees, Track B Fees, or work performed on behalf of individual Class Members who prevail under Track B.

I.  "Common Benefit Fund" is the fund administered by the Plaintiffs' Steering Committee, under the direction of Lead Class Counsel, designated to hold the Common Benefit Fees.

J.  "Complete Claim Package" is:

1.  A completed Claim Form (Ex. C), including the Claimant's declaration, under penalty of perjury, that each of the statements provided by the Claimant is true and correct;

2.  For a Track A Claimant who seeks a Track A Loan Award, a statement that the Claimant seeks such an award and an executed Authorization to Disclose Debt Information Form (Ex. D);

3.  A declaration by the Claimant's Counsel, whether Class Counsel or Individual Counsel, attesting to the Counsel's good faith belief in the truth of the factual basis of the Claimant's claim.  For Claimants proceeding without counsel, the declaration on the Claim Form (Ex. C) is sufficient to satisfy this requirement;

4.  For a Claimant who is deceased, (a) a death certificate and (b) either (i) proof of legal representation, or (ii) a sworn statement describing why the submitting individual believes he or she will be appointed the legal representative of the Claimant's estate; and

5.  For a Claimant unable to submit a claim on his or her own behalf due to a physical or mental limitation, (a) proof of legal representation or (b) a sworn statement describing why the Claimant is unable to submit a claim on his or her own behalf and why the submitting individual asserts a right to do so on the Claimant's behalf.

K.  "Consolidated Case" refers to the complaints consolidated in *In re Black Farmers Discrimination Litigation*, No. 08-mc-511 (D.D.C.).

L.      "Cost Cap" is $35,000,000, and represents the maximum amount of Implementation Costs that Class Counsel may pay out of the funds provided by the Secretary under this Agreement.

M.      "Cy Pres Beneficiary" is a non-profit organization, other than a law firm, legal services entity, or educational institution, that has provided agricultural, business assistance, or advocacy services, including assistance under *Pigford* and the Consolidated Case, to African American farmers between 1981 and the Execution Date.

N.      "Cy Pres Fund" is a fund administered by Class Counsel designated to hold any leftover funds under Section VI.E.14.

O.      "Designated Account" means a bank account, set up by Class Counsel and held for the benefit of the Class, at a Designated Bank that is (1) insured by the Federal Deposit Insurance Corporation up to the applicable limits, (2) a segregated trust account that is not subject to claims of a bank's creditors, or (3) invested in U.S. Treasury securities.

P.      "Designated Bank" means a bank that has a Veribanc (www.veribanc.com) rating of Green with three stars and one for which neither the bank nor any of its senior officers appear in the Excluded Parties List System (www.epls.gov), which is a list of entities and individuals suspended or debarred from doing business with the federal government.

Q.      "Determination on the merits of a discrimination complaint."  Whether a Claimant has had a determination on the merits of a discrimination complaint, as defined by Section 1(h) of the *Pigford* Consent Decree, is determined in accordance with Section VI.B.4.b.

R.      "District Court" and "Court" mean the U.S. District Court for the District of Columbia.

S.      "Effective Date" is the date upon which, if the Agreement is not voided under Section X, an order providing final approval of this Agreement under Federal Rule of Civil Procedure 23(e) becomes non-appealable, or, in the event of any appeals, upon the date of final resolution of said appeals.  When this Agreement refers to the date on which the Agreement became "Effective," such date is the Effective Date.

T.      "Execution Date" is the date on which this Agreement has been signed by all of the Parties.

3

U.      "Fee Award" is the total amount approved by the Court for the payment of Common Benefit Fees and Track B Fees.  The amount of the Fee Award shall be determined by the Court and shall be at least 4.1% and not more than 7.4% of the Fee Base.

V.       "Fee Base" is the sum of the 2008 Funds plus any Pre-Effective Date Funds minus Implementation Costs.

W.       "FSA" is the Farm Service Agency, an agency of USDA.

X.      "Final Accounting" is an accounting prepared and signed by the Claims Administrator after all funds in the Designated Account have been disbursed.  The Final Accounting shall identify: (1) the number and amount of all awards the Claims Administrator has caused to be paid to Class Members, to FSA, and to the IRS; (2) the Implementation Costs incurred under the Agreement; (3) the amount the Claims Administrator caused to be paid into the Common Benefit Fund; (4) the sum of Track B Fees the Claims Administrator caused to be paid; and (5) the amount of any leftover funds paid into the Cy Pres Fund.  The Final Accounting shall also identify the total amount of funds the Secretary has provided to Class Counsel, for the benefit of the Class, under this Agreement and the status of these funds.

Y.      "Final Approval Date" is the date on which the District Court enters an order providing final approval of this Agreement under Federal Rule of Civil Procedure 23(e).

Z.      "Implementation Costs" are the administrative costs associated with implementing this Agreement, including the fees and costs of the Track A and Track B Neutrals, the Track B Expert, the Claims Administrator, costs incurred under Section VII.A.3, and the costs necessary to provide notice of this Agreement to the Class.  With the exception of those specified above, Implementation Costs do not include (1) attorney's fees, costs, and expenses, (2) the costs and expenses associated with preparing and/or submitting claims on behalf of individual Claimants, and (3) costs and expenses incurred by Class Counsel in the performance of their duties under this Agreement.

AA.     "Individual Counsel" are counsel, other than Class Counsel, retained by Claimants to represent them in the Non-Judicial Claims Process.

BB.     "IRS" is the Internal Revenue Service.

4

CC.     "Late-filing request" is a written request to the Court, the *Pigford* Facilitator, the *Pigford* Monitor, the *Pigford* Adjudicator, or the *Pigford* Arbitrator seeking to participate in the claims resolution processes in the *Pigford* Consent Decree.

DD.     "Lead Class Counsel" are a subset of Class Counsel responsible for performing the duties designated in Section VII.B of this Agreement.

EE.     "Liaison Counsel" are a subset of Class Counsel responsible for performing the duties designated in Section VII.C of this Agreement.

FF.     "Non-Judicial Claims Process" means the claim processes set forth in Section VI of this Agreement.

GG.     "Parties" means the Plaintiffs and the Secretary.

HH.     "*Pigford*" means *Pigford v. Glickman,* Nos. 97-1978, 98-1693 (D.D.C.).

II.     "*Pigford* Adjudicator" is the Adjudicator named in the Consent Decree in *Pigford*, as defined by Section 1(a) of the *Pigford* Consent Decree.

JJ.     "*Pigford* Arbitrator" is the Arbitrator named in the Consent Decree in *Pigford*, as defined by Section 1(b) of the *Pigford* Consent Decree.

KK.     "*Pigford* Consent Decree" is the April 14, 1999 Consent Decree entered in *Pigford*.

LL.     "*Pigford* Facilitator" is Epiq Systems, Inc., formerly known as Poorman-Douglas Corporation.

MM.     "*Pigford* Monitor" is Randi I. Roth, the independent Monitor appointed by the Court pursuant to Section 12 of the *Pigford* Consent Decree.

NN.     "*Pigford* Opt-Out List" is a list maintained or prepared by the *Pigford* Facilitator that identifies those individuals who the *Pigford* Facilitator has determined opted out of the *Pigford* Consent Decree pursuant to Section 2(b) of the Decree.

OO.     "*Pigford* Participants List" is a list maintained or prepared by the *Pigford* Facilitator that identifies those individuals who the *Pigford* Facilitator has determined (1) submitted a claim under the *Pigford* Consent Decree on or before October 12, 1999, or (2) submitted a late-filing request under 5(g) of the *Pigford* Consent Decree after October 12, 1999, which was determined by the *Pigford* Arbitrator to satisfy the "extraordinary circumstances" requirement.

5

PP.     "*Pigford* Timely 5(g) List" is a list maintained or prepared by the *Pigford* Facilitator that identifies those individuals who the *Pigford* Facilitator has determined submitted late-filing requests under Section 5(g) of the *Pigford* Consent Decree after October 12, 1999, and on or before September 15, 2000.

QQ.     "Plaintiffs" are the individuals who have filed claims in all of the complaints consolidated into the Consolidated Case as of the Execution Date of this Agreement with the exception of the complaint captioned *Beckley v. Vilsack*, No. 09-1019 (D.D.C.).

RR.     "Plaintiffs' Counsel" are the attorneys that represent the Plaintiffs.

SS.     "Plaintiffs' Steering Committee" is a subset of Class Counsel responsible for performing the duties designated in Section VII.D.

TT.     "Post-Effective Date Funds" are funds designated or appropriated by Congress after the Effective Date of this Agreement for purposes of: (1) increasing the amount set forth in Public Law No. 110-234 and/or 110-246, § 14012(i)(1) (2008); (2) the payment of Section 14012 claims; and/or (3) this Agreement.

UU.     "Pre-Effective Date Funds" are funds designated or appropriated by Congress prior to the Effective Date of this Agreement for purposes of: (1) increasing the amount set forth in Public Law No. 110-234 and/or 110-246, § 14012(i)(1) (2008); (2) the payment of Section 14012 claims; and/or (3) this Agreement.

VV.     "Preliminary Approval Date" is the date on which the District Court enters a Preliminary Approval Order.

WW.     "Preliminary Final Accounting" is an accounting prepared and signed by the Claims Administrator after receipt of all completed Claim Determination Forms. The Preliminary Final Accounting shall identify: (1) the number and amount of all Final Track A Liquidated Awards, Final Track A Loan Awards, Final Track A Tax Awards, and Final Track B Awards (shown in Part III of the completed Track A and Track B Determination Forms); (2) the Implementation Costs incurred to date; (3) a good faith estimate of Implementation Costs necessary for the Claims Administrator to perform its final duties under this Agreement; (4) the amount of the Fee Award; (5) the sum of Track B Fees incurred by Track B Class Members, and (6) the amounts that the Secretary already has paid for interim Implementation Costs and interim Common Benefit Fees and the status of these funds.

XX.     "Preliminary Final Accounting Date" is the date that the Secretary receives the Preliminary Final Accounting.

6

YY.    "Preponderance of the evidence" is such relevant evidence as is necessary to prove something is more likely true than not true.

ZZ.    The "Secretary" is, individually and collectively, Thomas Vilsack, in his official capacity as Secretary of USDA, his successors as Secretary of USDA, USDA, its agencies, instrumentalities, agents, officers, and employees.

AAA.   The "Secretary's Counsel" is the U.S. Department of Justice.

BBB.   "Section [or §] 14012" means Public Law No. 110-234 and/or 110-246, § 14012 (2008).

CCC.   "Substantial evidence" is such evidence that a reasonable person might accept as adequate to support a conclusion after taking into account other evidence in the record that fairly detracts from that conclusion.  Substantial evidence is a lower standard of proof than a preponderance of the evidence.

DDD.   "Track A" is a non-judicial claims process by which a submitted claim is reviewed by a Track A Neutral based on the criteria delineated in Section VI.C.

EEE.   "Track A Individual Counsel Fee" is a fee negotiated between a Claimant and his or her Individual Counsel, subject to the Track A Individual Counsel Fee Cap, which the Claimant agrees to pay to Individual Counsel if he or she obtains a Track A Award and which Individual Counsel agrees to accept in full satisfaction for the fees, expenses, or costs associated with work performed on behalf of the Claimant in obtaining that Award.

FFF.   "Track A Individual Counsel Fee Cap" is the maximum Track A Individual Counsel Fee set by the Court, not to exceed 2% of a Track A Claimant's Final Track A Award.

GGG.    "Track A Neutral" is an adjudicator hired by Lead Class Counsel to determine the merits of the claims submitted under Track A.

HHH.   "Track A Award" is a combination of a Track A Liquidated Award, a Track A Tax Award, and a Track A Loan Award, if applicable.  Track A Awards are subject to reduction under Section VI.E.  A "Provisional" Track A Award refers to the amount specified in Part V of a Track A Determination Form.  A "Final" Track A Award refers to the amount specified in Part III of a Track A Determination Form.  A Final Track A Award is the Award calculated by the Claims Administrator under Section VI.E.

7

III.  "Track A Liquidated Award" is $50,000 per Class Member for credit claims, regardless of the number of the Class Member's prevailing claims, and $3,000 per Class Member for non-credit claims, regardless of the number of the Class Member's prevailing claims.  Track A Liquidated Awards are subject to reduction under Section VI.E.  A "Provisional" Track A Liquidated Award refers to the amount specified in Part V of a Track A Determination Form.  A "Final" Track A Liquidated Award refers to the amount specified in Part III of a Track A Determination Form.  A Final Track A Liquidated Award is the Award calculated by the Claims Administrator under Section VI.E.

JJJ.  "Track A Loan Award" is the amount of a Class Member's outstanding debt as of the date certain specified in Section VI.B.6 incurred under the following FSA Farm Loan Program loans:

1.  Those that form the basis of a Class Member's prevailing credit claim ("Prevailing Loan");

2.  Those that: (a) were part of the same loan program as the Prevailing Loan; (b) originated at the same time or subsequent to the Prevailing Loan but prior to January 1, 1997; and (c) are not the subject of an adverse administrative decision that has become final or an adverse federal or state court judgment that has become final; (collectively "Related Loan") and

3.  Those that have been consolidated with or restructured into a new loan that includes either a Prevailing Loan or a Related Loan.

Track A Loan Awards are subject to reduction under Section VI.E.  A "Provisional" Track A Loan Award refers to the amount specified in Part V of a Track A Determination Form.  A "Final" Track A Loan Award refers to the amount specified in Part III of a Track A Determination Form.  A Final Track A Loan Award is the Award calculated by the Claims Administrator under Section VI.E.

KKK.  "Track A Tax Award" is an award made in recognition of a Class Member's expected tax liability in an amount equal to 25% of the Class Member's Track A Liquidated Award and Track A Loan Award, if applicable.  Track A Tax Awards are subject to reduction under Section VI.E.  A "Provisional" Track A Tax Award refers to the amount specified in Part V of a Track A Determination Form.  A "Final" Track A Tax Award refers to the amount specified in Part III of a Track A Determination Form.  A Final Track A Tax Award is the Award calculated by the Claims Administrator under Section VI.E.

LLL.   "Track B" is a non-judicial claims process by which a claim is reviewed by a Track B Neutral based on the criteria delineated in Section VI.D.

MMM. "Track B Award" is the amount of actual damages, up to $250,000, for which the Track B Neutral determines that a Class Member is eligible under the applicable standards for Track B, subject to reduction under Section VI.E.  A "Provisional" Track B Award refers to the amount specified in Part V of a Track B Determination Form.  A "Final" Track B Award refers to the amount specified in Part III of a Track B Determination Form.  A Final Track B Award is the Award calculated by the Claims Administrator under Section VI.E.

NNN.   "Track B Cap" is the lesser of (1) 8% of the sum of the 2008 Funds plus any Pre-Effective Date Funds, or (2) $100,000,000.

OOO.   "Track B Expert" is an experienced agricultural economist hired by the Track B Neutral to assist the Track B Neutral in assessing economic damage claims made by Class Members.

PPP.   "Track B Fee" is a fee negotiated between a Claimant and his or her Counsel, whether Class Counsel or Individual Counsel, subject to the Track B Fee Cap, which the Claimant agrees to pay if he or she obtains a Track B Award and which Counsel agrees to accept in full satisfaction for the fees, expenses, or costs associated with work performed on behalf of the individual Claimant in obtaining that Award.

QQQ.   "Track B Fee Cap" is the maximum Track B Fee set by the Court, not to exceed 8% of a Track B Claimant's Final Track B Award.

RRR.   "Track B Neutral" is an adjudicator hired by Lead Class Counsel to determine the merits of the claims submitted under Track B.

SSS.   The "United States" is, individually and collectively, the Executive Branch of the United States, its agencies, instrumentalities, agents, officers, and employees.

TTT.   "USDA" is the United States Department of Agriculture.

## II.   RECITALS

A.   In 1997, a putative class of African-American farmers brought suit against USDA under, *inter alia*, the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691-1691f, for alleged discriminatory actions in the acquisition of farm credit, credit servicing, and non-credit farm benefits.  This case was called *Pigford v. Glickman,* No. 97-1978 (D.D.C.) ("*Pigford* ").

9

B.      On January 5, 1999, the District Court in *Pigford* certified the following Class pursuant to Federal Rule of Civil Procedure 23(b)(3):

> All African American farmers who (1) farmed, or attempted to farm, between January 1, 1981 and December 31, 1996; (2) applied to the United States Department of Agriculture (USDA) during that time period for participation in a federal farm credit or benefit program and who believed that they were discriminated against on the basis of race in USDA's response to that application; and (3) filed a discrimination complaint on or before July 1, 1997, regarding USDA's treatment of such farm credit or benefit application.

C.      After notice and an opportunity to be heard by all *Pigford* Class Members, on April 14, 1999, the District Court approved the terms of a Consent Decree which provided the Class Members with a choice of non-judicial processes (*i.e.*, "Track A" or "Track B") for resolving their discrimination claims.

D.      The *Pigford* Consent Decree directed that *Pigford* Class Members who did not opt out of the Class would have 180 days from entry of the Decree in which to submit completed claim packages. An extension of this deadline until September 15, 2000, was available under Section 5(g) of the Consent Decree ("Section 5(g)"), but only where a Class Member could show that his or her late filing was due to "extraordinary circumstances" beyond the Class Member's control.

E.      Approximately 20,000 individuals filed claims under the *Pigford* Consent Decree within the 180-day deadline, which was October 12, 1999. Between October 12, 1999, and September 15, 2000, approximately 61,000 additional individuals sought to participate in the Decree's claim resolution processes pursuant to Section 5(g). Approximately 2,700 of these individuals were deemed to satisfy the "extraordinary circumstances" test and were permitted to participate in the claim resolution processes. Between September 15, 2000, and June 18, 2008, thousands of additional individuals unsuccessfully sought to participate.

F.      Notwithstanding that more than 60,000 individuals were denied participation under the *Pigford* Consent Decree, and if *Pigford* Class Members, were bound by the Decree and deemed to have waived and released all claims against USDA that were or could have been raised in *Pigford*, on May 22, 2008, and again on June 18, 2008, Congress created a new cause of action (§ 14012) for such individuals.

G.      Section 14012(i)(1) designates $100,000,000 to pay meritorious Section 14012 claims. Section 14012(i)(2) further provides that "[i]n addition to funds made available under [§ 14012(i)(1)], there are authorized to be appropriated such sums as are necessary to carry out [Section 14012]." However, Section 14012(c)(2)

provides that "[t]he total amount of payments and debt relief pursuant to actions commenced under [§ 14012(b)] shall not exceed $100,000,000."

H.    Section 14012(d) provides that "[i]t is the intent of Congress that [Section 14012] be liberally construed so as to effectuate its remedial purpose of giving a full determination on the merits for each *Pigford* claim previously denied that determination."

I.    Section 14012(f) further provides for "expedited resolutions" whereby a person filing a complaint under Section 14012 "may seek liquidated damages of $50,000, discharge of the debt that was incurred under, or affected by, the 1 or more programs that were the subject of the 1 or more discrimination claims that are the subject of the person's complaint, and a tax payment in the amount equal to 25 percent of the liquidated damages and loan principal discharged[;]" while Section 14012(g) provides an action whereby a plaintiff may seek "actual damages sustained."

J.    As of January 1, 2010, over 28,000 plaintiffs had filed individual claims under § 14012 in 17 complaints in the U.S. District Court for the District of Columbia, which have been consolidated under one caption in the Consolidated Case.

K.    On February 20, 2009, the Secretary filed a motion to certify a limited fund, non-opt-out class pursuant to Federal Rule of Civil Procedure 23(b)(1).

L.    In order to bring the Consolidated Case to a close FOREVER and FINALLY, the Parties have determined to settle the Consolidated Case, including all claims that the proposed Class and Class Members have brought or could have brought in the Consolidated Case, and including all claims that have been or could have been brought under Section 14012.

M.    The Plaintiffs believe that the terms of this Agreement are fair, reasonable, and adequate; that this Agreement provides substantial benefits to the proposed Class and the Class Members; and that settlement of the Consolidated Case on the terms set forth in this Agreement is in the best interests of the proposed Class and the Class Members.

N.    The Secretary expressly denies any wrongdoing, as alleged in the Consolidated Case or otherwise, and does not admit or concede any actual or potential fault, wrongdoing or liability in connection with any facts or claims that have been or could have been alleged in the Consolidated Case.  Nonetheless, the Secretary considers it desirable to settle the Consolidated Case on the terms set forth in this Agreement because it will avoid disruption to USDA due to the pendency and

11

defense of the Consolidated Case, and it will avoid the substantial expense, burdens, and uncertainties associated with litigation of the Consolidated Case.

O.   Accordingly, the purpose of this Agreement is to make a full, complete, and final resolution of all claims and causes of action that have been or could have been asserted against the Secretary by the proposed Class and the Class Members in the Consolidated Case arising out of the conduct alleged therein.

P.   NOW, THEREFORE, in reliance on the mutual promises, covenants, releases, and obligations as set out in this Agreement, and for good and valuable consideration, the Parties hereby stipulate and agree to resolve all claims that were or could have been at issue in this matter.

