IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ELOUISE PEPION COBELL, et al., )
 )
Plaintiffs, )
 )
vs. ) Civil Action No. 1:96 CV 01285
 ) (TFH)
KEN SALAZAR, Secretary of the Interior, et al., )
 )
Defendants. )
 )

### AFFIDAVIT OF ROBERT S. HOLMES

Robert Holmes, being first duly sworn, deposes and says as follows:

1. I am a citizen and resident of Vienna, Virginia and am President of RSH Consulting, LLC ("RSH"), a governmental relations consulting firm located in Arlington, Virginia.

2. On August 20, 2003, RSH began performing consulting services for the plaintiffs and their legal team in this action. RSH continued to perform those services through October 20, 2006.

3. During those approximate three years, I, working for RSH, performed among other things the following services for the plaintiffs and their legal team. I worked with the plaintiffs' legal team to arrange meetings with key Members of Congress on the committees of jurisdiction, the House Resources Committee and the Senate Committee on Indian Affairs Committee. I also worked with the Congressional Native American Caucus and its co-chairs, Congressmen Dale Kildee and J.D. Hayworth, to advocate for a settlement of the *Cobell* case through legislation. I also worked with the committees of jurisdiction

US2000 11985500.1

to hold and then prepare for hearings on the *Cobell* case and the possible settlement through legislation. Specifically, I was instrumental in planning, coordinating, and setting up hearings in the House Resources Committee on February 16, 2005, March 9, 2005, and December 8, 2005. Similarly, I helped orchestrate hearings on March 9, 2005 and March 28, 2006 before the Senate Committee on Indian Affairs. In each of these Hearings, Elouise Cobell or *Cobell* class counsel testified.

4. In addition, I coordinated contact and efforts with the Bush Administration including officials in the White House Office of Intergovernmental Affairs and at the Department of the Interior. These efforts were an attempt to obtain Administration support for a settlement of the *Cobell* case through legislation. Administration support was essential. I attempted to persuade the Bush Administration officials that the resolution of the case was in the best interests of the federal government. Our efforts although extensive were not successful and the Bush Administration did not ultimately support the legislative settlement of *Cobell*.

5. I met with various Members of Congress and their staffs of both political parties to advocate for a congressional settlement of the *Cobell* litigation through congressional legislation. I worked with the Plaintiffs' legal team and staff on reviewing and revising legislation. Bills attempting to settle the *Cobell* case were introduced in both the Senate and the House. S.1439, the Indian Trust Reform Act (Title I, Settlement of the Cobell litigation) was introduced by Senator John McCain, Chairman of the Senate Committee on Indian Affairs, on July 20, 2005 and was the subject of a hearing on March 28, 2006. Congressman Pombo, Chairman of the House Resources Committee introduced H.R. 4322, the Indian Trust Fund Reform Act (identical to S. 1439) on March 15, 2005. After

US2000 11985500.1

the introduction of the aforementioned settlement legislation, S. 1439 and H.R. 4322, I met with key Members and congressional staff on Committees and in personal offices to push for settlement of the legislation through congressional authorization. I drafted various "talking points" and briefing papers for a settlement through legislation and other subjects related to the *Cobell* litigation, organized a briefing for staffers of the Native American Caucus to discuss why settlement of the *Cobell* litigation was in the best interest of the United States, the plaintiff class and the taxpayers.

6. Through my work with the Congressional Native American Caucus, I drafted "Dear Colleague" letters from the Native American Caucus co-chairs, Congressman Dale Kildee and Congressman J.D. Hayworth, to Members of Congress advocating for settlement, helped craft messages and organize favorable press coverage and media "spin," drafted memos to the Plaintiffs' legal team with regard to strategy, arranged various meetings with key appropriation staffers to push for funding a potential settlement of the legislation, drafted letters from the House Resources Committee and met with various members of Congress arguing against an appropriations rider that would have limited the *Cobell* claims and diminished the rights of individual Indian trust beneficiaries.

7. After settlement legislation was introduced, I worked with and participated in various meetings with the Plaintiffs' legal team on strategy to reach the goal of settlement and worked with the Plaintiffs' legal team to discuss mediation and post-mediation strategy for settlement.

8. Although legislation was introduced and committee hearings were held on S. 1439 and H.R. 4322, legislation was not ultimately adopted at that time. Once it became apparent

that no legislative settlement would ensue in the foreseeable future, I discontinued providing services for the Plaintiffs.

9. For the services provided the Plaintiffs, RSH charged $190,000, at an agreed-to rate of $5,000 a month.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 20, 2010.

*Robert S. Holmes* (signature)
Robert S. Holmes

US2000 11985500.1