# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ELOISE PEPION COBELL, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | 1:96CV01285 (TFH) |
| | ) | |
| KEN SALAZAR, Secretary of the Interior, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFFS' BRIEF IN OPPOSITION TO MOTION TO INTERVENE FILED BY PROPOSED INTERVENORS THE HARVEST INSTITUTE FREEDMEN FEDERATION, LLC, ET AL.

On February 3, 2011, would-be intervenors The Harvest Institute Freedmen Federation, LLC, Leatrice Tanner-Brown and William Warrior (the "Purported Intervenors") filed a motion to permissively intervene in the instant litigation for the sole purpose of making a patently frivolous objection to the Settlement Agreement on behalf of a putative class comprised of the descendents of African-American slaves owned by certain Indian tribes prior to the Civil War. (*See* Motion to Intervene, Doc. No. 3684.)   This motion is obviously untimely, and the grievances aired therein involve matters wholly unrelated to this litigation and its settlement.  By filing it, the Purported Intervenors have needlessly wasted the time and resources of this Court, the parties and their counsel.  Because the Purported Intervenors have made no effort to satisfy or even address the requirements of Rule 24, because they would lack standing to object to the Settlement Agreement even if allowed to intervene, and because the arguments that would serve as the basis for their objection have been rejected repeatedly and completely by other federal courts, their frivolous, unwarranted motion should be summarily denied.

US2000 12002963.2

## BACKGROUND

The Purported Intervenors seek to intervene in this action pursuant to Fed. R. Civ. P. 24(b)(1)(B), which provides for permissive intervention, "[o]n timely motion," of a party that "has a claim or defense that shares with the main action a common question of law or fact." *Id.* The Purported Intervenors' one-sentence motion makes no effort to explain how it could be considered timely or demonstrate compliance with any of the other mandates of Rule 24. Indeed, it fails even to assert the proposed grounds for intervention. *See* Fed. R. Civ. P. 24(c).

The sole stated purpose for the requested intervention is so that the Purported Intervenors can object to the Settlement Agreement that the Court preliminarily approved on December 21, 2010. (*See* Order on Joint Motion for Preliminary Approval of Settlement Agreement ("Preliminary Approval Order"), Doc. No. 3667.) The Purported Intervenors claim, in a conditionally filed memorandum in support of their proposed objection, that the Settlement Agreement allegedly "is violative of the Equal Protection Clause of the Fifth Amendment [sic] to the United States Constitution and perpetuates past unlawful discrimination on the basis of race." (Purported Intervenors' Memorandum in Support of Objection ("Purported Intervenors' Memo"), Doc. No. 3684-1 at 2.) Notably, they fail to cite any law to support this allegation.

In a memorandum in support of the objection that they seek to file with the Court, the Purported Intervenors claim to be or to represent descendents of individuals who were held as slaves by the Five Civilized Tribes (the Seminole, Cherokee, Choctaw, Creek and Chickasaw) prior to and during the Civil War. (*Id.*) They allege that, as a condition of reestablishing relationships with the United States after aligning themselves with the Confederacy during the Civil War, each of the Five Civilized Tribes signed a treaty agreeing to abolish slavery and to provide certain rights to the newly emancipated former slaves ("freedmen") residing among the

Tribe.  (*Id.*)  The Purported Intervenors also allege that these treaties provided the freedmen "equal civic status in relation to the United States as members of the Five Civilized Tribes" and that, as a necessary corollary of this status, the United States owed to these freedmen and their descendents certain unspecified fiduciary duties, which it has allegedly breached.  (*Id.* at 6.) From here, the Purported Intervenors extrapolate, without further explanation, that the United States is engaging in unconstitutional racial discrimination by entering into a settlement with the Historical Accounting Class and the Trust Administration Class (members of which are collectively referred to herein as "Class Members") – the Plaintiffs in this action – without also compensating the Purported Intervenors and the putative class that they claim to represent.  (*See id.* at 10.)

