**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

|  |  |  |
|---|---|---|
| | ) | |
| **ELOUISE PEPION COBELL, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **No. 1:96CV01285(TFH)** |
| | ) | |
| **KEN SALAZAR, Secretary of** | ) | |
| **the Interior, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

---

**PLAINTIFFS' OPPOSITION TO MARK BROWN'S
MOTION FOR ATTORNEY'S FEES AND EXPENSES**

Plaintiffs oppose Mark Brown's request for attorney's fees and expenses [Dkt. No. 3681]. Though he never served as Class Counsel, it is true that Mr. Brown worked on this matter for approximately a third of its length.  Ultimately, however, because Mr. Brown abandoned his clients and refused to communicate with Ms. Cobell, plaintiffs terminated his engagement in 2007 – a couple years after he had stopped working on this case.  Moreover, while working on the case, he alienated his colleagues and undermined irreparably his relationship with judicial officers, one of whom banned him from further proceedings.

Now, years later, Mr. Brown reappears for the sole purpose of seeking compensation by piggy-backing his request on Plaintiffs' Petition for Class Counsel Fees and Expenses [Dkt. No. 3678].  In addition to being both untimely and procedurally defective, his request fails to provide any legitimate basis for the payment of attorney's fees and expenses out of plaintiffs' recovery. Simply put, Mr. Brown inexcusably ignored the court-mandated deadline and failed to even seek leave to file out of time.  Nor did he otherwise comply with local rules.  And even if he could

1

overcome those serious shortcomings – which he cannot – Mr. Brown was fired for fair cause in light of his abandonment of his clients at a time and in a manner that was prejudicial to their interests.  Accordingly, he is not entitled to the award he now seeks and his motion should be denied.

## 1.  Mr. Brown's Untimely Request Prejudices Plaintiffs.

This Court's Order dated December 21, 2010 granting preliminary approval to the settlement ordered that "**any** Petition for an Award of Attorneys' Fees and Expenses ("Petition") shall be filed no later than 30 days after the date of this Order."  [Dkt. No. 3667] (emphasis added). Thus, petitions for attorneys' fees were required to be filed by January 20, 2011, which deadline was extended to January 25, 2011.  [Dkt  No. 3676].

Since Mr. Brown remained on the ECF service list even after stopping work on this case several years ago, he received <u>actual</u> notice of this deadline.   Mr. Brown has not sought to intervene and did not oppose the Joint Motion for Preliminary Approval, which describes Class Counsel's fee issues, despite having received actual notice of that as well.  Nor did he seek to appear at the preliminary approval hearing, despite having received notice of that hearing.  Mr. Brown did not communicate with plaintiffs or Class Counsel about his fees during this period. Instead, he sat on his claim and waited until after plaintiffs filed their petition to notify this Court of his claim for an attorney's fee award.

The tardy nature of Mr. Brown's filing presents severe problems and, indeed, real prejudice to the plaintiff classes.  Presumably, although he fails to say so, Mr. Brown is filing under Rule 23(h) which provides that the "court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreements."  *See* Fed. R. Civ. P. 23(h).  However, that rule provides that a "class member, or a party from whom payment is

sought, may object to the motion." *Id.* at 23(h)(2).  For them to make an informed objection, it is self-evident class members should be provided notice of Mr. Brown's fee request.  But, because Mr. Brown failed properly and timely to file his request, no such notice has been provided, in conformity with federal rules or otherwise, to the plaintiff class regarding the more than $5.5 million he wants class members to pay him.  Nor does he suggest how his failure to provide adequate notice can be cured.  In addition to providing no notice to class members so that they can make an informed judgment on the reasonableness of his request, he has placed his time and charges under seal, preventing public scrutiny and their assessment by plaintiffs in this opposition brief.

He does not explain whether it is even possible to implement an expedited media and class outreach program that satisfies Rule 23 and he does not suggest how he would pay for that program.  Mr. Brown proffered no expert opinions or plans in that regard.  Indeed, for the last two months, in accordance with this Court's orders, Class Counsel have been traveling thousands of miles throughout Indian Country, explaining the terms of settlement to thousands of class members, including the nature and scope of Class Counsel's fees. Certainly, Mr. Brown would not expect plaintiffs to pay for costs that solely are related to his unwarranted omissions and delay.[1]  At this late date, even if this Court ordered Mr. Brown to provide notice to the plaintiff classes, that supplemental notice process would unjustifiably delay the June 20, 2011 fairness hearing, a delay caused solely by Mr. Brown that would further prejudice the interests of class members, particularly those who are elderly, infirm, and indigent.

