# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELOUISE PEPION COBELL. et al | ) |
| | ) |
| Plaintiffs, | ) Civ. No. 96-1285 (TFH) |
| vs. | ) |
| | ) |
| | ) |
| KEN SALAZAR, Secretary of the Interior, | ) |
| et al. | ) |
| | ) |
| Defendants. | ) |

**FILED**

**JUN 1 7 2011**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## ORDER

Pending before the Court is the Motion for Leave to File Corrected Objections Concerning Proposed Settlement on Behalf of the Quapaw Tribe of Oklahoma (O-GAH-PAH) and Tribal Members [Dkt. # 3808] (the "Motion to File") and Motion of Quapaw Tribal Members to Opt Out of Proposed Settlement Agreement (the "Opt Out Motion"). After carefully considering the motions and the entire record of this case the Court **DENIES** the motions for the reasons stated below.

## I.   The Motion to File

On April 20, 2011, the Quapaw Tribe (the "Tribe") filed objections to the proposed settlement in this case. Dkt. # 3737. This satisfied the deadline for filing such objections set forth in the Court's Order on Joint Motion for Preliminary Approval of Settlement Agreement. Dkt. # 3667. The objections never indicated that the Tribe was filing them on behalf of anyone but itself. Thus, Plaintiffs' Response to Objections filed on May 16, 2011 (the "Plaintiffs' Responses") correctly noted that the Quapaw Tribe had no standing to file such objections. *Id.* at 2 n.6 [Dkt. # 3763].

Defendants' Memorandum in Support of Final Approval of Settlement and Responses to Objections (the "Defendants' Responses") also noted this defect. *Id.* at 44 n.171 [Dkt. # 3764].

On June 13, 2011, almost two months after the deadline for filing such objections passed and one week before the fairness hearing, the Quapaw Tribe now files the Motion to File, indicating that it meant to file the original objections on behalf of its 1,065 members who are also class members, all of whom have apparently opted out of the Trust Administration Class.

The Tribe's motion is untimely. The Tribe's original objections were procedurally defective for the reasons noted by Plaintiffs and Defendants, and as mentioned in the Court's Order of June 8, 2011 (denying movant's request to supplement their objections because the Tribe lacked standing). The Court further refrains from using its discretion to grant the motion because the Tribe should have been on notice as early as May 16 that the parties considered its objections defective and nevertheless waited until the eve of the fairness hearing to file this motion.

Moreover, the motion is largely moot. The Tribe lodged three main objections to the settlement: (1) that the Tribe's members required individual remedies, (2) that Tribal members should have more time to consider the settlement, and (3) the Court should clarify the release of claims associated with the settlement. The first objection is resolved by the Tribal members opting out of the Trust Administration Class, and by the resolution of the motion discussed in Part II, below. Defendants and Plaintiffs both responded to the second concern in their responses to objections. *See* Defendants' Responses at 31; Plaintiffs' Responses at 61–62. The third objection is generally subsumed under other objections regarding the adequacy of the notice period, the adequacy of the notice, and the adequacy of the tools deployed to help class members understand the settlement terms.

## II.    The Opt Out Motion

The Opt Out Motion fails for three reasons.  First, the absent class members on whose behalf the Tribe purportedly files this motion are not parties to the case and therefore have no standing to file this motion.  The proper method for filing this request would have been to file objections to the proposed settlement.  Second, even if the Court were to construe the motion as objections to the proposed settlement, they are untimely because they were not filed by April 20, 2011.[1]

Third, the motion is substantively defective.  The Tribe asks the Court to exercise its discretion and allow its members to opt out of the Historical Accounting Class ("HAC"), which was certified under Fed. R. Civ. P. 23(b)(1)(A) and (b)(2).  Although there is no right to opt out of a class certified under either of these two  provisions, the Court may exercise its discretion and allow opt outs if, for example, "the assumption of cohesiveness for purposes of injunctive relief that justifies certification as a . . . class is unjustified as to claims that individual class members may have for monetary damages" or if "the claims of particular class members are unique or sufficiently distinct from the claims of the class as a whole, and that opt-outs should be permitted on a selective basis." *Eubanks v. Billington*, 110 F.3d 87, 96 (D.C. Cir. 1997).  In this context, "the relevant question for the district court [is] whether permitting the opt-out [is] necessary to facilitate the fair and efficient conduct of the action." *Id.* at 96–97 (internal quotation marks and citation omitted).

