IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELOUISE PEPION COBELL <u>et al.</u>, on their own<br>  behalf and on behalf of all persons similarly<br>  situated,<br><br>                         Plaintiffs,<br><br>        v.<br><br>KEN SALAZAR, Secretary of the Interior, <u>et al.</u>,<br><br>                         Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action<br>)   No. 96-1285 (TFH)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' MOTION FOR RECONSIDERATION OF
CLASS REPRESENTATIVES' EXPENSE APPLICATION**

**1.  Introduction**

On June 20, 2011, after granting final approval of the Settlement Agreement, the Court

awarded incentive payments to the Class Representatives and denied the payment of the

expenses of Ms. Cobell and the other Class Representatives of approximately $10.5 million.  In

seeking reimbursement of such costs of litigation, plaintiffs may not have been sufficiently clear

that Ms. Cobell and, in certain cases, the other named plaintiffs are <u>personally liable</u> for much of

these costs – specifically, $4,540,622.72.[1]  That is because Ms. Cobell and the other

representative plaintiffs were provided funds to prosecute this case through recoverable grants –

meaning they would have to pay them back at the end of the case – and they personally

guaranteed repayment.  Those funds are due and unless this Court grants reconsideration, the

---

[1] An additional $3,144,732.91 is owed by the Blackfeet Reservation Development Fund
("BRDF") – the non-profit initially formed specifically to fund this litigation.

1

entirety of the incentive awards plus additional funds may be taken from them.  In light of the findings this Court made regarding the contributions of Ms. Cobell and the other Class Representatives in furtherance of this successful litigation, plaintiffs respectfully submit that this is not the result this Court intended.

This Court has full authority to order that the costs and expenses of Class Representatives, incurred personally and through BRDF,[2] be paid out of the common fund that was created from their considerable efforts.  Indeed, Congress has conferred on this Court authority to order such payments in accordance with terms set forth in the Settlement Agreement. In that regard, the parties understood the need to pay all such expenses and provided that they would be paid out of the common fund.[3]  There is no authority that bars payment. Furthermore, there is authority that supports reimbursement of these legal obligations given that these expenses are legal liabilities mandating repayment by the Class Representatives themselves.

Accordingly, to the extent this Court determines that the expenses are fair and reasonable and that they have been incurred solely in connection with the prosecution of this case, this Court may order payment out of plaintiffs' recovery.  For this reason, plaintiffs seek reconsideration of this Court's denial of Class Representatives' expenses and an award of $7,685,355.63.[4]

---

[2] As explained more fully below, BRDF is an entity that made it possible for this litigation to be prosecuted.  As an individual, Ms. Cobell is not eligible to apply for and receive various repayable grants, loans, and other sources of funding.  Therefore, Ms. Cobell created BRDF in order to obtain adequate funding for this litigation.

[3] Settlement Agreement ¶ K.1

[4] Plaintiffs respectfully submit that the amount originally requested in their Expense Application of $10,556,274.59 here is appropriate, but are mindful of this Court's denial. In plaintiffs' Expense Application, they demonstrated that those expenses validly have been incurred in connection with the prosecution of this case.  Defendants did not meaningfully challenge the vast majority of those expenses. However, plaintiffs, with reluctance, seek reconsideration only of those amounts necessary to pay outstanding loans, repayable grants and plaintiffs' experts to which they remain in arrears.

### 2.  The Expenses In Question

In *Plaintiffs' Memorandum in Support of Class Representatives' Petition for Incentive Awards and Expenses* ("Expense Application") [Dkt. No. 3679], plaintiffs sought the reimbursement of expenses incurred by Class Representatives in their prosecution of this case. They generally fall within four categories: Category one is $390,000, the amount contributed by Ms. Cobell from her McArthur "Genius" grant.  Category two is $4,540,622.72, the amount that Ms. Cobell and other Class Representatives are personally liable and for which incentive payments awarded by this Court may be taken to ensure payment.[5]  Category three is $3,144,732.91, the amount of outstanding and unpaid obligations incurred by Ms. Cobell through BRDF, the 501(c)(3) that Ms. Cobell established to ensure adequate funding for the prosecution of this case.[6]  Category four is $2,480,918.96, the amount incurred by Ms. Cobell and paid through BRDF.

