## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

<table>
<tr><td>

_____<br>
 <br>
**ELOUISE PEPION COBELL, et al.,**<br>
 <br>
       **Plaintiffs,**<br>
     **v.**<br>
 <br>
**KEN SALAZAR, Secretary of<br>
the Interior, et al.,**<br>
 <br>
       **Defendants.**<br>
_____

</td><td>

)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)

</td><td>

**No. 1:96CV01285(TFH)**

</td></tr>
</table>

### PLAINTIFFS' SECOND UNOPPOSED MOTION FOR APPEAL BOND
### PURSUANT TO FEDERAL RULE OF APPELLATE PROCEDURE 7

### INTRODUCTION

On February 3, 2011, the Harvest Institute Freedmen Federation, LLC, Leatrice Tanner-Brown, and William Warrior (collectively, "HIFF"), moved for permissive intervention for the purpose of filing objections to the proposed class settlement.  [Dkt. 2684].  The Court denied the motion on May 23, 2011.  [Dkt. 3772].  HIFF moved for reconsideration, [Dkt. 3796], which the Court also denied on June 9, 2011 because HIFF's arguments were "substantively identical to those already rejected in the Court's Order of May 23, 2011."  [Dkt. 3800].  Also on June 9, 2011, HIFF moved under 28 U.S.C. § 1292(b) for certification of an interlocutory appeal from the denial of its motion for permissive intervention and its motion for reconsideration. [Dkt. 3801]. While its motion for certification of an interlocutory appeal was pending, on June 16, 2011, HIFF filed a notice of appeal from the Court's two orders denying permissive intervention. [Dkt. 3817].   On June 17, 2011, the Court denied the motion to certify those orders for

interlocutory appeal under 28 U.S.C. § 1292(b).  [Dkt. 3822].[1]  On July 27, 2011, the Court entered an order granting final approval of the class settlement, [Dkt. 3850], and entered final judgment on August 4, 2011.  [Dkt. 3853].[2]

For purposes of this motion, the key pleading described above is HIFF's June 16, 2011 Notice of Appeal.  [Dkt. 3817].  Pursuant to Fed. R. App. Proc. 7, plaintiffs request this Court to require HIFF to post an appeal bond in the amount of $8,306,439.93 to ensure prompt payment of plaintiffs-appellees' costs on affirmance of this Court's final judgment order.[3]

## I.     The Purpose of an Appeal Bond is to Protect Appellees

An appeal bond is designed to "protect the rights of appellees brought into appeals courts" by appellants like HIFF who pose a substantial risk of non-payment of the costs of the appeal.[4]  *Adsani v. Miller*, 139 F.3d 67, 75 (2nd Cir. 1998); *Curtis & Associates, P.C. v. Law Offices of David M. Bushman, Esq.*, Slip Copy, 2011 WL 917519, *1 (E.D.N.Y. 2011); *In re Initial Public Offering Securities Litigation*, 728 F.Supp.2d 289, 292 (S.D.N.Y. 2010); *In re AOL Time Warner, Inc.*, 2007 U.S. Dist. LEXIS 69510, at *4, (S.D.N.Y. Sept. 20, 2007); *Page v. A.H. Robins Co.*, 85 F.R.D. 139, 139-40 (E.D.Va. 1980) ("[T]he purpose[ ] of an appeal bond is to provide an appellee security for the payment of such costs as may be awarded to him in the event

---

[1] HIFF has filed substantially similar claims in three separate courts: U.S. Court of Federal Claims, the U.S. District Court for the District of Columbia, and twice in the Southern District of Ohio. *Infra* at 7-8.  It has been denied relief in each court. *Id.*

[2] Counsel for the parties met and conferred on this motion in accordance with local rules and defense counsel states that the government takes no position.

[3] On August 23, 2011, plaintiffs requested that this Court order non-party objector-appellant Kimberly Craven to post an appeal bond in the same amount.

[4] There is no constitutional right to an appeal.  *Heike v. United States*, 217 U.S. 423 (1910); *Lindsey v. Normet*, 405 U.S. 56, 76-79 (1972); *Adsani v. Miller*, 139 F.3d 67, 76-77 (2nd Cir. 1998) ("The right to appellate review in federal court is conferred by statute alone.").  Therefore, the requirement that HIFF post a bond pursuant to Rule 7, which ensures that it would compensate individual Indian trust beneficiaries promptly on affirmance for all costs they incur in connection with her appeal, is not an impermissible condition to appeal.

that the appellant is unsuccessful in his appeal."). Federal Rule of Appellate Procedure 7, derived from former Federal Rule of Civil Procedure 73(c), is the legal basis for a district court's authority to impose an appeal bond. Rule 7 provides in pertinent part:

> The district court may require an appellant to file a bond or provide other security in such form and amount as it finds necessary to ensure payment of costs on appeal in a civil case.

