# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELOUISE PEPION COBELL, *et al.*, | Case No. 1:96cv01285 (TFH) |
| Plaintiffs, | Case No. 11-5205 (D.C. Cir.) |
| vs. | |
| KEN SALAZAR, Secretary of the Interior, *et al.*, | |
| Defendants. | |
| KIMBERLY CRAVEN, | |
| Objector-Appellant. | |

## OPPOSITION OF KIMBERLY CRAVEN
## TO MOTION FOR APPEAL BOND

Theodore H. Frank (DC Bar. No. 450318)
CENTER FOR CLASS ACTION FAIRNESS LLC
1718 M Street NW, No. 236
Washington, DC 20036
Phone: (703) 203-3848
Email: tedfrank@gmail.com

Attorney for Kimberly Craven

# TABLE OF CONTENTS

TABLE OF CONTENTS........................................................................................ I

TABLE OF AUTHORITIES ..............................................................................II

INTRODUCTION...............................................................................................1

I.      The Court's Discretion in Awarding an Appeal Bond Is Limited. ...........................2

II.     Plaintiffs Wildly Exaggerate Their Expected Costs. ....................................4

III.    A Rule 7 Appeal Bond May Not Include Attorneys' Fees.........................................6

IV.     A Rule 7 Appeal Bond May Not Include Costs of Delay. ....................................10

V.      This Court Cannot Make a Finding That the Appeal Is Frivolous.........................13

VI.     This Appeal Is Brought in Good Faith: Neither Ms. Craven Nor Her Counsel Is a "Professional Objector." ...............................................................................15

VII.    Granting Plaintiffs' Motion Will Be Counterproductive to Their Purported Goals of Preventing Delay. ....................................................................................18

CONCLUSION....................................................................................................23

PROOF OF SERVICE.........................................................................................24

# TABLE OF AUTHORITIES

*Adsani v. Miller,*
    139 F.3d 67 (2nd Cir. 1998) ...................................................................................8

*Allapattah Services, Inc. v. Exxon Corp.,*
    2006 WL 1132371 (S.D. Fla. Apr. 7, 2006) ..............................................................12

\* *American Hosp. Ass'n v. Sullivan,*
    938 F.2d 216 (D.C. Cir. 1991).............................................................................8-9

*Azizian v. Federated Dep't Stores, Inc.,*
    499 F.3d 950 (9th Cir. 2007) .......................................................................9, 14-15

*Bailey v. Chattem, Inc.,*
    838 F.2d 149 (6th Cir. 1988) ...............................................................................12

*Clark v. Universal Builders, Inc.,*
    501 F.2d 324 (7th Cir. 1974) .................................................................................2

*Cobell v. Salazar,*
    573 F.3d 808 (D.C. Cir. 2009) ("*Cobell XXII*").....................................................4, 6

*Coppedge v. United States,*
    369 U.S. 438 (1962) ...........................................................................................2

*Devlin v. Scardelletti,*
    536 U.S. 1 (2002)..........................................................................................19-20

*Fleury v. Richemont North America, Inc.,*
    2008 WL 4680033 (N.D Cal. Oct. 21, 2008) ......................................................10-11

*Gottlieb v. Barry,*
    43 F.3d 474 (10th Cir. 1994) ...............................................................................17

*Hayhurst v. Calabrese,*
    1992 WL 118296 (D.D.C. 1992) .............................................................................4

*Hirschensohn v. Lawyers Title Ins. Corp.,*
    No. 96-7312, 1997 WL 307777 (3d Cir. June 10, 1997) .........................................9-10

\* *In re American Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*,
   695 F. Supp. 2d 157 (E.D. Pa. 2010) ....................................................................10-11

\* *In re American President Lines, Inc.*,
   779 F.2d 714 (D.C. Cir. 1985) ............................................................................... *passim*

*In re AOL Time Warner, Inc.*,
   2007 U.S. Dist. LEXIS 69510 (S.D.N.Y. Sept. 19, 2007).............................................11

*In re Bluetooth Headset Prod. Liab. Litig.*,
   --- F.3d ----, No. 09-56683 (9th Cir. Aug. 19, 2011)...............................................13-14

*In re Cardizem CD Antitrust Litig.*,
   391 F.3d 812 (6th Cir. 2004) .......................................................................................8

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
   No. MDL 1361, 2003 WL 22417252 (D. Me. Oct. 7, 2003)........................................12

*In re Currency Conversion Fee Antitrust Litig.*,
   2010 U.S. Dist. LEXIS 27605 (S.D.N.Y. Mar. 5, 2010) ..............................................11

*In re Dept. of VA Data Theft Litig.*,
   Misc. Action No. 06-0506 (JR) MDL Docket No. 1796 (D.D.C.) ..............................4

*In re NASDAQ Market-Makers Antitrust Litig.*,
   187 F.R.D. 124 (S.D.N.Y. 1999)..................................................................................12

*In re Pharmaceutical Industry Average Wholesale Price Litig.*,
   520 F. Supp. 2d 274 (D. Mass. 2007) ........................................................................12

*In re Vasseli*,
   5 F.3d 351 (9th Cir. 1993)..........................................................................................14

*In re Wal-Mart Wage and Hour Employment Practices Litig.*,
   2010 WL 786513 (D. Nev. 2010) ................................................................... 12, 13, 20

*In re Wal-Mart Wage & Hour Empl. Practices Litig.*,
   No. 09-17648 (9th Cir. Aug. 10, 2010)........................................................................20

*In re Wal-Mart Wage & Hour Empl. Practices Litig.*,
   No. 10-15516, Dkt. No. 11 (9th Cir. Jun. 3, 2010)................................................12, 20

*Independent Fed'n of Flight Attendants v. Zipes,*
      491 U.S. 754 (1989) .................................................................................8

*International Floor Crafts, Inc. v. Dziemit,*
      --- F.3d ----, 2011 WL 1519113 (1st Cir. 2011) ...........................................8

*Lindsey v. Normet,*
      405 U.S. 56 (1972) ...............................................................................17-18

