IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELOUIS PEPION COBELL, *et al.*,<br><br>            Plaintiffs,<br><br>vs.<br><br>KEN SALAZAR, Secretary of the Interior, *et al.*,<br><br>            Defendants. | Case No: 1:96cv01285 (TFH)<br><br>Case No. 11-5205 (D.C. Cir.) |

### DECLARATION OF THEODORE H. FRANK
### IN OPPOSITION TO MOTION FOR APPEAL BOND

I, Theodore H. Frank, declare as follows:

    1.    I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

    2.    I am an attorney, and a member of the bar of the District of Columbia. I am an elected member of the American Law Institute. I am the founder of the non-profit Center for Class Action Fairness LLC ("the Center"), which represents Ms. Craven *pro bono* in this matter. The goal of the Center is to protect class members in the class action settlement process from abuse of the class action system.

**The Appeal Is Brought In Good Faith And Is Not Frivolous.**

    3.    The Center does not object indiscriminately. It evaluates many more settlements than it objects to, and regularly rejects inquiries where it does not feel it has a good chance of establishing precedent generally useful to class members in future litigation. Because of this, it has an excellent track record, winning millions of dollars for class members, having many more successful than ultimately unsuccessful objections,

and achieving a landmark decision last month in *In re Bluetooth Headset Prod. Liab. Litig.*, __ F.3d __, No. 09-56683 (9th Cir. Aug. 19, 2011).

4. Because one of the goals of the Center is to create good precedent and because the Center has limited resources (with more meritorious objections that it wishes to bring than it has the bandwidth to bring), the Center does not bring appeals unless it believes it has a substantial chance of success on appeal. The Center's appeals focus on legal issues of broad applicability beyond any specific case. Neither the Center nor I have ever been sanctioned for a frivolous appeal or a frivolous objection; indeed, I have argued four federal appeals without yet losing. I would not have taken on a case this complex and this unique, and the expense and burden of appeal, if I did not believe we could win and establish important far-reaching precedent. Indeed, in evaluating whether I should take this case, I held this case to a much stronger standard than in my typical evaluation of whether to accept a client or take an appeal, because (a) I knew that, without an exceptionally strong legal argument, there would be a danger of adverse precedent because of the unwillingness of courts to upset a settlement of a litigation this lengthy and complex in a close case; (b) I knew that my legal adversaries would be highly motivated, skilled, and politically-well-connected attorneys who would personally have tens of millions of dollars at stake and spare little expense; and (c) the complexity of this case would involve a greater time commitment and thus a higher opportunity cost than the Center's typical objection.

5. While many "professional objectors" are accused of bringing bad-faith objections solely to extract extortionate settlements from class counsel by the threat of delay, this is not the business model of the Center for Class Action Fairness, which is funded solely by charitable donations and court-awarded attorneys' fees. The Center has never agreed to a *quid pro quo* settlement of an objection, and asks its clients to confirm that they are objecting for the benefit of the class as a whole rather than for personal profit before agreeing to represent them. Moreover, federal tax law presents strict limits

on the amount of revenue the Center can bring in through attorneys' fees. Neither Ms. Craven nor the Center wishes to settle this appeal for a personal payout: we wish to win on the merits. But if this Court has any question whether the Center is bringing this objection in good faith, the Center and Ms. Craven are willing to stipulate to an injunction prohibiting the Center from settling Ms. Craven's objection in exchange for a cash payment.

6.     This appeal is brought in good faith. The issues Ms. Craven wishes to raise in her appeal are not only non-frivolous, but have been adopted by other appeals courts or the Supreme Court, and are of great importance to the law of class action settlements.

7.     For example, the class representatives requested $13 million in incentive awards, and received $2.5 million in incentive awards. I believe in good faith that, as a matter of law, this creates a conflict of interest between the class representative and the class that precludes a finding of adequacy of representation. This position has been adopted by the Seventh Circuit. *See Murray v. GMAC*, 434 F.3d 948 (7th Cir. 2006) (payment to class representative far greater than what class members receive and what could be obtained in individual trial is "untenable"). I believe that decision is correct and, if adopted, will require reversal here. Even if the D.C. Circuit ultimately disagrees with Ms. Craven, the argument is not frivolous.

8.     For further example, I believe that mandatory class actions can apply only to injunctive relief, not monetary relief, and that a settlement for monetary relief must permit an opt-out right. I further believe that that is the best reading of *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2559 (2011), which expressly left the question open. Even if the D.C. Circuit ultimately disagrees with Ms. Craven, the argument is non-frivolous: the Supreme Court has previously said in *Ticor Title Ins. Co. v. Brown*, 511 U.S. 117, 121 (1994), that it has a "substantial possibility" of being correct, a position it reaffirmed in *Wal-Mart*, when it said that that due process requirement was a "serious possibility." 131 S. Ct. at 2557.

