**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **ELOUISE PEPION COBELL, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| v. | ) | **No. 1:96CV01285(TFH)** |
| | ) | |
| **KEN SALAZAR, Secretary of the Interior, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**PLAINTIFFS' REPLY TO RESPONSE OF ABSENT CLASS MEMBER
KIMBERLY CRAVEN TO UNOPPOSED MOTION TO ORDER NON-
PARTY OBJECTOR CRAVEN TO POST AN APPEAL BOND
PURSUANT TO FEDERAL RULE OF APPELLATE PROCEDURE 7**

**INTRODUCTION**

On September 1, 2011, Kimberly Craven ("Craven"), the sole timely objector-appellant among 500,000 class members,[1] filed a response ("Craven's Response") [Dkt. No. 3862] to plaintiffs' unopposed motion for this Court to order Craven to post an adequate bond in connection with her appeal of final judgment (hereafter "Motion"). [Dkt. No. 3856]. That final judgment approves settlement of this action following the settlement's adoption and ratification by Congress and approval by the President of the United States. [Dkt. No. 3853]. This is not a "normal" settlement. And, this appeal is not a "normal" appeal.

Craven's response does not provide a legitimate basis for denying the appeal bond that plaintiffs request. She ignores or distorts relevant facts and instead relies on speculation and assumption - *e.g.,* she complains that the "real purpose of this motion is to increase Ms. Craven's *pro bono* counsel costs, and to create procedural obstacles to a potentially meritorious appeal."

---

[1] Ms. Craven did not intervene in these proceedings and is not before this Court as a party.

Craven Response at 1.  In that regard, she and her attorney make two important admissions:  1) Attorney time is among the "costs" that litigants necessarily incur in connection with an appeal, and 2) her appeal is only "<u>potentially</u> meritorious." *Id.*  (emphasis added).

Plaintiffs concur fully in her first admission, which is why attorneys' fees are included in our calculation of the appeal bond.  It is ironic that Craven's attorney complains about the time he must spend to prosecute an appeal that is so harmful to Indian trust beneficiaries, but is sharply critical of plaintiffs when they include their attorneys' fees in the bond calculation in conformity with decisions of this Court as well as the majority of courts around this country.

Plaintiffs view Craven's appeal as frivolous, not "potentially meritorious."  However, plaintiffs' Motion does not ask this Court to order Craven to post an appeal bond for that reason, albeit some district courts do so where, as here, the appellant is a non-party objector and her attorney is a professional objector.[2]  *Infra* at 19.  We did not do so because most courts conclude that this particular issue should be determined by the circuit court, not the district court.  Plaintiffs' motion states that "[i]n the event that the Circuit concludes that Craven's appeal, in whole or part, is frivolous or without merit, plaintiffs will seek costs, including doubled attorneys' fees, as provided under Fed. R. App. Proc. 38."  Motion at 12, n. 12 (emphasis added).  Plaintiffs further recognize that a Rule 38 motion seeking costs for the frivolous nature of an appeal is to be filed in the court of appeals, not the district court.  Finally, in accordance with

---

[2] Her attorney not only is a professional objector, he is a professional blogger.  In his blog, he is as careless with the facts as he is with the law in his filings in this Court.  *See, e.g.,* http://centerforclassactionfairness.blogspot.com/ ("the delay [between the fairness hearing and this Court's order for final judgment] was caused by the district court's failure to issue a final judgment after its June 20 ruling, which in turn was caused by the plaintiffs making an unsuccessful motion asking the judge reconsider his denial of an additional $11 million of payout of settlement funds to Elouise Cobell").  Craven's attorney ignores the fact that this Court's final judgment order expressly notes that it reserves judgment on plaintiffs' motion for reconsideration.  [Dkt. No. 3853-2 at 9 n.2].  And, his continuing disrespect for Ms. Cobell is palpable.

Fed. R. App. Proc. 38 and Local Circuit Rule 38, appellees may recover from the appellant and her attorney double their attorneys' fees if the court of appeals determines that an appeal is frivolous.[3]   In sum, plaintiffs have not requested that this Court include Rule 38 costs in its pending motion for an appeal bond.   If it had been appropriate to seek Rule 38 costs in this Court, plaintiffs would have requested a much greater appeal bond to reflect double the value of plaintiffs' legal fees as allowed under Rule 38.   But, despite Craven's mischaracterization of plaintiffs' Motion, we declined to seek inclusion of Rule 38 costs in the calculation of the appeal bond.

