UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELOUISE PEPION COBELL, et al., <br><br> Plaintiffs, <br><br> v. <br><br> KEN SALAZAR, Secretary of the Interior, et al., <br><br> Defendants. | Civil. Action No. 96-01285 (TFH) <br><br> FILED <br> SEP 1 3 2011 <br> CLERK U.S. DISTRICT COURT <br> DISTRICT OF COLUMBIA |

## MEMORANDUM OPINION

Pending before the Court is Intervenor-Applicant Quapaw Tribe of Oklahoma's (O-GAH-PAH) Motion to Intervene as a Plaintiff [Docket No. 3834], which was filed on June 17, 2011 and seeks intervention as of right or permissively "to ensure that the rights of the 1,080 Quapaw Tribal Members who seek to opt out of the Settlement are protected." Quapaw Tribe's Mot. to Intervene 1. For the reasons set forth below, the Court will deny the motion.

### DISCUSSION

Upon review of the Quapaw Tribe's motion, it is apparent the Tribe seeks to intervene on behalf of its members solely to object to the fact that there is no opportunity to opt out of the Historical Accounting Class, which was certified by the Court pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). See Order Granting Final Approval to Settlement (July 27, 2011) [Docket No. 3850]. Although the Quapaw Tribe does not challenge

the certification of the Historical Accounting Class,[1] this is the fourth attempt by the Tribe to voice an objection to the lack of an opt out. *See* Objections of the Quapaw Tribe of Oklahoma (O-GAH-PAH) Concerning Proposed Settlement and Notice of Intent to Appear at Fairness Hearing [Docket No. 3737]; The Members of the Quapaw Tribe of Oklahoma's (O-GAH-PAH) Request to Supplement Their Objections to the Proposed Settlement and Notice of Intent to Appear at the Fairness Hearing [Docket No. 3788]; Motion for Leave to File Corrected Objections Concerning Proposed Settlement on Behalf of the Quapaw Tribe of Oklahoma (O-GAH-PAH) and Tribal Members [Docket No. 3808]. The Court denied all three of the Quapaw Tribe's prior motions on the grounds that, as an organization, the Quapaw Tribe was not a party to the case and therefore lacked standing to file objections to the Settlement Agreement or appear at the fairness hearing,[2] and the Quapaw Tribe's subsequent attempt two months later to convert its prior motions to one filed on behalf of its members was untimely, the objections were untimely, and the objections to the lack of an opt out for the Historical Accounting Class misconstrued the nature of the agreed relief afforded to the Class in the Settlement Agreement, Order (June 17, 2011) [Docket No. 3828].

The Court's June 17, 2011 Order denying the Quataw Tribe's third motion clearly stated that the Court "divines no circumstances under which it would be appropriate for any [Historical Accounting Class] members to opt out of the class." *Id.* at 5. The preclusion of an opt out for the Historical Accounting Class pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure is consistent with the precedent in this Circuit. Although the D.C. Circuit has held

---

[1] Quapaw Tribe's Mot. to Intervene 7 (stating "the Tribe does not seek to challenge the class certification by this motion").

[2] Order (June 9, 2011) [Docket No. 3798].

that "the language of Rule 23 is sufficiently flexible to afford district courts discretion to grant opt-out rights in [Fed. R. Civ. P. 23](b)(2) class actions," *Eubanks*, 110 F.3d at 94, the exercise of that discretion is limited to situations in which permitting opt outs is necessary to facilitate the fair and efficient conduct of the action because the assumption of cohesiveness underlying certification of a (b)(2) class is inapplicable to the individual class member's claims for monetary damages or if the court determines that particular plaintiff's claims are unique or sufficiently distinct from the claims of the class as a whole, *id.* at 96-97. Otherwise, "as a general matter, courts should not permit opt-outs when doing so would undermine the policies behind . . . (b)(2) certification." *Id.* at 94-95.

