UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**ELOUISE PEPION COBELL, et al.,**

                **Plaintiffs,**

v.

**KEN SALAZAR, Secretary of the Interior, et al.,**

                **Defendants.**

Civil. Action No. 96-01285 (TFH)

## MEMORANDUM OPINION

Pending before the Court are the following motions: (1) Plaintiffs' Unopposed Motion for Appeal Bond Pursuant to Federal Rule of Appellate Procedure 7 [Docket No. 3856], which seeks "that this Court require [Kimberly] Craven to post a bond or other security in the amount of $8,306,439.93 to ensure prompt payment of plaintiffs'-appellees' costs on affirmance of this Court's final judgment order," Pls.' First Mot. for Appeal Bond 1; (2) Plaintiffs' Second Unopposed Motion for Appeal Bond Pursuant to Federal Rule of Appellate Procedure 7 [Docket No. 3859], which makes a similar request that an $8,306,439.93 bond be imposed against the Harvest Institute Freedmen Federation, LLC, Leatrice Tanner-Brown, and William Warrior; (3) Plaintiffs' Unopposed Motion for Expedited Consideration of Plaintiff[s'] Second Unopposed Motion for Appeal Bond Pursuant to Federal Rule of Appellate Procedure 7 [Docket No. 3860]; and (4) Plaintiffs' Third Unopposed Motion for Appeal Bond Pursuant to Federal Rule of Appellate Procedure 7 [Docket No. 3869], which further requests that an $8,306,439.93 bond be

imposed against Ortencia Ford and Donnelly Villegas. For the reasons set forth below, the Court will deny all four motions.

## BACKGROUND

On August 6, 2011, Kimberly Craven filed a notice of appeal challenging this Court's final judgment approving a $3.412 billion settlement in this complex and contentiously-litigated case involving allegations that the United States breached its trust obligations by mismanaging the money, land and resource assets of more than 450,000 Indians. In response to Ms. Craven's appeal, the plaintiffs moved for the imposition of an $8,306,439.93 appeal bond pursuant to Rule 7 of the Federal Rules of Appellate Procedure ("Fed. R. App. P.") and argued that the following "costs" may be taxed against Ms. Craven under the Rule:

1. $33,523.02 for the costs of photocopying. Pls.' First Mot. for Appeal Bond 13, 19, Ex. 1, Chick Decl. ¶ 3.

2. $935.45 for the costs of binding documents. *Id.*

3. $2,526,981.46 for the fees of attorneys, paralegals and staff. Pls.' First Mot. for Appeal Bond 15, 19, Ex. 2, Smith Decl. ¶ 4.

4. $3,150,000.00 for post-judgment interest. Pls.' First Mot. for Appeal Bond at 16, 19.

5. $2,595,000.00 for the "increased cost of settlement administration." Pls.' First Mot. for Appeal Bond 19, Ex. 3, Keough Decl. ¶ 3.

The plaintiffs contend that Ms. Craven should be required to post an appeal bond that covers these costs because her appeal will "delay indefinitely class members' relief," Pls. First Mot. for Appeal Bond 4, the delay "means that more elderly and more inform class members will pass on without obtaining justice that they deserve," *id.* at 5, "she opposes settlement for personal and political reasons" that are not supported by the vast majority of the class members, *id.* at 6, she has retained a "professional objector" to advocate on her behalf, *id.* at

7, her appeal "obstructs the efforts of Secretary Salazar to implement meaningful reform because it blocks access to settlement funds appropriated by Congress to establish and operate a Secretarial Commission on Trust Reform," *id.* at 8, the "delay causes substantial financial loss by denying class members post-judgment interest on their settlement funds and by increasing materially their post-judgment administrative costs and legal fees and expenses," *id.*, an appeal bond "furthers public policy and is not an impermissible condition on appellant's statutory right to appeal," *id.*, and the bond "should be sufficient to cover the cost of defending the appeal before a three-judge panel, *en banc*, and the Supreme Court," *id.* at 10-11.

