IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ELOUISE PEPION COBELL, et al., | ) ) ) | |
| Plaintiffs, | ) | |
| v. | ) ) | No. 1:96CV01285(TFH) |
| KEN SALAZAR, Secretary of the Interior, et al., | ) ) ) ) | |
| Defendants. | ) ) ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR
MOTION TO RELEASE ESCROWED FUNDS**

Plaintiffs submit this memorandum in support of their request that this Court release to Kilpatrick Townsend & Stockton LLP ("Kilpatrick") the sum of $13,616,250.84 in attorneys' fees currently being withheld in the Settlement Fund (the "Escrowed Funds") because of the claims of the Native American Rights Fund ("NARF") and Mark Kester Brown ("Brown") (collectively "Intervenors"). *See Order Granting Final Approval to Settlement* ("Final Approval Order") dated July 27, 2011 [Dkt. No. 3850] at ¶ 15.

The Escrowed Funds were expressly appropriated by Congress for the settlement of this action. Under the Appropriations Clause of the United States Constitution, Congress has plenary authority to direct the manner in which these funds are to be distributed, including to whom awards of attorneys' fees and expenses may be made. Congress has directed that such awards be made from the settlement funds only to "Class Counsel" – a specifically defined term in the Settlement Agreement and Claims Resolution Act that does not include Intervenors. Congress' decision cannot be challenged by Intervenors in this Court. Accordingly, he Escrowed Funds

should be disbursed as directed by Congress – to "Class Counsel," Kilpatrick Townsend & Stockton LLP.

## I. BACKGROUND

This Court previously recounted the history of this case in its Final Approval Order. As this Court explained, after a decade and a half of contentious litigation a settlement was negotiated "at arms length over the course of several months[.]" *Id*. at 3. Authorization of that settlement required legislation by Congress. Over the course of the following year, "Congress held hearings, vetted the terms of the settlement, and caused the parties to agree to certain additional modifications." *Id*. at 3.

> Then:
>
> In 2010, Congress enacted the Claims Resolution Act of 2010 ("the CRA"), Pub. L. No. 111–291, 124 Stat. 3064 (Dec. 8, 2010), which "authorized, ratified, and confirmed" the proposed settlement, *id.* § 101(c)(1). It also authorized the district court to certify the Trust Administration Class without regard to the requirements of the Federal Rules of Civil Procedure, and provided that such a certification would be treated as a certification pursuant to Rule 23(b)(3). *Id.* § 101(d)(2). **The CRA appropriated funds including funds for the settlement and land-consolidation funds**. *Id.* § 101(e)(1)(C)(I), (j)(1)(A).

*Cobell v. Salazar*, 679 F.3d 909, 915 (D.C. Cir. 2012) (emphasis added). As the Court of Appeals for the D.C. Circuit has noted, "this case is extraordinary in that Congress not only expressly authorized, ratified, and confirmed the settlement, **but also appropriated $3.4 billion to fund it**." *Id*. at 918 (emphasis added); *see also* CRA §§ 101(e)(1)(C)(i), 101(j)(1)(A), 101(k)(2) (directing the Secretary of the Treasury to deposit funds from the general judgments appropriations fund to create the Trust Land Consolidation and Trust Administration Adjustment Funds). The President signed the CRA into law on December 8, 2010.

The Settlement Agreement adopted by Congress and signed into law by the President specifically designates those attorneys that pursued this case to its conclusion:

2

> **"Class Counsel" shall mean Dennis Gingold, Thaddeus Holt[1], and attorneys from Kilpatrick Stockton LLP [now Kilpatrick Townsend & Stockton LLP], including Elliott H. Levitas, Keith Harper, William Dorris, David Smith, William Austin, Adam Charnes and Justin Guilder.**

Settlement Agreement [Dkt. No. 3660-2] at 9, ¶ A(7) (emphasis and alteration added). The CRA repeatedly makes clear that Congress incorporated this definition by reference into the legislation, including those provisions of the CRA providing for attorney fee and expense awards:

- Pursuant to CRA § 101(b), Congress "authorized, ratified, and confirmed" the Settlement Agreement.

- Under CRA § 101(g), Congress provided for "Incentive Awards and Award of Attorneys' Fees, Expenses, and Costs **Under the Settlement Agreement**." (Emphasis added).

- CRA § 101(g)(2) provides that "**Class Counsel**" may submit requests for attorneys' fees and expenses under paragraph C.1.d of the Settlement. (Emphasis added).