## III.   THE SETTLEMENT CLASS

A.   The Parties agree, for purposes of this Agreement only, to the following Federal Rule of Civil Procedure 23(b)(1), non-opt-out class:

All individuals: (1) who submitted late-filing requests under Section 5(g) of the *Pigford* Consent Decree after October 12, 1999, and before June 19, 2008; but (2) who have not obtained a determination on the merits of their discrimination complaints, as defined by Section 1(h) of the Consent Decree.

B.   In accordance with the terms of this Agreement, the Plaintiffs will move for certification of this Settlement Class, for appointment of some of the Plaintiffs as the Class Representatives, for appointment of Class Counsel, and for designation of specific counsel from among Class Counsel to serve as Lead Class Counsel, Liaison Counsel, and members of the Plaintiffs' Steering Committee.

## IV.   DISMISSAL AND FUNDING

A.   The Class agrees to the dismissal of all actions pending in the Consolidated Case with prejudice under Federal Rules of Civil Procedure 41(a)(1) and 23(e).  In accordance with the terms of this Agreement, the Plaintiffs will move for dismissal of all actions pending in the Consolidated Case with prejudice to be effective on the Final Approval Date.

B.   Class Counsel shall, within seven (7) calendar days of the Preliminary Approval Date, notify the Secretary in writing of the identity of the Designated Account and Designated Bank.

C.   The Secretary shall, within thirty (30) calendar days of the Preliminary Approval Date, provide the U.S. Department of the Treasury with all necessary forms and

documentation to direct a payment of $5,000,000 to Class Counsel, for the benefit of the Class, in accordance with and subject to the following conditions:

1.      The Secretary shall make this payment from the 2008 Funds;

2.      The Secretary shall direct the deposit of these funds into the Designated Account.  Class Counsel shall provide the Secretary in writing with the information necessary to direct the deposit;

3.      Class Counsel shall use these funds solely for interim Implementation Costs provided for in this Agreement; and

4.      Class Counsel shall provide the Secretary with quarterly written reports related to the expenditure of the funds provided in this Section.  The quarterly reports, which may be submitted on the Quarterly Disbursement Reporting Form (Ex. E), shall identify (a) to whom Class Counsel has paid the funds, (b) the amount of such payment, (c) when the funds were paid, and (d) for what purpose the payment has been made, with reference to this Agreement.

D.      If, prior to the Final Approval Date, Class Counsel determines that the $5,000,000 is insufficient to cover the interim Implementation Costs, Class Counsel may submit an additional written request to the Secretary for an additional $5,000,000 to be used for interim Implementation Costs, subject to the conditions in Section IV.C.

E.      The Secretary shall, within thirty (30) calendar days of an additional written request specified in Section IV.D, provide the U.S. Department of the Treasury with all necessary forms and documentation to direct the payment of the requested funds to Class Counsel, for the benefit of the Class, in accordance with and subject to the conditions in Section IV.C.

F.      After the Final Approval Date, Class Counsel may submit additional written requests to the Secretary for additional interim Implementation Costs and for interim Common Benefit Fees, subject to the following conditions:

1.      Class Counsel shall not make any requests prior to May 31, 2010, except that if the Class has no right to void this Agreement under Section X.A.1 or if the Class waives any right to void the Agreement under Section X.A.1 and provides such waiver in writing to the Secretary, then Class Counsel may make such request at any time after March 31, 2010;

13

2.      Class Counsel shall not make more than four requests per calendar year, shall not seek more than $5,000,000 per request, and must submit, with each request, evidence that the Designated Account has been or will be depleted; and

3.      Class Counsel shall make no request that would cause the total interim payments by the Secretary under this Agreement to exceed $20,000,000.

G.    The Secretary shall, within thirty (30) calendar days of each additional written request specified in Section IV.F, provide the U.S. Department of the Treasury with all necessary forms and documentation to direct the payment of the requested funds to Class Counsel, for the benefit of the Class, in accordance with and subject to the following conditions:

1.      The Secretary shall make these payments from the 2008 Funds;

2.      The total of all interim payments under Sections IV.C, IV.E, and IV.G shall not exceed $20,000,000;

3.      The Secretary shall direct the deposit of these funds into the Designated Account.  Class Counsel shall provide the Secretary in writing with the information necessary to direct the deposit;

4.      Class Counsel shall use these funds solely for interim Implementation Costs and interim Common Benefit Fees provided for in this Agreement. If Class Counsel uses any of these funds for interim Common Benefit Fees, Class Counsel may only pay those counsel who have incurred fees to date for work performed on behalf of the Class as a whole, including negotiation of this Agreement; and

5.      Class Counsel shall provide the Secretary with quarterly written reports related to the expenditure of the funds provided in this Section.  The quarterly reports, which may be submitted on the Quarterly Disbursement Reporting Form (Ex. E), shall identify (a) to whom Class Counsel has paid the funds, (b) the amount of such payment, (c) when the funds were paid, and (d) for what purpose the payment has been made, with reference to this Agreement.  For the expenditure of interim Common Benefit Fees, the report must also identify the specific work performed to merit the payment of interim fees.

H.    The Secretary shall, within sixty (60) calendar days of the Preliminary Final Accounting Date or the Effective Date, whichever is later, provide the U.S. Department of the Treasury with all necessary forms and documentation to direct

14

a payment to Class Counsel, for the benefit of the Class, the lesser of (1) any Pre-Effective Date Funds plus any remaining 2008 Funds, or (2) the sum, as set forth in the Preliminary Final Accounting, of (a) all Final Track A Liquidated Awards, Final Track A Loan Awards, and Final Track A Tax Awards, (b) all Final Track B Awards, (c) the incurred and estimated final Implementation Costs up to the Cost Cap, and (d) the Fee Award minus the sum of Track B Fees incurred by Track B Class Members, minus any amounts the Secretary has already paid under Sections IV.C, IV.E, and IV.G, in accordance with and subject to the following conditions:

1.     The Secretary shall direct the deposit of these funds into the Designated Account.  Class Counsel shall provide the Secretary in writing with the information necessary to direct the deposit;

2.     Class Counsel shall use these funds solely to pay (a) Final Track A Liquidated Awards, Final Track A Loan Awards, Final Track A Tax Awards, and Final Track B Awards to or on behalf of Class Members pursuant to the Non-Judicial Claims Process; (b) Common Benefit Fees; (c) Track B Fees; (d) reasonable and compensable Implementation Costs in an amount not to exceed the Cost Cap; and (e) if applicable, any leftover funds to the Cy Pres Fund, as specified in Section VI.E.14; and

3.     Class Counsel shall provide the Secretary with written quarterly reports related to the expenditure of the funds provided in this Section.  The quarterly reports, which may be submitted on the Quarterly Disbursement Reporting Form (Ex. E), shall identify (a) to whom Class Counsel has paid the funds, (b) the amount of such payment, (c) when the funds were paid, and (d) for what purpose the payment has been made, with reference to this Agreement.  If Class Counsel has expended funds to pay Final Track A Liquidated Awards, Final Track A Loan Awards, Final Track A Tax Awards, and Final Track B Awards during the reporting period, Class Counsel shall also identify the number of such awards.

I.     No legal liability or obligation on the part of the Secretary and/or the United States for any funds in excess of the 2008 Funds shall arise unless and until Congress provides any Pre-Effective Date Funds, and Class Counsel receive notice that the Pre-Effective Date Funds or some portion thereof are available, to be confirmed in writing by the Secretary.

J.     Post-Effective Date Funds are outside the scope of this Agreement and the scope of the payment obligations of the Secretary and/or the United States under this Agreement and shall not be paid by the Secretary and/or the United States to the Class or Class Counsel under this Agreement.

K.      Once the funds paid by the Secretary under this Agreement are deposited into the Designated Account, the Secretary has no liability whatsoever for the protection or safeguard of the deposited funds, regardless of bank failure, fraudulent transfers, or any other fraud or misuse of the funds.

L.      Nothing in this Agreement shall limit in any way the duties owed by Class Counsel to the Class under any applicable law, including any law governing counsel's management or handling of client funds.

M.      The funds that the Secretary pays pursuant to this Agreement are inclusive of damages and other monetary relief, attorney's fees, expenses, costs, tax payments, payments in recognition of outstanding FSA Farm Loan Program debt, interest, and costs, and are the only funds that will be paid by the Secretary under this Agreement.

N.      Other than the funds specified in this Agreement, no other funds, including those from the Judgment Fund, 31 U.S.C. § 1304, the Commodity Credit Corporation, or from the Salaries and Expenses Account of USDA or any of its agencies shall be available for any purpose related to this Agreement, except by the Secretary for purposes of satisfying his duties under this Agreement.

O.      The binding effect and implementation of this Agreement is not contingent in any way upon the provision by Congress of any funds.  The Class Representatives and the Class acknowledge that Congress is not obligated to appropriate any additional funds.

P.      The limitations on funding in this Agreement apply notwithstanding a determination by the Class Representatives, the Class, or Class Counsel that the funds made available under this Agreement are inadequate to pay claims submitted pursuant to the Non-Judicial Claims Process, attorney's fees, expenses, and costs incurred under this Agreement, and/or Implementation Costs incurred under this Agreement.

Q.      The Class Representatives, the Class, and/or Class Counsel may not terminate this Agreement because the Class Representatives, the Class, and/or Class Counsel assert that the Cost Cap is inadequate, and neither the Class Representatives nor Class Counsel shall be permitted to amend, alter, or reduce their obligations and duties under this Agreement in any manner.  The Class Representatives and Class Counsel agree to continue with implementation of this Agreement notwithstanding the amount of Implementation Costs incurred under this Agreement.  The Secretary shall have no responsibility for Implementation Costs above the Cost Cap.

16

R.      Nothing in this Agreement shall preclude the Class, the Secretary and/or the United States from seeking additional funds from Congress for purposes of this Agreement.  The Secretary and/or the United States, however, are not obligated to seek any additional funds, support any legislation, or refrain from opposing any additional funds or legislation.  The binding effect and implementation of this Agreement is not contingent in any way upon the interactions between the Secretary and/or the United States and Congress.

S.      The Class Members will have sole responsibility to comply with their own applicable federal, state, and local tax requirements that arise as a result of this Agreement.  Class Counsel will have sole responsibility to comply with their own applicable federal, state, and local tax requirements that arise as a result of this Agreement.

## V.      ACCELERATIONS AND FORECLOSURES

A.      The Secretary agrees to refrain from accelerating or foreclosing any FSA Farm Loan Program loan held by a Class Member that originated between January 1, 1981, and December 31, 1996, until either (1) the quarterly report provided in Section VI.E.2 reports that a Class Member is not eligible for a Track A Award or a Track B Award under Section VI.C.4 or VI.D.4; or (2) ninety (90) calendar days after the Preliminary Final Accounting Date, whichever is earlier.

B.      This Section does not:

   1.      Prohibit the Secretary from taking any action up to but not including acceleration or foreclosure that is necessary to protect his interests or service a loan under applicable law; or

   2.      Apply to a loan that is the subject of

      a.      a judicial proceeding in which the United States is a party pending as of the Execution Date, or

      b.      a non-judicial foreclosure proceeding initiated under state law by or on behalf of the United States as of the Execution Date.

## VI.     NON-JUDICIAL CLAIMS PROCESS

A.      GENERAL REQUIREMENTS

   1.      To obtain a Claim Determination under this Agreement, a Claimant must be a Class Member and must submit a Complete Claim Package to the

17

Claims Administrator by the Claim Deadline.  The submission date shall
be the date of postmark if the Claim Package is sent via first-class mail,
the date of deposit if sent by courier or overnight delivery, and the date of
transmission if sent electronically.

2.     A Claimant may be represented in this Claims Process by Class Counsel
or Individual Counsel, or the Claimant may submit a claim without
counsel.  A Track A Claimant shall be represented at no additional charge
by Class Counsel, unless that Claimant elects to be represented by
Individual Counsel or elects to submit a claim without counsel.  For Track
A, if a Claimant elects to be represented by Individual Counsel, the
Claimant must make separate arrangements to pay Individual Counsel,
subject to the terms of this Agreement and the Track A Individual Counsel
Fee Cap.  For Track B, if a Claimant elects to be represented by either
Class Counsel or Individual Counsel, the Claimant must make separate
arrangements to pay Class Counsel or Individual Counsel, subject to the
terms of this Agreement and the Track B Fee Cap.  An attorney who
serves as Individual Counsel consents to the terms of this Agreement and
agrees to abide by all orders of the Court in the Consolidated Case.

3.     In the case of a Claimant who is deceased, the legal representative of the
Claimant's estate may submit a claim on the Claimant's behalf.  If there is
no legal representative, any other individual who asserts a right to be the
legal representative of the Claimant's estate may submit a claim on the
Claimant's behalf.  If there is no legal representative and more than one
individual submits a claim on behalf of the Claimant, a Track A Neutral
designated by the Claims Administrator shall decide which of the
individuals is entitled to pursue the claim on the Claimant's behalf.  If the
Claimant prevails, and a legal representative for the Claimant's estate has
not yet been appointed, the Claimant's Track A Award or Track B Award
shall be held for up to one year in a separate account established by Class
Counsel for the benefit of the estate until a legal representative to whom
the funds may be disbursed is appointed.  The Claims Administrator may
extend this period upon receipt of proof that a probate petition is pending
in the appropriate Court.

4.     In the case of a Claimant who is unable to submit a claim on his or her
own behalf due to a physical or mental limitation, the Claimant's legal
representative may submit a claim on the Claimant's behalf.  If there is no
legal representative, any other individual who asserts a right to be the legal
representative may submit a claim on the Claimant's behalf.  If there is no
legal representative and more than one individual submits a claim on
behalf of an individual who is unable to submit a claim on his or her own

18

behalf, a Track A Neutral designated by the Claims Administrator shall decide which of the individuals is entitled to pursue the claim on the Claimant's behalf.  If the Claimant prevails, and a legal representative for the Claimant has not yet been appointed, the Claimant's Track A Award or Track B Award shall be held for up to one year in a separate account established by Class Counsel for the benefit of the Claimant until a legal representative for the Claimant to whom the funds may be disbursed is appointed.  The Claims Administrator may extend this period upon receipt of proof that a petition for appointment of a legal representative for the Claimant is pending in the appropriate Court.

5.      A Claimant's election of Track A is irrevocable and exclusive.  A Claimant's election of Track B is irrevocable and exclusive, except as provided in Section VI.B.7.

6.      Claimants whose claims arise under non-credit benefit programs are required to proceed under Track A.

7.      The Class Membership Determinations, Claim Determinations, and any other determinations made under this Non-Judicial Claims Process are final and are not reviewable by the Claims Administrator, the Track A Neutral, the Track B Neutral, the District Court, or any other party or body, judicial or otherwise.  The Class Representatives and the Class agree to forever and finally waive any right to seek review of the Class Membership Determinations, the Claim Determinations, and any other determinations made under this Non-Judicial Claims Process.

8.      Except as specified in Section VI.B.6, the Secretary and/or the United States shall have no role in the Non-Judicial Claims Process.

9.      The Secretary and/or the United States shall not be liable to pay any Claim Determinations, any Track A Liquidated Awards, Track A Loan Awards, Track A Tax Awards, Track B Awards, or discharge or otherwise satisfy any debt except as provided in Section VI.A.12.  All Track A Liquidated Awards, Track A Loan Awards, Track A Tax Awards, and Track B Awards shall be paid from the Designated Account.

10.     The Secretary and/or the United States shall not be liable to pay the Claims Administrator, the *Pigford* Facilitator, the Track A Neutral, the Track B Neutral, the Track B Expert, or any of their employees and agents.  Subject to the Cost Cap, all fees, costs, and expenses incurred by the Claims Administrator, the Neutrals, the Track B Expert, and their

employees and agents shall be paid from the Designated Account as Implementation Costs.

11.     The Secretary and/or the United States shall have no obligation to provide any information, documents, or discovery to the Class, Class Members, or Class Counsel, except as provided in Section VI.B.6.

12.     The Claims Administrator will make Track A Loan Awards and Track A Tax Awards directly to FSA (for Track A Loan Awards) and the IRS (for Track A Tax Awards) on each prevailing Class Member's behalf and not to the prevailing Class Member.  If a Track A Loan Award provided by the Claims Administrator to FSA to reduce or discharge outstanding Farm Loan Program loans held by a prevailing Class Member does not discharge or otherwise satisfy the Class Member's debt in full, interest will continue to accrue unless and until the Class Member repays the loan in full.  Subject to the limitations in Section V, FSA will maintain all available options for servicing and recovering all Farm Loan Program debt from the Class Member, including but not limited to acceleration and foreclosure in accordance with the governing regulations.

13.     The Claims Administrator shall send all correspondence and all payments to Claimants, Class Members, and/or their Counsel by first-class mail, postage prepaid.

14.     Class Counsel, the Claims Administrator, and the Neutrals will take reasonable steps to protect private personal and financial information submitted to them under this Agreement.

15.     The Claims Administrator and the Track A and B Neutrals shall report periodically to Lead Class Counsel any issues of concern that arise in the course of the execution of their duties.

B.     REVIEW OF THE CLAIM SUBMISSION AND THE CLASS MEMBERSHIP DETERMINATION

1.     Upon receipt of a claim, the Claims Administrator shall first determine whether the Claimant's submission satisfies the Claim Deadline and whether the submission is a Complete Claim Package.  The Claims Administrator shall make every reasonable effort to complete this determination within ten (10) days of receipt of the claim.

2.     For each Claimant who has submitted an incomplete Claim Package or for each Claim Package that the Claims Administrator is unable to determine

whether it is complete or timely, the Claims Administrator shall send to the Claimant and his or her Counsel a completed Your Claim Package is Not Complete Form (Ex. F).  A Claimant shall have thirty (30) calendar days from the date of postmark of such a Form to submit, either by first-class mail, postage prepaid, or electronically, a Complete Claim Package. There shall be no exceptions to or extensions of the time frames set forth in this paragraph, and the failure of a Claimant to provide any requested materials within the specified time frames will result in that Claimant obtaining a final and unreviewable adverse determination.

3.  For each Claimant whose claim is untimely submitted, the Claims Administrator shall return the Claim Package to the Claimant and his or her Counsel with a completed You Have Not Submitted Your Claim On Time Form (Ex. G).  This determination is final and not reviewable by the Claims Administrator, the Track A Neutral, the Track B Neutral, the District Court, or any other party or body, judicial or otherwise.

4.  For each Claimant determined by the Claims Administrator to have submitted a timely and Complete Claim Package, the Claims Administrator shall determine whether the Claimant is a Class Member. To make this determination, the Claims Administrator shall determine whether the Class Member has established, by a preponderance of the evidence, that:

a.  The Claimant submitted a late-filing request under Section 5(g) of the *Pigford* Consent Decree after October 12, 1999, and before June 19, 2008.  For purposes of this determination, the Claims Administrator shall review the *Pigford* Timely 5(g) List.  If a Claimant appears on the *Pigford* Timely 5(g) List, the Claimant will be deemed to have submitted a late-filing request.  If the Claimant is not on the *Pigford* Timely 5(g) List, the Claimant must establish with independent documentary evidence that he or she submitted a late-filing request.  The Claims Administrator shall make this determination by examining the documents, if any, provided by Class Counsel and the documents submitted by the Claimant as part of his or her claim; and

b.  The Claimant has not obtained a determination on the merits of his or her discrimination complaint, as defined by Section 1(h) of the *Pigford* Consent Decree.  For purposes of this determination, the Claims Administrator shall review the *Pigford* Participants List and the *Pigford* Opt-Out List.  If a Claimant (a) appears on either of these Lists, or (b) has obtained a judgment from a judicial or

21

administrative forum on the basis of the race discrimination claim that provides the basis of the Claimant's discrimination complaint, that Claimant will be deemed to have obtained a determination on the merits of his or her discrimination claim.  If the Claims Administrator determines, at any time prior to paying a Claimant under this Agreement, that the Claimant already has obtained a determination on the merits of his or her discrimination complaint, the Claims Administrator shall not make any payments to the Claimant.

5.     For each Claimant who the Claims Administrator determines is not a Class Member, the Claims Administrator shall complete a You Are Not a Class Member Form (Ex. H) and send the Form to the Claimant and his or her counsel.  This determination is final and not reviewable by the Claims Administrator, the Track A Neutral, the Track B Neutral, the District Court, or any other party or body, judicial or otherwise.

6.     For each Claimant who the Claims Administrator determines to be a Class Member and who elects Track A, the Claims Administrator shall complete Parts I and VI of a Track A Claim Determination Form (Ex. A) and send the Form and the Class Member's claim electronically to the Track A Neutral.  If the Class Member seeks a Track A Loan Award and has submitted an Authorization to Disclose Debt Information Form (Ex. D), the Claims Administrator shall request that FSA confirm whether the Class Member has an outstanding Farm Loan Program loan(s) and provide the applicable loan(s) balances and loan payoff amount(s).  In order to make this request, the Claims Administrator must complete the Authorization to Disclose Debt Information Form received from the Class Member and send it, along with the Class Member's completed Claim Form, to FSA.  Within sixty (60) calendar days of receipt of the request or as soon thereafter as is practicable, FSA will return the Authorization to Disclose Debt Information Form to the Claims Administrator with the requested information.  The payoff amount will be as of a date certain with a daily interest accrual note.  Interest will continue to accrue until the account is paid in full.  The Claims Administrator shall submit the completed Authorization to Disclose Debt Information Form to the Track A Neutral reviewing the Class Member's Claim, the Class Member, and the Class Member's Counsel.