The Purported Intervenors ignore the fact that the Plaintiffs' claims are based on the United States' breaches of its fiduciary duties in the management of and accounting for individual Indian money ("IIM") accounts and trust assets – neither of which members of the putative class possess.  They have not and cannot set forth how the Settlement Agreement is relevant to or impacts the United States' supposed breaches of fiduciary duties allegedly owed to the Purported Intervenors and members of the putative class – who are definitively <u>not</u> Class Members.  Nor have the Purported Intervenors identified any rights that they hope to vindicate or interests that they hope to protect via their request to intervene.  By their own admission, they seek to intervene in the instant litigation fifteen years after its inception for the sole and improper purpose of derailing the Settlement Agreement that has been negotiated by the parties, legislatively approved by the United States Congress, and preliminarily approved by this Court. (*See id.* ("The Freedmen are through this objection seeking to prevent the United States from entering into a settlement that will violate the Constitution by continuing racial discrimination

against the Freedmen.").)  As such, and for the reasons explained below in more detail, their frivolous motion to intervene should be summarily denied.

## ARGUMENT

The Purported Intervenors' motion to intervene is fatally and obviously defective in several ways.  First and foremost, it does not satisfy the requirements of Rule 24, as it is grossly untimely, it has no factual or legal issues in common with the instant litigation, and it fails to set forth the putative grounds for intervention.  Second, the Purported Intervenors, who are not Class Members and do not claim to represent any Class Members, have no interest in the instant litigation and would lack standing to present their objection even if the Court granted their motion.  Third, the objection that the Purported Intervenors seek to assert is based exclusively upon allegations and putative claims against the United States that have been considered and rejected by other courts of competent jurisdiction, and thus has no legal basis.  In short, the Purported Intervenors' motion is wholly and completely without merit.

I.      **The Purported Intervenors' Motion Must Be Denied Because the Purported Intervenors Have Not Satisfied the Requirements of Rule 24.**

Federal Rule of Civil Procedure 24 establishes the requirements for intervention in pending litigation.  *See* Fed. R. Civ. P. 24.  Rule 24(b)(1)(B), pursuant to which the Purported Intervenors seek to intervene in this case, authorizes permissive intervention for an applicant that (1) timely files a motion and (2) has a claim or defense that shares a common question of law or fact with the pending action.  Fed. R. Civ. P. 24(b)(1)(B); *Rubin v. Islamic Republic of Iran*, 270 F.R.D. 7, 10 (D.D.C. 2010).  In considering a motion filed under Rule 24(b), a court must consider the two requirements plainly stated in the text of the rule and also "must determine whether the proposed intervention 'will unduly delay or prejudice the adjudication of the rights of the original parties.'"  *Rubin*, 270 F.R.D. at 10 (quoting Rule 24(b)(3)).  Additionally, Rule

24(c) mandates that a motion to intervene "must state the grounds for intervention."  Fed. R. Civ. P. 24(c).

A.    <u>The Purported Intervenors' Motion Is Untimely.</u>

Timeliness is a "threshold question" for permissive intervention.  *Rubin*, 270 F.R.D. at 10 (citing *NAACP v. New York*, 413 U.S. 345, 365 (1973)).  If an application for intervention is untimely, "'intervention <u>must</u> be denied.'"  *Rubin*, 270 F.R.D. at 10 (quoting *NAACP v. New York*, 413 U.S. 345, 365 (1973) (emphasis added)).  In evaluating the timeliness of a motion to intervene, courts are to consider "'all the circumstances, especially weighing the factors of time elapsed since the inception of the suit, the purpose for which the relief is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties to the case.'"  *Rubin*, 270 F.R.D. at 10 (quoting *United States v. British Am. Tobacco Austl. Servs. Ltd.*, 437 F.3d 1235, 1238 (D.C. Cir. 2006)).  All of these factors weigh heavily against granting the Purported Intervenors' motion in this case.

As the Court is well aware, a considerable amount of time has elapsed since the inception of the instant litigation.  The Plaintiffs filed their Complaint in June of 1996.  Now, with a settlement agreement in place and preliminarily approved after more than fourteen years of hard-fought litigation, the Purported Intervenors have decided to make their voices heard.  Had they truly wished to participate in this litigation, they had more than ample opportunity to do so before now.  They should not be allowed to step in at this late stage in a spiteful effort to derail – or even to benefit from – years of hard work by the Plaintiffs, the Court, and counsel.