---

[1] Plaintiffs have already advanced almost $8.7 million to pay for the approved notice campaign, but the true costs are much higher inasmuch as the Department of Justice paid for the Notice Contractor's costs through Preliminary Approval and the Claims Administrator has not invoiced plaintiffs for any work performed to date.  Plaintiffs estimate that an additional $8 - $12 million would need to be re-invested in order to re-start the notice process and interminably delay the distribution of the settlement funds.

Mr. Brown has compounded his tardiness by failing to follow proper procedures and Court instructions, thereby causing additional delay. Although this Court instructed Mr. Brown to file a motion to intervene, he did not do so. To the extent Mr. Brown had a right to intervene, he should have intervened, if at all, no later than the preliminary approval hearing on December 21, 2010, the date this Court granted preliminary approval and approved the long-form notice. *See* F.R.C.P. § 24 (c). Having failed to do so and having failed to provide any plan – let alone a comprehensive notice plan – to address the class notice issues implicated by his filing, his untimely effort should not be permitted to inflict further harm and undue delay on class members.

## 2.  Brown's Delay is Inexcusable.

Mr. Brown's untimely request rests solely on the slender reed that he supposedly relied on "assurances" that his fees would be included in any fee petition submitted to the Court at the conclusion of the litigation. Motion at 4. Despite Mr. Brown's claim that plaintiffs are obligated to file his time, no such assurances were made to Mr. Brown.[2]  It is telling that although he felt free to disclose various emails and one of Class Counsel's contingent fee agreements, he has disclosed no such written "assurance" that his time would be filed at the conclusion of the case.[3] None exists. Nor was there any oral agreement that his time would be filed. *See* Exhibit 1 (Gingold Affidavit) at ¶ 15; Exhibit 2 (Dorris Affidavit) ¶ 6.

---

[2] Mr. Brown makes, on occasion, reference to Mr. Gingold or "Lead Counsel" as if to personalize his Motion. To be clear, the opposition to Mr. Brown's fee request is plaintiffs', not Mr. Gingold's, and Mr. Gingold, at all times, has acted at the direction, and with the express approval, of plaintiffs in this matter, including when Mr. Brown was justifiably terminated. In addition, Mr. Brown has also referred to Mr. Gingold as his "former partner in this matter." Brown Motion at 8.  That is news to Mr. Gingold, who has never been Mr. Brown's law "partner."

[3] Mr. Brown should produce any such agreement, which must be in writing. *See, e.g.,* D.C. Bar Rule 1.5(c).

Instead, Mr. Brown relies entirely on his interpretation of a September 6, 2007 e-mail from Dennis Gingold as the alleged "assurances."   Mr. Gingold's September 6, 2007 email provides in pertinent part:

> If, however, you believe you are entitled to the payment of such fees, please explain and I will discuss your position with Elouise [Cobell]. Otherwise, with your termination, you have no further professional obligation to the <u>Cobell</u> plaintiffs – other than to maintain client confidences in accordance with your ethical duties – and the <u>Cobell</u> plaintiffs owe no further obligation to you – other than, at final judgment, to request an award for your time at an appropriate hourly rate.

Motion, Exhibit 11.

Mr. Brown conspicuously omits his express and complete repudiation of Mr. Gingold's email.   Ten days after receiving Mr. Gingold's email, Mr. Brown responded in clear and unambiguous terms, rejecting Mr. Gingold's proposal in its entirety:

> **The balance of your e-mail** (item 5 and the last paragraph) **is** merely a reflection of your hopes and dreams, and not a reflection of reality or anything we discussed – and **certainly nothing I agreed to.   As such, your characterization of 'facts' in those portions of your e-mail (as well as any other portions to the extent not directly addressed above) is rejected** *in toto*.

Motion, Exhibit 12 (emphasis added).

Mr. Brown does not explain how he can reasonably rely on a portion of an email that he expressly and unambiguously rejected in its entirety.   It is a particularly bizarre reliance when one considers that Mr. Brown did not communicate with plaintiffs and failed to submit to plaintiffs his time records and other supporting material – an obvious practical condition precedent to such a filing.