---

[1]    The Tribe also informs the Court that several of its members filed their opt-out notices from the Trust Administration Class late. Opt Out Motion at 1 n.1.  But because the Tribe "request[ed]" a 90-day extension of the notice period in its objections to the proposed settlement, it apparently considers such late notices timely. This suggestion is ill-taken.  The Quapaw Tribe had no standing to file such objections in the first place, and similarly had no standing to file any motion requesting such extensions. *See* Part I, *supra*; Order of June 8, 2011 [Dkt. # 3798].  The Court thus rejects this back-door attempt to make otherwise late opt-out requests timely.

The Tribe fails to satisfy such standards.  The Tribe does not dispute that classes certified under Fed. R. Civ. P. 23(b)(1)(A)[2] and (b)(2)[3] can receive monetary relief or that the HAC is properly certified under each provision.  Rather, the Tribe contends that because the HAC members will receive monetary relief, its members' awards must be individualized to account for the unique circumstances under which they were injured.  In the Tribe's words, its members wish to opt out "to seek complete and accurate damages arising from the government's breach of trust claims related to their IIM accounts, along with other corresponding monetary relief."  Opt Out Motion at 4.  This is so because the monetary relief afforded to the HAC improperly "estimat[es] . . . the accounting misstatement for each IIM account" and improperly "attempts to allocate damages based on individual injuries."  *Id.* at 8.

Such statements miscast the HAC's nature.  The monies awarded to HAC members are not damages.  Rather, defendants award an identical amount ($1000) to each HAC member essentially in consideration for being released "from the obligation to perform a historical accounting of [each HAC member's] IIM Account or any individual Indian trust asset" through the Record Date.  Class Action Settlement Agreement § I(1).  The rationale behind this award resonates with the purpose for certifying such classes:  To avoid potentially hundreds of thousands of individual actions, each potentially "establish[ing] incompatible standards of [providing historical accountings] for the [government]", Fed. R. Civ. P. 23(b)(1)(A), when the government "has acted or refused to act on grounds that apply generally to the class", *Id.* 23(b)(2), by mismanaging the IIM trust assets that are

---

[2]   Allowing classes to be maintained if "inconsistent or varying adjudications with respect to individual class members . . . would establish incompatible standards of conduct for the party opposing the class."

[3]   Allowing classes to be maintained if "the [defendant] has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

held and invested in common. The monetary award thus flows from the equitable relief requested, is more akin to restitution than damages, and does not require determination of individualized awards that the Tribe insists compromise the class's integrity.

Indeed, the monetary relief that the Tribe describes in its motion are those awarded to members of the Trust Administration Class ("TAC"). Members of the TAC receive damages awards that take into account individualized circumstances. *See* Class Action Settlement Agreement §§ E and I. The TAC's corresponding releases address such individualized claims. In accordance with Fed. R. Civ. P. 23(b)(3), under which the TAC is certified, TAC members have been given the right to opt out and pursue individualized damages awards. TAC members retain the full panoply of evidentiary tools that may prove necessary to do so. *Id.* § I(7). Thus, the Tribe's members may pursue their claims for individualized damages by exercising their right to opt out of the TAC.

The Court notes that the Tribe also mentions, in passing, its concern about pursing "other corresponding monetary relief." Opt Out Motion at 4. The Tribe never describes what this other relief is. Suffice to say that if it is damages-related then opting out of the TAC will preserve such pursuits, and if it is equity-related then the Tribe has given no explanation of why the HAC award is inadequate.

Thus, the Tribe offers no compelling argument for why granting the motion is "necessary to facilitate the fair and efficient conduct of the action." *Eubanks*, 110 F.3d at 96–97. Indeed, the Court divines no circumstances under which it would be appropriate for any HAC members to opt out of the class. The carefully structured hybrid approach that the HAC and TAC together embody is specifically designed to enhance the efficiency of the litigation, to account for the different types of claims at issue, and to resonate with the D.C. Circuit's mandates regarding class action construction.

The classes accomplish these tasks.  Under such circumstances it would be an abuse of discretion for the Court to grant this motion.  *See Thomas v. Albright*, 139 F.3d 227, 237 (D.C. Cir. 1998) (finding that the district court abused its discretion in allowing opt outs from a 23(b)(2) class when no rationale was offered regarding why the opt-out members' claims compromised the class's cohesiveness or were otherwise distinct from the class claims as a whole).


**III.    Conclusion**

For the reasons stated above, the Motion to File and the Opt Out Motion are **DENIED**.

**SO ORDERED.**

June 17, 2011

Thomas F. Hogan
UNITED STATES DISTRICT JUDGE