To raise funds to prosecute this case, Ms. Cobell had to establish BRDF because foundations would not provide funds to an individual grantee.  Foundations only make contributions to an accredited charitable organization chartered as a 501(c)(3) (or its equivalent) – not only to protect their tax status, but also to provide greater assurance of repayment.[7]  Ms. Cobell and BRDF pursued the identical goal through different means and the primary distinction between them is one of form rather than substance.  Moreover, it is clear that the parties entered into the Settlement Agreement with the understanding that BRDF's expenses would be paid from

---

[5] Exhibit 1 (Rempel Affidavit) at ¶¶5, 11.

[6] *Id.* at ¶12.

[7] None of BRDF's earnings, if any, inure to the benefit of any private shareholder or individual. Ms. Cobell has been the director of BRDF since its inception.

the common fund.  To deny the recovery of such expenses and obligations, all of which have

been essential to the prosecution of this case, would elevate form over both substance and intent.

**3.    The Settlement Agreement Authorizes this Court to Pay Expenses Incurred Solely for Purposes of Prosecuting this Litigation**

The Settlement Agreement expressly recognizes and confirms that Ms. Cobell has

incurred significant obligations and has accepted responsibility – directly and through BRDF –

for the majority of costs and expenses associated with this litigation. That is why the Settlement

Agreement provides for payment of costs and expenses of approximately $15 million, wholly

independent of, and in addition to, expenses and costs of Class Counsel.  It provides in pertinent

part:

> Prior to the hearing on the Motion for Preliminary Approval of this Agreement, Plaintiffs shall file a notice with the Court stating the amount of incentive awards which will be requested for each Class Representative, **including expenses and costs that were not paid for by attorneys, which expenses and costs are expected to be in the range of $15 million** above those paid by Defendants to date.

Settlement Agreement, ¶ K.1 (emphasis added).  That language fairly and accurately confirms

the parties' intent during settlement negotiations – the inclusion of expenses paid by Class

Representatives directly and through BRDF.  Disclosure of such expenses and costs was

approved by this Court and, upon preliminary approval, the approved notice program informed

Class Members both in written materials and by personal meetings held by Class Counsel

throughout Indian Country to explain the terms of settlement.[8]

In short, without funds that Ms. Cobell borrowed and otherwise raised from foundations

that support this litigation, this case never could have been prosecuted for fifteen years. Nor

---

[8] Preliminary Approval Order, [Dkt. No. 3667] at ¶8. *See also* Detailed Notice at 15 ("Plaintiffs will also be requesting $10.5 million to reimburse the Class Representatives' expenses. The requested amounts are in addition to payments the Class Representatives will be entitled to as Class Members."), http://cobellsettlement.com/docs/notice.pdf.

would the accomplishments of Ms. Cobell and other Class Representatives have been possible.

No one else provided funding – not tribes; not class members; that is, no class member other than

Ms. Cobell, who contributed $390,000 of her $400,000 MacArthur Genius Award to pay experts

in this case.  Without funding that could only be raised through BRDF, no class member would

have obtained any measure of justice.  Nor would Congress have appropriated $5 billion dollars

that the government spent on trust reform.  There would be no trust reform.  There would be no

historical settlement.  And, with impunity, the United States would continue to breach trust

duties that it owes to individual Indian trust beneficiaries.

**4.  Fundamental Fairness and Other Important Considerations**

Of all the funds sought in reconsideration, plaintiffs particularly urge that this Court to

approve payment of the $4,540,622.72 owed to the Lannan Foundation.  If not paid, Ms. Cobell

and the other Class Representatives who guaranteed the repayment will remain personally liable

and will be thrust into a precarious financial position.  Agreements executed to secure these

funds make clear that:

> [b]y separate assignments to the Blackfeet Reservation Development Fund,
> Elouise Pepion Cobell, Earl Old Person, Thomas Maulson, and James Louis
> Larose, beneficiaries of this Agreement, have agreed to pay to the Blackfeet
> Reservation Development Fund **all amounts that any or all of them recover
> from the United States** (including any agency or department thereof) related to
> attorney's fees and/or costs and/or expenses of the Litigation.