Fed. R. App. Proc. 7. Rule 7 confers on, and expressly delegates to, this Court the authority to decide whether an appellant should be required to post a bond as well as the amount of that bond or other security to "ensure payment" of costs incurred by appellees in their successful defense of the settlement. There is no local district court or circuit court rule that corresponds to Rule 7.[5]

Further, there is no other local or federal rule that limits or modifies the authority of this Court to require a non-party appellant to post a bond or other security to ensure prompt payment of plaintiffs-appellees' cost of defending their settlement. The weight of case law in this Court, and other courts, confirms that Fed. R. App. Proc. 7 is the sole governing rule on appeal bonds. Therefore, where, as here, there is no local rule limiting or guiding this Court's discretion, it is appropriate to consider persuasive authority from other jurisdictions where on point.

## II.     Appeal Bonds are Routine in Class Actions and Serve an Important Function

Although this Circuit has not addressed the breadth of discretion that a district judge has in determining the amount of an appeal bond that a non-party appellant must post to challenge final approval of a class action settlement, this Court and many other federal courts have addressed the issue. They have determined that Fed. R. App. Proc. 7 confers on district judges broad authority to compel non-party appellants to post substantial appeal bonds to ensure that

---

[5] Rule 7 has been in effect since August 1, 1979. Circuit Rule 7, entitled BOND FOR COSTS ON APPEAL IN A CIVIL MATTER, states that "[t]hat there is no corresponding Circuit Rule."

plaintiffs-appellees' costs are paid promptly in the event an appellant's appeal fails.   As discussed *supra*, Rule 7 contains no limitation on the district court's authority.  Accordingly, full discretion is conferred in this Court, the court that is most familiar with the fairness and adequacy of the settlement, the dispositive issues, the parties, and the history of the case. *See, e.g., Hayhurst v. Calabrese*, 1992 WL 118296, *1 (D.D.C. 1992) ("The imposition of a bond is a matter of discretion for the district court."). To be sure, the practice of this Court is in accord with sister jurisdictions that impose substantial appeal bonds on non-party appellants where such appeals increase costs to the class and delay implementation of the settlement.  *See, e.g., In re Dept. of Veterans Affairs (VA) Data Theft Litigation*, 653 F.Supp.2d 58, 61 (D.D.C. 2009) (noting the Court's "authority to require a substantial appeal bond to secure the costs of appeal"); *In Re: Dept. of Veteran's Affairs (VA) Data Theft Litigation*, Misc. Action No. 06-0506 (JR) MDL Docket No. 1796 (November 20, 2009); *Hayhurst*, 1992 WL 118296, *1.

Ordering a non-party appellant to post an adequate appeal bond implements Rule 7 and exercises the discretion afforded district courts under the express language of Rule 7.  Simply put, a meritless appeal of this type delays indefinitely class members' relief upon the filing of a Notice of Appeal.  In multi-billion dollar class action cases that delay is costly.  Where, as here, class members are Indian trust beneficiaries who are entitled to protection in accordance with "the most exacting fiduciary standards," delay, necessarily, is even more costly. *See, e.g., Cobell v. Norton* (*Cobell VI*)*, 240 F.3d 1081, 1099 (D.C. Cir. 2001) (quoting *Seminole Nation v. United States,* 316 U.S. 286, 297 (1942)).  That delay can significantly harm class members even in non-trust cases, as described in detail by a number of courts that have addressed this situation.  *See In re Cardizem CD Antitrust Litig.*, 391 F.3d 812, 815 (6th Cir. 2004) (including $123,429 in the appeal bond for "incremental administration costs" due to a projected six-month delay); *In re*

*Compact Disc Minimum Advertised Price Antitrust Litig.*, No. MDL 1361, 2003 WL 22417252, at *1 (D.Me. Oct.7, 2003) (concluding that costs of delay or disruption of settlement may be included in a Rule 7 bond); *In re Pharmaceutical Industry Average Wholesale Price Litig.*, 520 F. Supp. 2d 274, (D.Mass. 2007) (imposing appeal bond of $61,000 for costs attributable to delay in distribution); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 124, 128-29 (S.D.N.Y. 1999) (imposing appeal bond of $101,500 for costs including damages resulting from the delay and/or disruption of settlement administration); *In re Wal-Mart Wage and Hour Employment Practices Litig.*, 2010 WL 786513, *2 (D.Nev. 2010) (imposing a $500,000 appeal bond including lost interest and administrative delay costs since the appeal effected a stay of the judgment and costs to the class were difficult to estimate).