*Lonardo v. Travelers Indem. Co.,*
      706 F. Supp. 2d 766 (N.D. Ohio 2010) ................................................16-17

*Manion v. American Airlines, Inc.,*
      395 F.3d 428 (D.C. Cir. 2004) ................................................................7

*Montgomery & Assoc. v. CFTC,*
      816 F.2d 783 (D.C. Cir. 1987) .............................................................6-7

*\* Nepera Chemical, Inc. v. Sea-Land Service, Inc.,*
      794 F.2d 688 (D.C. Cir. 1986) ................................................................9

*New Hampshire v. Maine,*
      532 U.S. 742 (2001) .............................................................................18

*North Carolina v. Pearce,*
      395 U.S. 711 (1969) ...............................................................................2

*R.A.V. v. St. Paul,*
      505 U.S. 377 (1992) .............................................................................17

*Reynolds v. Beneficial Nat. Bank,*
      288 F.3d 277 (7th Cir. 2002) ..................................................................17

*Shady Grove Orthopedic Assoc. v. Allstate Ins.,*
      130 S. Ct. 1431 (2010) ...........................................................................8

*United States v. 103 Electronic Gambling Devices,*
      223 F.3d 1091 (9th Cir. 2000) ...............................................................14

*United States v. 162 MegaMania Gambling Devices,*
      231 F.3d 713 (10th Cir. 2000) ...............................................................14

* *Vaughn v. Am. Honda Motor Co.,*
    507 F.3d 295 (5th Cir. 2007) ................................................................ 9-11, 14

*Wal-Mart Stores, Inc. v. Dukes,*
    131 S. Ct. 2541 (June 20, 2011) ............................................................... 10, 13

*Young v. New Process Steel, LP,*
    419 F.3d 1201 (11th Cir. 2005) (*en banc*) ..........................................................9

## STATUTES AND FEDERAL RULES

7 U.S.C. § 18(e) ..............................................................................................7

15 U.S.C. § 15 ................................................................................................9

28 U.S.C. § 1927 ............................................................................................2

28 U.S.C. § 2412(b) ......................................................................................7-8

D.C. Cir. R. 30(b) ..........................................................................................5

D.C. Cir. R. 31(b) ..........................................................................................6

D.C. Cir. R. 39 ............................................................................................1, 7

D.C. Cir. R. 39(a) ..........................................................................................6

* D.C. Cir. R. 39(b) ......................................................................................3, 6

* Fed. R. App. P. 7 ..............................................................................2-3, 6-10, 15

Fed. R. App. P. 8 ........................................................................................3, 10

Fed. R. App. P. 24 ..........................................................................................1

Fed. R. App. P. 24(a) .....................................................................................18

Fed. R. App. P. 30(a)(1) ...................................................................................5

Fed. R. App. P. 30(b)(2) ...................................................................................5

Fed. R. App. P. 38 ......................................................................................13, 15

* Fed. R. App. P. 39 ..................................................................................... 2-3, 6-7

Fed. R. Civ. Proc. 62(d) ....................................................................................... 10

## OTHER AUTHORITIES

AMERICAN LAW INSTITUTE,
     PRINCIPLES OF THE LAW OF AGGREGATE LITIG. § 3.05 *comment* a (2010)..............15-16

Beck, Susan,
     "Man on a Class Action Mission," THE AM. LAWYER (May 2011)..........................16

* Brunet, Edward,
     *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors*,
     2003 U. CHI. LEGAL F. 403 ..................................................................................15-16

Fitzpatrick, Brian T.,
     *The End of Objector Blackmail?*, 62 VAND. L. REV. 1623 (2009) ......................15-16, 20

Freddoso, David,
     "Days numbered for trial lawyers getting outrageous paydays,"
     WASH. EXAMINER (Aug. 24, 2011) ............................................................................16

Torre, Karen Lee,
     "Challenging *Cy Pres* Scams," CONN. L. TRIB. (Nov. 22, 2010)...............................16

Zahorsky, Rachel M.,
     "Unsettling Advocate," ABA J. (Apr. 2010) ...........................................................16

# INTRODUCTION

Plaintiffs request relief that is barred by the D.C. Circuit local rules, Supreme Court precedent, and D.C. Circuit precedent—but, for some reason, fail to bring any of these binding adverse rules or precedents to the attention of this Court. *In re American President Lines, Inc.*, 779 F.2d 714 (D.C. Cir. 1985); D.C. Cir. R. 39. Plaintiffs further submit misleading declarations that wildly exaggerate their costs of this appeal. And, even for the outlier cases they cite from other circuits, plaintiffs ignore that the vast majority of those cases imposed large appeal bonds because of factual findings that the appeals were frivolous appeals brought in bad faith to extort the appellees—a claim that plaintiffs insinuate here through an omission in material they quote that changes its meaning 180 degrees, but know to be false and do not actually make.

Ironically, granting the plaintiffs' requested relief would cause the very delay that they claim to seek to avoid. If this court ignores binding precedent and grants the motion for a punitive appeal bond, the resolution of the appeal will be delayed while the parties litigate the collateral issue of the permissibility of a punitive appeal bond for a good-faith appeal. Moreover, any substantial appeal bond would entitle Ms. Craven to proceed *in forma pauperis* under Fed. R. App. Proc. 24. The real purpose of this motion is to increase Ms. Craven's *pro bono* counsel's costs, and to create procedural obstacles to a potentially meritorious appeal.

There is no legal or factual basis for an appeal bond greater than $1,000, but the Court should deny the requested relief entirely as a sanction for a motion brought in bad faith, and consider further sanctions against plaintiffs under 28 U.S.C. § 1927.