9. For further example, *Wal-Mart v. Dukes* also explicitly rejected the approach to "commonality" taken by the settling parties and the Court, and reaffirmed the principle that "commonality" was a constitutional requirement: "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,' *Falcon, supra*, at 157. This does not mean merely that they have all suffered a violation of the same provision of law." 131 S. Ct. at 2551. This was an error of law that the Court did not permit Ms. Craven to raise. (The Court will recall that, immediately after the settling parties gave their interpretations of *Wal-Mart v. Dukes*, which was decided the morning of the Fairness Hearing, I rose to object to their mischaracterization of the decision, which I had also read over the lunch break. The Court waved me to sit down, never gave me an opportunity to speak on the issue, and then ruled the same day before the issue could be briefed as Ms. Craven had previously requested.) This argument is not only not frivolous, it is plainly correct, and will require, at a minimum, a remand if not an outright reversal. Even if the D.C. Circuit ultimately disagrees with Ms. Craven, the argument is non-frivolous.

10. For further example, I believe in good faith that the problems of intra-class conflicts in this settlement constitutionally preclude approval in the absence of separate class representatives and class counsel representing the interests of the disadvantaged members of the subclass. This position is not only not frivolous, it has been adopted by the U.S. Supreme Court, and reaffirmed just this month by the Second Circuit. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999); *In re Literary Works in Elec. Databases Copyright Litig.*, No. 05-5943 (2d Cir. Aug. 17, 2011). *See generally* John C. Coffee, Jr., *Class Wars: The Dilemma of the Mass Tort Class Action*, 95 COLUM. L. REV. 1343 (1995). Even if the D.C. Circuit ultimately disagrees with Ms. Craven, the argument is non-frivolous.

11. For further example, the Court's opinion took the position that the dozens of objections were grounds for approval of the settlement. In good faith, I believe that

this is an error of law: the silence of class members cannot be interpreted as acquiescence, especially when the main objection to the settlement is the problem of intra-class conflicts that disadvantage a minority of class members unrepresented by the class representatives. This position is not only not frivolous, it has been adopted by the Third and Seventh Circuits, as well as the American Law Institute.

12. These are just a few of the issues that we are raising in good faith; all of them are straightforward legal issues that do not require a reweighing of the facts or a deep analysis of the record; any one of them is enough to render the appeal non-frivolous. The Court should further note that Ms. Craven is not appealing indiscriminately. For example, Ms. Craven objected to the attorney fee request, and argued at length that the fee should be no higher than $50 million. The Court took an intermediate position between class counsel's $223 million fee request and Ms. Craven's position, and awarded $99 million in fees. While Ms. Craven disagrees with that ruling, she is not challenging it on appeal, recognizing that that award is reviewed for abuse of discretion, and that the Court's fee decision was within its discretionary powers.

13. Similarly, Ms. Craven's appeal is avoiding fact-bound issues that would require the appeals court to reweigh the evidence such as whether class counsel took a reasonable settlement position in 2006 and 2007 when larger settlement offers were on the table, though these issues were raised in her objection.

### The Plaintiffs Exaggerate the Costs of Appeal.

14. Declarations from the plaintiffs calculate the supposed expense of this appeal based on previous appeals, but this is a mistake. Unlike Appeal No. 08-5500, an appeal from a ten-day bench trial where facts were in dispute, Ms. Craven's appeal raises legal issues that have already been largely researched and briefed, and is avoiding fact-driven issues. If the settling parties do not engage in delay tactics and collateral litigation, the Center expects to spend less than 600 hours of attorney and paralegal time preparing the appendix, briefing this appeal, and preparing for oral argument—and

even less than that if the briefing schedule is expedited, something that a grant of the motion for appeal bond would prevent. There is no way that class counsel could spend $2.3 million of time on Appeal No. 11-5205 without engaging in makework and overbilling—especially since class counsel need only file one brief compared to the two they filed in No. 08-5500 or that Ms. Craven will file in this appeal.

15. Because the appeal focuses on legal issues, the only materials that need to be included in the appendix on appeal, with very few exceptions, are the various settlement agreements and amendments, the amended complaint, the court orders relating to settlement approval and striking Ms. Craven's response brief, Ms. Craven's filings, the notice of appeal, and relevant portions of the transcript of the fairness hearing. Moreover, FRAP 30 requires the appellant—Ms. Craven—to be the one to bear those costs. The appellees should have no costs associated with the appendix unless they violate D.C. Cir. R. 30(b)—and any such violation will preclude them from recovering those costs.

16. The only recoverable taxable costs appellees should have are the costs of producing thirteen copies of a single response brief each. If that brief is 100 pages of text and tables, those taxable costs will be $13.58 per brief copy, or less than $200 per party: $10.00 for the 100 pages, and $3.58 for the covers and fasteners.