Finally, her response summarily dismisses as wrongly decided relevant decisions of this Court and it employs erroneous statements,[4] threats,[5] boasts,[6] misrepresentations,[7] and inapposite case law.   Most notably, the principal case upon which Craven relies in her Response to plaintiffs' request for an adequate appeal bond is *In re American President's Lines, Inc.,* 779 F.2d 714 (D.C. Cir. 1985) ("*APL*").   But *APL* is not on point and is of dubious authoritative value.   *See infra* at 4-13; *see also Adsani v. Miller*, 139 F.3d 67 (2nd Cir. 1998) (construing *APL* as either modified or overruled implicitly by the D.C. Circuit in *Montgomery & Assocs., Inc. v. Commodity Futures Trading Comm'n*, 816 F.2d 783, 784 (D.C. Cir. 1987)); *International Floor Crafts, Inc. v. Dziemit*, 420 Fed. Appx. 6 (1st Cir. 2011) (same).   Finally, despite Craven's various misstatements of the law, the facts are what the facts are.   Here the factual record is, perhaps, Craven's greatest enemy, which is why she avoided it in her objections and why she

---

[3] Local Circuit Rule 38 includes attorneys' fees and other costs for frivolous appeals and motions as well as for appeals and motions that are "interposed for an improper purpose, such as … to cause unnecessary delay.…"

[4] *See infra* IV.A.

[5] *See infra* IV.B.

[6] *See infra* IV.C.

[7] *See infra* IV.C.

again avoids it in her response to plaintiffs' instant Motion.  It is the factual record, however, that conclusively belies her contentions.

## I.      Craven's Concessions

Craven and her attorney do not challenge the material facts stated, and points made, in plaintiffs' Motion.  They do not contest that it is legitimate for this Court to order an appellant to post an appeal bond to protect appellees and that non-party objector-appellants routinely are ordered by district judges to post substantial appeal bonds in class action cases.  Motion at 2-5. They also do not contest that the harm plaintiffs would suffer in connection with Craven's appeal cannot be quantified with precision, but is substantial.  *Id*. at 8-9.  Nor do they deny that Craven's appeal is politically motivated and untethered to the merits in this case.  *Id*. at 6-8. Similarly, they fail to contest plaintiffs' point that a substantial appeal bond would further public policy.  *Id*. at 8-9; 11-13.  Indeed, apart from their misplaced reliance on *APL,* Craven's Response is long on nonsense and strawmen,[8] and short on facts and persuasive law.  Inasmuch as they have failed to rebut plaintiffs' aforementioned points, they should be construed as conceded in accordance with LCvR 7(b).

## II.     *In re American President's Lines, Inc.* is Inapposite and does not Bind this Court

In their Response to plaintiffs' Motion, Craven and her attorney rely almost exclusively on *APL* to evade the posting of an appeal bond that is calculated on reasonable costs incurred by appellees' in their defense of the settlement.  *APL* contains plainly distinguishable facts and announced a rule of law in situations and circumstances that are wholly unlike that involved in

---

[8] *See e.g.*, Craven's Response wherein she repeatedly claims that plaintiffs "are really seeking [] a *supersedeas* bond under Fed. R. App. Proc. 8: a bond for the costs of delay." *Id*. at 3, 10 (emphasis added).  The appeal bond and the amount requested by plaintiffs are based on precedent and persuasive authority governing Rule 7 bonds, not Rule 8 bonds.

the instant matter.  Not only is *APL* inapposite, but Craven misapplies *APL* and misrepresents its nature and scope.

The facts of *APL* are as follows:   *APL* is a bankruptcy case that predates *Devlin v. Scardelletti* ("*Devlin*"), 536 U.S. 1 (2002) by 17 years.  In *APL*, the bankruptcy court dismissed appellant's bankruptcy petition against *APL*.   The petitioner appealed to this Court, which granted *APL's* motion to dismiss the appeal because the petitioner had failed to prosecute the bankruptcy petition. Next, the petitioner appealed to the circuit court, which ordered the appellant to post a $10,000 bond pursuant to Rule 7, a bond that the petitioner failed to post. *APL* moved to dismiss the appeal because the petitioner failed to post the bond and, initially, the circuit court granted *APL's* motion.  On rehearing before the same three-judge panel, the case was remanded to this Court so that it could state the reasons it ordered the appellant to post a bond in the amount that it did.  *APL*, 779 F.2d at 715-16.  On remand, the district judge found that the litigation appeared to be frivolous; that, as a consequence, *APL* would qualify for costs under federal appellate rule 38; that the petitioner otherwise would have no assets in the district court's jurisdiction; and, that there was a need for security because the petitioner had failed to pay attorneys' fees ordered by the bankruptcy court.  *Id.*  at 716.

The court of appeals restated this Court's authority to order an appellant to post a bond under Rule 7, but limited the amount of the *APL* bond to costs set forth in Rule 39 and it excluded attorneys' fees from that calculation.   *Id.* at 716-17.  The court of appeals did not identify any express or implied nexus to Rule 39.  Nor did it note any legislative intent to limit Rule 7 bonds to Rule 39 costs; however, because it found no case law or other authority at that time, which authorized appeal bonds in amounts greater than Rule 39 costs, it applied Rule 39 to limit the amount of Rule 7 appeal bonds in an appeal brought by a party-appellants.  *Id.* at 717.

The appellate panel explained that although the district court stated that the appeal appeared to be frivolous, it is the circuit court, not the district court that makes that determination. *Id.* Further, it concluded that *APL* would suffer no harm if it limits the bond to Rule 39 costs because "the judgment was not stayed …and for lack of a stay *APL* remain[ed] free to enforce its judgment at any time." *Id.* at 718.