It is well established that "the underlying premise of [Fed. R. Civ. P. 23] (b)(2) certification" is "that the class members suffer from a common injury that can be addressed by classwide relief . . . ." *Eubanks v. Billington*, 110 F.3d 87, 95 (D.C. Cir. 1994). On December 8, 2010, Congress enacted the Claims Resettlement Act of 2010, which is a statute authorizing, ratifying and confirming the Class Action Settlement Agreement dated December 7, 2009. The Claims Resettlement Act of 2010, Pub. L. 111-291, 124 Stat. 3064 (Dec. 8, 2010). Contingent on enactment of the statute, and pursuant to the terms of the Class Action Settlement Agreement, the plaintiffs filed an Amended Complaint that asserted that the defendants breached their trust responsibilities by failing to provide an accounting of Individual Indian Money ("IIM") accounts and defined the Historical Accounting Class as:

> [T]hose individual Indian beneficiaries (exclusive of those who prior to the filing of the Complaint on June 10, 1996 had filed actions on their own behalf stating a claim for historical accounting) alive on September 30, 2009 and who had an IIM account open during any period between October 25, 1994 and September 30, 2009, which IIM account had at least [one] cash transaction credited to it at any time as long as such credits were not later reversed. Beneficiaries deceased as of September 30,

> 2009 are included in the Historical Accounting Class only if they had an IIM account that was open as of September 30, 2009. The estate of any beneficiary in the Historical Accounting Class who dies after September 30, 2009, but before distribution is included in the Historical Accounting Class.

Amended Complaint to Compel the United States to Discharge Trust Duties and to Recover Restitution, Damages, and Other Monetary Relief for Defendants' Breaches of Trust § XI(36)(a). The Amended Complaint sought "a claim for breach of trust seeking equitable restitution to restate the IIM Accounts in accordance with the historical accounting requested . . . ." Class Action Settlement Agreement § B(3)(b). The alleged breaches of trust and failure to provide an historical accounting of the IIM accounts apply uniformly to all members of the Historical Accounting Class and the class-wide relief sought and afforded to the class members pursuant to the Class Action Settlement Agreement is equitable restitution in the form of "a per capita amount of $1,000.00" that "will be a per-person, not a per-account, payment." *Id.* § E(3)(a). This is not a case in which the class is seeking to recover other forms of monetary damages to be allocated based on individual injuries or for different amounts of damages requiring subjective considerations of each class member's claims. *See Thomas v. Albright*, 139 F.3d 227, 235 (D.C. Cir. 1998) (noting that "that whenever individual plaintiffs in a subsection (b)(2) class have claims for different amounts of damages, their interests may begin to diverge").

More to the point, the D.C. Circuit emphasized that the fact that a party "received less under the settlement agreement than they might have expected to receive had they prevailed in individual lawsuits cannot alone justify an opt-out, as no party can reasonably expect to receive in a settlement precisely what it would receive if it prevailed on the merits." *Eubanks*, 110 F.3d at 98. The Quapaw Tribe makes clear that the sole basis for its motion to intervene is to protect the "monetary interests" of its Tribe members "because the proposed Settlement amount for the

historical payments is significantly less than is likely owed to the Quapaw Members due to the Tribe's unique history."[3] Quapaw Tribe's Mot. to Intervene 5. This is not one of the "limited circumstances," *Thomas*, 139 F.3d at 235, that affords a valid basis for this Court to exercise discretion to permit selective opt outs, *Eubanks*, 110 F.3d at 98.

Given that this Circuit's precedent precludes granting an opt out right to members of the Quapaw Tribe solely on the basis that they will receive less under the Class Action Settlement Agreement than they might expect to receive if they prevail in individual lawsuits, the Historical Accounting Class is seeking primarily equitable relief for a common injury and therefore "is assumed to be a cohesive group with few conflicting interests, giving rise to a presumption that adequate representation alone provides sufficient procedural protection," *In re Veneman*, 309 F.3d 789, 792 (D.C. Cir. 2002), and there is no other legal basis for granting opt outs for the Historical Accounting Class, the class members in this case were correctly notified that, by law, they could not opt out of the Historical Accounting Class. They could, however, opt out of the Trust Administration Class, which was certified pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure and seeks "claims for breach of trust with respect to Defendants' mismanagement of trust funds and trust assets requesting damages, restitution and other monetary relief." Class Action Settlement Agreement § (B)(3)(b). Because there is no legal basis to grant the individual members of the Quapaw Tribe the right to opt out of the Historical

---

[3] The Quapaw Tribe further states that if they are not allowed to opt out of the Historical Accounting Class "they will be precluded by *res judicata* principles from pursuing these claims in their chosen forum – the U.S. Court of Federal Claims – *where they hope to receive far larger awards because their individual losses are so much greater than the proposed Settlement in this case*," Quapaw Tribe's Mot. to Intervene 15 (emphasis added) and "the named class representatives have entered into a proposed Settlement with the Government that provides *inadequate compensation* to the Quapaw Members," *id.* at 16 (emphasis added).