Although conceding that the Court may impose an appeal bond as "'security for payment of costs on appeal,'" Craven's Opp'n Br. 2 (quoting *In re Am. President Lines, Inc.*, 779 F.2d 714, 716 (D.C. Cir. 1985) (per curiam)), Ms. Craven nevertheless opposes the plaintiffs' proposed appeal bond on the grounds that the "costs" referred to in Fed. R. App. P. 7 are limited to those identified in Fed. R. App. P. 39, the plaintiffs' exaggerate their photocopying and binding costs, attorneys' fees and the costs of delay are not taxable costs under Fed. R. App. P. 7, her appeal is not frivolous and was brought in good faith, and Ms. Craven's attorney is not a professional objector. *Id.* at 4-18. Ms. Craven further argues that she "does not have the financial means to post a multi-million-dollar appeal bond," *id.* at 18, 21, the appeal bond will "add[] another layer of complexity" that will further delay the appeal, *id.* at 20, and the plaintiffs' motion for an appeal bond was brought in bad faith so "the Court should give appropriate consideration to sanctioning the plaintiffs for failing to cite binding authority and for misquoting multiple citations," *id.* at 23.

Three days after filing the appeal-bond motion against Kimberly Craven, the plaintiffs filed a second motion requesting than an appeal bond also be imposed against the Harvest Institute Freedmen Federation, LLC, Leatrice Tanner-Brown, and William Warrior in response to an appeal they filed in June challenging this Court's decisions denying their motion to intervene and motion for reconsideration. *See* Docket No. 3859. The Harvest Institute Freedmen Federation, Leatrice Tanner-Brown, and William Warrior never responded to the plaintiffs' motion for an appeal bond and the deadline to do so has now passed. *See* LCvR7, available at http://www.dcd.uscourts.gov/dcd/local-rules. Yesterday the plaintiffs' filed their third motion for an appeal bond against Ortencia Ford and Donnelly Villegas.

With the exception of background that is fact specific, all three of the plaintiffs' appeal-bond motions are identical and raise the same legal arguments. Because the first two appeal-bond motions and the motion for expedited review are now ripe for this Court's consideration, and all three appeal-bond motions raise the very same legal arguments, including the motion filed yesterday, this memorandum opinion will address and dispose of all the pending motions, notwithstanding that the deadline to respond to the third motion has not yet run.[1]

## DISCUSSION

**1.**  **Plaintiffs' Motions for an Appeal Bond**

Rule 7 of the Federal Rules of Appellate Procedure ("Fed. R. App. P.") states in relevant part that "[i]n a civil case, the District Court may require an appellant to file a bond

---

[1] The Court views the arguments raised in the briefs filed by the plaintiffs and Ms. Craven to adequately represent the various legal positions that could be taken with respect to the relevant issues and, to the best of the Court's knowledge and research, there is no statute or rule that prohibits the Court from ruling on the third motion without waiting for a response from the opposing party.

or provide other security in any form and amount necessary to ensure payment of costs on appeal." Fed. R. App. P. 7. "The costs referred to, however, are simply those that may be taxed against an unsuccessful litigant under Federal Appellate Rule 39, and do not include attorneys' fees that may be assessed on appeal," *In re Am. President Lines,* 779 F.2d at 716, unless an underlying statute deems attorneys' fees to be "costs," *Montgomery & Assocs. Inc. v. Commodity Futures Trading Comm'n*, 816 F.2d 783, 784 (D.C. Cir. 1987) (Bork, J.) (indicating that attorneys' fees fall within Fed. R. App. P. 39 if the underlying statute deems "costs" to include the recovery of attorneys' fees). *Accord International Floor Crafts, Inc. v. Dziemit*, Nos. 09-1555, 09-1556, 09-2349, 2011 WL 1499857, at *11 (1st Cir. 2011) (Stahl, J.) (noting that "the D.C. Circuit has . . . concluded that Rule 39 'costs' taxable in the district court do include appellate attorneys' fees when the statute underlying the appeal allows the recovery of the fees as part of costs").