- Fee and expense requests under Section 101(g)(2) "shall include a description of all material provisions of the Agreement on Attorneys' Fees, Expenses, and Costs." *Id*. "The term 'Agreement on Attorneys' Fees, Expenses, and Costs' means the agreement dated December 7, 2009, between **Class Counsel (as defined in the Settlement)** and the Defendants (as defined in the Settlement) relating to attorneys' fees, expenses, and costs **incurred by Class Counsel** in connection with the Litigation and implementation of the Settlement, as modified by the parties to the litigation." CRA § 101(a)(1) (emphasis added) (parentheticals in original).

---

[1] Dennis Gingold and Thaddeus Holt withdrew from this case on December 4, 2012. *See Notice of Withdrawal of Appearance* dated December 4, 2012 [Dkt. No 3919]. They have released any interest they had in the Escrowed Funds to Kilpatrick.

Notwithstanding the CRA's express limitation on the attorneys entitled to receive fee awards and recover expenses for their work on this case, NARF and Brown, neither of whom are "Class Counsel" under the CRA or Settlement Agreement, intervened in this action and filed petitions to be awarded attorneys' fees and expenses. [Dkt. Nos. 3681, 3699, 3714, 3752.]

On July 27, 2011, this Court approved an award of attorneys' fees and ordered that the majority of those fees be disbursed to the attorneys defined as "Class Counsel" in the Settlement Agreement and CRA, including Kilpatrick. [Dkt. No. 3850 at ¶ 15.] However, the Court ordered that the remaining $13,616,250.84 be withheld in the Settlement Account pending resolution of Intervenors' claims. (*Id.*) Those claims should now be denied and the Escrowed Funds be distributed as directed by Congress.

## II. ARGUMENT

### A. Congress Has Plenary Power to Determine Who May Receive Attorneys' Fees From the Settlement Fund.

The Appropriations Clause of the U.S. Constitution states that "[n]o Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law[.]" U.S. Const., Art. I, Sec. 9, Cl. 7. This clause is a "bulwark of the Constitution's separation of powers among the three branches of the National Government." *Dept. of the Navy v. Fed. Labor Relations Auth.*, 665 F.3d 1339, 1347 (D.C. Cir. 2012). It "protects Congress's exclusive power over the federal purse," and conveys a "straightforward and explicit command: No money can be paid out of the Treasury unless it has been appropriated by an act of Congress." *Id.* at 1346 (citing *Rochester Pure Waters Dist. v. EPA*, 960 F.2d 180, 185 (D.C. Cir. 1992) and *Office of Personnel Mgmt. v. Richmond*, 496 U.S. 414, 424 (1990)). Congress's control over federal expenditures is "absolute." *Rochester*, 960 F.2d at 185; *see also Walker v. United States*, 912 F.2d 819, 829, n.14 (5th Cir. 1990) ("the Constitution vests Congress with plenary power to withhold or

4

disburse federal money" and "'not a dollar of it can be used in the payment of anything not previously sanctioned'") (*quoting Reeside v. Walker*, 52 U.S. 272, 291 (1850)).  Its authority to direct how appropriated funds are distributed is "strictly enforced."  *Dept. of the Navy*, 665 F.3d at 1342.  The Appropriations Clause prevents the other branches of the federal government "from **even inadvertently** obligating the Government to pay money without statutory authority." *Id.* at 1347 (emphasis added); *see also U.S. Dept. of Air Force v. Fed. Labor Relations Auth.*, 648 F.3d 841, 845 (D.C. Cir. 2011) (Congress' exclusive control over appropriated funds is not subject to equitable or judicially created exceptions).

The Appropriations Clause "is not self-defining and Congress has plenary power to give meaning to the provision.  The Congressionally chosen method of implementing the requirements of Article I, section 9, clause 7 is to be found in various statutory provisions." *Harrington v. Bush*, 553 F.2d 190, 194-95 (D.C. Cir. 1977).  Congress has reiterated by statute that "[a]ppropriations shall be applied only to the objects for which the appropriations were made except as otherwise provided by law."  31 U.S.C. § 1301(a) (2012).

The restraints of the Appropriations Clause directly apply to distribution of the funds under the CRA.  When Congress grants the courts jurisdiction to enter a judgment against the United States, it appropriates funds to pay that judgment.  *Nat'l Ass'n of Reg'l Councils v. Costle*, 564 F.2d 583, 590 n.16 (D.C. Cir. 1977).  "If there is no such appropriation out of which a judgment can be paid, the courts still cannot order that it be satisfied, since the matter of whether or not an appropriation will be made rests wholly upon the determination of Congress, and with that determination [the] court has nothing to do."  *Id.* (citing *Hetfield v. United States*, 78 Ct. Cl. 419, 422 (1933)) (internal quotation marks omitted).  Therefore, the Appropriations Clause presents an "elementary constitutional stumbling block" because without funds

appropriated to satisfy a particular claim "the federal courts are without authority to provide monetary relief." *City of Houston v. Dep't of Hous. and Urban Dev.*, 24 F.3d 1421, 1428 (D.C. Cir. 1994) (rejecting a claim for payment of federal housing grant funds when the relevant appropriation had lapsed); *see also Rochester*, 960 F.2d at 184 (It is "beyond dispute that a federal court cannot order the obligation of funds for which there is no appropriation."); *Nat'l Ass'n of Reg'l Councils*, 564 F.2d at 590 ("[U]nless a court can rely on a statutory authorization, it simply lacks the power to order the obligation of public funds, regardless of how appropriate a remedy the order would be.").