7.     Within ten (10) days of the Claim Deadline, for each Claimant who the Claims Administrator determines to be a Class Member and who elects Track B, the Claims Administrator shall send the Class Member a notice in writing informing the Class Member of the total number of Class

22

Members who submitted Complete Claims Packages under Track B by the Claim Deadline.  Such notification shall also remind each Class Member of: (a) the definition of Track B Awards; (b) the Track B Cap; and (c) the possibility that a Class Member's Track B Award will be reduced if the total of all Track B Awards exceeds the Track B Cap.  Such notification shall inform the Class Member that the Class Member may change his or her election to Track A by so notifying the Claims Administrator in writing within thirty (30) days of the postmark of the notification.  If a Track B Class Member does not so notify the Claims Administrator, his or her claim shall be treated as a Track B claim.

8.     For each Claimant who the Claims Administrator determines to be a Class Member and who elects Track B under Section VI.B.7, the Claims Administrator shall complete Parts I and VI of a Track B Claim Determination Form (Ex. B) and send the Form and the Class Member's claim electronically to the Track B Neutral.

9.     For each Claimant who the Claims Administrator determines to be a Class Member and who elects Track A under Section VI.B.7, the Claims Administrator shall follow the procedure in Section VI.B.6.

10.    The Claims Administrator shall make every reasonable effort to complete the Class Membership Determination and complete his or her other duties under this Section within sixty (60) days of receipt of a Complete Claim Package.

C.    TRACK A

1.     For each Class Member asserting a claim under Track A, the Track A Neutral shall determine whether the Class Member has established, by substantial evidence, each of the following elements:

    a.    The Class Member is an African-American farmer who farmed, or attempted to farm, between January 1, 1981, and December 31, 1996;

    b.    The Class Member owned or leased, or attempted to own or lease, farm land;

    c.    The Class Member applied, or constructively applied, for a specific farm credit transaction(s) or non-credit benefit(s) at a USDA office between January 1, 1981, and December 31, 1996;

23

d.     The farm loan(s) or non-credit benefit(s) for which the Class Member applied was denied, provided late, approved for a lesser amount than requested, encumbered by a restrictive condition(s), or USDA failed to provide an appropriate loan service(s);

e.     USDA's treatment of the loan or non-credit benefit application(s) led to economic damage to the Class Member; and

f.     The Class Member complained of discrimination to an official of the United States Government on or before July 1, 1997, regarding USDA's treatment of him or her in response to the application(s).

2.   For each Class Member who asserts that he or she "constructively applied" for a loan or non-credit benefit in order to satisfy Section VI.C.1.c, the Track A Neutral must make an additional determination that the Class Member has established, by substantial evidence, that:

a.     The Class Member made a *bona fide* effort to apply for a loan or non-credit benefit.  Such *bona fide* effort may be established by evidence of:

(1)   the year in which the Class Member attempted to apply and the general time period within that year (*e.g.*, late fall, early spring, sometime in January, February, or March);

(2)   the type and amount of loan or non-credit benefit for which the Class Member attempted to apply;

(3)   how the Class Member planned to use the funds (*i.e.*, identification of crops, equipment, acreage, etc.); and

(4)   how the Class Member's plans for a farm operation were consistent with farming operations in that county/area in that year; and

b.     USDA actively discouraged the application.  Active discouragement may be established by evidence of:

(1)   statements by a USDA official that, at the time the Class Member wanted to apply, there were no funds available and therefore no application would be provided;

24

(2)      statements by a USDA official that, at the time the Class
         Member wanted to apply, there were no application forms
         available; or

(3)      statements by a USDA official that, at the time the Class
         Member wanted to apply, USDA was not accepting or
         processing applications.

3.     The Track A Neutral's determination shall be based solely on the
       materials submitted by the Class Member and, if applicable, the
       information provided by FSA in response to a completed Authorization to
       Disclose Debt Information Form.

4.     If the Track A Neutral determines that the Class Member has satisfied the
       elements listed above for a credit or non-credit claim, the Neutral shall
       complete Part V on the Class Member's Track A Claim Determination
       Form (Ex. A).  If the Track A Neutral determines that the Class Member
       has not satisfied the elements listed above, the Neutral shall complete Part
       IV of the Track A Claim Determination Form.  The Neutral shall make
       every reasonable effort to complete this determination and send the Track
       A Claim Determination Form electronically to the Claims Administrator
       within thirty (30) calendar days of receipt of the claim or within ten (10)
       calendar days of receipt of the Authorization to Disclose Debt Information
       Form, whichever is later.

D.   TRACK B

1.     For each Class Member asserting a credit claim under Track B, the Track
       B Neutral shall determine whether the Class Member has established, by a
       preponderance of the evidence and through independent documentary
       evidence admissible under the Federal Rules of Evidence, each of the
       following elements:

       a.      The Class Member is an African-American farmer who farmed, or
               attempted to farm, between January 1, 1981, and December 31,
               1996;

       b.      The Class Member owned or leased, or attempted to own or lease,
               farm land;

       c.      The Class Member applied for a specific farm credit transaction(s)
               at a USDA office between January 1, 1981, and December 31,
               1996.  Constructive application is insufficient;

25

d.     The farm loan(s) for which the Class Member applied was denied, provided late, approved for a lesser amount than requested, encumbered by a restrictive condition(s), or USDA failed to provide an appropriate loan service(s);

e.     The treatment of the Class Member's loan application(s) by USDA was less favorable than that accorded a specifically identified, similarly situated white farmer(s);

f.     USDA's treatment of the loan application(s) led to economic damage to the Class Member; and

g.     The Class Member complained of discrimination to an official of the United States Government on or before July 1, 1997, regarding USDA's treatment of him or her in response to the application(s).

2.     Notwithstanding the requirement that each element in Track B be established by a preponderance of the evidence and with independent documentary evidence admissible under the Federal Rules of Evidence,

a.     Sections VI.D.1.e and VI.D.1.g may be established by a preponderance of the evidence and with a sworn statement based on personal knowledge by an individual who is not a member of the Class Member's family;

b.     The Class Member's loan application and supporting documents forming the basis of the Class Member's claim are deemed admissible under the Federal Rules of Evidence upon a sworn statement by the Class Member that the loan application and supporting documents were submitted to FSA contemporaneously to the date of the complete application.  FSA documents that were provided to the Class Member in response to the Class Member's loan application are also deemed admissible under the Federal Rules of Evidence upon a sworn statement by the Class Member that the Class Member received the FSA documents in response to the Class Member's loan application contemporaneously to the date of the response; and

c.     Nothing in this Section precludes a Class Member from submitting expert testimony to explain the independent documentary evidence submitted by the Class Member with respect to Section VI.D.1.f.

3.      Once the Class Member has submitted independent documentary evidence admissible under the Federal Rules of Evidence or evidence as provided for above in Section VI.D.2 on each element, the Track B Neutral may consider the materials submitted by the Class Member, the opinion and analysis by the Track B Expert, and any other information or material deemed appropriate for consideration by the Track B Neutral.

4.      If the Track B Neutral determines that the Class Member has satisfied the elements listed above, the Neutral shall complete Part V on the Class Member's Track B Claim Determination Form (Ex. B).  If the Track B Neutral determines that the Class Member has not satisfied the elements listed above, the Neutral shall complete Part IV of the Track B Claim Determination Form.  The Neutral shall make every reasonable effort to complete this determination and send the Track B Claim Determination Form electronically to the Claims Administrator within thirty (30) calendar days of receipt of the claim.

E.      DISTRIBUTION OF CLAIM DETERMINATIONS AND SETTLEMENT FUNDS

1.      Within thirty (30) days of receipt of a Track A or Track B Claim Determination Form (Ex. B) for a denied claim, the Claims Administrator shall complete Part II of the Form and send the Form to the non-prevailing Class Member and his or her counsel, and to Lead Class Counsel.

2.      On a quarterly basis, the Claims Administrator shall provide to the Secretary and to Lead Class Counsel a written report, which may be provided on the Quarterly Payment Reporting Form (Ex. I), that includes: (a) the name, address, and Social Security or Taxpayer Identification Number of each Class Member who has completed the claims process; (b) the Class Member's FSA Account Number, if applicable, and (c) whether the Class Member prevailed.

3.      Within thirty (30) calendar days of receipt of all Track A and Track B Claim Determination Forms (Exs. A and B), the Claims Administrator shall calculate: (a) the sum of all Provisional Track A Liquidated Awards, Provisional Track A Loan Awards, and Provisional Track A Tax Awards, as shown on Part V of the Track A Claim Determination Forms (Ex. A); (b) the sum of all Provisional Track B Awards, as shown on Part V of the Track B Claim Determination Forms (Ex. B); (c) the sum of all Final Track A Liquidated Awards, Final Track A Loan Awards, Final Track A Tax Awards, and Final Track B Awards, as calculated under Section VI.E.4 and Section VI.E.6; (d) the Implementation Costs incurred to date;

27

(e) a good faith estimate of Implementation Costs necessary for the Claims Administrator to perform its final duties under this Agreement; (f) the amount of the Fee Award; (g) the sum of Track B Fees incurred by Track B Class Members, as calculated under Section VI.E.5 and Section VI.E.6.

4.      In order to calculate each Class Member's Final Award(s), the Claims Administrator shall do as follows:

a.      First, if the sum total of all Track B Awards exceeds the Track B Cap,

      (1)      The Claims Administrator shall divide each Class Member's Track B Award by the sum total of all Track B Awards to obtain that Class Member's "Track B Percentage."

      (2)      Then, the Claims Administrator shall multiply each Class Member's Track B Percentage by the Track B Cap to obtain the Class Member's "Modified Track B Award." The Claims Administrator shall then replace the Track B Award indicated in Part V of the Class Member's Track B Determination Form with his or her Modified Track B Award. This Modified Track B Award shall serve as the Class Member's "Track B Award" or "Provisional Track B Award" for purposes of this Section.

b.      Next, the Claims Administrator shall calculate the Sum of Available Funds and the Sum of Awards. The Sum of Available Funds is the lesser of (1) the sum of the Pre-Effective Date Funds plus the 2008 Funds, minus the difference between the Fee Award and the product of the Track B Fee Cap multiplied by the Sum of Provisional Track B Awards (as modified by Section VI.E.4.a), minus the incurred and anticipated final Implementation Costs up to the Cost Cap; or (2) the sum of all Provisional Track A Liquidated Awards, Provisional Track A Loan Awards, Provisional Track A Tax Awards, and Provisional Track B Awards, as shown on Part V of the Track A Claim Determination Forms (Ex. A). The Sum of Awards is the sum of all Provisional Track A Liquidated Awards, Provisional Track A Loan Awards, Provisional Track A Tax Awards, and Provisional Track B Awards, as shown on Part V of the Track A and Track B Claim Determination Forms (Exs. A and B).

28

c.      If the Sum of Available Funds is equal to or exceeds the Sum of Awards, each prevailing Track A Class Member's Final Track A Liquidated Award, if applicable, shall be equal to the Provisional Track A Liquidated Award in Part V of that Class Member's Track A Claim Determination Form (Ex. A).  Each prevailing Track A Class Member's Final Track A Loan Award, if applicable, shall be equal to the Provisional Track A Loan Award in Part V of that Class Member's Track A Claim Determination Form.  Each prevailing Track A Class Member's Final Track A Tax Award, if applicable, shall be equal to the Provisional Track A Tax Award in Part V of that Class Member's Track A Claim Determination Form.  Each prevailing Track B Class Member's Final Track B Award, if applicable, shall be equal to the Provisional Track B Award in Part V of that Class Member's Track B Claim Determination Form (Ex. B).

d.      If the Sum of Available Funds is less than the Sum of Awards:

(1)     For each prevailing Class Member whose late-filing request was submitted after September 15, 2000, the Claims Administrator shall reduce by 30% the Class Member's Provisional Track A Liquidated Award, Provisional Track A Loan Award, Provisional Track A Tax Award, and Provisional Track B Award, and so modify Part V of the Class Member's Track A or Track B Claim Determination Form.  The Claims Administrator shall then recalculate the total of all Provisional Track A Awards and Provisional Track B Awards to obtain a Revised Sum of Awards.

(a)     If the Revised Sum of Awards is more than the Sum of Available Funds,

(i)     The Claims Administrator shall divide the Sum of Available Funds by the Revised Sum of Awards to obtain a percentage.  This percentage shall be called the "Second Percentage."

(ii)    Each prevailing Track A Class Member's Revised Track A Liquidated Award, if applicable, shall be equal to the Second Percentage multiplied by the Provisional Track A Liquidated Award in Part V of that

29

Class Member's Track A Claim Determination Form (Ex. A). Each prevailing Track A Class Member's Revised Track A Loan Award, if applicable, shall be equal to the Second Percentage multiplied by the Provisional Track A Loan Award in Part V of that Class Member's Track A Claim Determination Form. Each prevailing Track A Class Member's Revised Track A Tax Award, if applicable, shall be equal to the Second Percentage multiplied by the Provisional Track A Tax Award in Part V of that Class Member's Track A Claim Determination Form multiplied by the Second Percentage. Each prevailing Track B Class Member's Revised Track B Award, if applicable, shall be equal to the Second Percentage multiplied by the Provisional Track B Award in Part V of that Class Member's Track B Claim Determination Form (Ex. B).

(b)     If the Revised Sum of Awards is less than the Sum of Available Funds,

(i)     First, the Claims Administrator shall subtract the Revised Sum of Awards from the Sum of Available Funds to determine the "Leftover Interim Reduced Funds."

(ii)     Second, for each Class Member subject to the 30% reduction, the Claims Administrator shall calculate that Class Member's "Percentage of Leftover Reduced Funds" by dividing the Class Member's Provisional Track A or Track B Award (reduced by 30%) by the sum of all Provisional Awards subject to the 30% reduction.

(iii)     Third, for each Class Member subject to the 30% reduction, the Claims Administrator shall multiply the Class Member's Percentage of Leftover Reduced Funds

30

times the Leftover Interim Reduced Awards to obtain that Class Member's "Leftover Funds Enhancement."

(iv)    Fourth, for each Class Member subject to the 30% reduction, the Claims Administrator shall (a) divide the Class Member's Provisional Track A Liquidated Award by the Class Member's Provisional Track A Award to obtain the Class Member's "Liquidated Award Percentage," (b) divide the Class Member's Provisional Track A Loan Award by the Class Member's Provisional Track A Award to obtain the Class Member's "Loan Award Percentage," and (c) divide the Class Member's Provisional Track A Tax Award by the Class Member's Provisional Track A Award to obtain the Class Member's "Tax Award Percentage."

(v)    For each Class Member subject to the 30% reduction,

a.    The Class Member's Revised Track A Liquidated Award, if applicable, shall be equal to the sum of (1) the Class Member's Liquidated Award Percentage multiplied by the Leftover Funds Enhancement, and (2) 70% of the Provisional Track A Liquidated Award in Part V of that Class Member's Track A Claim Determination Form (Ex. A).

b.    The Class Member's Revised Track A Loan Award, if applicable, shall be equal to the sum of (1) the Class Member's Loan Award Percentage multiplied by the Leftover Funds Enhancement, and (2) 70% of the Provisional Track A Loan Award in Part V of that Class Member's Track A Claim Determination Form (Ex. A).

31

    c.  The Class Member's Revised Track A Tax Award, if applicable, shall be equal to the sum of (1) the Class Member's Tax Award Percentage multiplied by the Leftover Funds Enhancement, and (2) 70% of the Provisional Track A Tax Award in Part V of that Class Member's Track A Claim Determination Form (Ex. A).

    d.  The Class Member's Revised Track B Award, if applicable, shall be equal to the sum of (1) the Class Member's Leftover Funds Enhancement, and (2) 70% of the Provisional Track B Award in Part V of that Class Member's Track B Claim Determination Form (Ex. B).

(vi)    For each Class Member not subject to the 30% reduction,

    a.  The Class Member's Revised Track A Liquidated Award, if applicable, shall be equal to the Provisional Track A Liquidated Award in Part V of that Class Member's Track A Claim Determination Form (Ex. A).

    b.  The Class Member's Revised Track A Loan Award, if applicable, shall be equal to the Provisional Track A Loan Award in Part V of that Class Member's Track A Claim Determination Form (Ex. A).

    c.  The Class Member's Revised Track A Tax Award, if applicable, shall be equal to the Provisional Track A Tax Award in Part V of that Class Member's Track A Claim Determination Form (Ex. A).

    d.  The Class Member's Revised Track B Award, if applicable, shall be equal to

32

the Provisional Track B Award in Part V of that Class Member's Track B Claim Determination Form (Ex. B).

5.      Next, the Claims Administrator shall calculate the Provisional Track B Fee for each Class Member by multiplying each Class Member's Revised Track B Award by the fee percentage indicated by the Class Member in Part IX of the Class Member's Claim Form.  The Claims Administrator shall then calculate the sum of all Provisional Track B Fees.

6.      If the Claims Administrator determined that the Sum of Available Funds was less than the Sum of Awards (*i.e.*, Revised Awards were calculated under Section VI.E.4.d), then the Claims Administrator shall calculate the Class Member's Final Awards as follows:

a.      If the Sum of Available Funds was calculated using Section VI.E.4.b.(1), the Claims Administrator shall divide (1) the Sum of Available Funds minus (a) the difference between (i) the Track B Fee Cap multiplied by the Sum of Provisional Track B Awards and (ii) all Track B Fees calculated in Section VI.E.5 by (2) the Sum of Available Funds, to obtain the "Available Funds Multiplier."  The Claims Administrator shall then calculate each Class Member's Final Track A Liquidated Award, Final Track A Loan Award, Final Track A Tax Award, Final Track B Award, and Final Track B Fee by multiplying each Revised Award by the Available Funds Multiplier.

b.      If the Sum of Available Funds was calculated using Section VI.E.4.b.(2), the Revised Awards calculated in Section VI.E.4.d are the Class Members' Final Awards, and the Provisional Track B Fee calculated in Section VI.E.5, if applicable, is the Class Member's Final Track B Fee.

7.      The Claims Administrator shall record the Final Awards and the Final Track B Fees in Parts II and III of the prevailing Class Members' Track A and Track B Claim Determination Forms (Exs. A and B).  The Claims Administrator shall then remove Parts V and VI from the Determination Forms.

8.      Within thirty (30) calendar days of receipt of all Track A and Track B Claim Determination Forms (Exs. A and B), the Claims Administrator shall prepare the Preliminary Final Accounting and submit it to Lead Class Counsel and the Secretary.

9.     Within thirty (30) calendar days of the date that the Secretary makes the payment specified in Section IV.H, the Claims Administrator shall:

a.     Send to each prevailing Track A Class Member who retained Class Counsel or proceeded without counsel the Class Member's Track A Claim Determination Form (Ex. A) (without Parts V and VI) and a check payable to the Class Member in the amount of the Class Member's Final Track A Liquidated Award.  The Claims Administrator shall also send to the Individual Counsel for each Track A Class Member who retained Individual Counsel the Class Member's Track A Claim Determination Form (Ex. A) (without Parts V and VI) and a check jointly payable to the Class Member and his or her Individual Counsel in the amount of the Final Track A Liquidated Award.  The Claims Administrator shall also send to each prevailing Track B Class Member the Class Member's Track B Claim Determination Form (Ex. B) (without Parts V and VI) and a check payable to the Class Member in the amount of the Final Track B Award, minus the Class Member's Final Track B Fee.

b.     Send, on behalf of each prevailing Track A Class Member, (a) to the IRS, the amount of the Class Member's Final Track A Tax Award and (b) to FSA, the amount of the Class Member's Final Track A Loan Award.  The Claims Administrator shall provide the Class Member's counsel, or the Class Member directly if the Class Member has no counsel, notice that such payment(s) has been made.  When transmitting payments for Track A Loan Awards to FSA, the Claims Administrator shall provide FSA with the name, address, and Social Security or Taxpayer Identification Number of the Class Member on whose behalf the payment is being made as well as the FSA Account Number of the loan to which the credit should be made.

c.     Send a check to the counsel for each prevailing Track B Class Member in the amount of that Class Member's Final Track B Fee.

10.    Within thirty (30) calendar days of the date that the Secretary makes the payment specified in Section IV.H, the Claims Administrator shall cause to be paid from the Designated Account any outstanding Implementation Costs up to the Cost Cap.

11.    Within thirty (30) calendar days of the date that the Secretary makes the payment specified in Section IV.H, the Claims Administrator shall transmit to the Common Benefit Fund a payment equal to the Fee Award

minus the sum of Track B Fees the Claims Administrator caused to be paid and minus any interim Common Benefit Fees already paid.