The Purported Intervenors' apparent purpose for intervening also militates against granting their motion.  They openly admit that they seek to intervene not to press their own rights, but to object to and attempt to block the implementation of the Settlement Agreement.

(*See* Purported Intervenors' Memo at 10.)  As discussed below, the Purported Intervenors' own claims have been considered and rejected by more than one federal court.  Now, with no relief available for the wrongs that they claim to have suffered, the Purported Intervenors spitefully seek to prevent the Class Members from receiving compensation for the losses that they have suffered as a result of the United States' breaches of its trust duties.  The Court should not allow intervention for this obviously improper purpose.

Additionally, granting the Purported Intervenors' motion would not help to preserve any rights that the Purported Intervenors may claim to have.  Based on the outcome of the suits that the Purported Intervenors have brought independently, which are discussed in more detail below, it is readily apparent that they have no claims or rights to preserve.  However, even if the Purported Intervenors did have viable breach of trust claims against the United States, they are not Class Members, the claims that they claim to have are distinctly different from those stated by the Class Members, and nothing in the Settlement Agreement would prevent them from bringing a separate, independent action to vindicate their claims.  As intervention is not necessary for the preservation of any of the Purported Intervenors' rights, it would be wholly unnecessary even if it were proper.

Finally, the probability – indeed, the certainty – of prejudice to the existing parties to this litigation calls for the denial of the Purported Intervenors' motion.  After many years of hard work on all sides, the parties have negotiated and recently obtained congressional approval of a Settlement Agreement.  The final resolution of this litigation is now in sight.  The Purported Intervenors' motion, if granted, would result in further delay of litigation that has already dragged on for far too long.  The inherent prejudice of still more delay weighs heavily against granting the Purported Intervenors' motion, particularly when balanced against the complete lack

of benefit that the Purported Intervenors' motion and proposed objection would provide to anyone.

      B.      <u>The Purported Intervenors Have Not Identified a Claim or Defense That Shares a Common Question of Law or Fact with the Pending Action.</u>

Although the Purported Intervenors seek to equate their putative claims to those brought by the Plaintiffs in this action, the two have no commonalities whatsoever. The Purported Intervenors do not claim that they (or members of the putative class) are Class Members, that they are or have been IIM account holders, that they are entitled to an historical accounting of trust funds or assets, nor that they had any demonstrable interest in land held in trust or restricted status as of September 30, 2009. (*See* Order Certifying Trust Administration Class … and Modifying the February 4, 1997 Class Certification Order ("2010 Class Certification Order"), Doc. No. 3670 (defining the claims and claimants covered by the Settlement Agreement).) So, while the Purported Intervenors' Memo includes allegations of breaches of unspecified fiduciary duties owed by the United States, the Purported Intervenors have failed to demonstrate that there is any "common question of law or fact" between their putative claims and the claims at issue in this litigation. Fed. R. Civ. P. 24(b)(1)(B).

Whatever rights and claims the Purported Intervenors and putative class may have, they simply have nothing to do with the Settlement Agreement or underlying claims. *See Harvest Inst. Freedmen Fed'n, LLC v. United States*, No. 2:10-cv-01131-GCS-MRA, slip op. at 5 (S.D. Ohio Jan. 31, 2011) (holding, as discussed in more detail below, that the claims underlying the Purported Intervenors' objection have nothing in common with the claims at issue in this litigation). As a result, the Putative Intervenors cannot permissively intervene in this action. *Id.* *See also Chippewa Cree Tribe of the Rocky Boy's Reservation v. United States*, 85 Fed. Cl. 646,

661-662 (2009) (listing the absence of common issues of law or fact as one of several grounds for holding permissive joinder inappropriate).