Mr. Brown's strategic reasons for evading resolution until his untimely filing are his own since he provides no plausible justification.  Having rejected "*in toto*" plaintiffs' offer to support an award for appropriate time at a reasonable hourly rate, Mr. Brown was free to file a petition in

accordance with this Court's order on or before January 25, 2011.  [Dkt. No. 3676].  However, he did not.  What is plain is that he has ignored this Court's filing deadline and local rules just as he has ignored Ms. Cobell.

There is no disagreement that Mr. Brown disengaged from this case more than six years ago and that plaintiffs terminated him in 2007.  Exhibit 1 (Gingold Affidavit) at ¶¶ 9 – 14; Exhibit 3 (Cobell Affidavit) ¶¶ 6 - 15. Nor is there disagreement that he rejected every effort of plaintiffs and Class Counsel to resolve his fee issues long before the filing deadline set by this Court.[4] Further, Mr. Brown cannot dispute that he has never provided his time records to plaintiffs, and that he rejected that which he says he had relied on as his excuse to his untimely filing, *i.e.,* his explicit *in toto* rejection of plaintiffs' proposal to submit an appropriate fee application in his behalf.  The last effort made by a Class Counsel to attempt to reach a resolution ground to a halt in early 2010 when Mr. Brown's prior attorney promised that new counsel for Mr. Brown would be in touch shortly, but no such contact was made.  Exhibit 2 (Dorris Affidavit), ¶¶ 4-5.

To the extent Mr. Brown desired to make this present motion he should have done so within the time allotted – by January 25, 2011.  He failed to do so.  He has provided no

---

[4] Mr. Brown omits mention of the fact that plaintiffs repeatedly sought to resolve fee issues relating to his termination. *See e.g.*, Motion, Exhibit 5 (April 25, 2007: "Under these circumstances, I don't see any reason why your withdrawal from active participation in this case two years ago should not now be memorialized so that we can put that experience behind us."); *id*., Exhibit 7 (May 1, 2007: "I believe it should be resolved without further delay. We ought to deal with distractions sooner than later so they don't get out of control. If you have a proposal for an amicable, mutually satisfactory resolution, make it."); *id*. at Exhibit 10 (July 10, 2007: "[I]t is time to resolve your professional status. I had asked you to provide a plan or proposal for resolution of your status a few months ago; however, I received nothing from you in that regard. I also suggested that you may want to speak to Elouise about your status. But, you didn't do that either."). Unfortunately, each proffer was ignored or rejected "*in toto*."

legitimate excuse or reasonable explanation why he did not.  Accordingly, his motion should be rejected for this reason alone.

### 3. **Brown's Engagement was Properly Terminated**

Plaintiffs terminated Mr. Brown's engagement in 2007. *See e.g*., Motion, Exhibit 10 (July 10, 2007 e-mail from Gingold terminating Brown).  He was terminated for fair cause[5] because he would not communicate with the lead plaintiff,[6] would not to take direction from Class Counsel, disengaged from these proceedings for two years, and key litigation team members no longer were willing to work with him.[7]  For example, because of difficulties Class Counsel had with Mr. Brown at the beginning of the fifty-nine day IT Security trial in 2005, he was directed to suspend his work on that trial and to contact Bill Austin of Kilpatrick Townsend to work on other assignments related to this litigation. Exhibit 1 (Gingold Affidavit) at ¶ 9; Exhibit 6 (Austin Affidavit) at ¶¶ 5 - 8. However, without receiving any such assignments from Mr. Austin, Mr. Brown independently prepared findings and conclusions relating to the IT security trial.[8]  No one had asked him to perform this work because the Court did not order preparation of proposed findings and conclusions.  As a consequence, no proposed findings and conclusions were ever

---

[5] A client may discharge a lawyer at any time, with or without cause.  Restatement (Third) of Law Governing Lawyers. § 32 (2000),cmt. (b) ("Discharge by a client. A client may always discharge a lawyer, regardless of cause and regardless of any agreement between them.").  As described more fully throughout Plaintiffs' Reply, Mr. Brown's conduct justifies terminating his engagement with cause.  Moreover, where, as here, an attorney walks away from representation of a client, knowingly abandons his client, fails to communicate with his client generally, and fails to notify the client of his cessation of work, several Rules of Professional Responsibility for the D.C. Bar may be implicated.  *See generally*, *In re Lewis*, 689 A.2d 561, 564 (D.C. 1997).  In short, Mr. Brown's conduct is a sound basis for terminating his representation with cause.