Exhibit 1 (Rempel Affidavit) at ¶4 (emphasis added).  Plaintiffs respectfully suggest that they do

not think this Court intended that Ms. Cobell and other Class Representatives would use her

incentive award in this manner.  This would be demonstrably unjust.

We also ask that the Court reconsider payment of additional unpaid expenses in the

amount of $3,144,732.91 that remain the obligation of BRDF.  From time to time, BRDF

borrowed money for this litigation in the form of loans and grants, which are repayable by

contract and in accordance with oral commitments and understandings.  Foundations generously

and loyally backstopped Ms. Cobell in this case when no one else would.  Each time they

stepped up when she asked them to extend their grants and loans for what appeared to be an

infinite or indeterminate duration. This Court understands and has noted that plaintiffs have been

"beset on all sides by the costs of protracted litigation and the possibility that their efforts may

ultimately prove futile."[9]  However, those charitable foundations that have supported Ms.

Cobell, and all absent *Cobell* class members, by funding the vast majority of costs in this case

also have been "beset on all sides by the costs of protracted litigation," without any assurance of

success. "Still they continue[d]" to support this case.[10]  Those outstanding obligations are as

follows:

| | |
|---|---|
| Lannan Foundation Repayable Grant | $   500,000.00 |
| Otto Bremer Loan: | $   600,000.00 |
| PricewaterhouseCoopers – Unpaid Fees: | $1,210,598.00 |
| CRA – Unpaid Fees: | $   704,134.91 |
| RSH Consulting | $   130,000.00 |
| Total | $3,144,732.91[11] |

Since this litigation could not have been prosecuted without such funding and services,

plaintiffs believe that it would be fundamentally unfair to Ms. Cobell, and inconsistent with this

Court's final approval, if the entity that she established and directed to ensure adequate funding

for this litigation to pay for experts, accountants, transcripts, travel, and other essential litigation

costs and expenses is forced into bankruptcy, particularly after she has accomplished so much for

500,000 individual Indians.

From the inception of this case and at all times relevant to these proceedings, Ms. Cobell

raised the funds necessary to prosecute this case effectively.[12]  Such a task was made all the

---

[9] *Cobell v. Norton*, 229 F.R.D. 5, 23.

[10] *Id*.

[11] *See* Exhibit 1(Rempel Affidavit) at ¶12.

more challenging because she had to compete with the Native American Rights Fund ("NARF") for funding that NARF solicited to cover its fees and expenses in these proceedings until it conflicted itself out of this litigation in mid-2006.

This Court has recognized the need to award adequate attorneys' fees "so that attorneys are encouraged to [take] these cases and to help out the less privileged who need help."[13] It is equally important to encourage extraordinary people like Ms. Cobell to represent the most vulnerable people in this country.  Yet, adequate representation is not possible without adequate funding.  The "less privileged who need" help as desperately as class members in this case would not be able fund complex litigation against the United States government.  Indeed, adequate representation of class members and the enforcement of individual Indian trust duties for new or continuing breaches of trust is impossible without adequate funding.

The sort of litigation that Ms. Cobell filed on June 10, 1996 will never again be filed if a potential class representative cannot raise sufficient funds because the expenses and costs of such litigation are not recoverable out of a common fund.  That litigation risk is too great to overcome.

Plaintiffs, here, will not restate the merits of the Expense Application filed previously with this Court.  However, it is important to note that no class member has objected to the authority of this Court to award Class Representatives' funds out of plaintiffs' recovery in order to cover the expenses and obligations paid by or through Ms. Cobell and BRDF solely for purposes this litigation.  Not even defendants made that argument.  Only questions about the reasonableness of the amount have been raised, not the authority to make the award or that the reimbursement of these costs was contemplated by the parties and memorialized in the

[12] Expense Application, Cobell Affidavit [Dkt. No. 3679-3] at 6, ¶18.
[13] Exhibit 2 (June 20, 2011 Transcript), at 250:9-11.