## III.    The Facts of this Case Warrant an Appeal Bond.

Since June 10, 1996, 500,000 individual Indian trust beneficiaries have waited for justice for wrongs suffered continuously over the last century.   This Court determined that the settlement is fair and adequate, granted final approval, and carried out the will of Congress, which exercised its constitutionally derived plenary authority over Indian affairs when it ratified this historic settlement through the Claims Resolution Act of 2010 ("Act").   No appellant, particularly a non-party who lacks standing and is collaterally estopped from re-submitting failed arguments, is entitled to a free pass at delaying justice for the trust beneficiary-classes, especially where, as here, uniquely, each branch of government has approved the settlement.   This settlement is too important to individual Indians and the United States.

A.      The Human Cost of HIFF's Appeal is Unquantifiable

Thousands of individual Indian Trust beneficiaries have died since the action in equity was filed on June 10, 1996.[6]  The delay caused by HIFF's appeal means that more elderly and more infirm class members will pass on without obtaining justice that they deserve.  The human cost of HIFF's appeal can never be quantified, and as this Court has found, many of the class members depend on their trust funds for the most basic staples of life.  *See, e.g., Cobell v. Norton* (*Cobell XVI*), 394 F.Supp. 2d 164, 273 (D.D.C. 2005).  That alone warrants the posting of a substantial appeal bond given the gravity of delay caused by HIFF's appeal — life and death — to elders and the infirm.[7]

B.      HIFF's Appeal is Vexatious

HIFF's appeal is even more troublesome upon consideration of the organization's conduct in similar litigation.  HIFF purports to be an organization that represents descendents of African-American slaves owned by certain Indian tribes that sided with the Confederacy during the Civil War.  [Dkt. 3684-1 at 2].[8]  HIFF contends that, as a condition of re-establishing relations with the United States after the Civil War, each of those tribes signed a treaty providing rights to emancipated slaves.  *Id.*  Among those rights, HIFF contends that the freed slaves were

---

[6] 156 Cong. Rec. S6179 2010 ("[The *Cobell* litigation] has gone on for 15 years, and a good many Indians have died while that lawsuit has gone on who should have benefitted from that lawsuit.") (Statement of Senator Dorgan, July 22, 2010); 156 Cong. Rec. S999 2010 (same, March 3, 2010); 156 Cong. Rec. S6799 2010, 2010 WL 3058469, *2-3 (same, Statement of Senator Dorgan, August 5, 2010); 156 Cong. Rec. S4959-S4960, 2010 WL 2400279, *5-6 (same, Statement of Senator Dorgan, June 16, 2010); 156 Cong. Rec. S2282, 2010 WL 1487123, *19 (same, Statement of Senator Dorgan, April 14, 2010); 156 Cong. Rec. H7688 (same, Statement of Rep. Hoyer, November 30, 2010); 156 Cong. Rec. H7688-H7689 (same, Statement of Rep. Cole, November 30, 2010)

[7] *Id.*

[8] Notably, but for named objectors Leatrice Tanner-Brown and William Warrior, HIFF has not identified all the individuals it purports to represent

entitled to allotments of land and other tribal assets held in trust by the United States government. *Id.*

In 2008, HIFF sued the United States in the Court of Federal Claims seeking a declaratory judgment and monetary relief based on its claim that the descendants of those freed slaves are entitled to "the value of the land the Tribes allegedly did not turn over to their ancestors." *See Harvest Inst. Freedmen Fed'n v. United States*, 80 Fed. Cl. 197, 199 (2008), *aff'd*, 324 Fed. App'x 923 (Fed. Cir. 2009). The court dismissed HIFF's lawsuit on statute of limitations grounds. *Id.* at 201. The Federal Circuit affirmed. 324 Fed. App'x at 923. Approximately two years later, on May 20, 2010, while Congress debated legislation to authorize the *Cobell* settlement, HIFF filed a new lawsuit in the Southern District of Ohio against the United States and Nancy Pelosi as Speaker of the House of Representatives. *Harvest Inst. Freedman Fed'n, LLC v. United States*, No. 2:10-cv-449, Doc. 1 ¶ 1 (S.D. Ohio May 20, 2010). In its complaint, HIFF sought "an injunction against enactment of impending federal legislation which is racially biased and threatens to cause immediate, grave and irreparable harm to Plaintiffs and members of their putative class." *Id.* The Ohio district court denied HIFF's request for a TRO and dismissed the case, holding that "the relief requested by Plaintiffs, an injunction prohibiting Congress from enacting certain legislation, would clearly violate the separation of powers doctrine." *Harvest Inst. Freedman Fed'n, LLC v. United States*, No. 2:10-cv-449, Doc. 10 at 2-3. (S.D. Ohio May 25, 2010). In addition, the court noted that the court of federal claims had already rejected "an essential premise of Plaintiffs' action." *Id.* at 3 n.1.