## I.     The Court's Discretion in Awarding an Appeal Bond Is Limited.

Notably, not once do the plaintiffs mention the D.C. Circuit case that provides the standard for granting an appeal bond under Fed. R. App. Proc. 7. Contrary to plaintiffs' claims, appeals possessing merit are a matter of right. *In re American President Lines, Inc.*, 779 F.2d 714, 718 (D.C. Cir. 1985) (*citing Coppedge v. United States,* 369 U.S. 438, 441-442 (1962)). "Courts accordingly must be wary of orders, even those well-meaning, that might impermissibly encumber that right." *Id.* (*citing North Carolina v. Pearce,* 395 U.S. 711, 724 (1969) ("[a] court is without right to ... put a price on an appeal. A defendant's exercise of a right of appeal must be free and unfettered" (internal quotation and citation omitted)). *Accord Clark v. Universal Builders, Inc.*, 501 F.2d 324, 341 (7th Cir. 1974) ("any attempt by a court at preventing an appeal is unwarranted and cannot be tolerated").

In this Circuit, the district court does ***not*** have any "inherent or rule-based power" to impose an appeal bond beyond "security for payment of costs on appeal." *American President Lines,* 779 F.2d at 716, 718-19. Moreover, the "costs referred to [in Rule 7] are simply those that may be taxed against an unsuccessful litigant under Federal Appellate Rule 39, and do not include attorneys' fees that may be assessed on appeal."

*American President Lines,* 779 F.2d at 716. *Compare* Motion at 13 (falsely stating that "no express or implicit linkage between Rules 7 and 39 exists"). Yet the plaintiffs mislead this Court by asking this Court to look at the dictionary instead of the D.C. Circuit precedent and rules for determining what constitutes "costs." Motion at 13 n. 13.

Nor do "taxable costs" include costs of delay. While the plaintiffs claim they are seeking an appeal bond, what they are really seeking is a *supersedeas* bond under Fed. R. App. Proc. 8: a bond for the costs of delay. Motion at 16-18. The difference between a *supersedeas* bond and an appeal bond is important: an appeal bond is a precondition for appeal, while an appellant can choose to forgo paying a *supersedeas* bond. *American President Lines,* 779 F.2d at 717-18. But there is no question that the requirements for Fed. R. App. Proc. 8 are not met, because Ms. Craven has not sought a stay of this Court's ruling. Fed. R. App. Proc. 7 does not give a district court authority to write Fed. R. App. Proc. 8 out of the rules of federal procedure and require a bond for costs of delay as a precondition for appeal. *American President Lines,* 779 F.2d at 718-19.

Nor do plaintiffs mention D.C. Cir. R. 39(b), which limits costs to those listed on the D.C. Circuit Bill of Costs Worksheet (attached as Exhibit 1).

The reason the plaintiffs fail to identify this binding precedent is obvious: *American President Lines* demonstrates that they are simply not entitled to the relief they

request. For all of plaintiffs' threats of seeking sanctions for a frivolous appeal, it is the

plaintiffs who have made a frivolous legal argument meriting sanctions.[1]

## II.   Plaintiffs Wildly Exaggerate Their Expected Costs.

Plaintiffs' basis for calculating their costs is the costs of their appeal in *Cobell v.*

*Salazar*, 573 F.3d 808 (D.C. Cir. 2009) ("*Cobell XXII*"). *See* Chick Decl. But those costs are

not indicative of their costs in *this* appeal, and provide no grounds for a grant of an

appeal bond.

*First*, the plaintiffs were *appellants* in *Cobell XXII*, while they are *appellees* here. An

appellant files an opening brief and a reply brief; an appellee files a single response

brief. More importantly, the plaintiffs fail to mention Fed. R. App. P. 30(a)(1)

---

[1] It is beyond belief that plaintiffs were unaware of *In re American President Lines*. It is discussed in detail by several of the cases that plaintiffs do cite, as well as by Ms. Craven's counsel's brief successfully opposing an illegal appeal bond in Missouri, which counsel for plaintiffs indicated to Ms. Craven's counsel his attorneys had read. Declaration of Theodore H. Frank ¶¶ 23-25. Plaintiffs also err by falsely calling their motion "unopposed." Ms. Craven, the target of the motion, quite plainly opposes it, and plaintiffs' counsel was informed of such on August 19, 2011. Frank Decl. ¶ 24.

The other cases plaintiffs cite from this district are not persuasive. Plaintiffs rely on *Hayhurst v. Calabrese*, 1992 WL 118296, *1 (D.D.C. 1992), but that case refused to issue an appeal bond. The unreported decision in *In re Dept. of VA Data Theft Litig.* issued a $212,000 appeal bond in a one-sentence order that did not mention *American President Lines,* and cannot be considered persuasive authority. Misc. Action No. 06-0506 (JR) MDL Docket No. 1796 (D.D.C.). Moreover, the appeal in *VA Data Theft* was indisputably frivolous: the appellant was not a member of the class and did not have standing to appeal. *Id.* No one makes that claim with Ms. Craven. That said, *VA Data Theft* was incorrectly decided: *American President Lines* establishes that the correct procedure was an appellate motion to dismiss the appeal, rather than to issue a punitive appeal bond.

---

and 30(b)(2): the preparation of and costs of the appendix are the responsibility of the *appellant*, not the appellee, and the plaintiffs will not incur any taxable costs regarding including necessary materials in the appendix.

*Second*, *Cobell XXII* was an appeal of a lengthy *trial*. Ms. Craven's appeal is of a ruling relating to a one-day fairness hearing, and is restricted to questions of law and the application of law to fact. Ms. Craven is not challenging the adequacy of the notice on appeal. With rare exceptions, the only materials required by the appendix are those required by Fed. R. App. P. 30(a)(1): the settlement and its amendments, the Court's relevant rulings, and part of the transcript from the fairness hearing. The appendix will surely be less than 2000 pages. Declaration of Theodore H. Frank ¶¶ 15-18. It would be the subject of sanctions if the plaintiffs took any steps to make the appendix longer: "Counsel must not, however, burden the appendix with material of excessive length or items that do not bear directly on the issues raised on appeal. Costs will not be awarded for unnecessary reproduction of items such as discovery materials, memoranda, pretrial briefs, or interlocutory motions or rulings that lack direct relevance to the appeal; appropriate sanctions will be imposed, after notice and opportunity to respond, if the court finds counsel to have been unreasonable in including such material." D.C. Cir. R. 30(b). For the same reason, the appendix will certainly not include sealed materials: this Court's decision did not mention any sealed materials, and Ms. Craven had no access to the sealed materials in making her objection.