17. The Center has previous experience with appellees wildly exaggerating the costs of appeal. In *Dewey v. Volkswagen*, No. 07-cv-2249 (D.N.J.), the *Dewey* class counsel represented to the court under oath that the cost of the appendix would be over $22,000. In fact, the *Dewey* joint appendix filed in the Third Circuit on August 5, 2011, was only 1,246 pages, and cost $3,924.27—and only $1,344.24 of that was cost to the appellees, and then only that much because appellees designated hundreds of unnecessary pages that the federal and local rules explicitly stated should not be included, and for which appellees have no chance of recovering Rule 39 costs.

18. The same exaggerations are taking place here. The appendix in this case—involving a one-day fairness hearing with only one or two relevant exhibits at most, where hours of objections irrelevant to the appeal will be omitted, and where anything under seal was neither seen by Ms. Craven's counsel nor referred to by the Court in its opinion and is thus irrelevant to the appeal—will be much smaller than the appendix in No. 08-5500, a case involving a ten-day bench trial, many exhibits, many documents filed under seal, and many factual issues. Moreover, plaintiffs, as appellants in No. 08-5500, had the Rule 30 responsibility of bearing the costs of the appendix, something they will not have as appellees in this case. If the appellees make designations that comply with the restrictions of Fed. R. App. Proc. 30 and D.C. Cir. R. 30, their taxable costs will be under $1,000 combined for both parties.

19. Ms. Craven and I are each hearing from multiple class members who are asking why there is an appeal. If we're getting these phone calls and e-mails, then the Settlement Administrator is getting more of them. If class counsel and plaintiffs were truly interested in reducing settlement administration costs, rather than self-promotion, they would post Ms. Craven's objection and appellate statement of issues (as well as this declaration) on the Indian Trust website.

**The Omissions in Plaintiffs' Brief.**

20. I e-mailed Mr. Gingold a courtesy copy of our notice of appeal the day we filed it, August 6, 2011, and let him know that Ms. Craven had no interest in settling. Mr. Gingold acknowledged that he did not expect Ms. Craven to be interested in settling. I attach a true and correct copy of that email as Exhibit A.

21. The Federal Rules of Appellate Procedure require the preparation of a "Statement of Issues." Ms. Craven's "Statement of Issues" was due on Monday, August 22, 2011, but we completed it on Friday, August 19, 2011, with the intent of filing it that day, only to discover that the D.C. Circuit had not yet approved my ECF

application. As a result, I was unable to electronically file the "Statement of Issues" until August 22, 2011.

22. On Friday, August 19, 2011, at 2:37 PM, I received a courtesy email from Dennis Gingold, class counsel, offering to speak with me by phone about the planned motion for an appeal bond.

23. I called Mr. Gingold immediately after receipt of the email and spoke with him shortly. He indicated that they would be seeking a large appeal bond and expedited consideration. We both agreed that we knew what each other would say in our briefs, and that plaintiffs' attorneys had read the Center's previous filings against appeal bonds, which were publicly available on the Center's website. I raised no objection to the expedited consideration.

24. I told Mr. Gingold that his claim that the appendix would be expensively large was unsupportable, because our appeal would focus on legal issues and that we were avoiding fact-driven disputes on appeal. I offered to provide Mr. Gingold with a copy of the "Statement of Issues" that very same day before we formally filed it to demonstrate that there was no cause to claim that the costs of the appendix were expensive or to claim that we were making frivolous arguments, but he declined that offer. I further noted that any claim for attorneys' fees and supposed costs of delay were impermissible under the law.

25. The Center for Class Action Fairness LLC posts the vast majority of its filings on its website. Thus, anyone researching our work would see that we have previously filed briefs opposing excessive appeal bonds. These briefs cite the leading DC Circuit case, *In re American President Lines, Inc.*, 779 F.2d 714. They further make clear that Mr. Frank and the Center are not "professional objectors" as that term is understood, and have never settled an objection for money.

26. *In re American President Lines* is one of the two leading cases on appeal bonds. Many of the cases cited in plaintiffs' brief cite to it; certainly, the Center's

previous briefs do. I cannot conceive of a legitimate reason for omitting this binding precedent from plaintiffs' brief. While I considered it possible that plaintiffs would seek D.C. Circuit reversal of that binding precedent, I was surprised when their brief simply acted as if this case did not exist.

27.     Mr. Gingold knew that Ms. Craven had no interest in settling this case for money, because I told him this on August 6. The plaintiffs knew, or should have known, from their admitted review of previous Center briefs opposing appeal bonds that I am not a "professional objector" as defined by Professor Edward Brunet, and have never settled an objection for money. It is also likely that attorneys for the plaintiffs saw my writings and press quotes critical of professional objectors who bring bad-faith objections to blackmail class counsel for personal profit. Nevertheless, plaintiffs falsely smeared me and Ms. Craven by arguing, without any factual basis, that I am a professional objector (as defined by Professor Edward Brunet) who engages in "blackmail," and that decisions relating to such bad-faith litigants are applicable to my appeal.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 1, 2011, in Arlington, Virginia.

/s/ *Theodore H. Frank*
Theodore H. Frank