APL is inapposite to the present case for the following independent reasons:

First, Craven cites *APL* as authority for what she and her attorney say is a bedrock principle that "appeals possessing merit are a matter of right." Response at 2.   What the *APL* court actually said is that "[appeals] possessing merit are <u>normally</u> a matter of right." *In re American Presidents' Line,* 779 F.2d 718 (emphasis added).   At the time this Circuit decided *APL*, a "normal" appeal possessing "merit" could not have included Craven's appeal for the simple fact that non-party objectors had no right to appeal in 1985.   Therefore, Craven is not a "normal" appellant under *APL*.   This reason alone renders *APL* both irrelevant to *Cobell* and unhelpful to Craven, particularly given the drastically different legal status of the party-appellant in *APL* and the non-party objector-appellant here.

Moreover, in *APL* the right to appeal arose from the bankruptcy code and it applied only to the parties in that bankruptcy proceeding.   Craven omits telling this Court that the right to appeal referenced in *APL* is a statutory right of those parties.   *APL* did not consider issues related to the right of a non-party objector to appeal because they were not before that court and could not have been before that court because non-party objector-appellants did not exist.   Simply put, Craven is a non-party objector, whereas *APL* involved a "normal" party-litigant.   Accordingly, *APL* is irrelevant to this Court's consideration of plaintiffs' request for an appeal bond.

Second, *Cobell* is not a "normal" case in any sense, particularly because of Congress' important role in its resolution. *APL* provided that "appeals possessing merit are <u>normally</u> a matter of right." *APL*, 779 F.2d at 718 (emphasis added). But, *Cobell* is not the garden-variety class action coupon case that usually attracts professional objectors such as Craven's counsel. The *Cobell* Settlement has been ratified, authorized, and confirmed by Congress in the Claims Resolution Act of 2010 and it was signed in to law by the President. Such Congressional action carries dispositive weight in the context of Indian affairs, where Congress exercises powers that are plenary in nature. *See, e.g., Cherokee Nation v. Hitchcock*, 187 U.S. 294, 308 (1902) ("The power existing in Congress to administer upon and guard the tribal property, and the power being political and administrative in its nature, the manner of its exercise is a question within the province of the legislative branch to determine, and is not one for the courts"); *Lone Wolf v. Hitchcock*, 187 U.S. 553, 565 (1903) ("Plenary authority over the tribal relations of the Indians has been exercised by Congress from the beginning, and the power has always been deemed a political one, not subject to be controlled by the judicial department of the government"); *Winton v. Amos*, 255 U.S. 373, 391 (1921) ("Congress has plenary authority over the Indians and all their tribal relations, and full power to legislate concerning their tribal property"); *Morton v. Mancari*, 417 U.S. 535, 551 (1974) ("The Constitution vests Congress with plenary power "to deal with the special problems of Indians.");￼ *Del. Tribal Bus. Comm. v. Weeks*, 430 U.S. 73, 84 (1977) ("The general rule emerging from our decisions ordinarily requires the judiciary to defer to congressional determination of what is the best or most efficient use" of Indian funds.); *United States v. Wheeler*, 435 U.S. 313, 319 (1978) ("Congress has plenary authority to legislate for the Indian tribes in all matters."); *United States v. Jicarilla Apache Nation*, 131 S.Ct. 2313, 2324 (2011). More recently, this Court concluded that Congress has "traditional broad authority over

the management and distribution of lands and property…an authority drawn both explicitly and implicitly from the Constitution itself." *Timbisha Shoshone Tribe v. Salazar*, 766 F.Supp.2d 175, 185-86 (D.D.C. 2011).

Here, Congress has exercised its plenary authority through its enactment of the Claims Resolution Act. It expressly directed settlement of the *Cobell* litigation. Congress's involvement in resolving this litigation makes this case and Craven's appeal decidedly extra-ordinary, further distinguishing *Cobell* from *APL*. Furthermore, a challenge to Congress' exercise of plenary authority over Indian affairs is anything but a "normal" appeal. The "standard of review for judging the constitutionality of Indian legislation under the Due Process Clause of the Fifth Amendment…focuses on whether the statute's objectives are tied rationally to the fulfillment of Congress' unique obligation toward the Indians." *Littlewolf v. Lujan*, 877 F.2d 1058, 1064 (D.C. Cir. 1989) (internal citations and quotations omitted). Put another way, unlike in other subject areas where reviewing courts strictly scrutinize legislation to determine a compelling state interest, Indian legislation passes constitutional muster if rationally related to congressional obligations towards Indians. *See Weeks*, 430 U.S. at 84. This is the appropriate standard for the judicial assessment of the Claims Resolution Act of 2010's ratification of the *Cobell* settlement. Whereas *APL* involved purely bankruptcy matters and an appeal authorized by bankruptcy statutes, *Cobell* requires consideration of a centuries-old legal doctrine, virtually absolute congressional authority over Indian Affairs, and the balancing of the federal trust responsibility owed to individual Indians. A comparison of the facts and applicable law of *APL* and *Cobell* make clear the material distinctions between the two cases and demonstrate *APL's* irrelevance in this matter.