Accounting Class, however, the Quapaw Tribe as an organization is unable to establish that it has a right to intervene pursuant to Fed. R. Civ. P. 24(a)(2) because it has no legally-protected interest in the action. *See S.E.C. v. Prudential Sec. Inc.*, 136 F.3d 153, 156-160 (D.C. Cir. 1998) (holding that investors had no legally-protected interest in a securities lawsuit when applicable precedent precluded the investors from enforcing a consent decree by asserting that they should have received greater damages awards).

Furthermore, intervention of right does not apply because the existing parties adequately represent any interest in securing equitable restitution for the restatement of the IIM accounts in light of the government's failure to provide an historical accounting. Fed. R. Civ. P. 24(a)(2) (proscribing intervention of right when existing parties adequately represent the would-be intervenor's interest); *Karsner v. Lothian*, 532 F.3d 876, 885 (D.C. Cir. 2008) (noting that a prerequisite to intervention as of right is that "no party to the action can be an adequate representative of the applicant's interests" (internal quotation marks and cite omitted)); *Illinois v. Bristol-Myers Co.*, 470 F.2d 1276, 1278 (D.C. Cir. 1972) (finding that intervention as a matter of right did not apply because the would-be intervenor's interests were adequately represented by the existing parties). With respect to the quality of class counsel, as the Court stated during the Fairness Hearing on June 20, 2011, "after 250 days in court, and literally thousands of court docket entries, after seven trials and 10 appeals, I don't know how anyone can say that there was not adequate representation. . . . [Class counsels'] representation was consistent and with no hesitations, doing whatever they felt they had to do to try to push this litigation forward against heavy odds." Fairness Hr'g Tr. 226:6-19, June 20, 2011. Likewise, the Quapaw Tribe has presented no viable claim that the named class representatives have antagonistic or conflicting

--6--

interests and, as indicated, the many years of intense litigation in this case stand as irrefutable evidence that the class representatives were able to "vigorously prosecute the interests of the class through qualified counsel." *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997). As a result, the Quapaw Tribe's claims with respect to the historical accounting are the same as the claims asserted by the Historical Accounting Class with the only difference being that the Quapaw Tribe contends that its members are entitled to more compensation than the equitable restitution under the Class Action Settlement Agreement provides. Quapaw Tribe's Mot. to Intervene 5 (stating that the Quapaw Tribe members "were entirely satisfied with the relief sought by the class certified by this Court in 1997, which was a complete accounting of their IIM accounts" and it was "[o]nly when they learned that a settlement was being considered that would not provide this accounting and would severely restrict their recovery" that the members took issue with the class representation).

The fact that the Quapaw Tribe's chief issue with the certified Historical Accounting Class is that its individual members will reap less compensation than they otherwise might also precludes intervention as a matter of right because it defeats associational standing. Given that the nature of the Quapaw Tribe's claims appear to be for monetary damages requiring individualized proof, its members would have to be parties to the lawsuit, in which case associational standing is not appropriate. *See Warth v. Seldin*, 422 U.S. 490, 516 (1975) (Powell, J.) (rejecting associational standing when the nature of the relief requires individualized proof and, as a corollary, that the members be parties to the suit).

The Court also declines to exercise its discretion to grant permissive intervention under Fed. R. Civ. P. 24(b)(1)(B). Even if the Quapaw Tribe was granted permission to intervene on

the ground that it shares with the main action a common question of law or fact, intervention would have no effect because, as the foregoing discussion makes clear, there is no valid legal basis to allow Tribe members to opt out of the Historical Accounting Class, which is the sole claim the Tribe seeks to advance by intervening. *See Prudential Sec. Inc.*, 136 F.3d at 156 n.7 (finding no abuse of discretion when a district court denied permissive intervention on the ground that intervention "would have no effect" because the would-be intervenors lacked a legal basis to support the purpose for which intervention was sought).

## CONCLUSION

For the foregoing reasons, the Court will deny Intervenor-Applicant Quapaw Tribe of Oklahoma's (O-GAH-PAH) Motion to Intervene as a Plaintiff [Docket No. 3834]. An appropriate order consistent with this Memorandum Opinion will follow.

September 12th, 2011

Thomas F. Hogán
United States District Judge