Fed. R. App. P. 39 provides that the costs taxable by a district court are "(1) the preparation and transmission of the record; (2) the reporter's transcript, if needed to determine the appeal; (3) premiums paid for a supersedeas bond or other bond to preserve rights pending appeal; and (4) the fee for filing the notice of appeal." Fed. R. App. P. 39(e). In addition, Circuit Rule 39 of the Circuit Rules of the United States Court of Appeals for the District of Columbia Circuit further defines the items for which costs are allowed under Fed. R. App. P. 39, stating:

> Costs will be allowed for the docketing fee and for the cost of reproducing the number of copies of briefs and appendices to be filed with the court or served on parties, intervenors, and amici curiae, plus 3 copies for the prevailing party. The costs of reproducing the required copies of briefs and appendices will be taxed at actual cost or at a rate periodically set by the clerk to reflect the per page cost for the most economical means of reproduction available in the Washington metropolitan area, whichever is less. Charges incurred for covers and fasteners

> may also be claimed, at actual cost not to exceed a rate similarly determined by the clerk. The rates set by the clerk will be published by posting in the clerk's office and on the court's web site, and publication in The Daily Washington Law Reporter

Circuit Rule 39(a), *available at* http://www.cadc.uscourts.gov/internet/home.nsf/Content/ VL%20-%20RPP%20-%20Circuit%20Rules/$FILE/rules20091201rev20091113links.pdf. Circuit Rule 39 goes on to provide that the costs of preparing two sets of briefs and/or segments of appendices for records that are under seal may be assessed "if such costs are otherwise allowable." Circuit Rule 39(d). To erase any doubt that Circuit Rule 39 defines allowable costs, the D.C. Circuit's Handbook of Practice and Internal Procedures expressly states that "[t]he items allowed as costs are set forth in Circuit Rule 39(a)." UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIR., HANDBOOK OF PRACTICE & INTERNAL PROCEDURES 55 (as amended through April 14, 2011).

These rules and the two cited D.C. Circuit cases control this Court's analysis until the D.C. Circuit elects, if ever, to expand its interpretation of how "costs" should be defined for the purpose of a Fed. R. App. P. 7 appeal bond. Accordingly, the plaintiffs' contention that "Fed. R. App. P. 7 is the sole governing rule on appeal bonds" and "there is no other local or federal rule that limits or modifies the authority of this Court to require . . . a bond" simply is not the case. Pls.' First Mot. for Appeal Bond 3. As already indicated, the D.C. Circuit stated in *In re American President Lines*, 779 F.2d at 716, that the costs available under Fed. R. App. P. 7 are limited to those covered by Fed. R. App. P. 39, in which case Fed. R. App. P. 39 is a federal rule that limits or modifies the authority of this Court to require a bond. In addition, as the Court already cited, Circuit Rule 39 further defines the "costs" that are available under Fed. R. App. P. 39, so that local rule also applies. The Court is aware that the plaintiffs argue

--6--

in their reply brief that *In re American President Lines* is "inapposite" and not binding, but that is not a valid legal argument. It is a long-standing rule of the D.C. Circuit that "[s]tare decisis demands that we abide by a . . . decision of one panel of this court unless the panel has withdrawn the opinion or the court [e]n banc has overruled it."[2] *Brewster v. C.I.R.*, 607 F.2d 1369, 1373 (D.C. Cir. 1979) (per curiam). To date, no en banc decision of the D.C. Circuit has overruled *In re American President Lines*; as a result, the case does, in fact, bind and control this Court. Furthermore, one of the questions at issue in *In re American President Lines* was the scope of the "costs" that could be imposed pursuant to a Fed. R. App. P. 7 bond, in which case the decision is apt. 779 F.2d at 716 (considering whether the "costs" referred to in Fed. R. App. P. 7 justified the district court's imposition of a bond that exceeded the amount of the costs that otherwise could be taxed pursuant to Fed. R. App. P. 39).

Having resolved that, in this Circuit, a Fed. R. App. P. 7 appeal bond is limited to the costs taxable pursuant to Fed. R. App. P. 39, as well as attorneys' fees to the extent an underlying statute deems such fees to be "costs," the Court now turns to the question of whether the appeal bonds requested by the plaintiffs may include $2,526,981.46 in attorneys' fees. The only statute the plaintiffs cite for the proposition that attorneys' fees should be taxed as "costs" under Fed. Rule App. P. 39 and Fed. R. App. P. 7 is the Cost and Fees provision of the Equal Access to Justice Act, codified at 28 U.S.C. § 2412. Pls.' First Mot. for Appeal Bond 15. In accordance with the D.C. Circuit's decision in *Montgomery & Assocs.,* and the

---

[2] Alternatively, the D.C. Circuit also "has from time to time used the '*Irons* footnote' to overrule a prior decision without a full-blown *en banc* rehearing." *In re Sealed Case No. 97-3112*, 181 F.3d 128, 145 (D.C. Cir. 1999) (Henderson, J., concurring) (referring to footnote 11 in *Irons v. Diamond*, 670 F.2d 265 (D.C. Cir. 1981) (MacKinnon, J.)). As far as this Court can tell, *In re American President Lines* has not been overruled by use of the *Irons* footnote, however.