Accordingly, courts have no discretion to deviate from Congress' directions regarding the distribution of funds appropriated to satisfy judgments against, or settlements with, the United States. By way of example, *Chippewa Cree Tribe of Rocky Boy's Reservation v. United States*, 85 Fed. Cl. 646 (2009), involved two suits by descendants of the Red Lake and Pembina bands of Chippewa Indians against the United States, challenging compensation for lands located in North Dakota and Minnesota. These suits resulted in two awards from the Indian Claims Commission, referred to as the 1964 Award and the 1980 Award. *Id*. at 650-51. Congress appropriated funds to satisfy these awards in two acts – the 1971 Distribution Act and the 1982 Distribution Act, collectively creating the Pembina Judgment Fund ("PJF"). These Acts provided for distribution of the appropriated settlement funds to enrolled members of certain listed beneficiary tribes. The 1982 Distribution Act also allowed the Secretary of the Interior to make distributions to non-member lineal descendants of the Pembina tribe members listed on a May 30, 1917 tentative roll of the Rocky Boy Indians ("the 1917 Roll"). *Id*. at 652-53.

Two individuals moved to intervene in the case to assert claims to the settlement funds, claiming that they were non-member lineal descendants of tribal members who were listed on a

1908-1909 roll ("the 1909 Roll") but omitted from the 1917 Roll. *Id*. These intervenors claimed that because their ancestors were listed on the 1909 Roll, they were in-fact members of the Pembina band and entitled to be beneficiaries of the PJF. They argued they were consequently entitled to receive payments under the 1971 and 1982 Distribution Acts. *Id*. at 652. The Court rejected these arguments and denied the motions to intervene.

With respect to the intervenors' contention that the 1917 Roll that omitted their ancestors was flawed and did not accurately represent tribal membership, and thus those entitled to receive distributions from the PJF, the court stated:

> Congress, through the 1971 Distribution Act and the 1982 Distribution Act, determined who should receive the amounts awarded by the 1964 Award and the 1980 Award to the Pembina Band of Chippewa Indians. Accordingly, any damages awarded will respect the determination of Congress of the persons entitled thereto. Neither Proposed Intervenors, nor their ancestors, were included on the 1917 Roll used by defendant to determine beneficiaries of the PJF. Proposed Intervenors therefore do not hold an interest which the substantive law recognizes as belonging or being owned by them, and the court declines Proposed Intervenors' invitation to disregard Congress' determination in a matter which Congress' power is plenary.

*Id*. at 656 (internal citations and alterations omitted); *see also First Nat'l City Bank of new York v. Gillilland*, 257 F.2d 223, 226-27 (D.C. Cir. 1958) (holding that a plaintiff could not challenge Congress' delegation of "unreviewable" authority to a claims commission to approve or deny distributions from the appropriated Soviet Claims fund, because Congress could have expressly disqualified plaintiff from receiving distributions of appropriated settlement funds in the first instance); *Blackhawk Heating & Plumbing Co. v. United States*, 1979 WL 16461, at *16 (Ct. Cl. Mar. 14, 1979) (amendment to appropriations act prevented Veterans Administration from making continued payments under a settlement agreement with a construction contractor in the absence of Congressionally mandated prerequisites: an audit and recognition of the settlement in a later appropriations act).

7

The limitations imposed on a court's discretion to deviate from a congressional mandate regarding use of appropriated funds applies equally to provisions in that legislation concerning attorneys' fees.  *See, e.g., Calloway v. District of Columbia*, 216 F.3d 1 (D.C. Cir. 2000) (recognizing Congress' power to control awards of attorneys' fees from appropriated funds); *Nesbit v. Frederick Snare Corp.*, 96 F.2d 535 (D.C. Cir. 1938) (upholding Congressional authority to limit attorneys' fees to 10% of the amount appropriated to pay a claim).

In this case, all of the settlement funds, including those retained in the Settlement Account pursuant to this Court's Final Approval Order, were appropriated by Congress. *See Cobell*, 679 F.3d at 918 (Congress appropriated $3.4 billion to fund the Settlement); CRA §§ 101(e)(1)(C)(i), 101(j)(1)(A), 101(k)(2). Congress has exercised its exclusive authority in directing the manner in which those appropriated funds are to be distributed, including to whom attorneys' fee and expense awards may be made. That determination may not be altered as requested by Intervenors.