12. All checks distributed under this Section will be valid for 180 calendar days from the date of issue. The funds corresponding to any check that remains uncashed 181 calendar days from its date of issue shall remain in the Designated Account if Section VI.E.4.c applies, shall be distributed *pro rata* to all prevailing Class Members if Section VI.E.4.d(1)(a) applies, or shall be distributed *pro rata* to the prevailing Class Members subject to the 30% reduction if Section VI.E.4.d(1)(b) applies. The Claims Administrator shall send a check made payable to the Class Member in the amount of the *pro rata* distribution, if applicable. These checks will be valid for 180 calendar days from the date of issue. Notwithstanding any other provision, no Class Member shall receive a total of more than his or her Provisional Track A Award or Track B Award.

13. If a Class Member who is deceased or was unable to submit a claim on his or her own behalf due to a physical or mental limitation prevails, and a legal representative has not yet been appointed for the Class Member, the funds payable to the Class Member shall be held for up to one year in a separate account established by Class Counsel for the benefit of the Class Member until a legal representative for the Class Member to whom the funds may be disbursed, is appointed. The Claims Administrator may extend this period upon receipt of proof that a petition for appointment of a legal representative for the Class Member is pending in the appropriate court.

14. In the event there is a balance remaining in the Designated Account after the last check has been cashed, the last check has been invalidated due to passage of time, and after the passage of time set forth in Section VI.E.13, the Claims Administrator shall direct any leftover funds to the Cy Pres Fund. Class Counsel may then designate Cy Pres Beneficiaries to receive equal shares of the Cy Pres Fund. The Claims Administrator shall send to each Beneficiary, via first class mail, postage prepaid, a check in the amount of the Beneficiary's share of the Cy Pres Fund.

15. Within 200 calendar days of making all payments set forth in this Section, the Claims Administrator shall prepare the Final Accounting and submit it to Class Counsel and the Secretary.

## VII.   THE DUTIES OF CLASS COUNSEL

A.   Class Counsel, under the direction of Lead Class Counsel, shall:

35

1.      Perform all duties set forth in Federal Rule of Civil Procedure 23, those ordered by the Court, and those provided for in this Agreement;

2.      Provide representation without additional charge to Claimants who elect to submit claims under Track A;

3.      Obtain from the *Pigford* Facilitator (a) a current version of the *Pigford* Timely 5(g) List, (b) copies of all late-filing requests, (c) all other available information and correspondence regarding the late-filing status of Class Members, including any lists prepared by the *Pigford* Facilitator reflecting such status, (d) the *Pigford* Participants List, and (e) the *Pigford* Opt-Out List.  Class Counsel shall make these materials available to the Claims Administrator and the Track A and B Neutrals.  This information shall be subject to any existing or future protective orders of the Court;

4.      Upon request by a Claimant or Individual Counsel representing a Claimant and after proof of compliance with any existing or future protective orders of the Court, provide to such Individual Counsel or Claimant verification of the Claimant's presence on the most recent *Pigford* Timely 5(g) List, *Pigford* Participants List, and *Pigford* Opt-Out List in Class Counsel's possession as well as copies of any of the communications or information in Class Counsel's possession that refer or relate to the Claimant on whose behalf the request is made;

5.      Provide notice of this Agreement to Class Members;

6.      Answer Class Member questions;

7.      Provide information to Class Members regarding the status of claims processing or the distribution of the funds provided under this Agreement; and

8.      Perform other such duties as may be incidental to proper coordination of this Agreement.  Class Counsel shall have no obligation to perform any legal work for any Class Member related to the probate of a Class Member's estate, including the appointment of executors or legal representatives.

B.      Lead Class Counsel shall be responsible for general coordination and direction of the activities of all other Class Counsel, including Liaison Counsel and the Plaintiffs' Steering Committee.  In performing this responsibility, Lead Class Counsel shall:

36

1.     Determine and present the position of the Class on any matters arising during Court proceedings, including any proceedings relating to class certification and the approval and implementation of this Agreement;

2.     Coordinate and direct the efforts of all counsel acting on behalf of Class Members so as to assist Class Members with completing claims, provide accurate and timely information to Class Members; and ensure that all Class Counsel assigned to represent Class Members are performing the work allocated to them;

3.     Prepare and file a fee petition with the Court;

4.     Direct the Plaintiffs' Steering Committee in the administration of the Common Benefit Fund;

5.     Retain and dismiss appropriate individuals or entities to carry out the tasks and responsibilities outlined in this Agreement, including hiring, directing and overseeing the work of the Claims Administrator and the Track A and B Neutrals, and ensure that these administrators do not incur costs that would cause the Implementation Costs to exceed the Cost Cap;

6.     Direct and oversee the implementation and dissemination of notice of this Agreement to Class Members, and control or direct all communications with Class Members subject to approval and oversight by the Court if required by Federal Rule of Civil Procedure 23;

7.     Develop the content of a Settlement Website and ensure its proper use and administration;

8.     Plan, develop and conduct meetings or seminars designed to provide notice or assistance to Class Members regarding this Agreement;

9.     Conduct additional or supplemental negotiations on behalf of the Class (but only in consultation with Liaison Counsel and the Plaintiffs' Steering Committee), if necessary;

10.    Delegate specific tasks to other counsel or committees of counsel in a manner to ensure the Agreement is effectuated and adequate notice and assistance with the submission of claims is provided to Class Members;

11.    Work with the Secretary's Counsel as necessary for the conduct of this Agreement and its approval and implementation under Federal Rule of Civil Procedure 23;

12.     Prepare and distribute periodic status reports and any accountings required by this Agreement to Class Members or to the Secretary as appropriate;

13.     Maintain adequate time and disbursement records covering services as Lead Counsel and develop and enforce time reporting requirements for all other counsel acting on behalf of the Class;

14.     Monitor and redirect the activities of Class Counsel to ensure that schedules are met and unnecessary expenditures of time and funds are avoided;

15.     Develop procedures and methods to provide Class Members with answers to frequently asked questions, to assist with the claims process and the distribution of funds provided under this Agreement, and to wind up the administration of this Agreement when appropriate; and

16.     Perform other such duties as may be incidental to proper coordination of this Agreement.

C.     Under the direction of Lead Class Counsel, Liaison Counsel shall assist Lead Class Counsel in the performance of their duties, and in so doing:

1.     Coordinate all communications among counsel working on behalf of individual Class Members (both Class Counsel and Individual Counsel), and all communications among Class Counsel acting on behalf of the Class, including Lead Counsel and members of the Plaintiffs' Steering Committee;

2.     Assist in planning and conducting any meetings between counsel acting on behalf of the Class;

3.     Assist in the oversight and direction of the efforts of any individuals or entities retained by Class Counsel to perform various functions or tasks required by this Agreement such as the Claims Administrator and the Track A and B Neutrals;

4.     Assist Class Counsel in developing and enforcing time reporting requirements for all other counsel acting on behalf of the Class and maintain a database of all reported time and expenses by counsel acting on behalf of the Class;

5.     Assist Class Counsel in complying with any accounting requirements imposed by this Agreement;

38

6.      Assist in planning and conducting any meetings or seminars designed to provide notice or assistance to Class Members regarding this Agreement; and

7.      Perform other such duties as may be incidental to proper coordination of this Agreement.

D.      Under the direction of Lead Class Counsel, the Plaintiffs' Steering Committee shall assist Lead Class Counsel and Liaison Counsel in the performance of their duties, including:

1.      Overseeing the quality and allocation of work among Class Counsel;

2.      Administering the Common Benefit Fund in accordance with the terms of a Counsel Participation Agreement and any orders issued by the Court; and

3.      Performing other such duties as may be incidental to proper coordination of this Agreement.

## VIII.  PROCEDURES GOVERNING APPROVAL OF THIS AGREEMENT

A.      Within forty-five (45) calendar days of the Execution Date, the Plaintiffs shall submit this Agreement and its Exhibits to the District Court along with a motion for its preliminary approval.  The Motion shall specifically request that the Court set a hearing on the Motion and be accompanied by a proposed Preliminary Approval Order, a proposed Settlement Notice, and a proposed Settlement Notice Plan.  The Motion shall specifically request that the Court:

1.      Certify, for settlement purposes only, a Federal Rule of Civil Procedure 23(b)(1) limited fund, non-opt-out class as defined by this Agreement;

2.      Appoint some of the Plaintiffs as Representatives for the Class pursuant to Federal Rule of Civil Procedure 23(a)(4);

3.      Appoint Class Counsel pursuant to Federal Rule of Civil Procedure 23(g) and order that Class Counsel perform the duties set forth in this Agreement.  Plaintiffs, in their Motion, will propose specific individuals as Class Counsel;

4.      Designate Lead Class Counsel, Liaison Counsel, and the Plaintiffs' Steering Committee.  Plaintiffs, in their Motion, will propose specific individuals for these designations;

39

5.      Preliminarily approve this Agreement;

6.      Order the dismissal of all actions in the Consolidated Case with prejudice under Federal Rules of Civil Procedure 41(a)(1) and 23(e), effective as of the Final Approval Date;

7.      Approve the Plaintiffs' selection of a Claims Administrator and Neutrals to perform the duties set forth in this Agreement within the cost controls set out in this Agreement. The Claims Administrator and the Neutrals will be designated by Plaintiffs' Counsel prior to the date of the requested hearing on the Preliminary Approval Motion;

8.      Approve the Parties' plan for dissemination of notice of this Agreement pursuant to Federal Rule of Civil Procedure 23(e)(1);

9.      Determine the Track A Individual Counsel Fee Cap and the Track B Fee Cap;

10.     Set a date and procedure by which objections from Class Members must be filed;

11.     Set a date for a hearing (the "Fairness Hearing") to consider whether the Agreement should be approved under Federal Rule of Civil Procedure 23(e);

12.     Enter a Federal Rule of Civil Procedure 26(c) protective order regarding the dissemination of the personal information contained in the *Pigford* Participants List, the *Pigford* Opt-Out List, the *Pigford* Timely 5(g) List, and the information and correspondence maintained by the *Pigford* Facilitator regarding the late-filing status of Claimants; and

13.     Authorize the Secretary to pay Class Counsel, for the benefit of the Class, the funds specified in Sections IV.C, IV.E, and IV.G, and order that the expenditure of such funds for purposes of this Agreement are a proper and consistent use of the funds, and that the Secretary shall not be liable in any other context or proceeding for these funds in the event that the Agreement becomes void or is voided.

B.     The Plaintiffs shall provide the Secretary with draft copies of these motion papers no later than thirty (30) calendar days after the Execution Date. Prior to the Plaintiffs' submission of these papers to the Court in accordance with Section VIII.A, the Parties shall agree on the text of these papers.

C. No later than three (3) business days before the Fairness Hearing, the Claims Administrator shall file with the District Court a declaration confirming compliance with the Notice procedures approved by the Court.

D. At the Fairness Hearing, the Parties will jointly request that the District Court finally approve this Agreement pursuant to Federal Rule of Civil Procedure 23(e) and order the items in Sections VIII.A.6, VIII.A.9, and VIII.A.13, above.  The Parties agree to take all actions necessary to obtain approval of this Agreement.

## IX. ATTORNEY'S FEES, EXPENSES, AND COSTS

A. As part of the Motion for Preliminary Approval of this Agreement, Plaintiffs will move the Court to approve the Track B Fee Cap and the Track A Individual Counsel Fee Cap and to set the amount of the Track B Fee Cap and the Track A Individual Counsel Fee Cap, except that the amount of the Track A Individual Counsel Fee Cap shall not exceed 2% of a Track A Claimant's Final Award and a Track B Fee Cap shall not exceed 8% of a Track B Claimant's Final Award.

B. As part of or simultaneous with the Motion for Final Approval of this Agreement, Class Counsel will move the Court to approve the Fee Award and to set the amount of the Fee Award, except that the amount of the Fee Award shall be at least 4.1% and not more than 7.4% of the Fee Base.  Lead Class Counsel shall have sole responsibility to prepare and file a petition with the Court seeking approval of, and setting the amount for, the Fee Award prior to receiving any fees under this Agreement.

C. The Secretary reserves the right to respond to the fee petition in full and reserves the right to argue that the Fee Award should be limited to 4.1% of the Fee Base.

D. The Court's determination of the Fee Award, the Track A Fee Cap, and the Track B Fee Cap shall be conclusive, and neither the Class, nor Class Counsel, nor the Secretary shall appeal the decision.

E. Class Counsel shall be paid for their reasonable and compensable work on behalf of the Class from the Common Benefit Fund.  The Common Benefit Fund shall be comprised of the Fee Award minus the sum of Track B Fees the Claims Administrator caused to be paid.  Class Counsel may accept interim payments of fees, costs, and expenses from the Common Benefit Fund from funds designated in Section IV.G.

F. The Secretary shall not be liable to pay Class Counsel, Plaintiffs' Counsel, or Individual Counsel any attorney's fees, expenses, or costs.

41

G.     The Class Representatives, the Class, and/or Class Counsel may not terminate this Agreement because the Class Representatives, the Class, and/or Class Counsel assert that the amount of the Fee Award, the Track A Individual Counsel Fee Cap, or the Track B Fee Cap is inadequate.

H.     The Class Representatives, the Class, Class Counsel, and Individual Counsel release, acquit, and forever discharge any claim that they may have against the Secretary for attorney's fees, expenses, or costs associated with their representation of the Plaintiffs, the Class, or any Member of the Class in the Consolidated Case or under this Agreement.

I.     If a person preparing a claim on a Claimant's behalf seeks the Claimant's award as a representative of the Claimant's estate, Class Counsel and Individual Counsel may, but are not required to, represent that Claimant in any probate proceedings. The fee for such probate work is outside the scope of this Agreement and is not subject to any limitation on attorney's fees, expenses, or costs contained within this Agreement.

## X.     CONDITIONS THAT RENDER AGREEMENT VOID OR VOIDABLE

A.     With the exception of Section XI,

1.     This Agreement shall be voidable by the Plaintiffs and/or the Class within sixty (60) calendar days of the earliest of (a) March 31, 2010, (b) the Preliminary Final Accounting Date, or (c) the Effective Date, if as of the earliest of these dates, Congress fails to appropriate Pre-Effective Date Funds in the amount of $1,150,000,000. The Plaintiffs and/or the Class shall exercise this right to void by so notifying the Secretary in writing within the 60-day time period.

2.     This Agreement shall be voidable by the Secretary if, at any time prior to the Effective Date or the Preliminary Final Accounting Date, whichever is later, Congress appropriates additional funds such that the total of the 2008 Funds and any Pre-Effective Date Funds exceeds $1,250,000,000. The Secretary shall have sixty (60) calendar days from the date that this Agreement becomes voidable to notify Class Counsel that it is exercising the option to void this Agreement.

3.     This Agreement shall be void if, at any time prior to the Effective Date or Preliminary Final Accounting Date, whichever is later, Congress appropriates additional funds, from the Judgment Fund, 31 U.S.C. § 1304, or any other source, or otherwise legislates to cause the Pre-Effective Date Funds to be unlimited or without a maximum cap.

4.      This Agreement shall be voidable by the Secretary if, prior to the Effective Date, Congress alters or amends Section 14012 to (a) expand or contract the cause of action set forth in Section 14012(b); (b) expand or contract the group of individuals eligible to file claims under Section 14012; and/or (c) impose new burdens or obligations under Section 14012 on the Secretary and/or the United States beyond those currently set forth in Section 14012 as of June 18, 2008.  Alterations and amendments subject to this paragraph shall not include legislation solely to provide any Pre-Effective Date Funds.  The Secretary shall have sixty (60) calendar days from the date that this Agreement becomes voidable to notify Class Counsel that it is exercising the option to void this Agreement.

5.      This Agreement shall be voidable by the Secretary or the Class if the District Court does not approve this Agreement in full, including the amount of the Fee Award, or if the Court's order granting final approval of this Agreement is reversed on appeal.  The Secretary and/or the Class shall have sixty (60) calendar days from the date of such decision to notify the other party that it is exercising its option to void this Agreement.

## XI.    EFFECT OF AGREEMENT IF VOIDED

A.      Should this Agreement become void or be voided as set forth in Section X,

1.      The Secretary will not object to reinstatement of the individual complaints dismissed under this Agreement.

2.      All negotiations in connection herewith, and all statements made by the Parties at or submitted to the District Court during the Fairness Hearing shall be without prejudice to the Parties to this Agreement and shall not be deemed or construed to be an admission by a Party of any fact, matter, or proposition.

3.      The Secretary retains all defenses, arguments, and motions as to all claims that have been or might later be asserted in the Consolidated Case, and nothing in this Agreement shall be raised or construed by any Plaintiffs, Claimants, the Class Representatives, the Class, or Class Counsel, to defeat or limit any defenses, arguments, or motions asserted by the Secretary.  Neither this Agreement, nor the fact of its having been made, nor any exhibit or other document prepared in connection with this Agreement, shall be admissible, entered into evidence, or used in any form or manner in discovery, over the objection of the Secretary in the Consolidated Case or in any other action or proceeding for any purpose whatsoever.

43

4.      With the exception of the Release provided in Section XI.A.5 below, Plaintiffs, Claimants, and Class Members shall retain all rights, claims, causes of action, arguments, and motions as to all claims that have been or might later be asserted in the Consolidated Case, and nothing in this Agreement shall be raised by the Secretary or the Secretary's Counsel to defeat or limit any rights, claims, causes of action, arguments, or motions asserted by any Claimants and/or the Class.  With the exception of the Release provided in Section XI.A.5 below, neither this Agreement, nor the fact of its having been made, nor any exhibit or other document prepared in connection with this Agreement, shall be admissible, entered into evidence, or used in any form or manner in discovery, over the objection of any Plaintiffs, Claimants, and/or the Class in the Consolidated Case or in any other action or proceeding for any purpose whatsoever.

5.      The Plaintiffs hereby RELEASE, WAIVE, ACQUIT, and FOREVER DISCHARGE the United States and the Secretary from, and are hereby FOREVER BARRED and PRECLUDED from prosecuting, any and all claims, causes of action, or requests for any monetary relief, including, but not limited to, damages, tax payments, debt relief, costs, attorney's fees, expenses, and/or interest that, whether presently known or unknown, related to the funds that the Secretary has paid pursuant to Sections IV.C, IV.E, and/or IV.G.  Neither the Plaintiffs nor Plaintiffs' Counsel shall be obligated to repay any interim Implementation Costs or interim Common Benefit Fees paid to them by the Secretary under Sections IV.C, IV.E and/or IV.G, but Plaintiffs' Counsel who have received interim Common Benefit Fees under this Agreement agree not to seek from the United States, the Secretary, or any other source any additional fees for the work compensated by the interim fees.

## XII.   RELEASES

A.      The Class Representatives, the Class, and its Members and their heirs, administrators, successors, and assigns (the "Class Releasors") hereby RELEASE, WAIVE, ACQUIT, and FOREVER DISCHARGE the United States and the Secretary (the "Government Releasees") from, and are hereby FOREVER BARRED and PRECLUDED from prosecuting, any and all claims, causes of action, or requests for any monetary relief, including, but not limited to, damages, tax payments, debt relief, costs, attorney's fees, expenses, and/or interest, whether presently known or unknown, that have been or could have been asserted in the Consolidated Case by reason of, with respect to, in connection with, or which arise out of, any matters alleged in the Consolidated Case that the Class Releasors, or any of them, have against the Government Releasees, or any of them.

44

B.    The Class Releasors hereby RELEASE, WAIVE, ACQUIT, and FOREVER DISCHARGE any and all rights they have or may have under Public Law No. 110-234 and/or 110-246, § 14012 (2008) and each of its provisions.

C.    The Class Releasors hereby RELEASE, WAIVE, ACQUIT, and FOREVER DISCHARGE any and all rights they have or may have to request or obtain any information, documents, testimony, or discovery in the Consolidated Case or under § 14012 from the Government Releasees.

## XIII.  NO ADMISSION OF LIABILITY

A.    Neither this Agreement nor any order approving it is or shall be construed as an admission by the Secretary and/or the United States of the truth of any allegation or the validity of any claim asserted in the Consolidated Case, or of the liability of the Secretary and/or the United States, nor as a concession or an admission of any fault or omission of any act or failure to act, or of any statement, written document, or report heretofore issued, filed or made by the Secretary and/or the United States, nor shall this Agreement nor any confidential papers related hereto and created for settlement purposes only, nor any of the terms of either, be offered or received as evidence of discrimination in any civil, criminal, or administrative action or proceeding, nor shall they be the subject of any discovery or construed by anyone for any purpose whatsoever as an admission or presumption of any wrongdoing on the part of the Secretary and/or the United States, nor as an admission by any Party to this Agreement that the consideration to be given hereunder represents the relief which could have been recovered after trial.

B.    The Secretary and the United States deny liability and damages as to each of the claims and requests for damages that were or could have been raised in the Consolidated Case, and this Agreement does not constitute, and may not be construed as, a determination or an admission of a violation of any law, rule, regulation, policy, or contract by the Secretary and/or the United States, the truth of any allegation made in the Consolidated Case, or the validity of any claim asserted in the Consolidated Case.  This Agreement does not constitute, and may not be construed as, a determination or an admission that the Secretary and/or the United States is liable in this matter, that the Class or any Member is a prevailing party, that the Class or any Member was substantially justified in any claim or position, or that any claim, defense, or position of the United States was substantially unjustified.