      C.      <u>The Purported Intervenors' Motion Fails to State the Grounds for Intervention.</u>

In addition to requiring that a motion to intervene be timely and based upon an issue of law or fact shared with the existing litigation, Rule 24 plainly requires that the motion "must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). This requirement "is intended to enable the court to properly frame the issues, and to inform the parties against whom some right is asserted or relief sought." *Waudby v. Verizon Wireless Servs., LLC*, 248 F.R.D. 173, 175 (D.N.J. 2008) (internal quotation omitted). Failure to comply with Rule 24(c) is an independent and sufficient basis for denying a motion to intervene. *See id.*

The Purported Intervenors' one-sentence motion states why the Purported Intervenors wish to intervene – "for purposes of filing the objection attached" – but makes no effort to explain the grounds for intervention, frame the issues, or identify the motion's legal bases. (Motion to Intervene at 1.) It thus fails to satisfy even the basic requirements of Rule 24(c), and this failure further underscores the motion's frivolous nature and supports its summary denial.

**II.    The Purported Intervenors' Motion Should Be Denied Because the Purported Intervenors Lack Standing to Assert Their Objection.**

The Purported Intervenors' motion should also be denied because they would lack standing to object to the Settlement Agreement even if allowed to intervene. Pursuant to the Court's Preliminary Approval Order, only Class Members are entitled to object to the fairness, reasonableness, or adequacy of the Settlement Agreement. (Preliminary Approval Order, ¶ 13.) The Purported Intervenors and members of the putative class are not Class Members. They are not and have not been IIM account holders, and they have not had any demonstrable interest in

US2000 12002963.2

8

lands held in trust or restricted status as of the Record Date for qualification as a Class Member in this litigation.  (*See* 2010 Certification Order.)  Granting the motion to intervene would thus be futile, as the Purported Intervenors have no grounds for objecting to the Settlement Agreement. This further highlights the frivolous nature of the Purported Intervenors' motion.

III.    **The Purported Intervenors' Motion Should Be Denied Because the Claims Underlying Their Proposed Objection Have Been Repeatedly Rejected by Other Federal Courts.**

The Court should also deny the Purported Intervenors' motion to intervene because, as admitted in the Purported Intervenors' Memo, the allegations and purported claims underlying the proposed objection have previously been considered and rejected in federal court.  (*See* Purported Intervenors' Memo at 6 (attempting to downplay prior adverse rulings by the United States Court of Federal Claims and United States Court of Appeals for the Federal Circuit).)

Purported Intervenors the Harvest Institute and William Warrior first presented the allegations underlying their proposed objection several years ago in the United States Court of Federal Claims ("CFC").  *See Harvest Inst. Freedmen Fed'n v. United States*, 80 Fed. Cl. 197, 199 (2008) ("Plaintiffs, on behalf of the Freedmen, allege that the Tribes did not allocate land properly according to the treaties, and therefore *the Government* did not enforce plaintiffs' rights under the 1866 treaties." (emphasis in original)).  The CFC dismissed the action, holding both that the plaintiffs had failed to identify any actionable duty owed to them by the United States and that, even if plaintiffs could identify such a duty, the statute of limitations for their claims expired in 1908 at the latest.  *Id.* at 199 n.3, 200-201.  The CFC's ruling was affirmed on appeal to the Federal Circuit.  *See Harvest Inst. Freedmen Fed'n v. United States*, 324 Fed. Appx. 923 (Fed. Cir. 2009), *cert. denied* 130 S. Ct. 1147 (2010).

After the CFC and the Federal Circuit definitively rejected the same putative claims that underlie the Purported Intervenors' proposed objection, Purported Intervenors the Harvest Institute and Leatrice Tanner-Brown next brought their case before the United States District Court for the Southern District of Ohio.  In an amended complaint filed on May 24, 2010, they sought a temporary injunction barring the United States Congress from enacting H.R. 4213, a precursor of what ultimately became the Claims Resolution Act of 2010, Pub. L. No. 111-291, 124 Stat. 3064 (Dec. 8, 2010) (the "Settlement Act"), as well as a declaration that the pending legislation was unconstitutional.  *See Harvest Inst. Freedmen Fed'n, LLC v. United States*, No. 2:10-cv-00449-GCS-MRA, slip op. at 1 (S.D. Ohio May 25, 2010).  The district court dismissed the action on the grounds that the requested relief was premature and would violate the separation of powers doctrine.  *Id.* at 2-3.  While it dismissed the Harvest Institute's claims due to a lack of jurisdiction, the Court nevertheless found it "appropriate to note that an essential premise of Plaintiffs' action … was rejected in previous litigation." *Id.* at 3 n.1 (citing the CFC litigation).