[6] *See* Exhibit 1 (Gingold Affidavit) at ¶ 14; Exhibit 3 (Cobell Affidavit) at ¶¶ 9, 12, 14, & 15.

[7] *See* Exhibit 1 (Gingold Affidavit) at ¶¶ 8 - 11; Exhibit 4 (Harper Affidavit) at ¶¶ 4 - 5; and Exhibit 5 (Rempel Affidavit) at ¶¶ 3 - 6.

[8] *See* Exhibit 6 (Austin Affidavit) at ¶¶ 5-10; Exhibit 1 (Gingold Affidavit) at ¶11. 10 -11.

filed. *Id.* at ¶ 11.   That work was utterly unnecessary and irrelevant to these proceedings[9] and did not advance in any way, the interests of the plaintiff class.   Nevertheless, Mr. Brown wants to be compensated for his time spent (over 200 hours) on this useless task that he independently decided to perform.

This is but an example though.   Mr. Brown refused to take direction from Class Counsel and instead did whatever he decided to do irrespective of whether Class Counsel believed such work furthered the interest of the plaintiffs.   Exhibit 4 (Harper Affidavit) at ¶¶ 3 - 6. As would be expected, this soon became an intolerable circumstance.   Coupled with his inability to work with other members of the team, and following his abandonment of the case, Mr. Brown's termination was necessary and justifiable.

His failures did not end there.   For many years, Class Counsel contemporaneously appeared in district court evidentiary and motions hearings, trials, and status conferences; appeared before the special master in hearings, depositions, and joint meetings with government officials; and briefed and argued ten interlocutory appeals before the D.C. Circuit.   Because of the increasingly heavy load on Class Counsel, Class Counsel ultimately accepted offers of assistance from Mr. Brown and plaintiffs retained him to help relieve that load and assume litigation responsibilities, which included responsibilities related to special master proceedings. However, Mr. Brown was unable to perform that task because of complaints about his demeanor and was barred by the Special Master from appearing at meetings, hearings and depositions conducted by the Special Master.   Exhibit 1 (Gingold Affidavit) at ¶ 5.

---

[9] *See* Exhibit 6 (Austin Affidavit) at ¶¶ 9-10.

Of course, a lawyer has an affirmative obligation to regularly communicate with a client and keep the client informed.[10]   Notwithstanding this duty and repeated requests by Class Counsel, Mr. Brown refused to communicate with Ms. Cobell since at least 2005 on any matter, including his status, assignments, time recorded, hourly rate, and appropriate fee and expense claims,[11] making it impossible for her to discuss litigation matters with him and equally impossible to include Mr. Brown's time and appropriate fees, if any, in Plaintiffs' Petition. Similarly, until March 24, 2011, it had been impossible for plaintiffs and Class Counsel to assess the value and relevance of his time and charges because he had not provided that information to plaintiffs for review.[12]   Indeed, Mr. Brown has filed that information under seal in violation of LCvR 5.1(j) and has not served plaintiffs.[13]

Following his termination, Mr. Brown refused to communicate with the lead plaintiff[14] and Class Counsel[15] about resolving his compensation issues and his failure to perform in

---

[10] DC Bar Rule 1.4(a) "A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable request for information." *See also* Comment 2: "A client is entitled to whatever information the client wishes about all aspects of the subject matter of the representation . . . . The lawyer must initiate and maintain the consultative and decision-making process if the client does not do so and must ensure that the ongoing process is thorough and complete;" Comment 3 "Adequacy of communication depends in part on the kind of advice or assistance involved. The guiding principle is that the lawyer should fulfill reasonable client expectations for information consistent with (1) the duty to act in the client's beset interests, and (2) the client's overall requirements and objectives as to the character of representation."

[11] *See* Exhibit 3 (Cobell Affidavit) at ¶¶ 14 - 18.