Settlement.  Further, reconsideration at this time will not provide a windfall to Ms. Cobell in any way, directly or through BRDF.

It is clear from this Court's findings on June 20, 2011, that the extraordinary contributions of Ms. Cobell have no equal.  Indeed, the costs and expenses of Ms. Cobell, directly and through BRDF, reflect reality where, as here, a genuine, independent lead plaintiff takes responsibility for a case of this magnitude. She is no straw man hand-picked by Class Counsel.  It is also clear from this Court's comments that the Court intended for Ms. Cobell to be the beneficiary of the $2 million awarded as an incentive award.  But it is equally plain that if, at a minimum, the expenses for which Ms. Cobell is personally liable for are not awarded from the common fund, her incentive award is available to repay loans and grants, which were necessary to prosecute this action.[14]  Based on this Court's findings, plaintiffs do not believe that is what this Court intended when it determined reasonable incentive awards for the Class Representatives.

Pursuant to the terms of settlement and as set forth in the notice to class members, plaintiffs always planned to file expenses paid and payable through BRDF ("expenses and costs that were **not paid for by attorneys**").  Defendants plainly understood that point and, most importantly, so do absent class members. Accordingly, Plaintiffs submit that it is basic fairness to have these funds reimbursed out of the fund created by the effort of the named plaintiffs.  This would necessarily include the $4,540,622.72 owed to the Lannan Foundation, which Ms. Cobell and the other class representatives have guaranteed, and also the $3,144,732.91, that BRDF is obligated to pay as well.

---

[14] *See, e.g.,* Exhibit 1 at 241:19-20 (stating that "the expenses she [Ms. Cobell] has requested will be deducted form that [$2 million] award").

## 5.   Controlling Law

In accordance with controlling law and the terms of settlement, Ms. Cobell is entitled to recover all expenses and expense obligations that have been incurred and paid by her in furtherance of this litigation, directly and as well as through BRDF. *See, e.g., Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, at 1265 (D.C. Cir. 1993). Failing to reimburse Ms. Cobell for such expenses and outstanding obligations would unjustly enrich absent class members who have not contributed financially to the prosecution of this action, but who will receive substantial tangible benefits from its successful resolution. *Id.*; *accord Boeing*, 444 U.S. at 478.

There is no authority that precludes this Court from reconsidering a decision that bars payment of such expenses because here there is liability and the Settlement Agreement expressly contemplates such payments – to the extent this Court finds that they are fair and reasonable. Indeed, there is authority to reconsider where, as here, Ms. Cobell and the other Class Representatives plainly "face real downside risk." *Allapattah Services, Inc. v. Exxon Corporation*, 454 F.Supp. 1185, 1220 (S.D. Florida 2006).

There is also authority to pay third parties who have advanced funds and otherwise paid litigation costs and expenses.  This Court noted in its bench opinion that it is not aware of any authority that supports the payment of expenses to "third persons connected with this litigation." Exhibit 2 at 243:4-9.  As described above, this is a case where Class Representatives are personally liable.  In addition, BRDF is clearly distinct from other third parties because it was established to enable the prosecution of this case and still has substantial liabilities as a result of such prosecution.  Finally, plaintiffs want to bring to the attention of this Court the decision in *Manor Healthcare Corp. v. Lomelo,* 929 F.2d 633, 639 (11th Cir. 1991).  There, the Eleventh Circuit concluded that under Fed. R. Civ. P. 54(d) a prevailing party to a lawsuit may recover

costs paid by an entity not a party to the suit.  Although the instant question does not arise under

Rule 54(d), the reasoning in *Lomelo* is equally applicable where, as here, the subject expenses

and costs are liabilities that have been incurred solely to prosecute this case, the litigation

otherwise could not be prosecuted, there is no windfall, and payment is expressly authorized

under a settlement agreement, which has been ratified and approved by Congress.