However, HIFF was not done. After Congress enacted the Claims Resolution Act, HIFF again sued the United States in the Southern District of Ohio, alleging that the now-enacted law was unconstitutional for the same reasons asserted in its lawsuit challenging the pre-enactment

version. *Harvest Inst. Freedman Fed'n, LLC v. United States*, No. 2:10-cv-1131, Doc. 1. (S.D. Ohio Dec. 16, 2010). Once again, HIFF's complaint was dismissed by the trial court, this time because it lacked subject matter jurisdiction. In so doing, the court held that HIFF lacked standing to assert it claims because "[i]n essence, Plaintiffs seek legislation that would provide them with money damages to redress injury to the Freedmen. An order declaring the *Cobell* settlement approval legislation unconstitutional would prevent the resolution of the *Cobell* matter, while at the same time have no impact on Plaintiffs' claims against the United States government (which have already been judicially resolved against Plaintiffs)."[9] *Id.* Three days after the district court in Ohio dismissed its second lawsuit, HIFF moved for permissive intervention in this case, [Dkt. 2684], seeking to assert in essence the same arguments that had been previously rejected by the Southern District of Ohio, the Court of Federal Claims, and the Federal Circuit.

At present, HIFF is involved in two appeals in two different United States circuit courts – the Sixth Circuit and the D.C. Circuit – and has either initiated suits or attempted to intervene in litigation in no less than three trial level jurisdictions – the U.S. Court of Federal Claims, the U.S. District Court for Southern District of Ohio, and this Court. Each time HIFF has filed a complaint, attempted to intervene, or appeal an adverse judgment, the argument has been exactly the same – the alleged denial of benefits owed to freed African-American slaves of particular Indian tribes. HIFF's argument first was resolved in the 2008 court of federal claims decision, affirmed by the Federal Circuit, and, now, is conclusively without merit. Among other problems, HIFF's present appeal is subject to the collateral estoppel doctrine, which applies to "'successive litigation of an issue of fact or law actually litigated and resolved in a valid court

---

[9] HIFF appealed the dismissal and that appeal is pending in the Sixth Circuit.

determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008).  Based on the vexatious nature of HIFF's litigation conduct and clear application of the collateral estoppel doctrine, this Court should require an appeal bond so as to protect the plaintiff class from further financial harm due to the costs of defending the meritless appeal.

C.    HIFF's Appeal Causes Class Members Substantial Financial Loss

Finally, delay causes substantial financial loss by denying class members post-judgment interest on their settlement funds and by increasing materially their post-judgment administrative costs and legal fees and expenses in these proceedings.   Fundamental fairness requires that appellants, particularly non-party movants, be accountable fully and promptly when their appeals fail.   This case is no exception.   Accordingly, fundamental fairness justifies a bond or other security that meaningfully protects class members and ensures that they can recover in this Court all costs associated with the appeal, particularly where, as here, the non-party movant resides outside the jurisdiction of this Court.

D.    An Appeal Bond Furthers Public Policy

Imposition of a substantial bond, which is calculated on plaintiff-appellees' costs, furthers public policy and is not an impermissible condition on appellant's statutory right to appeal. *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 551-52 (1949) (holding that statutory limitation of the right to appeal for the posting of security is proper); *O'Day v. George Arakelian Farms, Inc.*, 536 F.2d 856, 860 (9th Cir. 1976) (holding that Congress may properly "condition the right to appeal upon posting security sufficient to protect appellee from loss of damages already awarded, interest, and costs on appeal, including a reasonable attorney's fee.").   In the context of class action litigation, an appellant's obligation to post such an appeal bond is

common given the consequences suffered by plaintiff classes due to prolonged delay. *Adsani v. Miller*, 139 F.3d 67, 76-77 (2nd. Cir. 1998); *In re Countrywide Financial Corp. Customer Data Sec. Breach Litig.*, Slip Copy, 2010 WL 5147222, *3 (W.D. Ky. 2010); *In re Initial Public Offering Sec. Litig.*, No. 21 MC 92(SAS), 2010 WL 2884794, at *2 (S.D.N.Y. July 20, 2010); *In re Currency Conversion Fee Antitrust Litig.*, No. M 21-95, MDL No. 1409, 2010 WL 1253741, at *2 (S.D.N.Y. Mar. 5, 2010); *Barnes v. FleetBoston*, No. 01 Civ. 10395, 2006 U.S. Dist. LEXIS 71072, at *3 (D.Mass. Aug. 22, 2006); *O'Keefe v. Mercedes–Benz United States*, LLC, 214 F.R.D. 266, 295 n. 26 (E.D.Pa. 2003). Finally, the status of class members as beneficiaries of a unique federal trust provides powerful policy support for an adequate appeal bond that can protect trust assets from further waste and ruin.