The only taxable costs the appellees will incur are those for preparing thirteen copies of a response brief. D.C. Cir. R. 31(b), 39(a), 39(b). Even generously assuming that such a brief will be 100 pages long, those costs are $13.58 per brief, or under $200. *See* D.C. Circuit Bill of Costs Information (Sep. 21, 2010) (attached as Exhibit 2); Frank Decl. ¶ 16. The Chick Declaration does not contradict this: it is simply based on the false premise that the costs of appeal for *Cobell XXII* have anything to do with the costs of appeal for an appellee in this case. They do not. The failure of the plaintiffs to produce any competent evidence about their actual recoverable taxable costs under Fed. R. App. P. 39 in *this appeal* precludes the Court from issuing an appeal bond. *American President Lines, supra* (appeal bond can only be based on demonstrable actual taxable costs on appeal).

## III.    A Rule 7 Appeal Bond May Not Include Attorneys' Fees.

Plaintiffs claim that D.C. Circuit law permits the inclusion of attorneys' fees in an appeal bond or as appellate costs when the underlying statute is fee-shifting. This is absolutely false. Even if the plaintiffs had gotten D.C. Circuit law right (they have not), the fee-shifting statute at issue here does not apply to Ms. Craven.

*First, American President Lines* explicitly forbids the collection of attorneys' fees as a taxable cost under Rule 7 or 39. 779 F.2d at 716. *Montgomery & Assoc. v. CFTC*, cited by the plaintiffs, is not to the contrary: *Montgomery* had nothing to do with an appeal

bond,[2] but, rather, discussed (and rejected) the possible award of fees against the CFTC

pursuant to a different statute not applicable here, 7 U.S.C. § 18(e). 816 F.2d 783, 784

(D.C. Cir. 1987). Section 18(e) is materially different than 28 U.S.C. § 2412(b), which

plaintiffs rely on: an award of fees under § 2412(b) is "*in addition to* costs" (emphasis

added), while *Montgomery*'s holding was based on 7 U.S.C. § 18(e)'s language that if "If

the appellee prevails, he shall be allowed a reasonable attorney's fee to be taxed and

collected *as a part of his* costs" (emphasis added). 816 F.2d at 784. *Montgomery* does not

help plaintiffs here. *See also Manion v. American Airlines, Inc.*, 395 F.3d 428, 433-34 (D.C.

Cir. 2004) (district court has no authority to award fees for an appeal under 28 U.S.C.

§ 1927, even when appeal frivolous).

     *Second*, Rule 39 costs in the D.C. Circuit do not include *attorney time* for preparing

the record. The cost of "preparation" in the D.C. Circuit is solely the cost of binding and

producing front and back covers. Plaintiffs fail to mention D.C. Cir. R. 39, which

delineates what may be recovered for "preparation and compilation of the appendix."

*Accord* D.C. Circuit Bill of Costs Worksheet (attached as Exhibit 1).

     *Third*, the Equal Access to Justice Act is not a statute that permits fee-shifting by

non-governmental parties against intervening or objecting non-governmental parties.

---

[2] Plaintiffs' parenthetical claiming the case held "attorneys' fees available for appeal bond because they are available in underlying statute" is simply false. Fed. R. App. P. 7 and the word "bond" are both entirely absent from the D.C. Circuit opinion. The parenthetical is sanctionable misrepresentation.

Fee-shifting is simply not permitted against a third party that has not been found to violate the law in the absence of a finding that the intervention or appeal is "frivolous, unreasonable or without foundation." *Independent Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754 (1989) (fee-shifting under Title VII). Plaintiffs fail to mention this binding Supreme Court precedent. The only appellate case[3] that plaintiffs cite in support of the proposition that it is permissible to award fees against third parties because of a fee-shifting statute failed to address *Zipes* or the fact that the Supreme Court has held that a departure from the "American Rule" is not permissible against third parties who intervene or appeal in good faith in the absence of express statutory authority to the contrary.

*Fourth*, even if Section 2412(b) did permit fee-shifting against third parties, it only applies "to the same extent that any other party would be liable under the common law." There is no reason to believe that Ms. Craven would be liable under the common law for her appeal, which requires that a party's position be in "bad faith" before fee-

---

[3] *In re Cardizem CD Antitrust Litig.*, 391 F.3d 812 (6th Cir. 2004). The plaintiffs also cite *International Floor Crafts, Inc. v. Dziemit*, --- F.3d ----, 2011 WL 1519113 (1st Cir. 2011), and *Adsani v. Miller*, 139 F.3d 67 (2nd Cir. 1998), but these involved fee-shifting against a losing defendant or plaintiff, not against a third party, and do not apply here. Moreover, *Cardizem*, which relies on Tennessee state law to determine the scope of Fed. R. App. P. 7, has been superseded by *Shady Grove Orthopedic Assoc. v. Allstate Ins.*, 130 S. Ct. 1431 (2010), and cannot be considered good law. Even *Adsani* does not help plaintiffs: it requires a district-court finding that the appeal is meritless before including fees as part of appellate costs, and the D.C. Circuit forbids district courts from making that determination. *American Presidential Lines*, 779 F.2d at 717.

shifting. *American Hosp. Ass'n v. Sullivan*, 938 F.2d 216, 219-20 (D.C. Cir. 1991). Bad faith awards are made "only in extraordinary circumstances and for dominating reasons of fairness." *Nepera Chemical, Inc. v. Sea-Land Service, Inc.*, 794 F.2d 688, 702 (D.C. Cir. 1986). Plaintiffs have failed to cite this binding D.C. Circuit precedent. Little wonder: plaintiffs have made no showing of bad faith, nor can they. Ms. Craven's arguments are supported by law, and Ms. Craven and her counsel believe in good faith that her arguments are meritorious. Frank Decl. ¶¶ 4-11.