Third, Craven does not explain how the normal qualified statutory right to appeal, which *APL* applied to a party appellant in 1985, is relevant to her right to appeal under these circumstances today. Indeed, in 1985, non-party objectors had no right to appeal a class action settlement, regardless of the statutes and constitutional provisions that existed at that time. Not until 2002 did the *Devlin v. Scardelletti* Court reinterpret 28 U.S.C. § 1291 to allow for a non-party objector to appeal a class action settlement, but did so over the vigorous dissents of Justices Scalia, Kennedy, and Thomas. *Devlin v. Scardelletti*, 536 U.S. 1, 15 (2002) ("The Court holds that petitioner, a nonnamed member of the class in a class action litigated by a representative member of the class, is a "party" to the judgment approving the class settlement. This is contrary to well-established law.") (Scalia, J., dissenting).

With respect to non-party objector-appellants, *APL* generally is not followed by other courts and is not followed by this Court. And, indeed, there is no sound reason to extend the pre-*Devlin* rational of *APL* to the class action context, let alone in the post-*Devlin* context of the objector-appellant. In short, regardless of whether *APL* was regarded as authoritative in 1985 (or even today) and regardless of whether party appeals in bankruptcy proceedings "possessing merit are normally a matter of right," *APL*, by its terms, simply does not apply to non-party objectors like Craven.

Fourth, the law has evolved significantly since 1985. Most importantly, Craven's counsel fails to acknowledge that *APL* today is at best questionable authority. In *International Floor Crafts, Inc. v. Dziemit*, 420 Fed. Appx. 6 (1st Cir. 2011), the First Circuit considered the costs that the district court may include in an appeal bond. The *Dziemit* Court carefully examined and expressly rejected the *APL* approach, limiting Rule 7 to Rule 39 costs, and noted that *APL* is not even controlling law in this circuit, "the D.C. Circuit has since concluded that

Rule 39 'costs' taxable in the district court <u>do include</u> appellate attorneys' fees when the statute underlying the appeal allows the recovery of the fees as part of costs. *See Montgomery & Assocs., Inc. v. Commodity Futures Trading Comm'n*, 816 F.2d 783, 784 (D.C. Cir. 1987)." *Dziemit*, 420 Fed. Appx. at 18-19 (emphasis added).  Similarly, the Second Circuit in *Adsani v. Miller*, 139 F.3d 67 (2nd Cir. 1998), considered costs includable in an appeal bond and rejected the *APL* holding, also noting that "the seemingly absolute rule announced in [*APL*] either has been modified by or has been overruled implicitly by *Montgomery & Assocs. v. CFTC*, 816 F.2d 783, 784 (D.C. Cir. 1987)," leaving the *Adsani* Court to conclude that "in light of *Montgomery*, [*APL*] provides an ambiguous precedent of little authority."  *Adsani*, 139 F.3d at 73 n 6.  The lengths taken by Craven's counsel to accuse Class Counsel of misrepresenting case law is puzzling in light of clear judicial statements of *APL's* marginal authoritative value.

As demonstrated in plaintiffs' Motion, the authority that the *APL* court could not find in 1985 to support this Court's decision 27 years ago is ample today, principally because professional objectors and their clients have abused the *Devlin* conditional right of a non-party objector to appeal.[9]  *In re Initial Public Offering Securities Litig.*, 728 F.Supp.2d 289, 295 (S.D.N.Y. 2010) ("I concur with the numerous courts that have recognized that professional objectors undermine the administration of justice by disrupting settlement in the hopes of extorting a greater share of the settlement for themselves and their clients."); *O'Keefe v. Mercedes–Benz USA, LLC*, 214 F.R.D. 266, 295 n. 26 (E.D. Pa. 2003) ("Federal courts are increasingly weary of professional objectors: some of the objections were obviously canned

---

[9] *Devlin* conditioned the appellate right of a non-party objector on the timeliness of her objections <u>and</u> the presentation of such objections at the fairness hearing.  *Devlin*, 536 U.S. at 11 (holding that "the power to appeal is limited to those nonnamed class members who have objected during the fairness hearing").  Ergo, non-party objectors have no unfettered right to appeal as Craven asserts in her Response.

objections filed by professional objectors who seek out class actions to simply extract a fee by lodging generic, unhelpful protests.") (citation omitted).   As a result, many courts order non-party objectors to post substantial appeal bonds that include costs identified in plaintiffs' Motion. Such courts legitimately have relied on fee-shifting statutes that underlie the litigation – wholly independent of whether the appeal is frivolous under Rule 38 – to justify orders that require non-party objectors to post appeal bonds that cover appellees' costs, including attorneys' fees.   Good public policy does not require appellees' to pay for costs where, as here, fee-shifting statutes are enacted to relieve them of that obligation.   Put another way, the *APL* court did not address the impact of fee shifting statutes on Rule 7 appeal bonds, let alone purport to resolve that issue. That issue was never raised in *APL*.