Supreme Court's decision in *Marek v. Chesny*, 473 U.S. 1 (1985), however, attorneys' fees are permitted only if the applicable statute deems attorneys' fees to be "costs," for example by stating that the court may award "attorney's fees 'as part of the costs,'" *Marek*, 473 U.S. at 9 (quoting 42 U.S.C. § 1988), or by stating that a prevailing party "'shall be allowed a reasonable attorney's fee to be taxed and collected as a part of his costs,'" *Montgomery & Assocs. Inc.*, 816 F.2d at 784 (quoting 7 U.S.C. § 18(e) (1982)). Here, subsection (a) of the Costs and Fees provision of the Equal Access to Justice Act states that "[e]xcept as otherwise specifically provided by a statute, a judgment for costs, . . . *but not including the fees and expenses of attorneys*, may be awarded to the prevailing party . . . ." 28 U.S.C. § 2412(a)(1) (emphasis added). In a subsequent subsection cited by the plaintiffs, the statute further states that "[u]nless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, *in addition to the costs which may be awarded pursuant to subsection (a)*, to the prevailing party . . . ." 28 U.S.C. § 2412(a)(1). By separately addressing costs vis-à-vis attorneys' fees, the statute could not be clearer that attorneys' fees are not considered to be the same thing as costs and, therefore, according to this Circuit's rules and precedent, attorneys' fees pursuant to the provisions of the Equal Access to Justice Act cited by the plaintiffs are not available under Fed. R. App. P. 39 or Fed. R. App. P. 7.

Because attorneys' fees are not taxable as Fed. R. App. P. 39 costs in this case, the only costs that are taxable for a Fed. R. App. P. 7 appeal bond are, as twice previously stated, the preparation and transmission of the record, the reporter's transcript, premiums paid for a supersedeas bond or other bond to preserve rights pending appeal, the fee for filing the notice of appeal, the docketing fee, costs of photocopying briefs and appendices, and charges for covers and fasteners. The plaintiffs assert that their anticipated photocopying and binding

costs will be $34,458.47, which is based on the costs and expenses they incurred during the last appeal in this case. Pls.' First Mot. for Appeal Bond 19, Ex. 1, Chick Decl. ¶¶ 2-3 ("Using the costs of [the prior appeal] as a guideline for quantity and applying current vendor rates and taxes, the cost for photocopying is estimated at approximately $33,523.02 and the cost for the binding of documents is estimated at approximately $935.45."). Ms. Craven counters that these costs are "wildly exaggerate[d]," Craven's Opp'n Br. 4, because the preparation of and costs of the appendix are the appellant's responsibility and the plaintiffs during this go-around are the appellees, *id.* at 4-5, the prior appeal challenged the results of a lengthy trial whereas Ms. Craven's appeal "is of a ruling relating to a one-day fairness hearing, and is restricted to questions of law and the application of law to fact," *id.* at 5, the "only taxable costs the appellees will incur are those for preparing thirteen copies of a response brief," *id.*, and "[e]ven generously assuming that such a brief will be 100 pages long, those costs are $13.58 per brief, or under $200," *id.* As noted previously, the Harvest Institute Freedmen Federation, LLC, Leatrice Tanner-Brown, and William Warrior offered no response to the plaintiffs' motion or asserted costs and the time to file such a response has not yet expired for Ortencia Ford and Donnelly Villegas.

Because the D.C. Circuit has limited the "costs" that may be taxed pursuant to a Fed. R. App. P. 7 appeal bond, the Court agrees with Ms. Craven that the plaintiffs' actual taxable costs pursuant to Fed. R. App. P. 39 will be closer to $200 than the $34,000 or so asserted by the plaintiffs. Given the plaintiffs' evidence that Ms. Craven has assets "in excess of $919,000," Pls.' Reply Br. 20, the Court is not particularly concerned about the plaintiffs' ability to recover the costs to which they might be entitled under Fed. R. App. P. 39 if they prevail against her on appeal. Moreover, it is unnecessary at this time for the Court to try to

divine the actual costs to the plaintiffs with respect to the other appellants against whom they seek an appeal bond when the plaintiffs will retain their right to move for costs pursuant to Fed. R. App. P. 39 and there is no indication that the Harvest Institute Freedmen Federation, LLC, Leatrice Tanner-Brown, William Warrior, Ortencia Ford or Donnelly Villegas will not be able to pay such costs, particularly since they paid the $455 filing fees for their appeals, *see* Docket Nos. 3817, 3854, 3863. For all these reasons, the Court will exercise its discretion by declining to order an appeal bond.