### B. Congress Expressly Identified in the CRA Those Attorneys Who May Receive Payment of Fees and Expenses Out of the Funds Appropriated for Settlement.

When Congress' intent is unambiguously expressed in the statutory text, that plain language controls the question before the court. *See Consumer Prod. Safety Comm'n v. GTE Sylvania*, 447 U.S. 102, 108 (1980); *see also McHugh v. Rubin*, 220 F.3d 53, 57 (2d Cir. 2000) (holding that the plain language of an appropriations act prohibited the ATF from investigating or acting upon applications for federal firearms disabilities). That is the case here. The plain language of the CRA repeatedly confirms that only Class Counsel is entitled to recover attorneys' fees or expenses from the funds held in the Settlement Account; accordingly, Intevenors may not be paid from such funds.

CRA § 101(g) provides for "Incentive Awards and Award of Attorneys' Fees, Expenses, and Costs **Under the Settlement Agreement**." (Emphasis added).  That section further provides that "[t]he description of the request of **Class Counsel** under paragraph C.1.d of the Settlement shall include a description of all material provisions of the Agreement on Attorneys' Fees, Expenses, and Costs." *Id*. § 101(g)(2) (emphasis added).  "The term 'Agreement on Attorneys' Fees, Expenses, and Costs' means the agreement dated December 7, 2009, between **Class Counsel (as defined in the Settlement)** and the Defendants (as defined in the Settlement) relating to attorneys' fees, expenses, and costs **incurred by Class Counsel** in connection with the Litigation and implementation of the Settlement, as modified by the parties to the litigation." CRA § 101(a)(1) (emphasis added) (parentheticals in original).  It is clear that Congress limited awards of attorneys' fees, expenses and costs to those provided for in the Settlement Agreement and provided that such requests may only be submitted by "Class Counsel" as that term is defined in the Settlement Agreement.

The Settlement Agreement's definition of that term could not be more plain:

> **"Class Counsel" shall mean Dennis Gingold, Thaddeus Holt, and attorneys from Kilpatrick Stockton LLP [now Kilpatrick Townsend & Stockton LLP], including Elliott H. Levitas, Keith Harper, William Dorris, David Smith, William Austin, Adam Charnes and Justin Guilder.**

Settlement Agreement [Dkt. No. 3660-2] at 9, ¶ A(7) (emphasis and alteration added). Lest there be any remaining question, the CRA makes clear that Congress expressly "authorized, ratified, and confirmed" the Settlement Agreement, including the express definition of "Class Counsel" therein.  CRA § 101(b);  *Cobell*, 679 F.3d at 918.  Intervenors are simply not included in that definition.

Congress' absolute authority under the Appropriations Clause to control distribution of the settlement funds, and its express direction regarding who constitutes "Class Counsel" entitled

9

to receive fee and expense awards from those funds, are dispositive of the issue before the Court. However, it is worth noting that government did not agree to, and Congress did not adopt, a boilerplate settlement. The Settlement and CRA were the result of months of negotiation, vetting and revision by the government and Congress. [*See* Dkt. No. 3850 at 2-3.] Intervenors may disagree with the conclusion that was ultimately reached by Congress regarding the availability of attorneys' fees and the express definition of Class Counsel. However, the decision not to include Intervenors is firmly committed to Congress and cannot be challenged by Intervenors in this Court.

## III.   CONCLUSION

For the foregoing reasons, and those stated in Plaintiffs' Motion to Release Escrowed Funds, Plaintiffs respectfully request that the Court disburse the funds held in escrow pursuant to its Final Approval Order to Kilpatrick Townsend & Stockton LLP.

Respectfully submitted on January 3, 2013.

/s/ Keith M. Harper
KEITH M. HARPER
D.C. Bar No. 451956
DAVID COVENTRY SMITH
D.C. Bar No. 998932
KILPATRICK TOWNSEND & STOCKTON, LLP
607 14th Street, N.W., Suite 900
Washington, D.C.  20005
(202) 508-5844

WILLIAM E. DORRIS
Georgia Bar No. 225987
Admitted *Pro Hac Vice*
KILPATRICK TOWNSEND & STOCKTON, LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia  30309
404-815-6500

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO RELEASE ESCROWED FUNDS was served on the following via facsimile, pursuant to agreement, on this day, January 3, 2013.

Earl Old Person (*Pro se*)
Blackfeet Tribe
P.O. Box 850
Browning, MT 59417
406.338.7530 (fax)

/s/ David C. Smith