C.    Neither the determination to pay money nor the payment of money under the Non-Judicial Claims Process shall be deemed to be a finding of fact, conclusion of law, or an admission of liability or damages by the Secretary and/or the United States, and any such determination to pay money or the payment of money under

the Non-Judicial Claims Process shall not be admissible in any civil, criminal, or administrative action or proceeding, nor shall it be construed by anyone for any purpose whatsoever as an admission or presumption of any wrongdoing on the part of the Secretary and/or the United States, nor as an admission by any Party to this Agreement that the consideration to be given hereunder represents the relief which could have been recovered after trial.

D.      Nothing herein shall be construed to preclude the use of this Agreement to enforce the terms thereof.

## XIV.   CONTACT INFORMATION FOR THE SECRETARY AND FSA

A.      The reports, forms, transmissions, accountings, and documentation that must or may be provided to the Secretary under this Agreement shall be sent via electronic transmission or overnight delivery to (1) Counsel of Record for the Secretary in the Consolidated Case, and (2) General Counsel, U.S. Department of Agriculture, 1400 Independence Avenue SW, Washington, DC  20250.

B.      The reports, forms, transmissions, accountings, documentation, and checks that must or may be provided to FSA under this Agreement shall be sent via electronic transmission or overnight delivery to Deputy Administrator, Farm Loan Programs U.S. Department of Agriculture, Farm Service Agency, 1400 Independence Avenue SW, Washington, DC 20250, STOP 0520.

## XV.   INTEGRATION

This Agreement and its Exhibits constitute the entire agreement of the Parties, and no prior statement, representation, agreement, or understanding, oral or written, that is not contained herein, will have any force or effect.

## XVI.   MODIFICATION

This Agreement may be modified only with the written agreement of the Parties and with the approval of the District Court, upon such notice to the Class, if any, as the District Court may require.

## XVII. DUTIES CONSISTENT WITH LAW AND REGULATIONS

Nothing contained in this Agreement shall impose on the Secretary any duty, obligation, or requirement, the performance of which would be inconsistent with federal statutes or federal regulations in effect at the time of such performance.

**XVIII. CONTINUING JURISDICTION**

The Court shall not have continuing jurisdiction over this Agreement or the Non-Judicial Claims Process, except that the Court shall have continuing jurisdiction over the duties of Class Counsel and Individual Counsel as set forth in this Agreement and related orders of the Court.

**XIX.   DUTY TO DEFEND**

The Parties to this Agreement shall defend against any challenges to it in any forum.

**XX.    HEADINGS**

The headings in this Agreement are for the convenience of the Parties only and shall not limit, expand, modify, or aid in the interpretation or construction of this Agreement.

**XXI.   SEVERABILITY**

Should any non-material provision of this Agreement be found by a court to be invalid or unenforceable, then (A) the validity of other provisions of this Agreement shall not be affected or impaired, and (B) such provisions shall be enforced to the maximum extent possible.

**XXII.  COUNTERPARTS**

This Agreement may be executed in counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.

IN WITNESS WHEREOF, the Parties hereto have executed this Settlement Agreement:

<u>For the Plaintiffs</u>:


Henry Sanders, Esq.
CHESTNUT, SANDERS, SANDERS,
PETTAWAY & CAMPBELL, L.L.C.
One Union Street
Selma, AL 36701
Tel: (334) 875-9264
Fax (334) 875-9853

Dated: _____


Andrew H. Marks, Esq.
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel: (202) 624-2920
Fax: (202) 628-5116

Dated: _____


David J. Frantz, Esq.
CONLON, FRANTZ & PHELAN, LLP
1818 N Street, N.W., Suite 400
Washington, DC 20036
Tel: (202) 331-7050
Fax: (202) 331-9306

Dated: _____


James Scott Farrin, Esq.
LAW OFFICES OF JAMES SCOTT FARRIN
280 South Mangum Street, Suite 400
Durham, NC 27701
Tel: (919) 688-4991
Fax: (919) 688-4468

Dated: _____


Phillip L. Fraas, Esq.
STINSON MORRISON HECKER LLP
1150 18th Street, N.W., Suite 800
Washington, DC 20036-3816
Tel: (202) 572-9904
Fax: (202) 572-9982

Dated: _____


Donald McEachin, Esq.
MCEACHIN & GEE LLP
4719 Nine Mile Road
Henrico, VA 23223
Tel: (804) 226-4111
Fax: (804) 226-8888

Dated: _____

52

For the Plaintiffs:

_____
Henry Sanders, Esq.
CHESTNUT, SANDERS, SANDERS,
PETTAWAY & CAMPBELL, L.L.C.
One Union Street
Selma, AL 36701
Tel: (334) 875-9264
Fax (334) 875-9853

Dated: _____

_____
David J. Frantz, Esq.
CONLON, FRANTZ & PHELAN, LLP
1818 N Street, N.W., Suite 400
Washington, DC 20036
Tel: (202) 331-7050
Fax: (202) 331-9306

Dated: _____

_____
Phillip L. Fraas, Esq.
STINSON MORRISON HECKER LLP
1150 18th Street, N.W., Suite 800
Washington, DC 20036-3816
Tel: (202) 572-9904
Fax: (202) 572-9982

Dated: _____

_____
Andrew H. Marks, Esq.
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel: (202) 624-2920
Fax: (202) 628-5116

Dated: _Feb. 18, 2010_

_____
James Scott Farrin, Esq.
LAW OFFICES OF JAMES SCOTT FARRIN
280 South Mangum Street, Suite 400
Durham, NC 27701
Tel: (919) 688-4991
Fax: (919) 688-4468

Dated: _____

_____
Donald McEachin, Esq.
MCEACHIN & GEE LLP
4719 Nine Mile Road
Henrico, VA 23223
Tel: (804) 226-4111
Fax: (804) 226-8888

Dated: _____

For the Plaintiffs:

_____
Henry Sanders, Esq.
CHESTNUT, SANDERS, SANDERS,
PETTAWAY & CAMPBELL, L.L.C.
One Union Street
Selma, AL 36701
Tel: (334) 875-9264
Fax (334) 875-9853

Dated: _____

_____
David J. Frantz, Esq.
CONLON, FRANTZ & PHELAN, LLP
1818 N Street, N.W., Suite 400
Washington, DC 20036
Tel: (202) 331-7050
Fax: (202) 331-9306

Dated: _Feb. 16, 2010_

_____
Phillip L. Fraas, Esq.
STINSON MORRISON HECKER LLP
1150 18th Street, N.W., Suite 800
Washington, DC 20036-3816
Tel: (202) 572-9904
Fax: (202) 572-9982

Dated: _____

_____
Andrew H. Marks, Esq.
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel: (202) 624-2920
Fax: (202) 628-5116

Dated: _____

_____
James Scott Farrin, Esq.
LAW OFFICES OF JAMES SCOTT FARRIN
280 South Mangum Street, Suite 400
Durham, NC 27701
Tel: (919) 688-4991
Fax: (919) 688-4468

Dated: _____

_____
Donald McEachin, Esq.
MCEACHIN & GEE LLP
4719 Nine Mile Road
Henrico, VA 23223
Tel: (804) 226-4111
Fax: (804) 226-8888

Dated: _____

For the Plaintiffs:

_____

Henry Sanders, Esq.
CHESTNUT, SANDERS, SANDERS,
PETTAWAY & CAMPBELL, L.L.C.
One Union Street
Selma, AL 36701
Tel: (334) 875-9264
Fax (334) 875-9853

Dated: _____


_____

David J. Frantz, Esq.
CONLON, FRANTZ & PHELAN, LLP
1818 N Street, N.W., Suite 400
Washington, DC 20036
Tel: (202) 331-7050
Fax: (202) 331-9306

Dated: _____


_____

Phillip L. Fraas, Esq.
STINSON MORRISON HECKER LLP
1150 18th Street, N.W., Suite 800
Washington, DC 20036-3816
Tel: (202) 572-9904
Fax: (202) 572-9982

Dated: _____


_____

Andrew H. Marks, Esq.
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel: (202) 624-2920
Fax: (202) 628-5116

Dated: _____


_____

James Scott Farrin, Esq.
LAW OFFICES OF JAMES SCOTT FARRIN
280 South Mangum Street, Suite 400
Durham, NC 27701
Tel: (919) 688-4991
Fax: (919) 688-4468

Dated: ____2/17/10____


_____

Donald McEachin, Esq.
MCEACHIN & GEE LLP
4719 Nine Mile Road
Henrico, VA 23223
Tel: (804) 226-4111
Fax: (804) 226-8888

Dated: _____

For the Plaintiffs:

_____
Henry Sanders, Esq.
CHESTNUT, SANDERS, SANDERS,
PETTAWAY & CAMPBELL, L.L.C.
One Union Street
Selma, AL 36701
Tel: (334) 875-9264
Fax (334) 875-9853

Dated: _____

_____
Andrew H. Marks, Esq.
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel: (202) 624-2920
Fax: (202) 628-5116

Dated: _____

_____
David J. Frantz, Esq.
CONLON, FRANTZ & PHELAN, LLP
1818 N Street, N.W., Suite 400
Washington, DC 20036
Tel: (202) 331-7050
Fax: (202) 331-9306

Dated: _____

_____
James Scott Farrin, Esq.
LAW OFFICES OF JAMES SCOTT FARRIN
280 South Mangum Street, Suite 400
Durham, NC 27701
Tel: (919) 688-4991
Fax: (919) 688-4468

Dated: _____

*Phillip Fraas*
_____
Phillip L. Fraas, Esq.
STINSON MORRISON HECKER LLP
1150 18th Street, N.W., Suite 800
Washington, DC 20036-3816
Tel: (202) 572-9904
Fax: (202) 572-9982

Dated: *2-18-10*

_____
Donald McEachin, Esq.
MCEACHIN & GEE LLP
4719 Nine Mile Road
Henrico, VA 23223
Tel: (804) 226-4111
Fax: (804) 226-8888

Dated: _____

For the Plaintiffs:

Henry Sanders, Esq.
CHESTNUT, SANDERS, SANDERS,
PETTAWAY & CAMPBELL, L.L.C.
One Union Street
Selma, AL 36701
Tel: (334) 875-9264
Fax (334) 875-9853

Dated: _____

David J. Frantz, Esq.
CONLON, FRANTZ & PHELAN, LLP
1818 N Street, N.W., Suite 400
Washington, DC 20036
Tel: (202) 331-7050
Fax: (202) 331-9306

Dated: _____

Phillip L. Fraas, Esq.
STINSON MORRISON HECKER LLP
1150 18th Street, N.W., Suite 800
Washington, DC 20036-3816
Tel: (202) 572-9904
Fax: (202) 572-9982

Dated: _____

Andrew H. Marks, Esq.
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel: (202) 624-2920
Fax: (202) 628-5116

Dated: _____

James Scott Farrin, Esq.
LAW OFFICES OF JAMES SCOTT FARRIN
280 South Mangum Street, Suite 400
Durham, NC 27701
Tel: (919) 688-4991
Fax: (919) 688-4468

Dated: _____

Donald McEachin, Esq.
MCEACHIN & GEE LLP
4719 Nine Mile Road
Henrico, VA 23223
Tel: (804) 226-4111
Fax: (804) 226-8888

Dated: 2/16/10

52

William Lewis Garrison, Esq.
HENINGER, GARRISON & DAVIS LLC
Post Office Box 11310
2224 1ˢᵗ Avenue North
Birmingham, AL 35202
Tel: (205) 326-3336
Fax: (205) 326-3332

Dated: 2/17/10

Harris Pogust, Esq.
POGUST, BRASLAW & MILLROOD, LLC
161 Washington Street, Suite 1520
Conshohocken, PA 19428
Tel: (610) 941-4204
Fax: (610) 941-4245

Dated: _____


Walter B. Calton, Esq.
Attorney at Law
312 East Broad Street
Eufaula, AL 36027
Tel: (334) 687-2407
Fax: (334) 687-2466

Dated: _____

Alphonso Michael Espy, Esq.
MIKE ESPY, PLLC
Lamar Life Building
317 East Capital Street, Suite 101
Jackson, MS 39201
Tel: (601) 355-9101

Dated: _____


Jimmy Spurlock Calton, Jr., Esq.
LAW OFFICES OF CALTON & CALTON
226 East Broad Street
Eufaula, AL 36027
Tel: (334) 687-3563
Fax: (334) 687-3564

Dated: _____

Gregorio Francis, Esq.
MORGAN & MORGAN, P.A.
20 North Orange Avenue, Suite 1600
Orlando, FL 32801
Tel: (407) 420-1414

Dated: _____


Michael A. Rutland, Esq.
RUTLAND & JANKIEWICZ LLC
128 N. Orange Ave.
Eufaula, AL 36027
Tel: (334) 687-9899

Dated: _____

Joseph P. Strom, Jr., Esq.
STROM LAW FIRM, LLC
2110 N. Beltline Blvd., Suite A
Columbia, South Carolina 29204
Tel: (803) 252-4800
Fax: (803) 252-4801

Dated: _____

William Lewis Garrison, Esq.
HENINGER, GARRISON & DAVIS LLC
Post Office Box 11310
2224 1st Avenue North
Birmingham, AL 35202
Tel: (205) 326-3336
Fax: (205) 326-3332

Dated: _____

Harris Pogust, Esq.
POGUST, BRASLAW & MILLROOD, LLC
161 Washington Street, Suite 1520
Conshohocken, PA 19428
Tel: (610) 941-4204
Fax: (610) 941-4245

Dated: ᗺ|ι⊓|ιᴑ

Walter B. Calton, Esq.
Attorney at Law
312 East Broad Street
Eufaula, AL 36027
Tel: (334) 687-2407
Fax: (334) 687-2466

Dated: _____

Alphonso Michael Espy, Esq.
MIKE ESPY, PLLC
Lamar Life Building
317 East Capital Street, Suite 101
Jackson, MS 39201
Tel: (601) 355-9101

Dated: _____

Jimmy Spurlock Calton, Jr., Esq.
LAW OFFICES OF CALTON & CALTON
226 East Broad Street
Eufaula, AL 36027
Tel: (334) 687-3563
Fax: (334) 687-3564

Dated: _____

Gregorio Francis, Esq.
MORGAN & MORGAN, P.A.
20 North Orange Avenue, Suite 1600
Orlando, FL 32801
Tel: (407) 420-1414

Dated: _____

Michael A. Rutland, Esq.
RUTLAND & JANKIEWICZ LLC
128 N. Orange Ave.
Eufaula, AL 36027
Tel: (334) 687-9899

Dated: _____

Joseph P. Strom, Jr., Esq.
STROM LAW FIRM, LLC
2110 N. Beltline Blvd., Suite A
Columbia, South Carolina 29204
Tel: (803) 252-4800
Fax: (803) 252-4801

Dated: _____

53

William Lewis Garrison, Esq.
HENINGER, GARRISON & DAVIS LLC
Post Office Box 11310
2224 1ˢᵗ Avenue North
Birmingham, AL 35202
Tel: (205) 326-3336
Fax: (205) 326-3332

Dated: _____

_Walter B. Calton_
Walter B. Calton, Esq.
Attorney at Law
312 East Broad Street
Eufaula, AL 36027
Tel: (334) 687-2407
Fax: (334) 687-2466

Dated: _2-17-10_____

Jimmy Spurlock Calton, Jr., Esq.
LAW OFFICES OF CALTON & CALTON
226 East Broad Street
Eufaula, AL 36027
Tel: (334) 687-3563
Fax: (334) 687-3564

Dated: _____

Michael A. Rutland, Esq.
RUTLAND & JANKIEWICZ LLC
128 N. Orange Ave.
Eufaula, AL 36027
Tel: (334) 687-9899

Dated: _____

Harris Pogust, Esq.
POGUST, BRASLAW & MILLROOD, LLC
161 Washington Street, Suite 1520
Conshohocken, PA 19428
Tel: (610) 941-4204
Fax: (610) 941-4245

Dated: _____

Alphonso Michael Espy, Esq.
MIKE ESPY, PLLC
Lamar Life Building
317 East Capital Street, Suite 101
Jackson, MS 39201
Tel: (601) 355-9101

Dated: _____

Gregorio Francis, Esq.
MORGAN & MORGAN, P.A.
20 North Orange Avenue, Suite 1600
Orlando, FL 32801
Tel: (407) 420-1414

Dated: _____

Joseph P. Strom, Jr., Esq.
STROM LAW FIRM, LLC
2110 N. Beltline Blvd., Suite A
Columbia, South Carolina 29204
Tel: (803) 252-4800
Fax: (803) 252-4801

Dated: _____

53

William Lewis Garrison, Esq.
HENINGER, GARRISON & DAVIS LLC
Post Office Box 11310
2224 1st Avenue North
Birmingham, AL 35202
Tel: (205) 326-3336
Fax: (205) 326-3332

Dated: _____


Walter B. Calton, Esq.
Attorney at Law
312 East Broad Street
Eufaula, AL 36027
Tel: (334) 687-2407
Fax: (334) 687-2466

Dated: _____


Jimmy Spurlock Calton, Jr., Esq.
LAW OFFICES OF CALTON & CALTON
226 East Broad Street
Eufaula, AL 36027
Tel: (334) 687-3563
Fax: (334) 687-3564

Dated: _____


Michael A. Rutland, Esq.
RUTLAND & JANKIEWICZ LLC
128 N. Orange Ave.
Eufaula, AL 36027
Tel: (334) 687-9899

Dated: _____


Harris Pogust, Esq.
POGUST, BRASLAW & MILLROOD, LLC
161 Washington Street, Suite 1520
Conshohocken, PA 19428
Tel: (610) 941-4204
Fax: (610) 941-4245

Dated: _____


Alphonso Michael Espy, Esq.
MIKE ESPY, PLLC
Lamar Life Building
317 East Capital Street, Suite 101
Jackson, MS 39201
Tel: (601) 355-9101

Dated: _2/16/2010_


Gregorio Francis, Esq.
MORGAN & MORGAN, P.A.
20 North Orange Avenue, Suite 1600
Orlando, FL 32801
Tel: (407) 420-1414

Dated: _____


Joseph P. Strom, Jr., Esq.
STROM LAW FIRM, LLC
2110 N. Beltline Blvd., Suite A
Columbia, South Carolina 29204
Tel: (803) 252-4800
Fax: (803) 252-4801

Dated: _____

William Lewis Garrison, Esq.
HENINGER, GARRISON & DAVIS LLC
Post Office Box 11310
2224 1ˢᵗ Avenue North
Birmingham, AL 35202
Tel: (205) 326-3336
Fax: (205) 326-3332

Dated: _____

Harris Pogust, Esq.
POGUST, BRASLAW & MILLROOD, LLC
161 Washington Street, Suite 1520
Conshohocken, PA 19428
Tel: (610) 941-4204
Fax: (610) 941-4245

Dated: _____

Walter B. Calton, Esq.
Attorney at Law
312 East Broad Street
Eufaula, AL 36027
Tel: (334) 687-2407
Fax: (334) 687-2466

Dated: _____

Alphonso Michael Espy, Esq.
MIKE ESPY, PLLC
Lamar Life Building
317 East Capital Street, Suite 101
Jackson, MS 39201
Tel: (601) 355-9101

Dated: _____

Jimmy Spurlock Calton, Jr., Esq.
LAW OFFICES OF CALTON & CALTON
226 East Broad Street
Eufaula, AL 36027
Tel: (334) 687-3563
Fax: (334) 687-3564

Dated: 2 - 12 - 10

Gregorio Francis, Esq.
MORGAN & MORGAN, P.A.
20 North Orange Avenue, Suite 1600
Orlando, FL 32801
Tel: (407) 420-1414

Dated: _____

Michael A. Rutland, Esq.
RUTLAND & JANKIEWICZ LLC
128 N. Orange Ave.
Eufaula, AL 36027
Tel: (334) 687-9899

Dated: _____

Joseph P. Strom, Jr., Esq.
STROM LAW FIRM, LLC
2110 N. Beltline Blvd., Suite A
Columbia, South Carolina 29204
Tel: (803) 252-4800
Fax: (803) 252-4801

Dated: _____

_____
William Lewis Garrison, Esq.
HENINGER, GARRISON & DAVIS LLC
Post Office Box 11310
2224 1st Avenue North
Birmingham, AL 35202
Tel:  (205) 326-3336
Fax:  (205) 326-3332

Dated: _____

_____
Walter B. Calton, Esq.
Attorney at Law
312 East Broad Street
Eufaula, AL  36027
Tel: (334) 687-2407
Fax: (334) 687-2466

Dated: _____

_____
Jimmy Spurlock Calton, Jr., Esq.
LAW OFFICES OF CALTON & CALTON
226 East Broad Street
Eufaula, AL 36027
Tel:  (334) 687-3563
Fax:  (334) 687-3564