Undeterred, Purported Intervenors the Harvest Institute and Ms. Tanner-Brown brought essentially the same issues back before the United States District Court for the Southern District of Ohio on December 16, 2010.  *See Harvest Inst. Freedmen Fed'n, LLC v. United States*, No. 2:10-cv-01131-GCS-MRA, complaint (S.D. Ohio Dec. 16, 2010).  Relying on the same factual allegations and legal theories – indeed, often the exact same verbiage – set forth in the previous litigation and in the Purported Intervenors' Memo in this case, they sought to have the Settlement Act declared unconstitutional due to its "blatant racially disparate treatment" of the putative class of freedmen descendants.  *See id.* at 2.  Once again, the court dismissed the suit, this time holding that the Harvest Institute, *et al.*, had no standing to challenge the Settlement Act because

they "were not a party in the *Cobell* action and they independently sought to vindicate their rights by filing the action described above in the Court of Federal Claims" and because "the claims presented by the *Cobell* plaintiffs are different than the claims asserted by the Plaintiffs in [the Harvest Institute] action [and] legislation approving the *Cobell* settlement does not address [the Harvest Institute plaintiffs'] claims." *Harvest Inst.*, slip op. at 5 (S.D. Ohio Jan. 31, 2011). Three days after receiving the Southern District of Ohio's order dismissing their suit, the Purported Intervenors' sought to intervene in this action.

Simply stated, the Purported Intervenors have already had their day(s) in court, and the putative claims underlying the objection that they seek to assert in this litigation – as well as any alleged connection between those claims and the subject matter of this litigation – have been soundly rejected.  This heavily underscores the impropriety of allowing the Proposed Intervenors to participate in – and further delay the resolution of – the instant litigation.  Because the allegations underlying their proposed objection have been held insufficient to justify relief, there is simply no point in granting the Purported Intervenors' motion. To do so would prejudice the parties to the instant litigation and would only encourage future assertion of frivolous, previously adjudicated arguments.[1]

## CONCLUSION

The Purported Intervenors' motion should be denied because the Purported Intervenors plainly have failed to satisfy the requirements of Rule 24.  Moreover, the Purported Intervenors lack standing to assert their proposed objection to the Settlement Agreement, and the factual and legal allegations serving as the basis for the proposed objection have been repeatedly and definitively rejected.

---

[1] In addition to all of the foregoing reasons, it appears that the Purported Intervenors' counsel, Mr. Percy Squires, is not a member of the bar of this Court, and therefore could not and did not properly file the motion in question.  *See* L. Cv. R. 83.2(c).

Respectfully submitted,

/s/
DENNIS M. GINGOLD
D.C. Bar No. 417748
607 14th Street, N.W., 9th Floor
Washington, D.C. 20005
(202) 824-1448


/s/
KEITH M. HARPER
D.C. Bar No. 451956
JUSTIN GUILDER
D.C. Bar No. 979208
KILPATRICK STOCKTON, LLP
607 14th Street, N.W.
Washington, D.C.  20005
(202) 508-5844

DAVID COVENTRY SMITH
N.C. Bar No. 12558
Admitted *Pro Hac Vice*
KILPATRICK STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC 27101-2400
(336) 607-7392

WILLIAM E. DORRIS
Georgia Bar No. 225987
Admitted *Pro Hac Vice*
ELLIOTT LEVITAS
D.C. Bar No. 384758
KILPATRICK STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia  30309
404-815-6500

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing PLAINTIFFS' BRIEF IN OPPOSITION TO MOTION TO INTERVENE FILED BY PROPOSED INTERVENORS THE HARVEST INSTITUTE FREEDMEN FEDERATION, LLC, ET AL. was served on the following via facsimile, pursuant to agreement, on this 14th day, February, 2011.

> Earl Old Person (Pro se)
> Blackfeet Tribe
> P.O. Box 850
> Browning, MT 59417
> 406.338.7530 (fax)

> <u>/s/ Shawn Chick</u>