[12] To date, Mr. Brown has not provided his time and charges to plaintiffs or Class Counsel; however, on March 24, 2011, the government obtained from Mr. Brown's counsel documents that he filed under seal and it furnished them to Class Counsel at 5:44 PM on that date. Accordingly, any review of Mr. Brown's time necessarily is brief.

[13] *See* discussion *infra* at 15 - 16.

[14] *See e.g.*, Brown Motion, Exhibit 5 (April 25, 2007: "You're certainly free to discuss this with Keith and Elouise without my participation. However I intend to recommend to Elouise that she notify you formally that your withdrawal two years ago vitiates the need for future professional services and that she reject your offer in that regard."); Brown Motion, Exhibit 6 (May 1, 2007: "You stated in May of 2005 that I was free to consult with Elouise if I wished, but I never saw fit to burden her in that way . . . . I'm not sure whether Elouise or any of us need such a distraction

accordance with the terms of his engagement.   Mr. Brown does not deny that he has been disengaged and absent from this case since at least 2005.  Nor does he deny that he has refused to communicate with the lead plaintiff for at least that long.

As of the time of termination, Mr. Brown had not appeared in his office in Washington, D.C. for approximately two years.  From time to time, Ms. Cobell asked Class Counsel about the whereabouts of Mr. Brown, but no one could answer that question definitively.  *See, e.g.,* Exhibit 3 (Cobell Affidavit) at ¶¶ 6, 9, & 12.  Class Counsel attempted to contact Mr. Brown via email; however, no responses were forthcoming.   Ultimately, Class Counsel obtained a telephone number at his ranch in central California through the California Bar, which provided the name of Mr. Brown's last known law firm.   Lead counsel promptly telephoned Mr. Brown who confirmed during that call that he had received the emails, but chose not to respond.  Further, Mr. Brown would not discuss his status and expressly rejected lead counsel's request that he contact Ms. Cobell directly to discuss his status in the case. *See* Exhibit 1 (Gingold Affidavit) at ¶ 14; Exhibit 3 (Cobell Affidavit) at ¶¶ 9, 12, 14, & 15.

---

while the litigation is ongoing."); Brown Motion, Exhibit 7 ("As I indicated in my first email to you on this subject, I would first give you the opportunity to talk to Elouise."); and Brown Motion, Exhibit 10 ("I also suggested that you may want to speak to Elouise about your status. But, you didn't do that either.").

[15] Mr. Brown omits mention of the fact that plaintiffs repeatedly sought to resolve fee issues relating to his termination. *See e.g.*, Motion, Exhibit 5 (April 25, 2007: "Under these circumstances, I don't see any reason why your withdrawal from active participation in this case two years ago should not now be memorialized so that we can put that experience behind us."); *id.*, Exhibit 7 (May 1, 2007: "I believe it should be resolved without further delay. We ought to deal with distractions sooner than later so they don't get out of control. If you have a proposal for an amicable, mutually satisfactory resolution, make it."); *id.* at Exhibit 10 (July 10, 2007: "[I]t is time to resolve your professional status. I had asked you to provide a plan or proposal for resolution of your status a few months ago; however, I received nothing from you in that regard. I also suggested that you may want to speak to Elouise about your status. But, you didn't do that either."). Unfortunately, each proffer was ignored or rejected "*in toto*."

### 4. **No Compensation is due Mr. Brown.**

Under these circumstances, plaintiffs know of no authority – and Mr. Brown has cited none – that supports Mr. Brown's fee request.  D.C. Bar Rule 1.5(c) provides in part that a "contingent fee shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer."  Comment 8 further states that "[t]his writing must explain the method by which the fee is to be computed." The "method by which [Mr. Brown's] fee is to be computed" in his fee application is not consistent with that which is set forth in his contingent fee agreement, showing that Mr. Brown is well aware that he has failed to perform as required in his fee agreement.[16]

Without explaining the legal basis for his request, Mr. Brown seeks to recover for all his time at a *Laffey* rate presumably under some type of quantum meruit or unjust enrichment theory. In this Circuit, however, an attorney who fails to complete a contingency fee contract without justification is not later entitled to pursue fees under a quantum meruit or unjust enrichment theory.  In *Fletcher v. Krise*, 120 F.2d 809 (D.C. Cir. 1940), the Court of Appeals stated: "The rule permitting recovery for reasonable value of services performed is based on quasi contract, and is confined to instances where the attorney has been prevented from earning the agreed contingent fee without fault, as by illness, death, or discharge without fair cause.  It has never been thought to apply to a situation where the attorney abandons the case without justification."