### 6.  Plaintiffs Relied on Law of this Case and Defendants' Representations

In addition to the cost and expense payment authorization set forth in the settlement

agreement, plaintiffs relied on the law of this case in their negotiation of that provision of the

Settlement Agreement and the preparation and filing of their Expense Application.  In that

regard, in 1999, following the first Contempt Trial, this Court awarded plaintiffs fees and

expenses in connection with its holding Interior Secretary Bruce Babbitt, Treasury Secretary

Robert Rubin, and Assistant Secretary Kevin Gover in civil contempt.[15]  Thereafter, plaintiffs

filed a *Statement of Fees and Expenses* ("*Statement*") and included the affidavit of

PricewaterhouseCoopers in support.[16]  In deciding the *Statement*, this Court awarded $23,947.50

to PricewaterhouseCoopers and noted that their other fees and expenses are "recoverable if

plaintiffs ultimately prevail in this litigation." *Cobell v. Babbitt*, 188 F.R.D. 122, 130; and, *id*. at

140.   Here, plaintiffs have so prevailed.

Plaintiffs then filed an Equal Access to Justice Act ("EAJA") application for interim fees

on August 16, 2004.[17]  Therein, plaintiffs again filed a supporting affidavit of

PricewaterhouseCoopers. *Id*.  This Court accepted the fee request and awarded a fee award to

---

[15] February 22, 1999 Order [Dkt. No. 210].

[16] *Statement of Fees and Expenses* [Dkt. No. 245]. PricewaterhouseCoopers was formerly known as Price Waterhouse.

[17] *Plaintiffs' Equal Access to Justice Act Petition for Interim Fees Through the Phase 1.0 Proceeding*. [Dkt. No. 2627].

PricewaterhouseCoopers on December 19, 2005 in the amount of $2,531,838.40. *Cobell v. Norton*, 407 F.Supp.2d 140, 177. On January 25, 2011, plaintiffs filed the affidavit of PricewaterhouseCoopers for the outstanding amounts.[18]

Given this Court's prior decisions, it is appropriate for this Court to award Class Representative expenses out of plaintiffs' recovery so that they may pay outstanding obligations, which have been incurred solely in connection with this litigation. *See, e.g., Cobell v. Babbitt*, 188 F.R.D. 130.

Accordingly, for the reasons set forth above as well as those set forth in their Expense Application, plaintiffs respectfully request that expenses paid and payable by Ms. Cobell directly and through BRDF in connection with this litigation be paid out of plaintiffs' recovery.[19]

---

[18] Expense Application, PricewaterhouseCoopers Affidavit [Dkt. No. 3679-10].

[19] The parties met and conferred in accordance with local rules and defendants state that they remain opposed to the payment of Class Representative expenses and oppose this motion.

Respectfully submitted this 27th day of June 2011.

/s/ Dennis M. Gingold
DENNIS M. GINGOLD
D.C. Bar No. 417748
607 14th Street, N.W.
9th Floor
Washington, D.C. 20005
(202) 824-1448

/s/ Keith M. Harper
KEITH M. HARPER
D.C. Bar No. 451956
MICHAEL ALEXANDER PEARL
D.C. Bar No. 987974
KILPATRICK TOWNSEND &
STOCKTON, LLP
607 14th Street, N.W.
Washington, D.C. 20005
(202) 508-5844

WILLIAM E. DORRIS
Georgia Bar No. 225987
Admitted Pro Hac Vice
ELLIOTT LEVITAS
D.C. Bar No. 384758
KILPATRICK TOWNSEND &
STOCKTON LLP
1100 Peachtree Street
Suite 2800
Atlanta, Georgia 30309
404-815-6104

Attorneys for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing PLAINTIFFS' MOTION FOR RECONSIDERATION OF NAMED PLAINTIFFS' EXPENSE APPLICATION was served on the following via facsimile, pursuant to agreement, on this day, June 27, 2011.

> Earl Old Person (Pro se)
> Blackfeet Tribe
> P.O. Box 850
> Browning, MT 59417
> 406.338.7530 (fax)

> /s/ Geoffrey Rempel

13