> ### E.  The Totality of the Circumstances Warrants a Substantial Appeal Bond

This Circuit as well as other courts have construed Rule 7 costs to include attorneys' fees for the preparation[10] and compilation of the record for appeal, which is an enormous undertaking and very expensive. *Cobell* is the most intensely litigated case in the history of this Circuit. Here, there are more than 3850 docket entries; more than 250 days of trials, hearings, and status conferences before this Court as well as additional hearings before two special masters; thousands of trial exhibits; scores of depositions, tens of millions of pages of document production; and 10 interlocutory appeals over more than fifteen years of litigation. Because of Privacy Act considerations and protective orders that require strict confidentiality, many relevant exhibits, documents, and transcripts are sealed, which further increases, if not doubles, the cost of preparing the massive record of this case for appeal.

---

[10] "Preparation" is defined as "1a: the action or process of making something ready for use or service b: the action or process of putting something together …." Webster's Third New International Dictionary 1790 (2002).

In addition, attorneys' fees and expenses for the preparation of procedural motions, dispositive motions, and opposition briefs as well as the increased cost of settlement administration and plaintiffs' loss of post-judgment interest on $1.5 billion may be included in the appeal bond. The practice of this Court is in accord and precedent confirms that bonds of more than $200,000 in cases far less complex and costly than this historic trust case are appropriate to secure an appellant's payment of appellees' costs. *See In Re: Dept. of Veteran's Affairs (VA) Data Theft Litig.*, Misc. Action No. 06-0506 (JR) MDL Docket No. 1796 (November 20, 2009). It should be no surprise to anyone who is familiar with the record of these proceedings, that costs associated with HIFF's appeal necessarily are substantial. Therefore, the bond or other security that it posts should be sufficient to cover the cost of defending the appeal before a three-judge panel, *en banc*, and the Supreme Court. It should also include the increased cost of the claims administrator (which averages about $300,000 per month), and post-judgment interest (which is substantial on $1.5 billion) on this, the largest settlement with the government in American history. Plaintiffs expressly reserve their right to request an increase in the posted security, among other things, if interest rates change or class communication and other costs otherwise exceed plaintiffs' initial estimates. Should HIFF lose the appeal, the importance of enforcing HIFF's prompt payment in this Court cannot be overstated.

## IV.    This Court has Discretion to Determine the Amount of an Appeal Bond

The district court has discretion to order an appellant to post an adequate appeal bond to "ensure payment of costs on appeal." Fed. R. App. Proc. 7. This Court, like all other jurisdictions, repeatedly has done so in the class action context. *In re Dept. of Veterans Affairs (VA) Data Theft Litigation*, 653 F.Supp.2d 58, 61 (D.D.C. 2009) (noting the Court's "authority to require a substantial appeal bond to secure the costs of appeal'); *In Re: Dept. of Veteran's Affairs*

*(VA) Data Theft Litigation*, Misc. Action No. 06-0506 (JR) MDL Docket No. 1796 (November 20, 2009); *Hayhurst v. Calabrese*, Not Reported in F. Supp., 1992 WL 118296, *1 (D.D.C. 1992) (holding that "[t]he imposition of a bond is a matter of discretion for the district court."); *see generally Marek v. Chesny*, 473 U.S. 1 (1985).   Where, as here, the non-party movant-appellant is located in another jurisdiction, an adequate appeal bond is necessary to ensure full repayment of appellees' costs without the need for Class Counsel to bring time consuming and expensive collection actions in Ohio.  *In re Countrywide Financial Corp. Customer Data Sec. Breach Litig., Slip Copy*, 2010 WL 5147222, *3 (W.D. Ky. 2010); *In re Initial Public Offering Sec. Litig.*, No. 21 MC 92(SAS), 2010 WL 2884794, at *2 (S.D.N.Y. July 20, 2010); *In re Currency Conversion Fee Antitrust Litig.*, No. M 21-95, MDL No. 1409, 2010 WL 1253741, at *2 (S.D.N.Y. Mar. 5, 2010).   Federal courts across the country have construed the definition of "costs on appeal" broadly and have required appellants to post substantial bonds or other security to prosecute appeals where, as here, a fee shifting statute underlies the litigation,[11] final judgment is stayed or enjoined, or where the appeal is without merit.   As described above, HIFF's argument – in  essence, unchanged from its prior redundant proceedings in various courts – has already been held to be without merit.   Simply put, vexatious litigation of this sort causes harm the judicial process by unnecessarily burdening the Court and it causes the *Cobell* classes