The D.C. Circuit is not an outlier in this regard. The majority of appellate courts agree that Fed. R. App. P. 7 does not include attorneys' fees, even when there is a fee-shifting statute. *Vaughn v. American Honda Motor Co., Inc.*, 507 F.3d 295 (5th Cir. 2007); *Azizian v. Federated Dept. Stores, Inc.*, 499 F.3d 950, 959-60 (9th Cir. 2007) ("a district court can order only a losing defendant-the party that has violated antitrust laws-to pay attorney's fees under Section 4 [of the Clayton Act, 15 U.S.C. § 15].... Ordering one class member to pay other class members' appellate attorney's fees because of a disagreement about the propriety of settlement would not serve the purpose of Section 4 to penalize and deter those who have violated the antitrust laws."); *Young v. New Process Steel, LP*, 419 F.3d 1201 (11th Cir. 2005) (*en banc*) (appeal must be frivolous to require attorneys' fees bond, even though case is Title VII fee-shifting case); *Hirschensohn v. Lawyers Title Ins. Corp.*, No. 96-7312, 1997 WL 307777 at *3 (3d Cir. June

10, 1997) ("[W]e conclude that Rule 7 does not authorize a bond to cover estimated costs of attorneys' fees.").[4]

## IV.     A Rule 7 Appeal Bond May Not Include Costs of Delay.

The plaintiffs' motion references the alleged cost to the class of the delays of an appeal.  Motion at 4-5, 8, 16-18. But this allegation demonstrates that what plaintiffs are really seeking is a *supersedeas* bond. They perhaps are misnaming it an appeal bond because they realize that they have zero chance of obtaining a *supersedeas* bond under Fed. R. App. Proc. 8 or Fed. R. Civ. Proc. 62(d). *American Presidential Lines*, 779 F.2d at 717-18; *Vaughn v. Am. Honda Motor Co.*, 507 F.3d 295 (5th Cir. 2007).

Ms. Craven has not sought any stay of judgment, so this court is without authority to issue a *supersedeas* bond. *American Presidential Lines*, 779 F.2d at 717-18; *see generally In re American Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 695 F. Supp. 2d 157, 162 (E.D. Pa. 2010) (citing cases where *supersedeas* bond for appellant-objectors denied); *see also Fleury v. Richemont North America, Inc.*, 2008 WL 4680033 at *7

---

[4] Furthermore, plaintiffs exaggerate their anticipated fees. Unlike the previous *Cobell* appeals, this appeal involves questions of law. The issues have already been mostly researched and briefed, with the significant exception of the application of *Wal-Mart Stores, Inc. v. Dukes* to this case. Unless plaintiffs continue to engage in collateral litigation unrelated to the merits of the appeal, Ms. Craven's attorneys are unlikely to spend more than 600 hours on this appeal—and the plaintiffs, as appellees, will be filing one brief, not two. Frank Decl. ¶ 14. If class counsel bills $2.3 million of time on the merits of this appeal, they will be wildly and unethically overbilling their clients. One suspects that this frivolous motion for an appeal bond is makework to justify a higher supplemental fee request. Docket No. 3664-1 at ¶ 5.

(N.D Cal. Oct. 21, 2008) (cost of delay not appropriately part of appeal bond); *In re AOL Time Warner, Inc.*, 2007 U.S. Dist. LEXIS 69510, *12 (S.D.N.Y. Sept. 19, 2007) (same) (cited by plaintiffs); *In re Currency Conversion Fee Antitrust Litig.*, 2010 U.S. Dist. LEXIS 27605 at *9 (S.D.N.Y. Mar. 5, 2010) (same) (cited by plaintiffs). If claims are not being paid while appeals are pending, it is solely because the plaintiffs have agreed to that limitation in their class action settlement instead of insisting that class members be entitled to interest during a pending appeal. (The laws of economics teach us that the plaintiffs have already been compensated for that delay: if class counsel had insisted on post-judgment interest as a condition of the settlement, the United States surely would have reduced its settlement offer by the expected additional cost, given the virtual certainty of an appeal. *Cf. Vaughn*, 507 F.3d at 299.) Requiring objectors to pay for this delay "would be inappropriate because an objector has no obligation to ensure the availability of the judgment; the defendants, and not the objector, are charged with implementing the settlement." *American Investors Life*, 695 F. Supp. 2d at 162. Nor can this court issue an improper *supersedeas* bond in the proposed amount of $5,745,000 divorced from any actual appeal costs by incorrectly calling it an appeal bond. To do so would be reversible error. *American Presidential Lines*, 779 F.2d at 717-18; *Vaughn*, 507 F.3d 295.

Binding authority prohibits this Court from issuing an appeal bond for the supposed costs of delay, but even the non-binding cases plaintiffs cite are inapplicable

to the facts of this case. *Allapattah Services, Inc. v. Exxon Corp.*, 2006 WL 1132371 (S.D. Fla. Apr. 7, 2006); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, No. MDL 1361, 2003 WL 22417252 (D. Me. Oct. 7, 2003); *In re Pharmaceutical Industry Average Wholesale Price Litig.*, 520 F. Supp. 2d 274 (D. Mass. 2007); and *In re Wal-Mart Wage and Hour Employment Practices Litig.*, 2010 WL 786513 (D. Nev. 2010) are cases where the district court made a finding that the appeal was frivolous; for example, the *Pharmaceutical Indus.* objection was one line long.[5] The plaintiffs do not, and cannot, make that claim here. *In re Cardizem* similarly was based on an appellate finding that the appeal was meritless. *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 124 (S.D.N.Y. 1999) was a case where the objector was using the objection in bad faith to leverage unrelated claims against the attorneys; again, plaintiffs do not, and cannot, make such a claim here. *Bailey v. Chattem, Inc.*, 838 F.2d 149 (6th Cir. 1988), contrary to plaintiffs' claims, has nothing to do with objectors or appeal bonds.