Fifth, *APL* was able to enforce its judgment pending appeal. Therefore, the *APL* court found that *APL* would suffer no harm as a result of the appeal.   Here, however, the *Cobell* judgment is stayed by Craven's notice of appeal and, as demonstrated in plaintiffs' Motion, absent a substantial bond, plaintiffs will be harmed materially because of that stay and the costs they will incur in connection with their defense of the settlement.   Tellingly, Craven and her attorney do not, and cannot, dispute the substantial, harm her appeal will cause hundreds of thousands of individual Indian trust beneficiaries.

Sixth, the cost of preparing the record in *APL* was nominal because the petitioner-appellant failed to prosecute the case.   Indeed, the record reflects no prosecution.  Here, Craven's objections in this Court as well as the statement of issues that she filed in the court of appeals are fact driven and must be decided on the record in this Court. Craven and her attorney filed a statement of issues that necessarily implicates the extensive factual record in this case.  By way

of example,[10] her very first issue asks whether the "total value of the class representatives' claims is approximately sixty dollars, does a request for a class representative incentive award of $13 million . . . create a conflict of interest with the class that precludes a finding that the class representatives are adequate representatives?"  Exhibit 1 at 2.

Plainly, that issue is grounded in a certain factual predicate – the alleged value of the claims here involved.  Substantial testimony, including redacted testimony, and significant trial time was devoted to the question of how much is missing from the class representatives' accounts, as well as the methodology underlying the opinions of the parties' experts.  Millions of pages of documents, redacted and un-redacted, were produced relevant to defendants' virtual ledger, which is under seal.[11] A separate 59-day trial that examined the security of Interior's information technology systems and the reliability of trust data housed therein resulted in the production of millions of pages of discovery under seal that is entered into the trial record.  Much of that record is relevant to the issues presented by Craven and under seal.

Craven and her attorneys' seemingly innocuous, but materially false, factual predicate ("the total value of the class representatives' claims is approximately sixty dollars") was rejected by this Court.  Here, what is important is that the response to Craven's claim is the factual record that has been developed by the parties in more than fifteen years of litigation.  It is a massive and powerful record that plaintiffs must mine in support of the settlement on appeal. As a result,

---

[10] Because of page and time limitations, plaintiffs here will not detail the record that is necessary for their opposition to Craven's appeal. Suffice it to say, it is an extensive record that has been created over more than fifteen years of intense litigation.  If anything, by utilizing previous appeals, plaintiffs have understated the true cost of preparing and compiling the record for this appeal. To be sure, record designations are made by the appellees, not Craven, and whether or not Craven seeks sanctions related to plaintiffs'-appellees' record designations, that is not a decision that can be made today, notwithstanding the threats in her Response.  Response at 5.
[11] The virtual ledger contains actual accounting records relating to defendants' expert report, which are also under seal.

unlike *APL*, here, substantial costs will be incurred by the appellees in their careful compilation and preparation of the record for appeal.

Accordingly, *APL* is not on point, is not binding precedent, and is not controlling law in this circuit as the circuit and this Court have recognized.  *See In Re: Dept. of Veteran's Affairs (VA) Data Theft Litigation*, Misc. Action No. 06-0506 (JR) MDL Docket No. 1796 (November 20, 2009).  The facts of *APL* and *Cobell* are materially different and the law, itself, has changed materially since 1985.  Indeed, if the *APL* court searched for authority today, unlike 1985 when it found no authority, there is ample authority throughout the country for the bond requested by plaintiffs because professional objectors routinely have abused the appellate process since the *Devlin* Court first authorized non-party objectors to appeal under limited circumstances.

### III.    A Rule 7 Appeal Bond May Include Costs Beyond Rule 39

As stated above, *APL* is not binding on this Court as evidenced by both this Court's own actions[12], a subsequent circuit decision,[13] and the view of sister circuit courts.[14]  Inclusion of costs beyond those identified in Rule 39 is routine in the class action context as outlined in plaintiffs' Motion.  Motion at p. 13-18.  This Circuit has not construed Rule 7 to limit the security that this Court may order an appellant to post where, as here, the appellant is a non-party objector.  This circuit, as well as other courts, has construed Rule 7 costs to include attorneys' fees for the preparation of opposition briefs, as well as the increased cost of the claims administrator and post judgment interest on the settlement amount.  The practice of this Court is in accord.

---

[12] *In Re: Dept. of Veteran's Affairs (VA) Data Theft Litigation*, Misc. Action No. 06-0506 (JR) MDL Docket No. 1796 (November 20, 2009).
[13] *Montgomery & Assocs. v. CFTC*, 816 F.2d 783 (D.C. Cir. 1987)
[14] *Adsani v. Miller*, 139 F.3d 67 (2nd Cir. 1998); *International Floor Crafts, Inc. v. Dziemit*, 420 Fed. Appx. 6 (1st Cir. 2011)