**2.     Kimberly Craven's Request for Sanctions**

After concluding that, to the extent the Court may exercise its discretion to order an appeal bond pursuant to Fed. R. App. P. 7 such a bond is limited to the costs allowed under Fed. R. App. P. 39 and attorneys' fees when deemed by an underlying statute to be "costs," the Court finds it necessary to address Ms. Craven's argument in her opposing brief that the plaintiffs' motion for a bond was brought in bad faith and warrants sanctions. While the Court is sympathetic to the plaintiffs' concern that the appeals will delay the administration and distribution of the settlement to so many people who have waited so long for justice, that does not translate into a willingness by this Court to quietly overlook the misleading case citations and unsupported legal argument throughout the plaintiffs' motions and reply brief. In several instances the plaintiffs make sweeping statements in their motions asserting that either the D.C. Circuit or this Court has established "practices" or follows certain legal principles but fail to cite any persuasive authority to back this up, and in other instances the plaintiffs cite no cases or cases that do not support the proposition asserted.

For example, on page 3[3] of their motion the plaintiffs state that "the practice of this Court" is "in accord with sister jurisdictions that impose substantial appeal bonds on non-party objectors who appeal final approval of class action settlements," but they cite only two District Court cases as precedent for such a "practice," namely *In re Dep't of Veterans Affairs (VA) Data Theft Litig.*, No. 06-mc-00506 (Robertson, J.), and *Hayhurst v. Calabrese*, No. 91-cv-2546, 1992 WL 118296 (D.D.C. 1992) (Sporkin, J.). The plaintiffs first cite the published opinion Judge Robertson issued in *In re Dep't of Veterans Affairs (VA) Data Theft Litig.* in which he actually *declined* to exercise the authority to order an appeal bond. *In re Dep't of Veterans Affairs (VA) Data Theft Litig.*, 653 F. Supp.2d 58, 61 (D.D.C. 2009) (stating that "[w]hile the plaintiffs may be correct that I have the authority to require a substantial appeal bond to secure the costs of appeal . . . I see no reason to exercise that authority at this time"). It goes without saying that a published decision *denying* an appeal bond cannot credibly be cited as establishing a "practice" of this District Court to impose appeal bonds on non-party objectors. The plaintiffs next cite Judge Robertson's unpublished November 20, 2009 order [Docket No. 83] in the same case, which granted an appeal bond, but did so summarily without any discussion at all about the reasoning for doing so. This Court is not inclined to view an unpublished summary order as establishing a "practice" of this District Court. The last case the plaintiffs cite to support their assertion that this District Court has an established "practice" of imposing substantial appeal bonds on non-party objectors is *Hayhurst v. Calabrese*, which is an unpublished decision in

---

[3] Hereinafter, all page citations refer to the plaintiffs' first appeal-bond motion and reply brief, which are Docket Nos. 3856 and 3865. The plaintiffs' second appeal-bond motion [Docket No. 3859] and third appeal-bond motion [Docket No. 3869], contain the same problems but the page numbering is not necessarily the same.

--11--

which Judge Sporkin also *denied* the motion for an appeal bond. 1992 WL 118296, at *1. Similarly, on page 10 the plaintiffs' motion states that "[t]he practice of this Court is in accord . . . that bonds of more than $200,000 in cases far less complex and costly than this historic trust case are appropriate to secure an appellant's payment of appellees' costs." Again, though, the only precedent the plaintiffs cite to support this claim is Judge Robertson's unpublished November 20, 2009 summary order granting an appeal bond in *In re Dept. of Veterans Affairs (VA) Data Theft Litig.* The plaintiffs' further state on page 11 of their motion that "[t]his Court" has "repeatedly" ordered "an adequate appeal bond to 'ensure payment of costs on appeal,'" but they again cite Judge Robertson's opinion declining to issue an appeal bond, Judge Robertson's summary order granting an appeal bond without analysis, and Judge Sporkin's decision denying the motion for an appeal bond.[4] Frankly, the Court is surprised that the plaintiffs would assert that this District Court has a "practice" of any sort and then rely on two decisions (one published and one not) that are contrary to that position and an unpublished summary order that establishes no real precedent to make such a claim.[5]