Dated: _____

_____
Michael A. Rutland, Esq.
RUTLAND & JANKIEWICZ LLC
128 N. Orange Ave.
Eufaula, AL  36027
Tel: (334) 687-9899

Dated: _____

_____
Harris Pogust, Esq.
POGUST, BRASLAW & MILLROOD, LLC
161 Washington Street, Suite 1520
Conshohocken, PA 19428
Tel:  (610) 941-4204
Fax:  (610) 941-4245

Dated: _____

_____
Alphonso Michael Espy, Esq.
MIKE ESPY, PLLC
Lamar Life Building
317 East Capital Street, Suite 101
Jackson, MS 39201
Tel:  (601) 355-9101

Dated: _____

_____
Gregorio Francis, Esq.
MORGAN & MORGAN, P.A.
20 North Orange Avenue, Suite 1600
Orlando, FL 32801
Tel:  (407) 420-1414

Dated: 2/17/10

_____
Joseph P. Strom, Jr., Esq.
STROM LAW FIRM, LLC
2110 N. Beltline Blvd., Suite A
Columbia, South Carolina 29204
Tel: (803) 252-4800
Fax: (803) 252-4801

Dated: _____

William Lewis Garrison, Esq.
HENINGER, GARRISON & DAVIS LLC
Post Office Box 11310
2224 1st Avenue North
Birmingham, AL 35202
Tel: (205) 326-3336
Fax: (205) 326-3332

Dated: _____

Harris Pogust, Esq.
POGUST, BRASLAW & MILLROOD, LLC
161 Washington Street, Suite 1520
Conshohocken, PA 19428
Tel: (610) 941-4204
Fax: (610) 941-4245

Dated: _____

Walter B. Calton, Esq.
Attorney at Law
312 East Broad Street
Eufaula, AL 36027
Tel: (334) 687-2407
Fax: (334) 687-2466

Dated: _____

Alphonso Michael Espy, Esq.
MIKE ESPY, PLLC
Lamar Life Building
317 East Capital Street, Suite 101
Jackson, MS 39201
Tel: (601) 355-9101

Dated: _____

Jimmy Spurlock Calton, Jr., Esq.
LAW OFFICES OF CALTON & CALTON
226 East Broad Street
Eufaula, AL 36027
Tel: (334) 687-3563
Fax: (334) 687-3564

Dated: _____

Gregorio Francis, Esq.
MORGAN & MORGAN, P.A.
20 North Orange Avenue, Suite 1600
Orlando, FL 32801
Tel: (407) 420-1414

Dated: _____

Michael A. Rutland, Esq.
RUTLAND & JANKIEWICZ LLC
128 N. Orange Ave.
Eufaula, AL 36027
Tel: (334) 687-9899

Dated: 2/17/10

Joseph P. Strom, Jr., Esq.
STROM LAW FIRM, LLC
2110 N. Beltline Blvd., Suite A
Columbia, South Carolina 29204
Tel: (803) 252-4800
Fax: (803) 252-4801

Dated: _____

53

_____
William Lewis Garrison
HENINGER, GARRISON & DAVIS LLC
Post Office Box 11310
2224 1ˢᵗ Avenue North
Birmingham, AL 35202
Tel:  (205) 326-3336
Fax:  (205) 326-3332

Dated: _____


_____
Walter B. Calton, Esq.
Attorney at Law
312 East Broad Street
Eufaula, AL  36027
Tel: (334) 687-2407
Fax: (334) 687-2466

Dated: _____


_____
Jimmy Spurlock Calton, Jr.
LAW OFFICES OF CALTON & CALTON
226 East Broad Street
Eufaula, AL 36027
Tel:  (334) 687-3563
Fax:  (334) 687-3564

Dated: _____


_____
Michael A. Rutland, Esq.
RUTLAND & JANKIEWICZ LLC
128 N. Orange Ave.
Eufaula, AL  36027
Tel: (334) 687-9899


_____
Harris Pogust
POGUST, BRASLAW & MILLROOD, LLC
161 Washington Street, Suite 1520
Conshohocken, PA 19428
Tel:  (610) 941-4204
Fax:  (610) 941-4245

Dated: _____


_____
Alphonso Michael Espy
MIKE ESPY, PLLC
Lamar Life Building
317 East Capital Street, Suite 101
Jackson, MS 39201
Tel:  (601) 355-9101

Dated: _____


_____
Gregorio Francis
MORGAN & MORGAN, P.A.
20 North Orange Avenue, Suite 1600
Orlando, FL 32801
Tel:  (407) 420-1414

Dated: _____


_____
Joseph P. Strom, Jr., Esq.
STROM LAW FIRM, LLC
2110 N. Beltline Blvd., Suite A
Columbia, South Carolina 29204
Tel: (803) 252-4800
Fax: (803) 252-4801

53

_Othello C. Cross_
Othello C. Cross
CROSS & KEARNEY, PLLC
1022 W. 6th Avenue
Pine Bluff, AR 71601
Tel: (870) 536-4056
Fax: (870) 536-0216

Dated: 2/16/10

_____
Anurag Varma, Esq.
PATTON BOGGS, PLLC
2550 M Street, NW
Washington, DC 20037
Tel: (202) 457-6490
Fax: (202) 457-6315

Dated: _____

_____
Charles Edwards, Esq.
THE LAW OFFICES OF MARC BOUTWELL, PLLC
P.O. Box 956
Lexington, MS 39095
Tel: (662) 834-9029
Fax: (662) 834-3117

Dated: _____

_____
Stephen Gowan, Esq.
GOWAN LAW OFFICE, PLLC
P.O. Box 38
McAdams, MS 39107
Tel: (662) 290-0042
Fax: (662) 290-0042

_____
Gary Edward Mason, Esq.
THE MASON LAW FIRM LLP
1225 19th Street NW, #500
Washington, DC 20036
Tel: (202) 429-2290
Fax: (202) 429-2294

Dated: _____

_____
Don O. Gleason, Jr., Esq.
GLEASON & MCHENRY
P.O. Box 7316
Tupelo, MS 38802
Tel: (662) 690-9842
Fax: (662) 690-9826

Dated: _____

_____
Reed Colfax, Esq.
RELMAN & DANE, PLLC
1225 19th Street NW, Suite 600
Washington, DC 20036-2456
Tel: (505) 983-6654
Fax: (202) 728-0848

Dated: _____

_____
Gilda Sherrod-Ali, Esq.
Attorney at Law
1101 L Street, NW #806
Washington, DC 20005
Tel: (202) 544-2299;
Fax: (202) 544-2298

54

_____
Othello C. Cross, Esq.
CROSS & KEARNEY, PLLC
1022 W. 6th Avenue
Pine Bluff, AR 71601
Tel:  (870) 536-4056
Fax: (870) 536-0216

Dated: _____

_____
Gary Edward Mason, Esq.
MASON LLP
1625 Massachusetts Ave., N.W.
Washington, DC 20036
Tel: (202) 429-2290
Fax: (202) 429-2294

Dated:  2 - 16 · 2010

_____
Anurag Varma, Esq.
PATTON BOGGS, LLP
2550 M Street, N.W.
Washington, DC 20037
Tel: (202) 457-6490
Fax: (202) 457-6315

Dated: _____

_____
Don O. Gleason, Jr., Esq.
GLEASON & MCHENRY
P.O. Box 7316
Tupelo, MS 38802
Tel: (662) 690-9824
Fax: (662) 690-9826

Dated: _____

_____
Marc Boutwell, Esq.
THE LAW OFFICES OF MARC BOUTWELL, PLLC
P.O. Box 956
Lexington, MS 39095
Tel: (662) 834-9029
Fax: (662) 834-3117

Dated: _____

_____
Reed Colfax, Esq.
RELMAN & DANE, PLLC
1225 19th Street N.W., Suite 600
Washington, DC 20036-2456
Tel: (202) 728-1888
Fax: (202) 728-0848

Dated: _____

_____
Stephen Gowan, Esq.
GOWAN LAW OFFICE, PLLC
P.O. Box 38
McAdams, MS 39107
Tel: (662) 290-0042
Fax: (662) 290-0042

Dated: _____

_____
Gilda Sherrod-Ali, Esq.
Attorney at Law
1101 L Street, N.W. #806
Washington, DC 20005
Tel: (202) 544-2299;
Fax: (202) 544-2298

Dated: _____

54

Othello C. Cross, Esq.
CROSS & KEARNEY, PLLC
1022 W. 6th Avenue
Pine Bluff, AR 71601
Tel: (870) 536-4056
Fax: (870) 536-0216

Dated: _____

Anurag Varma, Esq.
PATTON BOGGS, LLP
2550 M Street, N.W.
Washington, DC 20037
Tel: (202) 457-6490
Fax: (202) 457-6315

Dated: _2/17/10_____

Marc Boutwell, Esq.
THE LAW OFFICES OF MARC BOUTWELL, PLLC
P.O. Box 956
Lexington, MS 39095
Tel: (662) 834-9029
Fax: (662) 834-3117

Dated: _____

Stephen Gowan, Esq.
GOWAN LAW OFFICE, PLLC
P.O. Box 38
McAdams, MS 39107
Tel: (662) 290-0042
Fax: (662) 290-0042

Dated: _____

Gary Edward Mason, Esq.
MASON LLP
1625 Massachusetts Ave., N.W.
Washington, DC 20036
Tel: (202) 429-2290
Fax: (202) 429-2294

Dated: _____

Don O. Gleason, Jr., Esq.
GLEASON & MCHENRY
P.O. Box 7316
Tupelo, MS 38802
Tel: (662) 690-9824
Fax: (662) 690-9826

Dated: _____

Reed Colfax, Esq.
RELMAN & DANE, PLLC
1225 19th Street N.W., Suite 600
Washington, DC 20036-2456
Tel: (202) 728-1888
Fax: (202) 728-0848

Dated: _____

Gilda Sherrod-Ali, Esq.
Attorney at Law
1101 L Street, N.W. #806
Washington, DC 20005
Tel: (202) 544-2299;
Fax: (202) 544-2298

Dated: _____

Othello C. Cross, Esq.
CROSS & KEARNEY, PLLC
1022 W. 6th Avenue
Pine Bluff, AR 71601
Tel: (870) 536-4056
Fax: (870) 536-0216

Dated: _____

Gary Edward Mason, Esq.
MASON LLP
1625 Massachusetts Ave., N.W.
Washington, DC 20036
Tel: (202) 429-2290
Fax: (202) 429-2294

Dated: _____

Anurag Varma, Esq.
PATTON BOGGS, LLP
2550 M Street, N.W.
Washington, DC 20037
Tel: (202) 457-6490
Fax: (202) 457-6315

Dated: _____

Don O. Gleason, Jr., Esq.
GLEASON & MCHENRY
P.O. Box 7316
Tupelo, MS 38802
Tel: (662) 690-9824
Fax: (662) 690-9826

Dated: 2/16/10

Marc Boutwell, Esq.
THE LAW OFFICES OF MARC BOUTWELL, PLLC
P.O. Box 956
Lexington, MS 39095
Tel: (662) 834-9029
Fax: (662) 834-3117

Dated: _____

Reed Colfax, Esq.
RELMAN & DANE, PLLC
1225 19th Street N.W., Suite 600
Washington, DC 20036-2456
Tel: (202) 728-1888
Fax: (202) 728-0848

Dated: _____

Stephen Gowan, Esq.
GOWAN LAW OFFICE, PLLC
P.O. Box 38
McAdams, MS 39107
Tel: (662) 290-0042
Fax: (662) 290-0042

Dated: _____

Gilda Sherrod-Ali, Esq.
Attorney at Law
1101 L Street, N.W. #806
Washington, DC 20005
Tel: (202) 544-2299;
Fax: (202) 544-2298

Dated: _____

54

Othello C. Cross, Esq.
CROSS & KEARNEY, PLLC
1022 W. 6th Avenue
Pine Bluff, AR 71601
Tel: (870) 536-4056
Fax: (870) 536-0216

Dated: _____

Gary Edward Mason, Esq.
MASON LLP
1625 Massachusetts Ave., N.W.
Washington, DC 20036
Tel: (202) 429-2290
Fax: (202) 429-2294

Dated: _____

Anurag Varma, Esq.
PATTON BOGGS, LLP
2550 M Street, N.W.
Washington, DC 20037
Tel: (202) 457-6490
Fax: (202) 457-6315

Dated: _____

Don O. Gleason, Jr., Esq.
GLEASON & MCHENRY
P.O. Box 7316
Tupelo, MS 38802
Tel: (662) 690-9824
Fax: (662) 690-9826

Dated: _____

Marc Boutwell, Esq.
THE LAW OFFICES OF MARC BOUTWELL, PLLC
P.O. Box 956
Lexington, MS 39095
Tel: (662) 834-9029
Fax: (662) 834-3117

Dated: _February 17, 2010_

Reed Colfax, Esq.
RELMAN & DANE, PLLC
1225 19th Street N.W., Suite 600
Washington, DC 20036-2456
Tel: (202) 728-1888
Fax: (202) 728-0848

Dated: _____

Stephen Gowan, Esq.
GOWAN LAW OFFICE, PLLC
P.O. Box 38
McAdams, MS 39107
Tel: (662) 290-0042
Fax: (662) 290-0042

Dated: _February 17, 2010_

Gilda Sherrod-Ali, Esq.
Attorney at Law
1101 L Street, N.W. #806
Washington, DC 20005
Tel: (202) 544-2299;
Fax: (202) 544-2298

Dated: _____

PAGE 2/2 * RCVD AT 2/17/2010 10:47:01 AM [Eastern Standard Time] * SVR:DCFAX01/0 * DNIS:6285116 * CSID:205+871+2808 * DURATION (mm-ss):00-48

Othello C. Cross, Esq.
CROSS & KEARNEY, PLLC
1022 W. 6th Avenue
Pine Bluff, AR 71601
Tel: (870) 536-4056
Fax: (870) 536-0216

Dated: _____

Gary Edward Mason, Esq.
MASON LLP
1625 Massachusetts Ave., N.W.
Washington, DC 20036
Tel: (202) 429-2290
Fax: (202) 429-2294

Dated: _____


Anurag Varma, Esq.
PATTON BOGGS, LLP
2550 M Street, N.W.
Washington, DC 20037
Tel: (202) 457-6490
Fax: (202) 457-6315

Dated: _____

Don O. Gleason, Jr., Esq.
GLEASON & MCHENRY
P.O. Box 7316
Tupelo, MS 38802
Tel: (662) 690-9824
Fax: (662) 690-9826

Dated: _____


Marc Boutwell, Esq.
THE LAW OFFICES OF MARC BOUTWELL, PLLC
P.O. Box 956
Lexington, MS 39095
Tel: (662) 834-9029
Fax: (662) 834-3117

Dated: _____

Reed Colfax, Esq.
RELMAN & DANE, PLLC
1225 19th Street N.W., Suite 600
Washington, DC 20036-2456
Tel: (202) 728-1888
Fax: (202) 728-0848

Dated: _2-16-10_____


Stephen Gowan, Esq.
GOWAN LAW OFFICE, PLLC
P.O. Box 38
McAdams, MS 39107
Tel: (662) 290-0042
Fax: (662) 290-0042

Dated: _____

Gilda Sherrod-Ali, Esq.
Attorney at Law
1101 L Street, N.W. #806
Washington, DC 20005
Tel: (202) 544-2299;
Fax: (202) 544-2298

Dated: _____

54



Othello C. Cross, Esq.
CROSS & KEARNEY, PLLC
1022 W. 6th Avenue
Pine Bluff, AR 71601
Tel: (870) 536-4056
Fax: (870) 536-0216

Dated: _____

Anurag Varma, Esq.
PATTON BOGGS, LLP
2550 M Street, N.W.
Washington, DC 20037
Tel: (202) 457-6490
Fax: (202) 457-6315

Dated: _____

Marc Boutwell, Esq.
THE LAW OFFICES OF MARC BOUTWELL, PLLC
P.O. Box 956
Lexington, MS 39095
Tel: (662) 834-9029
Fax: (662) 834-3117

Dated: _____

Stephen Gowan, Esq.
GOWAN LAW OFFICE, PLLC
P.O. Box 38
McAdams, MS 39107
Tel: (662) 290-0042
Fax: (662) 290-0042

Dated: _____

Gary Edward Mason, Esq.
MASON LLP
1625 Massachusetts Ave., N.W.
Washington, DC 20036
Tel: (202) 429-2290
Fax: (202) 429-2294

Dated: _____

Don O. Gleason, Jr., Esq.
GLEASON & MCHENRY
P.O. Box 7316
Tupelo, MS 38802
Tel: (662) 690-9824
Fax: (662) 690-9826

Dated: _____

Reed Colfax, Esq.
RELMAN & DANE, PLLC
1225 19th Street N.W., Suite 600
Washington, DC 20036-2456
Tel: (202) 728-1888
Fax: (202) 728-0848

Dated: _____

Gilda Sherrod-Ali, Esq.
Attorney at Law
1101 L Street, N.W. #806
Washington, DC 20005
Tel: (202) 544-2299;
Fax: (202) 544-2298

Dated: 2/18/2010

54

Timothy K. Lewis, Esq.
SCHNADER HARRISON SEGAL & LEWIS, LLP
750 Ninth Street, N.W., #550
Washington,  DC 20001
Tel: (202) 419-4216
Fax: (202) 419-3454

Dated: _2_|_16_|_10_____

Kindaka Sanders, Esq.
Attorney at Law
209 Broad St.
Selma, AL 36701
Tel: (334) 875-9264
Fax: (334) 875-9853

Dated: _____

Timothy K. Lewis, Esq.
SCHNADER HARRISON SEGAL & LEWIS, LLP
750 Ninth Street, N.W., #550
Washington, DC 20001
Tel: (202) 419-4216
Fax: (202) 419-3454

Dated: _____

Kindaka Sanders, Esq.
Attorney at Law
209 Broad St.
Selma, AL 36701
Tel: (334) 875-9264
Fax: (334) 875-9853

Dated: _2_ /17/10

55

For the Secretary:

TONY WEST
Assistant Attorney General

RONALD C. MACHEN JR.
United States Attorney
RUDOLPH CONTRERAS
Assistant United States Attorney
DORIS D. COLES-HUFF
Assistant United States Attorney
Civil Division, Room E4216
555 Fourth Street NW
Washington, DC  20530
Telephone:  (202) 514-7170


*Rachel J Hines*
MICHAEL SITCOV
RACHEL J. HINES
TAMRA T. MOORE
TAMARA ULRICH
Attorneys, Federal Programs Branch
Civil Division
20 Massachusetts Avenue NW, Room 6146
Washington, DC  20001
Telephone:  (202) 514-1944

Dated: *February 18, 2010*

# <u>EXHIBIT A</u>

**SETTLEMENT AGREEMENT**
in *In re Black Farmers Discrimination Litigation,*
**Civil Action No. 1:08-mc-0511 (PLF)**

> DO NOT WRITE IN THIS AREA

# "TRACK A" CLAIM DETERMINATION FORM

## PART I.  CLAIMANT INFORMATION (TO BE COMPLETED BY THE CLAIMS ADMINISTRATOR)

_____     __ __ __ - __ __ - __ __ __ __
Claimant's Name (First, Middle, Last)            Claimant's Social Security/Taxpayer
                                                 I.D. Number

_____
Claimant's Mailing Address/City/State/Zip

_____     _____  __ __ / __ __ / __ __ __ __
Claimant's Phone Number              Claimant's Alternate Phone Number   Claimant's Date of Birth

_____
Attorney's Name (First, Middle, Last), if applicable

_____
Attorney's Mailing Address/City/State/Zip

_____
Attorney's Phone Number

_____     __ __ __ - __ __ - __ __ __ __
Submitter's Name (First, Middle, Last), if applicable   Submitter's Social Security/Taxpayer
                                                 I.D. Number

_____
Submitter's Mailing Address/City/State/Zip

_____
Submitter's Phone Number

## PART II.  SUMMARY OF CLAIM DETERMINATION (TO BE COMPLETED BY THE CLAIMS ADMINISTRATOR)

☐  **Your Claim is APPROVED.**  Your Total Award is $_____.  From this amount, a payment of $_____ has been made on your behalf to the IRS to reduce your expected tax liability associated with this award and a payment of $_____ has been made on your behalf to USDA/FSA to reduce your outstanding Farm Loan Program debt.  Enclosed with this Form is a check for the remaining $_____.  (See Part III)

☐  **Your Claim is DENIED.**  (See Part IV)

_____     _____
Claimant's Name (First, Middle, Last)               Claimant's Social Security/Taxpayer I.D. Number

## PART III.  EXPLANATION OF APPROVED CLAIM (TO BE COMPLETED BY THE CLAIMS ADMINISTRATOR)

Several months ago, you submitted a Track A claim to the Non-Judicial Claims Process under the Settlement Agreement in *In re Black Farmers Discrimination Litigation*, Civ. No. 1:08-mc-0511 (D.D.C.).  Since that time, a Neutral has determined that your claim is APPROVED.  Enclosed with this Form is a check containing your award.  A payment to the Internal Revenue Service (IRS) to reduce your expected tax liability associated with this award has been made on your behalf.  If you obtained a Track A Loan Award, a payment to U.S. Department of Agriculture, Farm Service Agency (USDA/FSA) to reduce outstanding Farm Loan Program debt has also been made on your behalf.