---

[16] Mr. Brown's Motion is further complicated by his various and shifting requests for amounts. On February 24, 2011, Mr. Brown made his first filing requesting **[1]** $5,455,702.75. [Dkt. No. 3695 at 2]. Four days later, on February 28, 2011, Mr. Brown unearthed another $61,728.62 and requested **[2]** $5,517,431.37. [Dkt. No. 3699 at 2]. And, still, none of these hours foot to the alleged "all time incurred by [Mr. Brown] in [his] representation of the Plaintiff Class" [Dkt. No. 3699 at 9] reflected on page 10 of his Motion. That table reveals total hours of 10,630.1 incurred by Mr. Brown. *Id.* at 10. Calculated at $475 per hour equals: **[3]** $5,049,297.50. Without the actual time and expense attached to any of the papers served on plaintiffs, Class Counsel is unable to verify any of these amounts.

*Id.* at 811. (internal quotation marks and citation omitted) (interpreting D.C. law). *Fletcher* demonstrates that an attorney is not entitled to recover under quantum meruit or unjust enrichment theories where the attorney fails to complete the representation without cause.

Cases from other jurisdictions are to the same effect. *See* 53 A.L.R. 5th 287 Circumstances Under Which Attorney Retains Right to Compensation Notwithstanding Voluntary Withdrawal From Case §2(a). That article summarizes the case law as follows: "A number of courts have taken the position that an attorney who, without justifiable cause, voluntarily abandons or withdraws from a case before its termination, and before he or she has fully performed the services required, loses all right to compensation for services rendered prior to the withdrawal. Other courts have recognized the right of an attorney to recover compensation for services rendered where the attorney's withdrawal from or abandonment of the case is for a 'justifiable' reason."[17]

Mr. Brown's failure to continue to communicate with the plaintiffs and work on the case resulted in his termination with cause. As a result, he cannot recover pursuant to his contract of engagement or under either quantum meruit or unjust enrichment theories.

Mr. Brown also cannot dispute that he has refused to provide his time and charges to plaintiffs despite being requested to do so, ensuring that plaintiffs could not determine whether they are appropriate and justified. Ordinarily, attorneys may not withhold their time and charges

---

[17] Citing *inter alia Faro v. Romani*, 641 So. 2d 69 (Fla. 1994); *J.M. Heinike Associates, Inc. v. Liberty Nat. Bank*, 142 App. Div. 2d 929, 520 N.Y.S.2d 355 (N.Y. App. 4th Div. 1988); *Estate of Falco* 188 Cal. App.3d 1004, 233 Cal. Rptr. 807 (Cal. App. 2d Dist. 1988); *May v. Seibert*, 164 W. Va. 680, 66 S.E. 1060 (1980); *Hardison v. Weinshel*, 450 F.Supp. 721 (E.D. Wis. 1978) (applying Wisconsin law).

from their clients.[18]  Indeed, plaintiffs know of no authority that justifies such behavior and Mr. Brown cites none.

Additionally, Mr. Brown has not established the reasonableness of the hourly rate he seeks.  He relies solely on the *Laffey* matrix that is published by the Civil Division of the United States Attorney's Office for the District of Columbia to argue for an hourly rate of $475 in this litigation.  The *Laffey* matrix ordinarily is utilized when attorneys' fees are requested under a fee-shifting statute, not where, as here, an attorney seeks fees out of the recovery of his clients.  Mr. Brown has failed to provide any evidence that he currently charges and is paid the requested rate by other clients on similar matters.

### 5.  Mr. Brown is Not Entitled to any Part of Class Counsel's Fees.

Evidently, Mr. Brown decided that his best strategy was to piggy-back on Plaintiffs' Petition to avoid public scrutiny of his personal claim.  However, Mr. Brown has now dropped his self-described "Class Counsel" designation in his latest filing; a material admission that he previously had mischaracterized his status to this Court.[19]  That admission is significant, inasmuch as Plaintiffs' Petition, by its terms, is limited to fees and expenses of Class Counsel.  *See e.g.* Plaintiffs' Petition for Class Counsel's Fees, Expenses and Costs Through Settlement, Dkt. No. 3678.[20]

---

[18] *See generally*, DC Bar Rule 1.4.