---

[11]  The Supreme Court has stated "the specific purpose of the EAJA is to eliminate for the average person the financial disincentive to challenge unreasonable governmental actions." *Commissioner v. Jean*, 496 U. S. 154, 163 (1990); *see also Scarborough v. Principi*, 541 U. S. 401, 406 (2004) (by "expressly authoriz[ing] attorney's fee awards against the Federal Government," Congress sought "'to eliminate the barriers that prohibit small businesses and individuals from securing vindication of their rights in civil actions and administrative proceedings brought by or against the Federal Government'" (quoting H. R. Rep. No. 96–1005, p. 9 (1979))); *Sullivan v. Hudson*, 490 U. S. 877, 883 (1989) (the EAJA was designed to address the problem that "'[f]or many citizens, the costs of securing vindication of their rights and the inability to recover attorney fees preclude resort to the adjudicatory process.'" (quoting S. Rep. No. 96–253, p. 5 (1979))).

substantial financial harm and unquantifiable damage due to delay.  An adequate appeal bond is warranted.

A.    Rudimentary Costs of an Appeal

Some courts have looked to FRAP 39 to inform the meaning of "costs"[12] under Rule 7. Although no express or implicit linkage between Rules 7 and 39 exists, courts have used Rule 39 to aid in their calculation of costs.  This Circuit and others have determined that Rule 39 costs include, at a minimum, the rudimentary costs of the appeal: photocopying, binding briefs, preparing the appendix, and other similar expenses.  Plaintiffs estimate the costs of photocopying and binding alone amount to $34,458.47.  Declaration 1 of Shawn R. Chick ¶ 3.  Since these costs are taxable under Rule 39, they are properly included in a Rule 7 bond.  No court states otherwise and many courts do not limit Rule 7 bonds to these nuts-and-bolts costs.

Rule 39(e)(1) provides for the "the **preparation** and transmission of the record" as a cost on appeal taxable in this Court.  Fed. R. App. Proc. 39(e)(1) (emphasis added).  Preparation of the record necessarily includes the professional time of lawyers and paralegals.  *See, e.g., McCormick v. Astrue*, 2010 WL 1961211, *2 (E.D. Wis. 2010) ("It is expected that counsel carefully review all materials in the record in preparation for litigation."); *Gardner v. Social Sec. Admin.*, 2001 WL 1537722 (E.D. La. 2001) (holding that review of the record was appropriate basis for seeking attorneys' fees).  Where, as here, the record of the litigation is extensive and complicated and much of it is under seal, the professional time that is required to prepare a relevant record to ensure compliance with protective orders will be substantial and necessarily

---

[12] "Cost" is defined as "1b…whatever must be given, sacrificed, suffered, or forgone to secure a benefit or accomplish a result."  Webster Third New International Dictionary 515 (2002). Black's Law Dictionary defines "cost" as "1. [t]he amount paid or charged for something; price or expenditure. Cf. expense."  Black's Law Dictionary 371 (8th ed. 2004).

includes attorney and paralegal time. *Id.* A prepared record does not simply spring into existence and includes the professional time necessary for its preparation.

      B.    <u>Attorneys' Time and Charges</u>

      In this Circuit and in a majority of courts, professional time is a "cost" that is included in the fair calculation of a bond that an appellant must post under Rule 7, where, as here, a statute underlying this litigation provides for the recovery of attorneys' fees as allowed by a fee shifting statute. *See, e.g., Montgomery & Associates, Inc. v. Commodity Futures Trading Com'n*, 816 F.2d 783 (D.C. Cir. 1987) (finding attorneys' fees available for appeal bond because they are available in underlying statute); *Adsani v. Miller*, 139 F.3d 67 (2nd Cir. 1998) (finding attorneys' fees available for appeal bond because available in underlying statute, Copyright Act); *In re Cardizem CD Antitrust Litig.*, 391 F.3d 812 (6th Cir. 2004) (finding attorneys' fees available for appeal bond because they are available in underlying statute under Tennessee Code); *International Floor Crafts, Inc. v. Dziemit*, --- F.3d ----, 2011 WL 1519113, *5 (1st Cir. 2011) (holding attorneys' fees includable in an appeal bond based on underlying fee-shifting statute).

      The majority rule among jurisdictions is that attorneys' fees should be included in an appeal bond where the litigation involves an underlying statute with a fee-shifting provision. *See e.g., International Floor Crafts, Inc. v. Dziemit*, 2011 WL 1519113 at *5 (holding "we endorse the majority view that a Rule 7 bond may include appellate attorneys' fees if the applicable statute underlying the litigation contains a fee-shifting provision"). The Equal Access to Justice Act is one among many statutes that underlie this litigation, therefore, warranting the inclusion of attorneys' fees in the appeal bond amount. 28 U.S.C. § 2412(b). Section 2412(b) provides "a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party." *Id.* Indeed, plaintiffs have

recovered attorneys' fees in this litigation under that Act.  *Cobell v. Norton*, 407 F.Supp.2d 140 (D.D.C. 2005).