The appeal bond cannot include the supposed $5,745,000 costs of delay.[6]

---

[5] Moreover, in *Wal-Mart Wage & Hour*, the Ninth Circuit, citing *Vaughn*, stayed the bond order and eventually dismissed the appeal over the bond order as moot. *In re Wal-Mart Wage & Hour Empl. Practices Litig.*, 10-15516, Dkt. No. 11 (9th Cir. Jun. 3, 2010). The appeal bond order there cannot be considered good law. Plaintiffs failed to mention that in their brief in citing *Wal-Mart Wage & Hour*.

[6] Moreover, the costs of administration could be substantially lowered if the settlement administrator took the virtually free step of including accurate information about the pending appeals on the settlement website. The reluctance of the class counsel to publicize Ms. Craven's arguments, causing numerous class members to contact the

## V.     This Court Cannot Make a Finding That the Appeal Is Frivolous.

The fact that plaintiffs are implausibly claiming that they will incur $2.3 million in attorneys' fees to respond to Ms. Craven's appeal should demonstrate that Ms. Craven's appeal is not frivolous. While plaintiffs express their intent to exercise their rights under Fed. R. App. P. 38, they never actually claim that Ms. Craven's arguments meet the high standard of "frivolousness." Ms. Craven filed her Statement of Issues for the appeal on August 22, 2011, before the motion for appeal bond was filed, but the plaintiffs make no effort to show that these issues are without merit, much less frivolous. Nor can they: Ms. Craven's appeal addresses, *inter alia*, issues explicitly left open by the Supreme Court in *Wal-Mart Stores Inc. v. Dukes*, such as whether constitutional due process permits monetary relief in a mandatory class action without an opt-out right. This question is not only not frivolous, but the Supreme Court held in *Dukes* that it has a "serious possibility" of being correct. 131 S. Ct. 2541, 2559 (2011). Ms. Craven's appeal raises several other issues that are not only not frivolous, but likely meritorious. Frank Decl. ¶¶ 6-12. Ms. Craven's counsel is not like the professional objectors in *Wal-Mart Wage & Hour* who had a history of filing "dilatory and frivolous appeals": the Center for Class Action Fairness recently won the first federal appeal it brought, and has never lost a federal appeal in its two-year history. *In re Bluetooth Headset Prod. Liab. Litig.*, --- F.3d ----,

---

settlement administrator (and Ms. Craven and Ms. Craven's counsel) to find out why Ms. Craven is appealing, is not grounds for imposing an appeal bond on Ms. Craven. Frank Decl. ¶ 19.

---

No. 09-56683 (9th Cir. Aug. 19, 2011).[7] The Center, a non-profit with limited resources, has no interest in wasting its attorneys' time on an appeal it does not believe it is likely to win. Frank Decl. ¶ 4.

Even if plaintiffs could somehow make the claim that the appeal is frivolous, however, the D.C. Circuit does not permit them to use the appeal bond process to address any alleged frivolousness:

> "[an appeal] bond fails as a legitimate means of protecting … against the possibility that [an] appeal might turn out to be frivolous. The traditional countermeasure for an appeal thought to be frivolous is a motion in the appellate court to dismiss, which is available at the outset of the appeal and before expenses thereon begin to mount. Additionally, a monetary remedy is afforded by Federal Appellate Rule 38, which authorizes an assessment of damages and single or double costs, including reasonable attorneys' fees, '[i]f [the] court of appeals shall determine that [the] appeal is frivolous.' It is, however, for the court of appeals, not the district court, to decide whether Rule 38 costs and damages should be allowed in any given case."

*American President Lines*, 779 F.2d at 717 (internal footnotes and citations omitted).

*Accord Vaughn*, 507 F.3d at 300; *In re Vasseli*, 5 F.3d 351, 353 (9th Cir. 1993); *Azizian*, 499 F.3d at 961 ("the question of whether, or how, to deter frivolous appeals is best left to

---

[7] Ms. Craven's counsel, Mr. Frank, is not only undefeated in federal class action objection appeals, but also undefeated in briefing and arguing federal appeals on behalf of the rights of Indians against the government. *United States v. 103 Electronic Gambling Devices*, 223 F.3d 1091 (9th Cir. 2000) (argued; primary author of brief) (first government appellate loss in history of the Johnson Act since its amendment in 1962); *United States v. 162 MegaMania Gambling Devices*, 231 F.3d 713 (10th Cir. 2000) (primary author of brief).

the courts of appeals, which may dispose of the appeal at the outset through a screening process, grant an appellee's motion to dismiss, or impose sanctions including attorney's fees under Rule 38."). The plaintiffs have made no attempt to dismiss Ms. Craven's appeal in the D.C. Circuit; nor can they, because the appeal is not frivolous, and very likely meritorious. The D.C. Circuit gives this Court no authority to determine otherwise and short-circuit the appellate process through the use of Fed. R. App. P. 7.

## VI.   This Appeal Is Brought in Good Faith: Neither Ms. Craven Nor Her Counsel Is a "Professional Objector."

Plaintiffs misrepresent the facts by calling Ms. Craven's non-profit counsel, the Center for Class Action Fairness LLC, a "professional objector" and implying that case law regarding professional objectors applies to Ms. Craven. This is wrong: a "professional objector" is a *for-profit* attorney who files objections to blackmail plaintiffs' attorneys for payment in exchange for withdrawing his or her objections. Edward Brunet, *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors*, 2003 U. CHI. LEGAL F. 403, 437 n. 150 (cited by plaintiffs[8]); Brian T. Fitzpatrick, *The End of*

---

[8] Plaintiffs incorrectly quote Brunet. Brunet says "I define 'professional objectors' in the normal sense of the term to be attorneys in private practice who have a specialty in filing objections in class action cases, usually after a proposed settlement has emerged, *and always to collect a fee. I exclude attorneys who sometimes are repeat players in the class action business who work for state attorneys general offices or public interest groups. The latter are unlikely to be extortionists and particularly unlikely to withdraw an objection in exchange for a privately negotiated fee.*" 2003 U. CHI. LEGAL F. at 437 n. 150 (emphasized language omitted twice by plaintiffs' brief). Brunet ultimately concludes that objectors, especially public-interest ones, can play a valuable