A.    Multiple courts recognize the absence of express linkage between 39 and 7

The *APL* Court elected to define appellate costs under Rule 7 by way of Rule 39, despite the absence of support for that interpretation.   Indeed, recent judicial decisions recognize the absence of any linkage between Rule 39 and Rule 7, thereby undermining *APL's* very holding. For example, in *Adsani v. Miller*, the Second Circuit held that "Rule 39 does not define costs for all of the Federal Rules of Appellate Procedure."   139 F.3d at 74-76.   The *Dziemit* Court held similarly by specifically finding that Rule 39 "does not limit 'costs on appeal' under Rule 7." *International Floor Crafts, Inc. v. Dziemit*, 420 Fed.Appx. at 18.   Finally, in *Azizian v. Federated Dept. Stores, Inc.*, the Ninth Circuit found no indication that the rule's drafters intended Rule 39 to define costs for purposes of Rule 7 or for any other appellate rule."   499 F.3d at 958.   *Azizian* further specified that "the costs identified in Rule 39(e) are among, but not necessarily the only, costs available on appeal."   *Id.*

As plaintiffs' Motion stated, this Court has the authority to include appellate costs in an appeal bond that extend beyond the narrow, marginalized holding of *APL*.   The plain fact is that no point of law exists requiring the definition of costs under Rule 7 to be limited to costs enumerated in Rule 39.   To be sure, the majority rule among jurisdictions and the practice in this Court disregards the narrow holding of *APL* and recognizes the weight of authority providing for the inclusion of appellate costs beyond the rudimentary costs set forth in Rule 39.

B.    This Circuit recognizes the availability of attorneys' fees in definition of costs

As discussed in plaintiffs' Motion, the majority rule – followed in this Circuit – provides that professional time is a "cost" includable in a Rule 7 appeal bond, where, as here, a statute underlying this litigation provides for the recovery of attorneys' fees through a fee shifting provision.   *See, e.g.*, *Montgomery & Associates, Inc. v. Commodity Futures Trading Com'n*, 816

F.2d 783 (D.C. Cir. 1987); *see also International Floor Crafts, Inc. v. Dziemit*, 2011 WL 1519113 at *5 (holding "we endorse the majority view that a Rule 7 bond may include appellate attorneys' fees if the applicable statute underlying the litigation contains a fee-shifting provision").

Here, the Equal Access to Justice Act ("EAJA") is one of the many statutes underlying this litigation and it includes a fee-shifting provision.  28 U.S.C. § 2412(b).  Section 2412(b) provides "a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party." *Id.*  In *Sullivan v. Hudson*, 490 U. S. 877 (1989), the Supreme Court has determined that EAJA was designed to address the problem that "'[f]or many citizens, the costs of securing vindication of their rights and the inability to recover attorney fees preclude resort to the adjudicatory process.'" *Sullivan*, 490 U. S. at 883 (quoting S. Rep. No. 96–253, p. 5 (1979)).  Indeed, plaintiffs have recovered attorneys' fees in this litigation under that Act. *Cobell v. Norton*, 407 F.Supp.2d 140 (D.D.C. 2005).

The purpose of EAJA is directly applicable in the instant context.  Craven's appeal forces the plaintiff classes to expend additional funds to defend their settlement.  Their trust funds, as this Court has noted, provide for the most basic staples of life. *See, e.g., Cobell v. Norton* (*Cobell XVI*), 394 F.Supp. 2d 164, 273 (D.D.C. 2005).  The cost of defending this settlement diminishes the recovery of, and distribution to, plaintiff class members and hinders their ability to provide for themselves and their families.  The plaintiff classes are subjected to tangible financial harm due to the delay created by Craven's appeal.

EAJA's very purpose is to protect plaintiffs who seek "vindication of their rights." *Sullivan*, 490 U. S. at 883.  This purpose dovetails with the function of an appeal bond in the

class action context, *i.e.*, to protect appellees from the harm caused by delay due to an appeal. As described above, the majority rule regarding the amount of an appeal bond allows for the inclusion of such attorneys' fees where, as here, a fee-shifting provision underlies the litigation. This implements sound public policy by protecting the plaintiff class from further harm caused by appellate delay.  While the typical application of EAJA shifts the payment of attorneys' fees to the United States, the Supreme Court's decision in *Devlin* changed the legal landscape for the application of fee-shifting statutes in the class action context.  To ensure that manifest injustice does not result, the majority of courts allow for the inclusion of attorneys' fees in an appeal bond where an appeal is brought by a non-party objector.  Doing so carries out the purpose of both EAJA and Rule 7 to protect the plaintiff class and ensure that appellate costs, including attorneys' fees, are not a barrier to the "vindication of their rights." *Sullivan*, 490 U. S. at 883.  It is as relevant and applicable to non-party objectors as other underlying fee-shifting statutes that implicate copyright violations, antitrust violations, and securities law violations.  The inclusion of attorneys' fees in an appeal bond in the instant context is in accord with the majority rule of jurisdictions and the practice of this Court.

## IV.   Craven's Unsubstantiated Allegations

What is most striking about Craven's Response to the appeal bond is how replete it is with erroneous statements, boasts, threats, and misrepresentations.  They are too numerous to delineate in detail.  Below, we identify some of the more egregious examples.