---

[4] The plaintiffs also cite the Supreme Court's decision in *Marek*, which has nothing to do with appeal bonds whatsoever. *Marek* involved the Supreme Court's interpretation of the interplay between the costs defined in an underlying federal statute as applied to the term "costs" in Fed. R. App. P. 68, which deals with offers of judgment, not appeal bonds. 473 U.S. at 7-11.

[5] The Court notes that, on page 13 of their reply brief, the plaintiffs also state, as mentioned previously, that *In re American President Lines* "is not binding precedent, and is not controlling law in this circuit *as the circuit and this Court have recognized*." Pls.' Reply Br. 13 (emphasis added). The plaintiffs cite no case in which the D.C. Circuit states, either expressly or impliedly, that *In re American President Lines* is no longer binding or controlling. Instead, the plaintiffs again resort to Judge Robertson's November 20, 2009 unpublished order in *In re Dep't of Veterans Affairs (VA) Data Theft Litig.*, in which he summarily granted a Fed. R. App. P. 7 appeal bond without any explanation about his bases for doing so. Nowhere in Judge Robertson's unpublished order does he even mention *In re American President Lines*, however. Consequently, that unpublished summary order cannot be cited as a recognition by either the D.C. Circuit or the District Court that *In re American President Lines* is not binding or controlling.

In addition to claiming without support that this Court has established "practices," the plaintiffs also repeatedly assert that the D.C. Circuit has "construed" Fed. R. App. P. 7 in a certain way without offering any precedent for the asserted construction. For example, on page 9 of their motion the plaintiffs state that "[t]his Circuit . . . [has] construed Rule 7 costs to include attorneys' fees for the preparation and compilation of the record for appeal" but cite no D.C. Circuit case, indeed they cite no case at all, to support this argument. On page 13, the plaintiffs further state that "[t]his circuit . . . has construed Rule 7 costs to include . . . the increased cost of the claims administrator and post judgment interest on the settlement amount" and that "[t]he practice of this Court is in accord," but cite no D.C. Circuit case–again, they cite no case at all–to demonstrate that the "Circuit" has so construed the rule, which is not surprising since there appears to be no such case. The plaintiffs also fail to cite any District Court cases to support their assertion that there is a "practice" in accord with the unsupported Circuit construction. If the plaintiffs have identified cases in which the D.C. Circuit has construed Fed. R. App. P. 7 to include attorneys' fees for the preparation and compilation of the record for appeal or the increased costs of the claims administrator and post-judgment interest, then the Court welcomes them to file a praecipe providing the citations for those cases.

The plaintiffs also cited cases for propositions the cases did not support. On page 9 of their motion the plaintiffs state that "since the Supreme Court first established the right of a non-party objector to appeal in *Devlin v. Scardelletti*, the objector's obligation to post . . . an appeal bond is common in class action litigation," but the first cited case supporting this point, *Adsani v. Miller*, 139 F.3d 67 (2d Cir. 1998) (Parker, J.), is not a class action case and does not involve a non-party objector. In the second cited case, *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2010 WL 5147222, at *6 (W.D. Ky. 2010) (Russell, J.), the

district court denied the motion for an appeal bond. And the last case cited for this proposition, *O'Keefe v. Mercedes-Benz United States, LLC*, 214 F.R.D. 266 (E.D. Pa. 2003) (Van Antwerpen, J.), is an unpublished opinion that does not address appeal bonds at all.