Based on the materials you submitted, the following claims were APPROVED:

☐      Track A Credit Claim

☐      Track A Non-Credit Claim

**AWARD YOU RECEIVE**

**TRACK A CREDIT CLAIM**

Track A Liquidated Award:                              $_____

Track A Loan Award:                                      $_____

**Subtotal (Liquidated Award + Loan Award):**        $_____

Track A Tax Award (25% multiplied by the subtotal):  $_____

**TOTAL TRACK A CREDIT CLAIM AWARD:**        $_____

**TRACK A NON-CREDIT CLAIM.**

**TOTAL TRACK A NON-CREDIT CLAIM AWARD:**    $_____

**TOTAL AWARD**:        $_____

_____          _____
Claimant's Name (First, Middle, Last)                    Claimant's Social Security/Taxpayer I.D. Number

## PAYMENTS MADE AND MONEY YOU RECEIVE

If you received a Loan Award or a Tax Award on a Track A Credit Claim, those payments have already been made by the Claims Administrator to USDA/FSA and the IRS respectively on your behalf. The check contained herein is the remainder of your total award.

$_____ (Total Award)

− $_____ (Total Track A Loan Award Made to USDA/FSA)

− $_____ (Total Track A Tax Award Made to IRS)

**CHECK YOU RECEIVE**: $_____

NOTE: You are responsible for compliance with all applicable federal, state, and local tax requirements that arise as a result of this award. You are encouraged to consult a tax professional if you have any questions about these requirements.

NOTE: If you received a Loan Award (debt payment) as part of your Track A Award, it is possible that the payment did not satisfy the entire amount outstanding on your USDA/FSA loan. In that event, you are responsible for paying the remainder of your outstanding debt. Interest on your debt will continue to accrue unless and until you pay your debt in full, and USDA/FSA maintains any and all options for servicing and recovering outstanding debt, including but not limited to acceleration and foreclosure.

## QUESTIONS

If you have any questions, you may contact Class Counsel at **[Phone]**

_____          _____
Claimant's Name (First, Middle, Last)                          Claimant's Social Security/Taxpayer I.D. Number

## PART IV.  EXPLANATION OF DENIED CLAIM (TO BE COMPLETED BY THE TRACK A NEUTRAL)

Several months ago, you submitted a Track A claim to the Non-Judicial Claims Process under the Settlement Agreement in *In re Black Farmers Discrimination Litigation*, Civ. No. 1:08-mc-0511. Since that time, a Neutral has determined that your claim is DENIED.

Your claim is DENIED because (check all that apply):

☐   You failed to prove that you are an African-American farmer.

☐   You failed to prove that you farmed, or attempted to farm, between January 1, 1981, and December 31, 1996.

☐   You failed to prove that you owned or leased, or attempted to own or lease, farm land.

☐   You failed to prove that you applied, or constructively applied, for a specific farm credit transaction or non-credit benefit at a USDA office between January 1, 1981, and December 31, 1996.

☐   You failed to prove that the farm loan or non-credit benefit for which you applied was denied, provided late, approved for a lesser amount than requested, encumbered by a restrictive condition, or that USDA failed to provide an appropriate loan service.

☐   You failed to prove that USDA's treatment of your loan or non-credit benefit application led to economic damage to you.

☐   You failed to prove that you complained of discrimination to an official of the United States Government on or before July 1, 1997, regarding USDA's treatment of you in response to your application.

## THIS DECISION IS FINAL.  IT IS NOT REVIEWABLE BY THE CLAIMS ADMINISTRATOR, THE TRACK A NEUTRAL, THE TRACK B NEUTRAL, THE DISTRICT COURT, OR ANY OTHER PARTY OR BODY, JUDICIAL OR OTHERWISE.

_____        _____
Claimant's Name (First, Middle, Last)        Claimant's Social Security/Taxpayer I.D. Number

## PART V.  PROVISIONAL AWARD FOR APPROVED CLAIMS (TO BE COMPLETED BY THE TRACK A NEUTRAL)

The Claimant is eligible for the following Track A award(s), subject to reduction:

☐     **TRACK A CREDIT CLAIM.**  The Track A Credit Claim is APPROVED.  The Claimant is eligible for an award, subject to reduction, as follows:

Track A Liquidated Award ($50,000):       $_____

Track A Loan Award: _____     $_____
          FSA Account Number

          _____     $_____
          FSA Account Number

          _____     $_____
          FSA Account Number

**Subtotal (Liquidated Award + Loan Award):**     $_____

Track A Tax Award (25% multiplied by the subtotal):     $_____

**TOTAL TRACK A CREDIT CLAIM AWARD ($3,000):**      $_____

☐     **TRACK A NON-CREDIT CLAIM.**  The Track A Non-Credit Claim is APPROVED.  The Claimant is eligible for an award, subject to reduction, as follows:

**TOTAL TRACK A NON-CREDIT CLAIM AWARD:**      $_____

**TOTAL AWARD**:      $_____

_____     _____
Claimant's Name (First, Middle, Last)                     Claimant's Social Security/Taxpayer I.D. Number

## PART VI.  DATE OF LATE-FILING REQUEST (TO BE COMPLETED BY THE CLAIMS ADMINISTRATOR)

☐     The Class Member submitted a late-filing request on or before September 15, 2000.

☐     The Class Member submitted a late-filing request after September 15, 2000.

# EXHIBIT B

**SETTLEMENT AGREEMENT**
**in *In re Black Farmers Discrimination Litigation*,**
**Civil Action No. 1:08-mc-0511 (PLF)**

<div style="border:1px solid">
DO NOT WRITE IN THIS AREA
</div>

# "TRACK B" CLAIM DETERMINATION FORM

## PART I.  CLAIMANT INFORMATION (TO BE COMPLETED BY THE CLAIMS ADMINISTRATOR)

_____     __ __ __ - __ __ - __ __ __ __
Claimant's Name (First, Middle, Last)                           Claimant's Social Security/Taxpayer
                                                                                     I.D. Number

_____
Claimant's Mailing Address/City/State/Zip

_____     _____     __ __ / __ __ / __ __ __ __
Claimant's Phone Number          Claimant's Alternate Phone Number     Claimant's Date of Birth

_____
Attorney's Name (First, Middle, Last), if applicable

_____
Attorney's Mailing Address/City/State/Zip

_____
Attorney's Phone Number

_____     __ __ __ - __ __ - __ __ __ __
Submitter's Name (First, Middle, Last), if applicable          Submitter's Social Security/Taxpayer
                                                                                     I.D. Number

_____
Submitter's Mailing Address/City/State/Zip

_____
Submitter's Phone Number

## PART II.  SUMMARY OF CLAIM DETERMINATION (TO BE COMPLETED BY THE CLAIMS ADMINISTRATOR)

☐     **Your Claim is APPROVED.**  Your Award is $_____.  From this amount, a payment of $_____ has been made on your behalf to your attorney to pay his or her fees, costs, and expenses.  Enclosed with this Form is a check for the remaining $_____.  (See Part III)

☐     **Your Claim is DENIED.**  (See Part IV)

_____          _____
Claimant's Name (First, Middle, Last)                                Claimant's Social Security/Taxpayer I.D. Number

## PART III.  EXPLANATION OF APPROVED CLAIM (TO BE COMPLETED BY THE CLAIMS ADMINISTRATOR)

Several months ago, you submitted a Track B claim to the Non-Judicial Claims Process under the Settlement Agreement in *In re Black Farmers Discrimination Litigation*, Civ. No. 1:08-mc-511 (D.D.C.). Since that time, a Neutral has determined that your claim is APPROVED.

### AWARD YOU RECEIVE

**TOTAL AWARD**:   $_____

### PAYMENTS MADE AND MONEY YOU RECEIVE

Payments to your attorney are made automatically from your award.  On your Claim Form, you indicated that you and your attorney have negotiated a Track B Fee of _____% of your Track B Award.

$_____ (Total Award)

–   $_____ (Attorney's Fees, Costs, and Expenses)

**CHECK YOU RECEIVE**:  $_____

NOTE: You are responsible for compliance with all applicable federal, state, and local tax requirements that arise as a result of this award.  You are encouraged to consult a tax professional if you have any questions about these requirements.

## QUESTIONS

If you have any questions, you may contact Class Counsel at **[Phone]**.

_____     _____
Claimant's Name (First, Middle, Last)          Claimant's Social Security/Taxpayer I.D. Number

## PART IV.  EXPLANATION OF DENIED CLAIM (TO BE COMPLETED BY THE TRACK B NEUTRAL)

Several months ago, you submitted a Track B claim to the Non-Judicial Claims Process under the Settlement Agreement in *In re Black Farmers Discrimination Litigation*, Civ. No. 1:08-mc-511 (D.D.C.). Since that time, a Neutral has determined that your claim is DENIED.

Your claim is DENIED because (check all that apply):

☐   You failed to prove that you are an African-American farmer.

☐   You failed to prove that you farmed, or attempted to farm, between January 1, 1981, and December 31, 1996.

☐   You failed to prove that you owned or leased, or attempted to own or lease, farm land.

☐   You failed to prove that you applied for a specific farm credit transaction at a USDA office between January 1, 1981, and December 31, 1996.

☐   You failed to prove that the farm loan for which you applied was denied, provided late, approved for a lesser amount than requested, encumbered by a restrictive condition, or that USDA failed to provide an appropriate loan service.

☐   You failed to prove that USDA's treatment of your loan application was less favorable than that accorded a specifically identified similarly situated white farmer.

☐   You failed to prove that USDA's treatment of your loan application led to economic damage to you.

☐   You failed to prove that you complained of discrimination to an official of the United States Government on or before July 1, 1997, regarding USDA's treatment of you in response to your application.

# THIS DECISION IS FINAL.  IT IS NOT REVIEWABLE BY THE CLAIMS ADMINISTRATOR, THE TRACK A NEUTRAL, THE TRACK B NEUTRAL, THE DISTRICT COURT, OR ANY OTHER PARTY OR BODY, JUDICIAL OR OTHERWISE.

_____          _____
Claimant's Name (First, Middle, Last)                    Claimant's Social Security/Taxpayer I.D. Number

## PART V.  PROVISIONAL AWARD FOR APPROVED CLAIM (TO BE COMPLETED BY THE TRACK B NEUTRAL)

The Claimant is eligible for the following Track B Award, subject to reduction:

Track B Award (actual damages up to $250,000):          $_____
                                                        **(This award may not exceed $250,000)**

The Claimant's Claim Form indicated that the Claimant negotiated the following Track B Fee with his or her counsel:

Track B Fee (%):                                        _____%

## PART VI.  DATE OF LATE-FILING REQUEST (TO BE COMPLETED BY THE CLAIMS ADMINISTRATOR)

☐          The Class Member submitted a late-filing request on or before September 15, 2000.

☐          The Class Member submitted a late-filing request after September 15, 2000.

# **<u>EXHIBIT C</u>**

**SETTLEMENT AGREEMENT**
**in *In re Black Farmers Discrimination Litigation*,**
**Civil Action No. 1:08-mc-0511 (PLF)**

If you have question about completing this Form,
please call the Claims Administrator at
**[Phone]**, Class Counsel at **[Phone]**, or contact
a lawyer.  If you need another form,
please call **[Phone]**.

DO NOT WRITE IN THIS AREA

# CLAIM FORM
Please type or print clearly.

## To be Eligible for Relief, You Must Submit This Form By [Claim Deadline] To The Claims Administrator: [Address].

The submission date is the date of postmark if sent via first-class mail, the date of deposit if sent by courier or
overnight delivery, and the date of transmission if sent electronically.

## PART I.  CLAIMANT INFORMATION

_____
Claimant's Name (First, Middle, Last)

__ __ __ - __ __ - __ __ __ __
Claimant's Social Security/Taxpayer
I.D. Number

_____
Claimant's Mailing Address/City/State/Zip

_____          _____          __ __ / __ __ / __ __ __ __
Claimant's Phone Number                        Claimant's Alternate Phone Number          Claimant's Date of Birth

_____
Claimant's *Pigford* Tracking Number, if known

## PART II.  CLAIMANT'S COUNSEL'S INFORMATION, IF APPLICABLE

_____
Attorney's Name (First, Middle, Last)

_____
Attorney's Mailing Address/City/State/Zip

_____
Attorney's Phone Number

## PART III.  INFORMATION FOR A CLAIM SUBMITTED ON BEHALF OF A DECEASED CLAIMANT OR A CLAIMANT WHO IS UNABLE TO SUBMIT A CLAIM DUE TO PHYSICAL OR MENTAL LIMITATION

If you are submitting a claim on behalf of a deceased claimant or a claimant who is unable to submit his or her claim due to
physical or mental limitation, you must complete this Part.

_____
Submitter's Name (First, Middle, Last)

__ __ __ - __ __ - __ __ __ __
Submitter's Social Security/Taxpayer
I.D. Number

Claimant's Name (First, Middle, Last)                    Claimant's Social Security/Taxpayer I.D. Number

Submitter's Mailing Address/City/State/Zip                    Submitter's Phone Number

If you are submitting a claim on behalf of a deceased claimant, you must submit a death certificate with this Claim Form and answer the following questions:

1. Are you the Claimant's legal representative?

                                        Yes    No
        ☐    ☐

If you answered "yes" to Question 1, you must submit proof of legal representation with this Claim Form. If you answered "no" to Question 1, you must explain below why you believe you will be appointed the legal representative of the Claimant's Estate (attach additional sheets if necessary).

_____
_____
_____
_____

If you are submitting a claim on behalf of a claimant who is unable to submit a claim on his or her own behalf, please answer the following questions:

1. Are you the Claimant's legal representative?

                                        Yes    No
        ☐    ☐

If you answered "yes" to Question 1, you must submit proof of legal representation with this Claim Form. If you answered "no" to Question 1, you must explain below why the Claimant is unable to submit a claim on his or her own behalf and why you assert a right to do so on the Claimant's behalf (attach additional sheets if necessary).

_____
_____
_____

## PART IV.  CLASS MEMBERSHIP

1. Did you submit a late-filing request under Section 5(g) of the *Pigford* Consent Decree after October 12, 1999, and before June 19, 2008?

                                        Yes    No
        ☐    ☐

**If you answered "yes" to Question 1, you may need to submit independent documentary evidence of this requirement along with this Claim Form.** If your name appears on the *Pigford* Timely 5(g) List, you will be deemed to have submitted a late-filing request between October 12, 1999, and September 15, 2000. You may contact Class Counsel at **[Phone]** to find out whether you are on the *Pigford* Timely 5(g) List. If you are not on the *Pigford* Timely 5(g) List, you must establish, by a preponderance of the evidence and with independent documentary evidence, that you submitted a late-filing request after October 12, 1999 and before June 19, 2008.

2. Have you already obtained a determination on the merits of your discrimination complaint?

                                        Yes    No
        ☐    ☐

If your name appears on the *Pigford* Participants List or the *Pigford* Opt-Out List, you will be ineligible for class membership and ineligible for relief. You may contact Class Counsel at **[Phone]** to find out whether you are on either of these lists. If you have obtained a judgment from a judicial or administrative forum on the basis of the race discrimination claim that provides the basis of your discrimination complaint, you will be ineligible for class membership and ineligible for relief. If the Claims Administrator determines that you already have obtained a determination on the merits of your discrimination complaint, the Claims Administrator will not pay you.

| Claimant's Name (First, Middle, Last) | Claimant's Social Security/Taxpayer I.D. Number |
|---|---|

## PART V.  CLAIMANT'S ACKNOWLEDGEMENTS

Before your claim can be considered, you must acknowledge that you have read and understood several requirements of the claims process.  Please indicate your acknowledgement by checking the boxes at the right of each statement.

1. You acknowledge that you will be bound by the Neutral's ruling on your claim, and that the Neutral's determination will be the final determination on your claims.  You forever and finally waive the right to seek review of this determination in any court or before any tribunal and forever and finally release USDA from any and all claims raised that have been or could have been raised in *In re Black Farmers Discrimination Litigation*.    ☐ Acknowledged

2. If you submit a claim under Track A and your claim is approved, you may receive a payment to reduce or discharge eligible outstanding USDA/FSA debt.  This payment will be made directly to USDA/FSA on your behalf.  You acknowledge that this payment may not discharge your outstanding debts to USDA/FSA in full.  You further acknowledge that neither USDA/FSA nor the United States will forgive any debt(s) as the result of the determination in your favor.  Interest on your debt will continue to accrue unless and until you fully pay your debt, and USDA/FSA maintains any and all options for servicing and recovering outstanding debt, including but not limited to acceleration and foreclosure.    ☐ Acknowledged

3. If you submit a claim under Track A and your claim is approved, you will receive a payment to reduce a portion of the tax liability you may incur from receipt of an award.  This payment will be made directly to the Internal Revenue Service on your behalf.  Notwithstanding this payment, you acknowledge that you are responsible for compliance with all applicable federal, state, and local tax requirements that arise as a result of any payment you receive on your claim.  This includes payment of taxes for any cash payments, debt payments, or tax payments you may be awarded.    ☐ Acknowledged

4. Your failure to complete this Claim Form and/or provide any necessary documentation will result in denial of your claim.    ☐ Acknowledged

## PART VI.  ELECTION OF TRACK A OR TRACK B

**YOU MUST SELECT EITHER TRACK A OR TRACK B.**  After reviewing the descriptions of Track A and Track B, please check one box to select the Track that you wish to pursue.  Your selection is final and cannot be changed, except that persons selecting Track B may switch to Track A within thirty (30) days of being notified by the Claims Administrator of the number of Track B elections.  Because this decision has important consequences, you may wish to discuss your options with a lawyer.

☐       **TRACK A.**  Complete Part VII.  Skip Part VIII.

☐       **TRACK B.**   Skip Part VII.  Complete Parts VIII and IX.

**DESCRIPTION OF TRACK A.**  To be eligible for relief, you must establish the elements of Track A by substantial evidence (a lower burden of proof).  If you satisfy the standards for Track A, you are eligible for liquidated damages of $50,000 for credit claims, regardless of the number of credit claims you have, and/or $3,000 for non-credit claims, regardless of the number of non-credit claims you have; an additional payment in recognition of outstanding USDA Farm Service Agency (USDA/FSA) Farm Loan Program debt (a Track A Loan Award); and a tax payment worth 25% of the total of the liquidated damages and loan award you receive (a Track A Tax Award).  These amounts are subject to reduction, depending on the amount of funding available and the number of prevailing claims.  No payments will be made until all claims have been evaluated.

**DESCRIPTION OF TRACK B.**  To be eligible for relief, you must establish the elements of Track B by a preponderance of the evidence (a higher burden of proof), largely through independent documentary evidence admissible under the Federal Rules of Evidence.  If you satisfy the standards for Track B, you are eligible for your actual damages up to $250,000.  This amount is subject to reduction, depending on the amount of funding available and the number of prevailing claims.  No payments will be made until all claims have been evaluated.  *Under Track B, you are not eligible for a loan or tax award.*

| Claimant's Name (First, Middle, Last) | Claimant's Social Security/Taxpayer I.D. Number |
|---|---|

# TRACK A

## PART VII.  FOR CLAIMANTS SELECTING TRACK A (DO NOT COMPLETE THIS PART IF YOU SELECTED TRACK B)

1. Are you an African-American farmer?                                    Yes ☐   No ☐

2. Did you farm, or attempt to farm, between January 1, 1981, and December 31, 1996?                                    Yes ☐   No ☐

If you answered "yes" to Question 2, please describe your farming operation or how you attempted to farm, including the type and amount of crops and livestock you farmed or attempted to farm (attach additional sheets if necessary):

_____
_____
_____
_____

3. Did you own or lease, or attempt to own or lease, farm land?          Yes ☐   No ☐

If you answered "yes" to Question 3, please describe the farm land that you owned or leased or attempted to own or lease, including the location, type of land, and acreage (attach additional sheets if necessary):

_____
_____
_____
_____

4. Did you apply, or constructively apply, for a specific farm credit transaction(s) or a non-credit benefit(s) at a USDA office between January 1, 1981, and December 31, 1996?                                    Yes ☐   No ☐

If you answered "yes" to Question 4, please identify the type of specific farm credit transaction(s) or non-credit benefit(s) for which you applied:

☐ Operating Loan                              ☐ Farm Ownership Loan

☐ Emergency Loan                             ☐ Other Credit Program (Please identify): _____

☐ Other Non-Credit Program (Please identify): _____

If you answered "yes" to Question 4 because you "constructively applied" – *i.e.*, attempted to apply for a specific farm credit transaction(s) or non-credit benefit(s) during this period, please provide the following information in the space provided below:

- The year you attempted to apply and the general time period within that year (*e.g.*, late fall, early spring, sometime in January, February, or March).
- The type and amount of loan(s) or non-credit benefit(s) for which you attempted to apply.
- How you planned to use the funds (*i.e.*, identification of crops, equipment, acreage, etc.).
- How your plans for a farm operation were consistent with farming operations in that county/area in that year.