[19] Mr. Brown only dropped that improper label after plaintiffs made clear that he was not Class Counsel.  *See* Plaintiffs' Notice [Dkt. No. 3685] at 1-2  (explaining that Mr. Brown is not Class Counsel notwithstanding his representations to this Court).

[20] In accordance with the terms of settlement, no attorney is included in Plaintiffs' Petition unless the attorney is Class Counsel.  From time to time, the Native American Rights Fund and other attorneys, as well as two outstanding academics have been engaged in this litigation as counsel for plaintiffs, notably Professors Henry Paul Monaghan and Jamin B. Raskin.  However, because they are not Class Counsel, they are not included in Plaintiffs' Petition.  Mr. Brown, in that regard, is treated no differently than any other attorney who is not Class Counsel.

Mr. Brown is in a very different posture than if he had assumed the same risks that Class Counsel have assumed, before and after Mr. Brown made his appearance in this case. Mr. Brown did not appear in these proceedings until 2000 – following the "stunning" victory that Class Counsel achieved in *Cobell V*, which in 1999 established the government's accountability and liability in this case.[21]   From 2000 to 2005, which is a fraction of this fifteen-year litigation, he worked from time to time on issues in this case and examined a few witnesses.[22] Notably, he did not draft the complaint, frame or determine strategic jurisdictional, procedural and substantive options or navigate plaintiffs through the course of this complex and novel case of first impression.  Nor did Mr. Brown litigate the liability component of the case, equitable relief, or restitutionary issues that were central to this litigation and the settlement amount.

Furthermore, Mr. Brown did not argue any of the ten interlocutory appeals or draft appellate briefs, did not participate in any of the nine settlement negotiations (one of which was mediated in accordance with orders of this Court and one was undertaken pursuant to instructions from Congress), and did not bring any unique skill to the litigation.  Nor did Mr. Brown have any role in the Congressional component of this action, which has been critical to settlement.  Yet, he asks this Court to place him on the same footings of Class Counsel although Mr. Brown made no contribution to the settlement that is before this Court and his time is outside the scope of Plaintiffs' Petition.

---

[21] *See Cobell v. Babbitt* ("*Cobell V*"), 91 F. Supp. 2d 148-51, 57 (D.D.C. 1999).

[22] Mr. Brown's contributions to the case were hardly significant when he was engaged. He argued none of the ten interlocutory appeals; did not participate in the Trial 1, which resulted in plaintiffs "stunning" victory; and participated in only two trials, Contempt Trial 2 and Trial 1.5. In Contempt Trial 2, he did not make plaintiffs' opening or closing argument and he examined one of eleven testifying witnesses.  Mr. Brown's examination of a secondary witness occupied one day of the eleven-day trial.  In Trial 1.5, Mr. Brown once again did not make plaintiffs' opening or closing argument and he examined five of nineteen witnesses who testified.  His examinations occupied only six and one-half days of the forty-four day trial – less than 15% of the total trial days.

Should this settlement fail for any reason, the case will continue into the indefinite future. As both parties understand, "there is no end anticipated in the foreseeable future." Settlement Agreement at 4, ¶ 9.  Under these circumstances, it is not Mr. Brown who will continue to represent the plaintiffs until resolution.  Rather, it is Class Counsel who will continue the litigation and continue to assume all the financial and professional risks of this historic proceeding.  This Circuit has described this case a "complicated legal morass" from which no "exit" had been readily apparent. *Cobell v. Salazar*, 573 F.3d 808, 812 (D.C. Cir. 2009) *("Cobell XXII")*, *cert. dismissed*, 130 S. Ct. 3497 (2010).

Further, Class Counsel routinely have declined client engagements and professional opportunities to ensure the most effective prosecution possible.  Mr. Brown, on the other hand, has accepted new client engagements and has returned to his practice of law in California. Motion, Exhibit 1.  Finally, by failing to place his fees in the public record and subject them to review by Class Representatives, Class Counsel, and class members through the notice process, he seeks millions of dollars out of plaintiffs' recovery while not subjecting himself to any professional or reputational inquiry or criticism whatsoever.