HIFF's appeal challenges the very existence of the Settlement and its arguments seek to unravel a congressionally ratified, confirmed, and authorized settlement.  Such an appeal requires extensive attorney time especially, where, as here the validity of the Settlement itself — and justice to 500,000 individual Indian trust beneficiaries — hangs in the balance.  The ten interlocutory appeals in this case provide some guidance into the amount of time previously spent on appeals in this case.  However, the present appeal is the remaining barrier to closing the book on this litigation and Class Counsel must do everything possible to address HIFF's legal arguments and support their defense with record evidence.  Such time includes combing through this case's voluminous record and marshaling the legal principles established by this Court and confirmed by the Circuit in this litigation.

A review of the five most recent appeals indicates that plaintiffs' counsel expended an average of 4,010.78 professional hours.  Declaration 2 of David C. Smith, ¶ 3.  Based on the average number of hours expended in prior appeals and current professional rates, professional time for the instant appeal will cost approximately $2,526,981.46.  Smith Decl. at ¶ 4.  An appeal bond amount including these fees is justified in light of the EAJA fee-shifting provision and the meritless nature of HIFF's appeal.

C.     Damages to the Class Members Caused by Delay of Settlement

In the class action context, courts have protected class members from the delay caused by appeals by requiring bonds to be posted that include post-judgment interest on the settlement amount as well as all other costs incurred by appellees in connection with the appeal "to cover the damages, costs and interest that the entire class will lose as a result of the appeal."

*Allapattah Services, Inc. v. Exxon Corp.*, 2006 WL 1132371, *18 (S.D. Fla. Apr.7, 2006) (requiring objector to post an appeal bond in the amount of $13.5 million).  Federal Appellate Rule of Procedure Rule 37, which has no corresponding local circuit rule, provides that upon an unsuccessful appeal of a money judgment in a civil case "whatever interest is allowed by law is payable from the date when the district court's judgment was entered."  Fed. R. App. Proc. 37(a).  Section 1961(a) provides that "interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."  28 U.S.C. § 1961(a).

Inclusion of post-judgment interest is proper since the primary purpose of such interest is to compensate a successful plaintiff for the time between her entitlement to damages and the actual payment of those damages.  *Bailey v. Chattem, Inc.*, 838 F.2d 149, 152 (6th Cir. 1988); *Weitz Co., Inc. v. Mo-Kan Carpet, Inc.*, 723 F.2d 1382, 1386-87 (3rd Cir. 1983).  Including post-judgment interest in the amount of an appeal bond is even more appropriate in the class action context by creating an incentive for putative appellants to file *only* meritorious and meaningful appeals.  *Bailey v. Chattem, Inc.*, 838 F.2d at 152.  Of course, plaintiffs cannot emphasize this point greatly enough.  HIFF has had its day in court – many times. It always has lost and should not be allowed to exploit this settlement in order to reassert meritless claims that further delay justice to 500,000 individual Indians.  The delay in distribution of the $1.5 billion to class members directly results in lost interest to class members, thereby justifying its inclusion in any appeal bond calculation.  Under the statutory framework set forth in § 1961, lost interest amounts

to $3,150,000.00.[13]  *See Compass Bank v. Villarreal*, Slip Copy, 2011 WL 3515913, *7 (S.D. Tex. 2011).

In addition to lost interest, class members suffer additional financial harm as a result of the increased cost of settlement administration, which averages more than $300,000 per month. Each month that settlement is delayed will reduce the settlement funds that are available for distribution to class members.  In *In re Cardizem*, the Sixth Circuit included $123,429 in the appeal bond for "incremental administration costs" due to a projected six-month delay.  391 F.3d at 815.  A variety of other jurisdictions have held that these costs to the class are properly considered in calculating the appeal bond amount.  *See In re Compact Disc Minimum Advertised Price Antitrust Litig.*, No. MDL 1361, 2003 WL 22417252, at *1 (D.Me. Oct.7, 2003) (concluding that costs of delay or disruption of settlement may be included in a Rule 7 bond); *In re Pharmaceutical Industry Average Wholesale Price Litigation*, 520 F. Supp. 2d 274, (D.Mass. 2007) (imposing appeal bond of $61,000 for costs attributable to delay in distribution); *In re NASDAQ Market-Makers Antitrust Litigation*, 187 F.R.D. 124, 128-29 (S.D.N.Y. 1999) (imposing appeal bond of $101,500 for costs including damages resulting from the delay and/or disruption of settlement administration).  In *In re Wal-Mart Wage and Hour Employment Practices Litigation*, 2010 WL 786513, *2 (D.Nev. 2010), the district court imposed a $500,000 appeal bond and explained that the inclusion of lost interest and administrative delay costs were especially warranted where the appeal effects a stay of the judgment and costs to the class cannot be determined with complete precision.