*Objector Blackmail?*, 62 VAND. L. REV. 1623 (2009); AMERICAN LAW INSTITUTE, PRINCIPLES OF THE LAW OF AGGREGATE LITIG. § 3.05 *comment* a (2010). But the Center is a non-profit that has **never** settled an objection for *quid pro quo* payment; moreover, plaintiffs knew or should have known this before making this outrageous false claim because long before the motion for appeal bond was filed, Mr. Frank informed plaintiffs' counsel that Ms. Craven was not interested in settling her appeal. Frank Decl. ¶¶ 5, 20, and 27; *cf. Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 807 (N.D. Ohio 2010) ("the Court is convinced that Mr. Frank's goals are policy-oriented as opposed to economic and self-serving"). Mr. Frank, who founded the Center, is a member of the American Law Institute; his *pro bono* work on behalf of class members has won national acclaim. *See, e.g.*, Rachel M. Zahorsky, "Unsettling Advocate," ABA J. (Apr. 2010); David Freddoso, "Days numbered for trial lawyers getting outrageous paydays," WASH. EXAMINER (Aug. 24, 2011); Karen Lee Torre, "Challenging *Cy Pres* Scams," CONN. L. TRIB. (Nov. 22, 2010). The Center does not bring bad-faith frivolous objections—as it is, with limited resources, it cannot bring many of the meritorious objections it wishes to bring. Susan Beck, "Man on a Class Action Mission," THE AM. LAWYER (May 2011); Frank Decl. ¶¶ 3-5.

---

role that courts should not deter. *Id.* at 471-74. Plaintiffs' misquote changes the meaning of the quote 180 degrees with respect to Ms. Craven's counsel, and should be sanctionable.

Moreover, Ms. Craven has no interest in settling for money: she firmly believes this settlement is illegal, and wishes to have an appellate ruling on the constitutional issues raised by this settlement. Both Ms. Craven and the Center are willing to stipulate to an injunction forbidding them from settling this objection for cash if there is any question in this Court's mind whether the Center is a "professional objector."[9] The entire factual premise underlying plaintiffs' motion and the cases they cite are simply inapplicable here.

Similarly, the fact that Ms. Craven exercised her First Amendment rights to speak out against the settlement does not preclude her from petitioning the courts. Plaintiffs' implicit argument that Ms. Craven's op-eds opposing the settlement should be grounds for imposing a punitive appeal bond has no precedent supporting it, and violates the First Amendment's prohibition against discriminating on the basis of viewpoint. *R.A.V. v. St. Paul*, 505 U.S. 377, 392 (1992); *see also Lindsey v. Normet,* 405 U.S. 56, 77 (1972)

---

[9] As further proof of the fact that the Center is objecting in the public interest rather than for self-serving profit, the Court should note that the Center did not seek attorneys' fees for its objection in this case, though the Center had a meritorious argument that the reduction of the fee and incentive request from $236 million to $101 million was a $135 million benefit to the class entitling it to a share of the attorneys' fees awarded to class counsel. *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 288 (7th Cir. 2002) (objectors' "lawyers who contribute materially to the proceeding" entitled to fee, even if judge would have *sua sponte* made same finding without objection); *Gottlieb v. Barry*, 43 F.3d 474, 491 (10th Cir. 1994) (error to deny fees to objector that benefited class); *Lonardo, supra* (awarding the Center attorneys' fees and the objector an incentive payment for their role in causing $2 million reduction in fee request).

("When an appeal is afforded, however, it cannot be granted to some litigants and capriciously or arbitrarily denied to others without violating the Equal Protection Clause.") (striking excessive appeal bond requirement as unconstitutional) (cited by plaintiffs for opposite proposition). If anything, Ms. Craven's activism demonstrates that her appeal is brought in good faith, and that she does not deserve the "professional objector" label plaintiffs falsely tar her with.

## VII.   Granting Plaintiffs' Motion Will Be Counterproductive to Their Purported Goal of Preventing Delay.

Granting plaintiffs' motion in full will not only be reversible error, but both ineffective and counterproductive. It should be patently obvious that Ms. Craven—who has credit card debt and a mortgage, works for a nonprofit, and is a single mother with an adopted Indian daughter—does not have the financial means to post a multi-million-dollar appeal bond. As such, if this Court imposes such a bond, she will simply file an application to proceed *in forma pauperis*, which either this Court or the D.C. Circuit will be obliged to grant, because the plaintiffs, by claiming their attorney expenses of defending the appeal will be in the millions of dollars, will be judicially estopped from claiming that Ms. Craven's appeal is frivolous. Fed. R. App. P. 24(a) (permitting party to proceed on appeal brought in good faith without giving security for fees and costs when unable to pay); *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001) (judicial estoppel).

Granting an excessive appeal bond for an objector on the supposition that the appeal is frivolous will create exactly the sort of multiple levels of review of an appeal that the Supreme Court rejected in *Devlin v. Scardelletti*, 536 U.S. 1 (2002). *Devlin* established the right of class action objectors to appeal without first seeking intervention. In doing so, the Supreme Court expressly rejected a formality which had been adopted by several circuits "to require class members to intervene for purposes of appeal." *Devlin*, 536 U.S. at 11. The court found no purpose to the formal barrier to appeal given "the ease with which nonnamed class members who have objected at the fairness hearing could intervene for purposes of appeal." *Id.* at 12.