### A.   Craven and her attorney miscomprehend the class action notice process and the consequences of suspending the notice process and class communications

Craven and her attorney assert that the high cost of settlement administration ($300,000 per month) can be avoided if plaintiffs' settlement website simply posts her argument and pleadings.  Response at 12, n. 6.  There are approximately 500,000 individual Indian trust

beneficiary class members, many of whom have reached out, and continue to reach out, to the Garden City Group's toll-free number to inquire about the settlement generally and how they are impacted individually, and whether or and why their distributions may be delayed.  Delay is a paramount concern to most class members.  They are not calling about Craven's personal grievances about the settlement.  Instead, most beneficiaries want to understand their legal rights and how long they will have to wait to obtain justice in this more than 15-year struggle.

To date over 322,000 calls have been received.  Over 10,000 calls were received last week alone.  The solution proposed by Craven and her attorney is simply to post a notice on plaintiffs' website that states "information about the pending appeals."  Response at 12, n. 6. But, such a posted notice cannot possibly answer the personal inquiries raised by class members. And, Craven and her attorney make no attempt to suggest how such notice is adequate.  This Court has noted with approval the comprehensive notice campaign proposed by the parties and implemented by the plaintiffs. December 21, 2010 Hearing Transcript at 5.  This Court has compared favorably the nature and scope of the notice in *Cobell* to the defective notice in *Pigford*, which resulted in years of additional turmoil for the *Pigford* class.  *Id.*  Craven and her attorney disregard the *Pigford* problem and ignore important responsibilities that Class Counsel and the Named Representatives owe to classes in that regard. Their naïve suggestion would, if implemented, increase materially the risk that class members would not be provided adequate notice about their rights, obligations, and procedures under the settlement.

B.     Craven's counsel's continued threats towards Class Counsel do not comport with the practice in this Court

In the short time that Craven's attorney has appeared in these proceedings, he has threatened Class Counsel with sanctions three times.  The first instance occurred when Craven's counsel responded to plaintiffs' motion to strike Craven's patently improper opposition to the

parties' Joint Motion for Final Approval.  *See* Exhibit 2.  Notably, Craven's counsel did not act on his wrongheaded threat then and this Court granted plaintiffs' allegedly sanctionable motion to strike.  [Dkt. No. 3799].  The second threat of sanctions occurred in Craven's Response to plaintiffs' present Motion, when Craven's counsel suggested to this Court that it "consider" sanctioning Class Counsel for various and sundry reasons.  Response at 2, 4, 7 n. 2, 15-16 n. 8, 22, and 23.  Most recently, by letter on September 6, 2011, Craven's counsel once again threatened sanctions *if* Class Counsel does not bend to objector counsel's demand to limit the scope of the appendix in his fact driven appeal.  *See* Exhibit 3.

As with the first threat, the latter two are baseless. If Craven and her attorney truly believe that Class Counsel have acted in a sanctionable manner, it is not enough to harass Class Counsel with unprofessional threats of sanction, instead, they should obtain leave of this Court and move for sanctions via the mechanisms set forth in the local and federal rules and accept the consequences if they are wrong.  Craven and her attorney's empty threats are manifestly unprofessional and plaintiffs firmly stand by their Motion.

C.    Craven's counsel's misrepresentations are numerous and impede effective determination of legal issues

Craven's counsel boasts that among his so-called "victories" is this Court's decision to award $99 million in attorneys' fees to plaintiffs' counsel.  Response at 14 n. 7.  Preliminarily, plaintiffs "asserted in their petition for class counsel fees 50 to 99.9 million dollars, expressly in accordance with the terms of settlement." June 20, 2011 Hearing Tr. at 194:12-14.  It is difficult to comprehend Craven's attorney's big "victory" by limiting plaintiffs' counsel to the upper most reaches of plaintiffs' asserted fee range.  More significantly, this Court's bench opinion on that issue conclusively demonstrates the shameless nature of his boast.  *Id.* Tr. at 247: 9-13.  Indeed, not only did this Court reject each of the arguments made by Craven's attorney but it

admonished him publicly for his repugnant personal attack on the lead plaintiff.  *Id.* Tr. at 239:6-11 ("I was distressed to hear Ms. Cobell attacked today by one of the objectors' representatives [Theodore Frank]. I felt that was without foundation.  There was no suggestion of any collusion by her part to get a fee, and then she would settle the case. There is nothing in the record to support that.").  Evidently, where, as here, the law and facts do not support their claims, they choose instead to rely on unfounded attacks.

In addition, Craven takes umbrage of, and denies, plaintiffs' reference to her attorney as a "professional objector" whose practice was created by, and depends in its entirety on, the 2002 *Devlin* decision.  However, a brief review of the public record demonstrates that her attorney's practice is limited to the representation of objectors to class action settlements.  *See, e.g.*, Exhibit 4.  To wit, he is a typical "professional objector."  Craven's counsel's practice is focused and limited to the representation of objectors in class action litigation – he is a normal professional objector.