As a further example, on page 14 of the motion the plaintiffs state that "[t]he majority rule among jurisdictions is that attorneys' fees should be included in an appeal bond where the litigation involves an underlying statute with a fee-shifting provision," and they quote part of a sentence from *International Floor Crafts*, 2011 WL 1499857, at *17, in which the district court stated that "we endorse the majority view that a Rule 7 bond may include appellate attorneys' fees if the applicable statute underlying the litigation contains a fee-shifting provision . . . ."[6] The plaintiffs' selective quotation appears to suggest that, as a general rule, so long as the underlying statute contains a fee-shifting provision then attorneys' fees may be included as part of the costs of an appeal bond under Fed. R. App. P. 7. The plaintiffs omit the rest of the quoted sentence, however, which goes on to state that the fee-shifting provision must "account[] for such fees in its definition of recoverable costs . . . ." *Id.* Thus, *International Floor Crafts* does not stand for the oversimplified proposition that attorneys' fees may be part of a Fed. R. App. P. 7 appeal bond if the underlying statute contains a fee-shifting provision; to the contrary, the underlying statute also must define attorneys' fees to be part of "costs." *Id.*

In their reply brief the plaintiffs state that they "have not requested that this Court include Rule 38 costs in its pending motion for an appeal bond," Pls.' Reply Br. 3, but in their original motion asserting that the administrative costs of delay are warranted two of the cases they rely on involve situations in which such costs are allowed pursuant to Fed. R. App. P. 38 because the appeals were considered frivolous. Pls.' First Mot. 17 (citing *In re Compact Disc*

---

[6] The Court notes that, whereas it has denoted that only part of the sentence was quoted by inserting ellipses, the plaintiffs did not so denote the quotation in their motion.

--14--

*Minimum Advertised Price Antitrust Litig.*, No. MDL 1361, 2003 WL 22417252, *1 (D. Me. 2003) (Hornby, J.) (holding that "damages resulting from delay or disruption of settlement administration caused by a frivolous appeal" may be included in a Fed. R. App. P. 7 bond because "in the First Circuit a Rule 7 bond *can* cover damages assessed under Fed. R. App. P. 38"); *In re Pharm. Indus. Average Wholesale Price Litig.*, 520 F. Supp.2d 274, 279 (D. Mass. 2007) (Saris, J.) (same)). Likewise, in another cited case, *In re Wal-Mart Wage & Hour Emp't Practices Litig.*, No. MDL 1735, 2010 WL 786513, *2 (D. Nev. 2010) (Pro, J.), the imposition of administrative costs of delay was based on the fact that the district court found the appeals to be "frivolous and . . . tantamount to a stay of the Judgment entered by this Court," which also suggests that Fed. R. App. P. 38 was the basis for awarding administrative costs of delay. The plaintiffs cannot credibly state that they are not requesting Fed. R. App. P. 38 costs but then rely on cases that grant such costs pursuant to that rule.

The Court recognizes that sometimes a litigant's resort to persuasive writing versus objective writing leads to unwitting overzealousness in the presentation of arguments, but the plaintiffs' motion and reply brief go beyond fair advocacy and border on misrepresentation. The Court cannot condone sweeping representations that either the D.C. Circuit or this District Court has established "practices," that the D.C. Circuit has construed rules in ways that it has not, or that this Court essentially can exercise carte blanch with respect to an appeal bond when there plainly is no support for such a representation and the applicable precedent and rules in this jurisdiction provide otherwise. It is unclear to the Court whether the unsupported arguments and representations in the plaintiffs' briefs were intentional, the result of carelessness and haste, or otherwise can be reasonably explained. Although the Court does not believe sanctions are warranted at this time, it will order lead plaintiffs' counsel to file a

declaration addressing each of the concerns raised by the Court with respect to the plaintiffs' motions.

## CONCLUSION

For the foregoing reasons, the Court will deny Plaintiffs' Unopposed Motion for Appeal Bond Pursuant to Federal Rule of Appellate Procedure 7 [Docket No. 3856], Plaintiffs' Second Unopposed Motion for Appeal Bond Pursuant to Federal Rule of Appellate Procedure 7 [Docket No. 3859], and Plaintiffs' Third Unopposed Motion for Appeal Bond Pursuant to Federal Rule of Appellate Procedure 7 [Docket No. 3869]. In light of the disposition of these motions, the Court also will deny as moot Plaintiffs' Unopposed Motion for Expedited Consideration of Plaintiff[s'] Second Unopposed Motion for Appeal Bond Pursuant to Federal Rule of Appellate Procedure 7 [Docket No. 3860]. An appropriate order consistent with this Memorandum Opinion will follow.

October 5, 2011 /s/ *Thomas F. Hogan*
Thomas F. Hogan
United States District Judge