_____
_____
_____
_____

Claimant's Name (First, Middle, Last)                    Claimant's Social Security/Taxpayer I.D. Number

If you answered "yes" to Question 4 because you attempted to apply for a specific farm credit transaction(s) or non-credit benefit(s), did USDA actively discourage your application(s)?  Active discouragement includes statements by a USDA official that, at the time you wanted to apply, (a) there were no funds available and therefore no application would be provided; (b) there were no application forms available; or (c) USDA was not accepting or processing applications.

Yes ☐   No ☐

5. Was the farm loan(s) or non-credit benefit(s) for which you applied denied, provided late, approved for a lesser amount than requested, encumbered by a restrictive condition(s), or did USDA fail to provide an appropriate loan service(s)?

Yes ☐   No ☐

6. Did USDA's treatment of your loan or non-credit benefit application(s) lead to economic damage to you?

Yes ☐   No ☐

If you answered "yes" to Question 6, please explain the type and amount of economic damages that you suffered:

_____
_____
_____
_____

7. Did you complain of discrimination to an official of the United States Government on or before July 1, 1997, regarding USDA's treatment of you in response to your application(s)?

Yes ☐   No ☐

If you answered "yes" to Question 7, please describe when and how you complained:

_____
_____
_____
_____

8. Do you have eligible outstanding USDA/FSA Farm Loan Program debt? Eligible outstanding USDA/FSA Farm Loan Program debt is debt from a loan that: (1) forms the basis of your claim; (2) was part of the same loan program as the loan that forms the basis of your claim, originated at the same time or subsequent to the loan that forms the basis of your claim but prior to January 1, 1997, and has not been the subject of an adverse administrative decision that has become final or an adverse federal or state court judgment that has become final; or (3) has been consolidated with or restructured into a new loan.

Yes ☐   No ☐

9. Are you seeking an additional payment to reduce eligible USDA/FSA Farm Loan Program debt?

Yes ☐   No ☐

If you answered "yes" to Question 9, please provide as much of the following information as possible about each eligible outstanding USDA/FSA Farm Loan Program loan:

| USDA/FSA Account Number | Loan Program | Loan Number | Year Loan Obtained | USDA/FSA County Office Where Loan Obtained | Outstanding Balance on Loan |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

Claimant's Name (First, Middle, Last)                    Claimant's Social Security/Taxpayer I.D. Number

If you answered "yes" to Question 9, you must completed an Authorization to Disclose Debt Information Form, which can be obtained from the Claims Administrator at **[phone]**.

10. Please provide any additional information that you believe is relevant to your claim (attach additional sheets if necessary):

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**Clearly mark all attachments with your name and Social Security/Taxpayer I.D. Number.  You may also include any other evidence you would like the Neutral to consider in support of your claim.**

## <u>CLAMAINT'S DECLARATION</u>

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the answers and the statements made in this Claim Form and all attachments are true and correct.

_____          _____
Signature of Claimant/Submitter                              Date

I declare that I have a good faith belief in the truth of the factual basis of this claim.

_____          _____
Signature of Attorney, if applicable                         Date

Claimant's Name (First, Middle, Last)                    Claimant's Social Security/Taxpayer I.D. Number

# TRACK B

## PART VIII.  FOR CLAIMANTS SELECTING TRACK B (DO NOT COMPLETE THIS PART IF YOU SELECTED TRACK A)

1.  Are you an African-American farmer?

   Yes ☐   No ☐

2.  Did you farm, or attempt to farm, between January 1, 1981, and December 31, 1996?

   Yes ☐   No ☐

   If you answered "yes" to Question 2, please describe your farming operation or how you attempted to farm, including the type and amount of crops and livestock you farmed or attempted to farm (attach additional sheets if necessary):

   _____
   _____
   _____
   _____

3.  Did you own or lease, or attempt to own or lease, farm land?

   Yes ☐   No ☐

   If you answered "yes" to Question 3, please describe the farm land that you owned or leased or attempted to own or lease, including the location, type of land, and acreage (attach additional sheets if necessary):

   _____
   _____
   _____

4.  Did you apply for a specific farm credit transaction(s) at a USDA office between January 1, 1981, and December 31, 1996?

   Yes ☐   No ☐

   If you answered "yes" to Question 4, please identify the  type of specific farm credit transaction(s) for which you applied:

☐ Operating Loan                              ☐ Farm Ownership Loan

☐ Emergency Loan                             ☐ Other Credit Program (Please identify): _____

5.  Was the farm loan(s) for which you applied denied, provided late, approved for a lesser amount than requested, encumbered by a restrictive condition(s), or did USDA fail to provide an appropriate loan service(s)?

   Yes ☐   No ☐

6.  Was the treatment of your loan application(s) by USDA less favorable than that accorded a similarly situated white farmer(s)?

   Yes ☐   No ☐

   If you answered "yes" to Question 6, please identify the similarly situated white farmer or farmers:

   _____
   _____

7.  Did USDA's treatment of your loan application(s) lead to economic damage to you?

   Yes ☐   No ☐

   If you answered "yes" to Question 7, please explain the type and amount of economic damages that you suffered:

   _____
   _____
   _____

Claimant's Name (First, Middle, Last)                    Claimant's Social Security/Taxpayer I.D. Number

8.  Did you complain of discrimination to an official of the United States          Yes      No
    Government on or before July 1, 1997, regarding USDA's treatment of you          ☐        ☐
    in response to your application(s)?

    If you answered "yes" to Question 8, please describe when and how you complained:

    _____
    _____
    _____
    _____

**NOTE: To obtain relief under Track B, you must submit with this Claim Form, for each affirmative response, independent documentary evidence admissible under the Federal Rules of Evidence.  Notwithstanding this requirement, you may provide a sworn statement based on personal knowledge by an individual who is not a member of your family for affirmative responses to Questions 6 and 8.  In addition, the loan application and supporting documents forming the basis of your claim are deemed admissible under the Federal Rules of Evidence when accompanied by a sworn statement by you that the loan application and supporting documents were submitted to FSA contemporaneously to the date of the complete application.  FSA documents that were provided to you in response to your loan application are also deemed admissible under the Federal Rules of Evidence when accompanied by a sworn statement by you that you received the FSA documents in response to your loan application contemporaneously to the date of the response.  You may submit expert testimony to explain the independent documentary evidence submitted to prove Question 7.**

Please provide any additional information that you believe is relevant to your claim (attach additional sheets if necessary):

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**Clearly mark all attachments with your name and Social Security/Taxpayer I.D. Number.  You may also include any other evidence you would like the Neutral to consider in support of your claim.**

## PART IX.  TRACK B FEE

If your claim under Track B is approved, attorney's fees, costs, and expenses will be paid automatically to your attorney as a percentage of your award.  The amount of this percentage is negotiated between you and your attorney, but may not exceed **[Track B Fee Cap]**.  The payment of a fee under Track B is contingent upon the success of your claim.

Please indicate the fee percentage that you have negotiated with your attorney that will be
paid to your attorney if your claim is successful:        _____%

## CLAIMANT'S DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the answers and the statements made in this Claim Form and all attachments are true and correct.

_____          _____
Signature of Claimant/Submitter                              Date

I declare that I have a good faith belief in the truth of the factual basis of this claim.

_____          _____
Signature of Attorney, if applicable                          Date

# **<u>EXHIBIT D</u>**

**SETTLEMENT AGREEMENT**
in *In re Black Farmers Discrimination Litigation,*
**Civil Action No. 1:08-mc-0511 (PLF)**

|  |
|---|
| DO NOT WRITE IN THIS AREA |

# AUTHORIZATION TO DISCLOSE DEBT INFORMATION FORM

| PART I.  REQUEST TO UNITED STATES DEPARTMENT OF AGRICULTURE, FARM SERVICE AGENCY (USDA/FSA) |
|---|

| Claimant's Last Name: | Claimant's First Name: | Claimant's Middle Name: | Claimant's Suffix: |
|---|---|---|---|
| Claimant's Full Address (including zip code): | | Claimant's Social Security/Taxpayer I.D. Number: | Claimant's USDA/FSA Account Number: |

**I hereby request and authorize USDA/FSA to provide the information about my outstanding USDA/FSA Farm Loan Program loans to the Claims Administrator in *In re Black Farmers Discrimination Litigation*.  I acknowledge and understand that USDA/FSA will not reduce, discharge, or forgive my debt and that interest on my debt will continue to accrue unless and until I have paid the debt in full.**

Claimant's Signature: _____  Date: _____

Contact Information for Claims Administrator (name, address, and phone number):

Signature of Claims Administrator: _____  Date: _____

| PART II.  USDA/FSA RESPONSE TO CLAIMS ADMINISTRATOR |
|---|

This Response is as of: _____

| LOAN # | PRINCIPAL BALANCE | INTEREST BALANCE | TOTAL | DAILY INTEREST ACCRUAL |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

USDA/FSA Authorizing Official Signature:_____ | Date Prepared: _____ | Page ___ of ____

# **<u>EXHIBIT E</u>**

**SETTLEMENT AGREEMENT**
**in** *In re Black Farmers Discrimination Litigation,*
**Civil Action No. 1:08-mc-0511 (PLF)**

DO NOT WRITE IN THIS AREA

# QUARTERLY DISBURSEMENT REPORTING FORM

For Q____ of 20_____
Page ____ of _____

| Amount Paid | Date Paid | Payee Name & Address | Purpose of Payment |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

(Attach additional pages as necessary)

Total number of payments made during current reporting quarter:      _____

Total amount of payments made during current reporting quarter:      $_____

Total number of payments made to date:      _____
        (inclusive of current and all prior reporting quarters)

Total amount of payments made to date:      $_____
        (inclusive of current and all prior reporting quarters)

Total number of Track A Awards made during current reporting quarter:      _____

Total amount of Track A Awards made during current reporting quarter:      $_____

Total number of Track A Awards made to date:      _____
        (inclusive of current and all prior reporting quarters)

Total amount of Track A Awards made to date:      $_____
        (inclusive of current and all prior reporting quarters)

Total number of Track B Awards during current reporting quarter:      _____

Total amount of Track B Awards made during current reporting quarter:      $_____

Total number of Track B Awards made to date:      _____
        (inclusive of current and all prior reporting quarters)

Total amount of Track B Awards made to date:      $_____
        (inclusive of current and all prior reporting quarters)


I, _____, certify that the above content is true, complete, and accurate.


_____      _____
Signature of Class Counsel          Date

# **EXHIBIT F**

**SETTLEMENT AGREEMENT**
in *In re Black Farmers Discrimination Litigation,*
**Civil Action No. 1:08-mc-0511 (PLF)**

DO NOT WRITE IN THIS AREA

# YOUR CLAIM PACKAGE IS NOT COMPLETE
### *YOU MUST RESPOND WITHIN 30 DAYS*
### *OF THE POSTMARK ON THIS MAILING*

## PART I.  CLAIMANT INFORMATION (TO BE COMPLETED BY THE CLAIMS ADMINISTRATOR)

\_\_ \_\_ \_\_ - \_\_ \_\_ - \_\_ \_\_ \_\_ \_\_

Claimant's Name (First, Middle, Last)

Claimant's Social Security/Taxpayer I.D. Number

Claimant's Mailing Address/City/State/Zip

Claimant's Phone Number

Claimant's Alternate Phone Number

\_\_ \_\_ / \_\_ \_\_ / \_\_ \_\_ \_\_ \_\_

Claimant's Date of Birth

Attorney's Name (First, Middle, Last), if applicable

Attorney's Mailing Address/City/State/Zip

Attorney's Phone Number

\_\_ \_\_ \_\_ - \_\_ \_\_ - \_\_ \_\_ \_\_ \_\_

Submitter's Name (First, Middle, Last), if applicable

Submitter's Social Security/Taxpayer I.D. Number

Submitter's Mailing Address/City/State/Zip

Submitter's Phone Number

# YOU ARE RECEIVING THIS NOTICE BECAUSE THE CLAIM PACKAGE YOU SUBMITTED IS NOT COMPLETE AND WE NEED ADDITIONAL INFORMATION
### (SEE PARTS II, III, IV, and V)

| Claimant's Name (First, Middle, Last) | Claimant's Social Security/Taxpayer I.D. Number |
| --- | --- |

## PART II.  ELEMENTS OF A COMPLETE CLAIM PACKAGE

To be eligible for relief, a Claimant must submit:

1)  A completed Claim Form.

2)  For a Claimant who selects Track A and seeks a payment in recognition of outstanding USDA/FSA Farm Loan Program debt, a completed Authorization to Disclose Debt Information Form.

3)  For a Claimant with an attorney, a declaration by the Claimant's attorney attesting to the attorney's good faith belief in the truth of the factual basis for the claim.

4)  For a Claimant who is deceased, (a) a death certificate and (b) either (i) proof of legal representation, or (ii) a sworn statement describing why the submitting individual believes he or she will be appointed the legal representative of the Claimant's estate.

5)  For a Claimant unable to submit a claim on his or her own behalf due to a physical or mental limitation, (a) proof of legal representation or (b) a sworn statement describing why the Claimant is unable to submit a claim on his or her own behalf and why the submitting individual asserts a right to do so on the Claimant's behalf.

## PART III.  DEADLINE FOR SUBMISSION OF A COMPLETE CLAIM PACKAGE

To be eligible for relief, a Claimant must submit a Complete Claim Package by **[Claims Deadline]**.  The submission date is the date of postmark if the Claim Package is sent via first-class mail, the date of deposit if sent by courier or overnight delivery, and the date of transmission if sent electronically.

## PART IV.  PROBLEM(S) WITH YOUR CLAIM PACKAGE (TO BE COMPLETED BY THE CLAIMS ADMINISTRATOR)

We have identified the following problem(s) with your claim package (check all that apply):

☐   You did not submit a Claim Form.

☐   You did not sign your Claim Form.

☐   You did not answer the following questions on the Claim Form:
   _____

☐   You are a Track A Claimant seeking a payment in recognition of outstanding USDA/FSA Farm Loan Program debt, and you did not submit a completed Authorization to Disclose Debt Information Form.

Claimant's Name (First, Middle, Last)                    Claimant's Social Security/Taxpayer I.D. Number

☐   You have an attorney but your submission did not include a declaration by your attorney attesting to the attorney's good faith belief in the truth of the factual basis for your claim.

☐   You are submitting a claim on behalf of a Claimant who is deceased, and you did not submit a death certificate.

☐   You are submitting a claim on behalf of a Claimant who is deceased, and you did not submit proof of legal representation or a sworn statement describing why you believe you will be appointed the legal representative of the Claimant's estate.

☐   You are submitting a claim on behalf of a Claimant who is unable to submit a claim on his or her own behalf due to a physical or mental limitation, and you did not submit (a) proof of legal representation or (b) a sworn statement describing why the Claimant is unable to submit a claim on his or her own behalf and why you assert a right to do so on the Claimant's behalf.

☐   Based on the information included in your Claim Package, we were unable to determine whether your claim was submitted before the Claims Deadline.  Please submit additional evidence that shows:

_____
_____
_____
_____
_____
_____

☐   Based on the information included in your Claim Package, we were unable to determine whether your Claim Package is complete.  Please submit additional evidence that shows:

_____
_____
_____
_____
_____
_____

## PART V.  DEADLINE TO RE-SUBMIT YOUR CLAIM PACKAGE

From the date on the postmark of this Form, you have 30 days to re-submit your claim package.  Your resubmission must be postmarked no later than 30 days after the postmark on this Form.  Your failure to submit a Complete Claims Package within 30 days will result in denial of your claim.  You are encouraged to consult an attorney to assist you in re-submitting your claim.

## QUESTIONS

If you have any questions, you may contact Class Counsel at **[Phone]**.

# **EXHIBIT G**

**SETTLEMENT AGREEMENT**
in *In re Black Farmers Discrimination Litigation,*
**Civil Action No. 1:08-mc-0511 (PLF)**

DO NOT WRITE IN THIS AREA

# YOU HAVE NOT SUBMITTED YOUR CLAIM ON TIME

## PART I.  CLAIMANT INFORMATION (TO BE COMPLETED BY THE CLAIMS ADMINISTRATOR)

_____
Claimant's Name (First, Middle, Last)

_ _ _ - _ _ - _ _ _ _
Claimant's Social Security/Taxpayer
I.D. Number

_____
Claimant's Mailing Address/City/State/Zip

_____        _____        _ _ / _ _ / _ _ _ _
Claimant's Phone Number         Claimant's Alternate Phone Number     Claimant's Date of Birth

_____
Attorney's Name (First, Middle, Last), if applicable

_____
Attorney's Mailing Address/City/State/Zip

_____
Attorney's Phone Number

_____
Submitter's Name (First, Middle, Last), if applicable

_ _ _ - _ _ - _ _ _ _
Submitter's Social Security/Taxpayer
I.D. Number

_____
Submitter's Mailing Address/City/State/Zip

_____
Submitter's Phone Number

# YOUR CLAIM IS DENIED.
## (SEE PART II)

# THIS DECISION IS FINAL.  IT IS NOT REVIEWABLE BY THE CLAIMS ADMINISTRATOR, THE TRACK A NEUTRAL, THE TRACK B NEUTRAL, THE DISTRICT COURT, OR ANY OTHER PARTY OR BODY, JUDICIAL OR OTHERWISE.

_____          _____
Claimant's Name (First, Middle, Last)                              Claimant's Social Security/Taxpayer I.D. Number

## PART II.  EXPLANATION OF DENIED CLAIMS (TO BE COMPLETED BY THE CLAIMS ADMINISTRATOR)

Your claim is DENIED because you failed to submit your claim on time.  Your claim was submitted on _____.  All claims had to be submitted by **[Claims Deadline]** to be eligible for relief.  The date of submission is the date of postmark if the Claim Package is sent via first-class mail, the date of deposit if sent by courier or overnight delivery, and the date of transmission if sent electronically.

## <u>QUESTIONS</u>

If you have any questions, you may contact Class Counsel at **[Phone]**

# **<u>EXHIBIT H</u>**

**SETTLEMENT AGREEMENT**
**in *In re Black Farmers Discrimination Litigation*,**
**Civil Action No. 1:08-mc-0511 (PLF)**

```
┌─────────────────────────────────────┐
│        DO NOT WRITE IN THIS AREA     │
│                                      │
│                                      │
│                                      │
│                                      │
└─────────────────────────────────────┘
```

# YOU ARE NOT A CLASS MEMBER

## PART I.  CLAIMANT INFORMATION (TO BE COMPLETED BY THE CLAIMS ADMINISTRATOR)

_____     __ __ __ - __ __ - __ __ __ __
Claimant's Name (First, Middle, Last)       Claimant's Social Security/Taxpayer
                                            I.D. Number

_____
Claimant's Mailing Address/City/State/Zip

_____     _____     __ __ / __ __ / __ __ __ __
Claimant's Phone Number      Claimant's Alternate Phone Number    Claimant's Date of Birth

_____
Attorney's Name (First, Middle, Last), if applicable

_____
Attorney's Mailing Address/City/State/Zip

_____
Attorney's Phone Number

_____     __ __ __ - __ __ - __ __ __ __
Submitter's Name (First, Middle, Last), if applicable   Submitter's Social Security/Taxpayer
                                                        I.D. Number

_____
Submitter's Mailing Address/City/State/Zip

_____
Submitter's Phone Number

## YOUR CLAIM IS DENIED.
### (SEE PART II)

## THIS DECISION IS FINAL.  IT IS NOT REVIEWABLE BY THE CLAIMS ADMINISTRATOR, THE TRACK A NEUTRAL, THE TRACK B NEUTRAL, THE DISTRICT COURT, OR ANY OTHER PARTY OR BODY, JUDICIAL OR OTHERWISE.

_____          _____
Claimant's Name (First, Middle, Last)                    Claimant's Social Security/Taxpayer I.D. Number

## PART II.  EXPLANATION OF DENIED CLAIMS (TO BE COMPLETED BY THE CLAIMS ADMINISTRATOR)

Your claim is DENIED because (check all that apply):

☐      You failed to prove that you submitted a late-filing request pursuant to Section 5(g) of the *Pigford* Consent Decree before June 19, 2008.

☐      You failed to prove that you have not already obtained a determination on the merits of your discrimination complaint.

## QUESTIONS

If you have any questions, you may contact Class Counsel at **[Phone]**.

# <u>EXHIBIT I</u>

**SETTLEMENT AGREEMENT**
**in** *In re Black Farmers Discrimination Litigation,*
**Civil Action No. 1:08-mc-0511 (PLF)**

DO NOT WRITE IN THIS AREA

# QUARTERLY CLAIM DETERMINATION REPORTING FORM

| Claimant's Name (Last, First, Middle, Suffix) | Claimant's Mailing Address (Street, City, State, Zip) | Claimant's Social Security/Taxpayer I.D. Number | Claimant's USDA/FSA Account Number, if applicable | Did Claimant Prevail? (Yes/No) |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
| Signature of Claims Administrator: _____ |  | Date Prepared: | Page __ of __ | |