Mr. Brown is on footing materially different from than that of Class Counsel.[23]  His time and charges properly are not included in Plaintiffs' Petition and could not be if he made his time and charges available to plaintiffs, which he did not do.  The $99.9 million clear sailing provision does not include any fees sought by Mr. Brown since that provision only applies to Class Counsel as defined in the Settlement Agreement.

---

[23] If this Court accommodates Mr. Brown's Motion notwithstanding his fundamental errors and irregularities in, as well as the untimeliness of, his fee request and awards him fees, no authority supports the enhancement that he seeks under these circumstances.

### 6. **Brown's Request Violates Local Rules and Directions of this Court.**

Mr. Brown has failed to comply with the Local Rules in a number of ways and ignored this Court's direction.  First, neither Mr. Brown nor his counsel met and conferred with attorneys for the parties as required by LCvR 7(m).  Second, Mr. Brown improperly filed documents under seal.  LCvR 5.1(j), which governs the sealing of information, provides: "Absent statutory authority, no cases or documents may be sealed without an order from the Court."  No authority or order covers the documents that Mr. Brown placed under seal.  Moreover, he did not file a motion to seal the documents, another violation of local rules.[24] LCvR 5.1(j).  Third, Mr. Brown failed to serve upon plaintiffs the documents he placed under seal.[25]

In addition to Mr. Brown's general failure to comply with Local Rules, Mr. Brown ignored this Court's direction on February 25, 2011 to move to intervene.  Nowhere in any of his papers has he offered any explanation for failing to do so.  The failure to file a motion to intervene as instructed by this Court is meaningful.   All such motions must meet the requirements of Fed. R. Civ. P. 24(c) and include an "original of the pleading setting forth the claim or defense for which intervention is sought."  LCvR 7(j).  Because of the many infirmities in his motion for fees, it should be rejected.

---

[24] Notably, Mr. Brown failed to meet and confer with Class Counsel on any of his filings as required under Local Rules. LCvR 7(m). Nor does he cite compliance with the meet and confer requirement that is required by Local Rules.  *Id*.  Because Mr. Brown failed to serve plaintiffs, they do not know whether he has also violated Local Rules that require sealed documents to be securely sealed in an envelope with a conspicuous notation indicating that they are subject to seal, a case number, title of the Court, a descriptive title of the document, the case caption and the date of such sealing order. LCvR 5.1(j)(2) & 5.1(j)(3).

[25] Remarkably, late in the afternoon on March 24, 2011, the government emailed to Class Counsel Mr. Brown's sealed documents, including his time records.  However, Mr. Brown has not seen fit to serve plaintiffs.

**Conclusion**

Plaintiffs respectfully request that this Court deny Mr. Brown's request that his fees and expenses be paid out of plaintiffs' recovery.  He did not complete his representation of plaintiffs and he was terminated for fair cause, in addition to his request being inexcusably untimely and procedurally defective.

Respectfully submitted,

/s/ Dennis M. Gingold
DENNIS M. GINGOLD
D.C. Bar No. 417748
607 14th Street, N.W., 9th Floor
Washington, D.C. 20005
(202) 824-1448

/s/ Keith M. Harper
KEITH M. HARPER
D.C. Bar No. 451956
JUSTIN GUILDER
D.C. Bar No. 979208
KILPATRICK TOWNSEND LLP
607 14th Street, N.W.
Washington, D.C.  20005
(202) 508-5844

DAVID COVENTRY SMITH
N.C. Bar No. 12558
Admitted *Pro Hac Vice*
KILPATRICK TOWNSEND LLP
1001 West Fourth Street
Winston-Salem, NC 27101-2400
(336) 607-7392

WILLIAM E. DORRIS
Georgia Bar No. 225987
Admitted *Pro Hac Vice*
ELLIOTT LEVITAS
D.C. Bar No. 384758
KILPATRICK TOWNSEND LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia  30309
404-815-6500

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing PLAINTIFFS' OPPOSITION TO MARK BROWN'S MOTION FOR ATTORNEY'S FEES AND EXPENSES was served on the following via facsimile, pursuant to agreement, on this 31st day, March, 2011.

Earl Old Person (*Pro se*)
Blackfeet Tribe
P.O. Box 850
Browning, MT 59417
406.338.7530 (fax)


/s/ Shawn Chick