---

[13] Pursuant to § 1961(a), the interest rate used in this calculation is 0.21, which is the weekly average 1-year constant maturity Treasury yield for the week ending on July 29, 2011—the week preceding the entry of the judgment.  This interest rate is applicable to the $1.512 billion distribution fund and is computed daily, and compounded annually to arrive at the lost interest figure.  A one-year delay means $3,150,000.00 in lost interest.  An 18-month delay means $4,728,307.50 in lost interest.  A two-year delay means $6,306,615.00 in lost interest.

The on-going cost of class communications for a very involved and informed class of hundreds of thousands of individual Indian trust beneficiaries is high.   Here, the claims administrator, Garden City Group ("GCG"), has estimated that 8,300 hours per month of the claims administrator staff time is required to handle and respond to trust beneficiary inquiries regarding the terms of settlement.   Declaration 3 of Jennifer M. Keough, ¶ 2.   The average cost per month is $295,000, which results in an estimated cost between $2,595,000 and $2,795,000 for a twelve month delay.   Keough Decl. at ¶ 2.[14]   Given the immediate negative reaction of class members to delay of the settlement, that number may be conservative.

## V.      Amount of the Bond

The delay to class members caused by a non-party movant-appellant who lacks standing will be very costly.   This is so because of the cost of preparing and compiling the record of this case (much of which is sealed, thereby requiring both a redacted and sealed version), the loss of post-judgment interest on $1.5 billion, increased attorney's fees and expenses, and increased administrative costs due to delay.

In its bench opinion, this Court acknowledged that *Allapattah* is comparable to *Cobell* in terms of the settlement amount, the difficulty and complexity of the litigation, and the contribution of the Class Representatives.   Here, too, the cost of HIFF's appeal to class members is millions of dollars.   Accordingly, *Allapattah* is a fair and appropriate standard for this Court to consider in its determination of the bond that HIFF must post.   For the reasons stated above, plaintiffs request that this Court order HIFF to post an appeal bond or other security in the amount of $8,306,439.93 to be calculated as follows: photocopying and binding costs

---

[14] In the event of an 18-month delay administrative costs are estimated to be between $3,765,000 – $3,965,000 while the costs of a 24-month delay would be between $4,935,000 – $5,135,000. Keough Decl. at ¶ 3.

$34,458.47; attorneys' and other professional time of $2,526,981.46 for preparation of the record, compilation of appendix, procedural motions, dispositive motions, oral argument preparation, and merits briefs; lost interest on the settlement amount $3,150,000.00; and increased cost of settlement administration $2,595,000.[15]

## CONCLUSION

Plaintiffs respectfully request that this Court order HIFF to post a bond in the amount of $8,306,439.93 to ensure plaintiffs recover promptly the costs they incur in connection with HIFF's appeal.

---

[15] *See* declarations of Shawn R. Chick, David C. Smith, and Jennifer M. Keough attached as Declarations 1, 2, and 3 respectively.

Respectfully submitted this 26rd day of August 2011.

/s/ Dennis M. Gingold
DENNIS M. GINGOLD
D.C. Bar No. 417748
607 14th Street, N.W.
9th Floor
Washington, D.C. 20005
(202) 824-1448

/s/ Keith M. Harper
KEITH M. HARPER
D.C. Bar No. 451956
MICHAEL ALEXANDER PEARL
D.C. Bar No. 987974
KILPATRICK TOWNSEND
STOCKTON, LLP
607 14th Street, N.W.
Washington, D.C. 20005
(202) 508-5844

WILLIAM E. DORRIS
Georgia Bar No. 225987
Admitted Pro Hac Vice
ELLIOTT LEVITAS
D.C. Bar No. 384758
KILPATRICK TOWNSEND
STOCKTON
1100 Peachtree Street
Suite 2800
Atlanta, Georgia 30309
404-815-6104

Attorneys for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Plaintiffs' Second Unopposed Motion for Appeal Bond Pursuant to Federal Rule of Appellate Procedure 7 was served on the following via facsimile, pursuant to agreement, on this day, August 26, 2011.

Earl Old Person (Pro se)
Blackfeet Tribe
P.O. Box 850
Browning, MT 59417
406.338.7530 (fax)

/s/ Geoffrey Rempel