The Supreme Court found the formal intervention rule impractical due to the numerous issues "which should be easily addressable by a court of appeals." *Id.* at 13. In the Court's view, requiring intervention would simply add a needless layer of complexity. The requirement to intervene required district courts to consider issues normally considered by the appellate court such as "standing to appeal, waiver of objections below, and consolidation of appeals." *Id.* at 14. Should parties be dissatisfied with the district court's decision on intervention, "such determinations still would most likely lead to an appeal." *Id.* Appellate courts would then consider precisely the same issues analyzed by the district court. Therefore, the formal intervention rule "would only add an additional layer of complexity before the appeal of the settlement approval may finally be heard." *Id.*

Similarly, punitive appellate bonds imposed to block supposedly vexatious appeals require district courts to consider issues (such as the frivolousness of an appeal) best suited to appellate courts. Should appellant-objectors be dissatisfied with their appeal bond, they can simply appeal the bond determination itself, adding another layer of complexity, which the *Devlin* court repudiated.

The ability of objectors to simply appeal bond determinations undermines their supposed use as an anti-extortion tool:

> But perhaps worst of all, large Rule 7 bonds may deter appeals only by class members who are not blackmail minded. Blackmail-minded objectors motivated only by delay might be able to cause that delay even in the face of Rule 7 bonds simply by appealing the orders requiring them to post the bonds at the same time they appeal the class action settlements!

Fitzpatrick, 62 VAND. L. REV. at 1656. This is not hypothetical: such tactics were employed in cases that the plaintiffs cite favorably.[10]

---

[10] Consider the legally dubious $500,000 bond ordered from objectors in *In re Wal-Mart Wage & Hour Empl. Practices Litig.*, 2010 WL 786513, 2010 U.S. Dist. LEXIS 21466 (D. Nev. Mar. 8, 2010).  Instead of discouraging meritless appeals, the bond order forced objectors to litigate the issue before the Ninth Circuit in a separate appeal.  The district court's order to require bond was eventually stayed pending resolution of the appeal. *See In re Wal-Mart Wage & Hour Empl. Practices Litig.*, 10-15516, Dkt. No. 11 (9th Cir. Jun. 3, 2010) (citing *Vaughn v. Am. Honda Motor Co.*, 507 F.3d 295 (5th Cir. 2007)).  The appeals on the underlying merits were eventually summarily dismissed by the Ninth Circuit. *In re Wal-Mart Wage & Hour Empl. Practices Litig.*, 09-17648, Dkt. No. 47 (9th Cir. Aug. 10, 2010). By requiring an appellate bond, the district court actually *multiplied* the number of appeals taken by allegedly vexatious objectors, when the issue could have been resolved with appellate motion practice. *Devlin* warns against such unnecessary complexity.

If plaintiffs were truly concerned about the risk of delay to the class from a frivolous appeal, they would have moved to dismiss the appeal in the D.C. Circuit instead of engaging in this collateral litigation with a motion for an appeal bond that would be reversible error for this Court to grant.[11]

## VIII.   Plaintiffs Likely Brought This Motion in Bad Faith.

Thus, it does not appear that the bond request was made in good faith. The plaintiffs have requested several elements of costs that the D.C. Circuit has expressly forbidden to be included in a bond request without any citation to that D.C. Circuit precedent and rules; have misquoted a number of citations; and have presented supporting affidavits that fail to acknowledge the difference between the costs of an appellant and of an appellee.

Any appeal bond will create the delay that the plaintiffs claim to be trying to prevent by forcing Ms. Craven to litigate the collateral issues of *in forma pauperis* and the legality of the appeal bond before she can litigate the merits. Ms. Craven will not

---

[11] If, notwithstanding the binding precedent prohibiting this Court from doing so, this Court grants the motion for an appeal bond. Ms. Craven requests, to minimize delay, that the resulting disruption to the appeal be minimized by an immediate decision on whether this Court will stay the appeal bond order until it is reviewed by the D.C. Circuit. Ms. Craven would seek D.C. Circuit review of any order setting an excessive appeal bond, and if this Court grants (or even denies) a stay immediately, it would save the class the time wasted from having the parties litigate this necessary intermediate step in the district court. A stay is appropriate given the almost certain result that the D.C. Circuit will declare a grant of this motion reversible error.

oppose a motion to expedite the appeal on a reasonable basis: she wants quick resolution of her appellate issues on the merits even more than the plaintiffs do. (Note that Ms. Craven did not wait the full sixty days to appeal, but appealed on the Saturday after the final judgment issued.) The plaintiffs are not bringing this motion because they believe Ms. Craven's appeal is frivolous; they are bringing this motion on the 1-in-a-1000 chance that a punitive appeal bond will prevent the D.C. Circuit from hearing a meritorious appeal.

Judging by the inefficiency with which the plaintiffs' attorneys have litigated the underlying class action, class counsel, in briefing their original motion papers and reply briefs on this motion, will surely expend more than $33,000 in lodestar hours. The motion is not made to ensure that that the plaintiffs recover their costs, but to create a barrier to a meritorious appeal and to create makework justifying a larger lodestar request later in the event that the D.C. Circuit affirms.

It is inappropriate for class counsel to run up expenses to the class and to Ms. Craven's *pro bono* counsel by making a meritless motion that misleads the Court by omitting the essential precedent. The Court should give appropriate consideration to sanctioning the plaintiffs. At a minimum, the Court should deny the motion and forbid class counsel from charging the class for the hours devoted to a motion designed to benefit class counsel, rather than their clients.

## CONCLUSION

The motion should be denied, and the Court should give appropriate consideration to sanctioning the plaintiffs for failing to cite to binding authority and for misquoting multiple citations. In no event should an appeal bond be issued in excess of $1,000.

Dated:  September 1, 2011

Respectfully submitted,

/s/ Theodore H. Frank
Theodore H. Frank (DC Bar No. 450318)
CENTER FOR
CLASS ACTION FAIRNESS LLC
1718 M Street NW, No. 236
Washington, DC 20036
Telephone:  (703) 203-3848
Email:  tfrank@gmail.com

Attorney for Kimberly Craven

**PROOF OF SERVICE**

I hereby certify that, on September 1, 2011, the foregoing **OPPOSITION OF KIMBERLY CRAVEN TO MOTION FOR APPEAL BOND** was served by Electronic Case Filing.

Executed on September 1, 2011.

/s/ *Theodore H. Frank*
Theodore H. Frank