> D.     If Craven is unable to pay for the costs of the appeal, Craven's counsel should file the requisite motion for *in forma pauperis* status and cease making unsupported conclusory statements concerning her financial status

Craven makes the threat that "any substantial bond would entitle Ms. Craven to proceed *in forma pauperis* under Fed. R. App. Proc. 24." Response at 1.[15]  Her claims of entitlement to

---

[15] *See also*, Response at 18 ("[I]f this Court imposes such a bond, she will simply file an application to proceed *in forma pauperis*, which either this Court or the D.C. Circuit will be obliged to grant, because the plaintiffs, by claiming their attorney expenses of defending the appeal will be in the millions of dollars, will be judicially estopped from claiming that Ms. Craven's appeal is frivolous.").  Putting aside that this Court is not "obliged" to grant Ms. Craven any relief whatsoever, she and her attorney now take the remarkable position that they must have a non-frivolous appeal if plaintiffs spend millions defending against it.  Of course, that would fit with their strategy of minimizing plaintiffs' counsel's opposition to their appeal. However, whether her appeal is frivolous has an immaterial effect on plaintiffs' hours. The unfortunate consequence of a non-party objector filing any appeal, however unmeritorious, is the expenditure of significant time necessary to prepare and compile the monumental record, file

proceed *in forma pauperis* petition are based solely on unsubstantiated, conclusory contentions without citation to case law or averments as required by Fed. R. App. Proc. 24(a)(1).

Indeed, the standard for *in forma pauperis* status in this Circuit is set forth in *Harris v. Harris,* 424 F.2d 806 (D.C. Cir. 1970). *Harris*, quoting the Supreme Court's dictate in *Adkins v. DuPont Co.*, 335 U.S. 331, 339 (1948), held that "an affidavit is sufficient which states that one cannot because of his poverty 'pay or give security for the costs . . . and still be able to provide' himself and dependents 'with the necessities of life.'" *Harris*, 424 F.2d at 810. The *Harris* Court also noted that one who proffers an *in forma pauperis* affidavit is subject to prosecution for perjury in a case of bad faith. *Id.*

*In forma pauperis* is an objective standard. It is not a sliding scale based on the amount, of the appeal bond. *In forma pauperis* status either exists or it does not.[16] It is not the case that one can be granted *in forma pauperis* status simply because of increased costs due to an appeal bond. If Craven's counsel has a good faith belief, after conducting due diligence in accordance with the D.C. Rule of Professional Conduct 1.1(a), his client might meet the objective *in forma pauperis* standard, and a motion in compliance with Fed. R. App. Proc. 24, including the requisite Form 4 affidavit, should follow. Accordingly, Craven should file a motion to that effect in accordance with LCvR 5.1(h)(2), supported by an affidavit under oath, regardless of this Court's resolution of plaintiffs' Motion.

On this count, however, Craven is <u>not</u> indigent under controlling law. Public records reveal that she owns two properties[17] with an aggregate assessed value in excess of $919,000.

---

papers and prepare for oral argument. Put another way, the same effort that is required to defend a meritorious appeal is required to defend Craven's "potentially meritorious" appeal.

[16] Curiously, the newly described "indigent" Craven has already filed the $455.00 filing fee to see that her appeal is docketed, but never suggested that she is a pauper.

[17] 3560 Catalpa Way, Boulder, CO 80304; 4389 N. Via Entrada Hermosa, Tucson, AZ 85718.

Exhibit 5 at 1, 2 and 4.[18]   Moreover, Ms. Craven evidently is gainfully employed as a Senior Project Manager by the Department of Energy – National Renewable Energy Laboratory. Among other things, plaintiffs suggest that an *in forma pauperis* motion would be both "frivolous" and "interposed for an improper purpose" because Craven is not a pauper as defined by controlling law. Whatever Ms. Craven's personal financial status, plaintiffs anticipate a careful review if such a motion is filed.

## CONCLUSION

For the reasons stated above and those stated in plaintiffs' Motion, plaintiffs respectfully request that this Court order Craven to post and appeal bond in the amount of $8.3 million.

Respectfully submitted this 7th day of September 2011.

/s/ Dennis M. Gingold
DENNIS M. GINGOLD
D.C. Bar No. 417748
607 14th Street, N.W.
9th Floor
Washington, D.C. 20005
(202) 824-1448

/s/ Keith M. Harper
KEITH M. HARPER
D.C. Bar No. 451956
MICHAEL ALEXANDER PEARL
D.C. Bar No. 987974
KILPATRICK TOWNSEND
STOCKTON, LLP
607 14th Street, N.W.
Washington, D.C. 20005
(202) 508-5844

WILLIAM E. DORRIS
Georgia Bar No. 225987
Admitted Pro Hac Vice
ELLIOTT LEVITAS
D.C. Bar No. 384758

---

[18] There is no information on mortgage holders.

KILPATRICK TOWNSEND
STOCKTON
1100 Peachtree Street
Suite 2800
Atlanta, Georgia 30309
404-815-6104

<u>Attorneys for Plaintiffs</u>

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Plaintiffs' Reply to Response of Absent Class Member Kimberly Craven to Unopposed Motion to Order Non-Party Objector Craven to Post An Appeal Bond Pursuant to Federal Rule of Appellate Procedure 7 was served on the following via facsimile, pursuant to agreement, on this day, September 7, 2011.

Earl Old Person (Pro se)
Blackfeet Tribe
P.O. Box 850
Browning, MT 59417
406.338.7530 (fax)


/s/ Shawn Chick