## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ELOUISE PEPION COBELL, *et al.*,      )
                                                )
                    Plaintiffs,      )
                                                )
    v.                                          )       Civil Action No.
                                                 )       1:96CV01285 (TFH)
                                                 )
SALLY JEWELL, Secretary of the Interior, *et al.*,)
                                                )
                 Defendants.     )

### PLAINTIFFS' MOTION TO APPROVE AN INTERIM PAYMENT TO CLASS COUNSEL FOR POST-SETTLEMENT FEES AND EXPENSES

Plaintiffs move the Court for an Order approving an interim payment to Kilpatrick Townsend & Stockton LLP of $11,250,000.00 out of the Settlement Account for post-settlement work by Class Counsel. This Motion is supported by a summary of the fees, expenses and costs (Exhibit A) and the Affidavits of William E. Dorris, Dennis M. Gingold, Geoffrey Rempel, and Paul F. Brinkman.

> **1.**    **The parties agreed that up to $12 million of the approximately $1.5 billion deposited in the Settlement Account would be available to pay Class Counsel for post-settlement services.**

The Settlement Agreement dated December 7, 2009 provided for the payment of post-settlement attorneys' fees, expenses and costs incurred subsequent to the settlement at reasonable intervals as ordered by the Court. Settlement Agreement, ¶ J.4.[1] It also provided that the reasonable time spent representing plaintiffs after the settlement would be compensated at the "actual hourly billing rates." *Id.* The Settlement Agreement stated:

---

[1] The Settlement Agreement was previously filed as Dkt 3660-2.

> Attorneys' fees, expenses and costs incurred subsequent to the date of this Agreement shall, upon Final Approval, be paid at reasonable intervals as ordered by the Court.  Reasonable time spent after this Agreement in representing the Plaintiffs, including but not limited to preparing fee applications, shall be compensated at the actual hourly billing rates.  Defendants may respond to, and Class Members may object to, any petitions for post-Agreement attorneys' fees, expenses and costs, and Plaintiffs may reply to such response and objections.

*Id.*

The Settlement Agreement also made it clear that the amount to be paid for attorneys' fees, expenses and costs was within the discretion of the Court in accordance with controlling law, stating:

> The amount to which Plaintiffs are entitled for attorneys' fees, expenses and costs are within the discretion of the Court in accordance with controlling law, after receipt and consideration of Class Members' objections, Defendants' responses and Plaintiffs' replies.

*Id.* at ¶ J.5.

Pursuant to the Agreement on Attorneys' Fees, Expenses, and Costs, the parties agreed that Class Counsel could seek to be paid up to $10 million for attorneys' fees, expenses and costs incurred after December 7, 2009.  Agreement on Attorneys' Fees, ¶ J.5.[2] It also provided that statements regarding Class Counsel's rates are to be filed, along with daily time, expense and cost records:

> Plaintiffs may submit a motion for Class Counsel's attorneys' fees, expenses, and costs incurred after December 7, 2009, up to $10,000,000.00.  Such motion shall be based solely on attorney hours and actual billing rates and actual expenses and costs incurred, and may not be justified by any other means (such as a percentage of the class recovery).  Such motion shall be resolved in such manner as directed by the Court.  Concurrently with any motion for post Agreement attorneys' fees, expenses, and costs, Plaintiffs shall file statements regarding Class Counsel's billing rates, as well as complete and

---

[2] The Agreement on Attorneys' Fees, Expenses and Costs was previously filed as Dkt 3660-16.

contemporaneous daily time, expense, and cost records supporting this motion.

*Id.*

The Settlement Agreement contemplated that Congress would promptly approve the Settlement Agreement by December 31, 2009, which was referred to as the "Legislation Enactment Deadline." Settlement Agreement, ¶ A.22. Specifically, the Settlement Agreement provided:

> The Parties agree that the Settlement is contingent on the enactment of legislation to authorize or confirm specific aspects of the Settlement as set forth below. If such legislation, which will expressly reference this Agreement, is not enacted on or before the Legislation Enactment Deadline as defined in this Agreement, unless such date is mutually agreed to be extended by the Parties, or is enacted with material changes, the Agreement shall automatically become null and void.

Settlement Agreement, p. 2.

However, when it became apparent that Congress would not act on the legislation prior to December 31, 2009, the parties agreed on December 29, 2010 to amend the Settlement Agreement to extend the Legislation Enactment Date to February 28, 2010. *See* Modification to Class Action Settlement dated December 29, 2010.[3] At the same time, and because it was clear that plaintiffs may incur greater attorneys' fees, the parties amended the Agreement on Attorneys' Fees to increase the maximum amount of post-settlement fees which would be available from $10 million to $12 million. Modification of December 7, 2009 Agreement on Attorneys' Fees, Expenses and Costs dated December 29, 2009, ¶¶ 3-6.[4]

---

[3] The December 29, 2010 Modification to Class Action Settlement was previously filed as Dkt 3660-5.

[4] The December 29, 2009 Modification to Agreement on Attorneys' Fees, Expenses and Costs was previously filed as Dkt 3660-17.

When the Claims Resolution Act of 2010 ("CRA") was signed into law in December 2010, it expressly "authorized, ratified and confirmed" the settlement.  CRA, Pub. L. 111-291, 124 Stat. 3064 (2010), §101(c).[5]  It also provided that the Court was to decide the amount of attorneys' fees in accordance with controlling law, giving due consideration to the special status of the plaintiffs as beneficiaries of a federally created and administered trust. *Id.* at § 101(g)(1).  Congress required Class Counsel to provide notice of the terms of the Agreement on Attorneys' Fees, Expenses and Costs in their fee petitions.  *Id.* at § 101(g)(2). Congress also made it clear that the CRA was not intended to affect the enforceability of the Agreement on Attorneys' Fees, Expenses and Costs.  *Id.* at § 101(g)(2)(3).

Following the Fairness Hearing on June 20, 2011, this Court entered an Order Granting Final Approval to Settlement on July 27, 2011 [Dkt 3850] and Judgment on August 4, 2011 [Dkt 3853].  The United States Court of Appeals for the D.C. Circuit issued two decisions on May 22, 2012, affirming this Court's judgment.  *Cobell v. Salazar,* 679 F.3d 909 (D.C. Cir. 2012), cert. denied, 133 S. Ct. 543 (2012); *Cobell v. Salazar,* 2012 WL 1884702 (D.C. Cir. 2012), cert. dismissed, 133 S. Ct. 593 (2012).  The United States Supreme Court denied the petition for a writ of certiorari in one of the appeals on October 29, 2012 and the other petition was dismissed on November 6, 2011 based on the stipulation of the parties.  *Id.*  As a result, the Judgment became final in late November 2012 and the distribution phase was able to begin.

Altogether, approximately $1.5 billion has been deposited into the Settlement Account.  Of that amount, according to the agreement of the parties and the CRA, up to $12 million is available to pay Class Counsel post-settlement fees, expenses and costs as

_____

[5] A copy of the Claims Resolution Act of 2010 was filed as Dkt 3660-3.

determined by this Court in accordance with the parties' agreements and controlling law giving due consideration to the special status of Class Members as beneficiaries of a federally created and administered trust.

> **2.      Following the settlement, Class Counsel have continued to diligently work on behalf of the plaintiffs.**

Following the execution of the Settlement Agreement on December 7, 2009, Class Counsel has continued to represent plaintiffs.  From December 8, 2009 through June 30, 2013, Class Counsel have recorded 23,658.8 hours of work reasonably spent representing plaintiffs. Dorris Affidavit, ¶ 40.

To appreciate the post-settlement work of Class Counsel, it is helpful to divide the post-settlement period into four relatively distinct phases, as follows:

| | |
|---|---|
| Legislative and Outreach Phase | December 2009 – November 2010 |
| Judicial Approval Phase | December 2010 – July 2011 |
| Appellate Phase | August 2011 – November 2012 |
| Distribution Phase | November 2012 – continuing |

Dorris Affidavit, ¶ 8.

Legislative and Outreach Phase.  Following the execution of the Settlement Agreement on December 7, 2009, Class Counsel's primary tasks were to communicate with the plaintiff classes regarding the settlement and to advocate that Congress enact the necessary legislation authorizing and approving the settlement.  *Id.* at ¶ 9.  In fulfilling this first task, Class Counsel undertook an extensive personal outreach program to the plaintiff classes, traveling thousands of miles throughout the western United Sates to hold over 25 meetings in person at Indian reservations and other communities spread across 15 states to inform individual class members of the terms of the settlement and to answer their questions. *Id.* at ¶ 10.

Throughout this phase, Class Counsel communicated to the plaintiff classes through phone calls, correspondence, a dedicated "hotline," Class Counsel's special website, and the press and media. *Id.* at ¶¶ 12-13. Class Counsel also communicated with and attended meetings of tribal organizations and communicated directly with tribal leaders throughout the country to explain the terms of the settlement and garner support for it. *Id.* at ¶ 11.

Class Counsel's other main task during this phase was advocating for the passage of the necessary legislation to authorize and approve the settlement. *Id.* at ¶ 14. This work in advocating for the legislation was work contemplated and necessitated by the Settlement Agreement's requirement that Congress legislatively approve the settlement. *Id.* It was also contemplated by the parties when the cap on post-settlement fees was increased by $2 million. *Id.* at ¶ 5. Ms. Cobell also requested that Class Counsel actively advocate on behalf of the plaintiffs for the passage of the legislation contemplated by the Settlement Agreement and was herself actively involved in the process of doing so. *Id.* at ¶ 14.

Though the parties contemplated that Congressional approval would be a relatively quick process, in reality it proved to be a long process spanning a year of intensive work by Class Counsel. *Id.* at ¶ 15. As this phase progressed, Class Counsel became more and more involved in an intensive effort to seek Congressional approval. *Id.* These efforts in the House and Senate continued into November 2010 and included regular meetings with members of Congress and their staff, daily inquiries regarding the potential developments regarding the legislation, arranging testimony at House and Senate hearings, negotiating modifications to the settlement, and working with Congressional staffers on the drafting of legislation which was ultimately enacted. *Id.* at ¶ 16. Class Counsel's work also involved coordinating efforts with the White House, the Department of the Interior and the

Department of Justice regarding the legislative effort. *Id.* Class Counsel thus played an important role in successfully advocating for the passage of the Claims Resolution Act of 2010, including obtaining the unanimous consent of the Senate for the bill in the process. *Id.* at ¶ 18.

In addition to these two primary tasks of outreach and legislative approval, Class Counsel also performed a number of other tasks important to the settlement. For example:

- In December 2009, petitioning the Supreme Court for certiorari in *Cobell v. Salazar* ("*Cobell XXII*"), 573 F.3d 808 (D.C. Cir. 2009), *cert dismissed,* 130 S. Ct. 3497 (2010), pending Congressional approval of the settlement. *Id.* at 19.

- Working with the notice contractor, Kinsella Media, Inc. ("Kinsella"), regarding the planning of the notice prgram. *Id.*

- Working with the Garden City Group, ("GCG") as the claims administrator, after finalizing the terms of the contract with it. *Id.*

- Interviewing prospective banks and selecting J.P. Morgan to be the depositary bank for the settlement funds. *Id.*

- Regularly advising the court of the status of the settlement. *Id.*

    Judicial Approval Phase. Following passage of the Claims Resolution Act in November 2010, Class Counsel's focus shifted to obtaining this Court's approval of the settlement. *Id.* at ¶ 20. Beginning with preparing for the Preliminary Fairness Hearing, which was held on December 21, 2010, and continuing through the Fairness Hearing held on June 20, 2011 and the Court's entry of its Order Granting Final Approval to Settlement dated July 27, 2012 [Dkt 3850], Class Counsel focused on ensuring that notice and information on

the settlement was provided to the plaintiff classes and advocating for the Court's approval of the settlement by preparing all of the pleadings and gathering all the evidence necessary to obtain the Court's approval. *Id.*

In terms of outreach to the plaintiff classes, Class Counsel worked with Kinsella in establishing the most extensive notice program in any class action, which included use of all forms of media, utilization of Native American publications and radio, and translations of notice materials into Native languages. *Id.* at ¶ 21. Part of the notice program again had Class Counsel traveling thousands of miles throughout the western United States conducting in-person informational meetings for the plaintiff classes at 55 different locations spread across 17 states, including some of the most geographically remote areas of this country. *Id.* Class Counsel also continued with an intensive effort to communicate with tribal leaders and individual members of the classes directly, via the "hotline," and through correspondence, emails, the website, and the press and media. *Id.* at ¶ 22-23.

This phase also entailed the preparation of extensive pleadings and briefs, including:

- Pleadings seeking and obtaining preliminary approval of the settlement from the Court, including the motion for preliminary approval of the settlement agreement, the motion to amend the complaint, and the motion to certify the Trust Administration Class, appoint class counsel, approve the Class Representatives and modify the existing class certification order. *Id.* at ¶ 26. Class Counsel also prepared pleadings to initiate the flow of the initial settlement proceeds to fund the notice program, including the motions to have JP Morgan designated as the qualifying bank and the motion to have payments made to the Accounting/Trust Administration Fund. *Id.*

- A motion for incentive fees and expenses for class representatives, in addition to opposing efforts by a former class representative to receive compensation. *Id.*

- A petition for Class Counsel's pre-settlement attorneys' fees and expenses, in addition to responding to motions for fees by NARF and Mark Brown. *Id.*

- Opposing efforts by others, including the Quapaw Tribe and the Harvest Institute Freedman Federation ("HIFF"), to intervene in the litigation in an effort to undermine the settlement. Class Counsel also had to address efforts by HIFF in a federal court in Ohio to restrain implementation of the settlement. *Id.*

- The joint motion for final approval of the settlement and a comprehensive memorandum supporting the final approval of the settlement. *Id.* This effort also included researching and responding to all objections to the settlement by class members and reviewing potential exclusions by class members. *Id.*

Class Counsel participated in the Fairness Hearing on June 20, 2011 and successfully advocated for the Court's approval of the settlement. *Id.* at ¶ 27. Ultimately, the Court approved the settlement in its ruling at the hearing and the entry of its Order Granting Final Approval to Settlement dated July 27, 2012 [Dkt 3850].

During the judicial approval phase, Class Counsel also worked with the Claims Administrator, GCG, in establishing procedures for consideration of inquiries from class members, establishing procedures for consideration of claims, and handling communications with class members. *Id.* at ¶ 25. Class Counsel continued throughout this phase to work

9

with J.P. Morgan to establish and oversee the administration of the settlement account. *Id.* at ¶ 26.

 Appellate Phase.  Following the Court determining that the settlement was fair, the focus of Class Counsel shifted to the appellate process in light of appeals by four objectors, including Ms. Craven and the Good Bear appellants, and others. *Id.* at ¶ 28.  Together, Class Counsel successfully defeated all of the appeals, including:

- The appeal from the denial of the motion to intervene by the Harvest Institute Freedman Federation in *Cobell v. Salazar,* 2011 WL  6941684 (D.C. Cir. 2011) and, after the appeal was dismissed, Class Counsel responded to a request for a rehearing *en banc* from that decision, and a petition for certiorari to the Supreme Court.  *Id.* We also had to address efforts by HIFF in a federal court in Ohio to restrain the implementation of the settlement.  *Id.*

- The appeals from final judgment by Kimberly Craven in *Cobell v. Salazar,* 679 F.3d 909 (D.C. Cir. 2012), *cert denied,* 133 S. Ct. 543 (2012).

- The appeal from final judgment of Carol Good Bear and others in *Cobell v. Salazar,* 2012 WL 1884702 (D.C. Cir. 2012), *cert. dismissed,* 133 S. Ct. 593 (2012), including negotiating a resolution of the Good Bear appeal.  *Id.*

- The appeals from final judgment of Ortencia Ford and Donnelly Villegas, which were withdrawn as a result of Class Counsel's efforts.  *Id.*

- The recently dismissed appeal by Clayton Crowe, No. 12-5346.  *Id.*

During the appellate phase, Class Counsel performed many other tasks, including:

- Continuing to maintain a Kilpatrick call in number and email address dedicated to class members in order to freely communicate with them.  *Id.* at ¶ 30.

- Continuing to work with GCG in responding to inquiries from class members and assisting in the claims process.  *Id.*

- Responding to efforts by third parties to engage in an Internet scam on class members.  *Id.*

Distribution Phase.  The distribution phase of this case began after the settlement became final in November 2012.  The primary focus of Class Counsel's work in the distribution phase has been on representing the plaintiff classes as the Claims Administrator has initiated the distribution process.  *Id.* at ¶ 31.  Some of the major tasks performed by Class Counsel during the distribution phase through June 30, 2013 include:

- Working with Kinsella in establishing and implementing a supplementary notice program in accordance with the Settlement Agreement and obtaining court approval thereof.  *Id.*

- Interviewing and obtaining approval of a Special Master under the terms of the Settlement Agreement.  *Id.*

- Reviewing invoices from the Special Master, Kinsella and GCG and obtaining court approval for payment thereof.  *Id.*

- Drafting a motion to, and obtaining, court approval of payments to the Historical Accounting Class ("HAC") members.  To date, payments have been

delivered to approximately 90% of the HAC class members originally identified by defendants whose whereabouts are known. *Id.*

- Traveling for meetings with tribal leaders and class members in Nevada, Oklahoma and New Mexico to assist with the claims process and to identify and resolve areas of concern. *Id.*

- Preparing motions before this court and the Special Master in order to identify procedures by which settlement funds may be distributed to the heirs of approximately 60,000 deceased class members. *Id.*

- Communicating regularly with class members to identify and resolve questions and areas of concern and to assist with the claims process. *Id.*

- Holding meetings with Interior, the Department of Justice and the Special Master in order to monitor the status of the distribution and address areas of concern. *Id.*

- Holding discussions with tribal leaders in order to identify the location of tens of thousands of class members for whom there is no current address and to resolve issues regarding distributions to the heirs of deceased class members. *Id.*

- Continuing to maintain a Kilpatrick Townsend call in number and email address dedicated to class members in order to freely communicate with them and responding to a large volume of calls, emails and correspondence regarding the terms of the settlement and eligibility as a class member. *Id.*

- Researching and responding to subpoenas, including 200,000 from the State of Oklahoma, and withholding requests from state and tribal governments seeking the identification of class members and payment of funds otherwise due class members.  This included moving to quash subpoenas directed to Class Counsel and GCG in the States of Oklahoma and Washington.  *Id.*

- Assisting in responding to lawsuits filed in the States of Ohio and California against Ms. Cobell, GCG and/or Class Counsel by *pro se* litigants seeking recovery of settlement funds to which they were not entitled.  *Id.*

- Participating in media outreach, including webinars through NCAI and other tribal organizations, in an effort to advise class members of the status of the claims process and address areas of concern.  *Id.*

- Assisting GCG in responding to inquiries from claimants and assisting in the drafting and preparation of determination letters to class members.  *Id.*

- Assisting with the selection of an administrator for the Indian Scholarship Fund under the terms of the settlement and assisting in the implementation of the Scholarship Fund.  *Id.*

- Reviewing regularly the settlement account maintained at JP Morgan.  *Id.*

**3.      Through June 30, 2013, Class Counsel have incurred over $12.8 million in post-settlement fees, expenses and costs.**

As detailed in the Dorris Affidavit, Class Counsel has incurred $12,416,829.00 in fees at its actual hourly rates since the settlement through June 30, 2013 for 23,658.8 hours reasonably spent working for the plaintiffs.  *Id.* at ¶ 40.  These fees are supported by detailed daily descriptions by task to the tenth of an hour.  *Id.* at ¶ 37 and Ex. 2.  The rates of the

13

attorneys involved are also addressed in detail, as is the experience of each of the timekeepers. Dorris Affidavit, ¶¶ 34-36, 38, 42-70; Gingold Affidavit ¶¶ 5-8. The post-settlement expenses and costs of Class Counsel total $397,856.33 and are set forth in detail and supported by pertinent records. Dorris Affidavit, ¶¶ 71-76 and Exs. 3-4. Thus, through June 30, 2013, Class Counsel have incurred $12,814,685.33 in fees, expenses and costs.[6]

> **4.     Given the $12 million set aside for post-settlement work of Class Counsel, plaintiffs ask that an interim payment of $11,250,000 be paid to Class Counsel.**

The $10 million cap on post-settlement attorneys' fees, expenses and costs was established when the parties contemplated Congress approving the settlement in approximately a month. *See* Modification of December 7, 2009 Agreement on Attorneys' Fees, Expenses and Costs, dated December 29, 2009, ¶ 3. When that did not occur and it appeared that the legislative process would require an additional two months, the parties agreed to raise the cap by an additional $2 million to a total of $12 million. *Id.* at 6. Though the legislative process continued an additional eleven months instead of only two as contemplated, and required substantial work by Class Counsel in helping to achieve the Claims Resolution Act of 2010, the cap on post-settlement attorneys' fees was never raised.

Through June 30, 2013, Class Counsel has incurred over $12.8 million in fees, expenses and costs. In recognition of the $12 million cap, and because Class Counsel have additional work to perform of approximately $500,000 to $600,000 to complete the distribution,[7] plaintiffs seek an interim payment to Class Counsel now of $11,250,000.00.

---

[6] Kilpatrick is entitled to be paid for all of the post-settlement work of Class Counsel. Dorris Affidavit, ¶¶ 39, 85.

[7] Class Counsel estimates $500,000 to $600,000 more in fees, expenses and costs after June 30, 2013 to complete this matter. Dorris Affidavit, ¶ 33.

This will leave a balance of up to $750,000.00 in the Settlement Account available to pay Class Counsel for its further work to complete this matter and, to the extent possible given the $12 million cap, to pay a portion of the balance of the fees through June 30, 2013 which will remain unpaid after the requested interim payment.

**5.     Controlling law and the agreements of the parties support the requested payment to Class Counsel.**

As discussed above, this Court is to determine the amount to be paid Class Counsel for post-settlement services in accordance with the parties' agreements and controlling law giving due consideration to the special status of Class Members as beneficiaries of a federally created and administered trust.  The request in this motion is consistent with the parties' agreements and controlling law.

First, the parties' agreements contain three key requirements:

- Of the total settlement amount, up to $12 million is available to pay Class Counsel for work after the Settlement Agreement was executed on December 7, 2009.

- Class Counsel's post-settlement compensation is to be based on actual hourly billing rates and actual expenses and costs incurred.

- As part of any such fee request, statements regarding Class Counsel's billing rates, along with contemporaneous daily time, expense, and cost records, must be filed.

Plaintiffs' current request honors each of these three requirements.  Plaintiffs' request recognizes the $12 million cap by requesting $11,250,000.00 (despite Class Counsel having already incurred over $12.8 million in fees, expenses and costs through June 30, 2013) and

leaves an adequate amount to ensure that it will complete the work required on this case. Likewise, this request is based on the actual hourly rates of Class Counsel, as addressed in their affidavits.  Dorris Affidavit, ¶¶ 34-35; Gingold Affidavit, ¶ 8.  In addition to those being Class Counsel's actual rates, as required by the parties' agreements, they have been confirmed to be reasonable by a seasoned D.C. litigator, Paul F. Brinkman of Quinn Emanuel Urquhart & Sullivan, LLP, who has spent almost twenty years litigating cases in this area while working with three prominent firms.  Brinkman Affidavit, ¶¶ 1-6.  Class Counsel is also providing the records of its daily time, expense and costs.  Dorris Affidavit, ¶ 37 and Ex 2-4.

Moreover, the request is supported by controlling law.  Assessing the reasonableness of a fee request in this Circuit entails "a three-part analysis: '(1) determination of the number of hours reasonably expended in litigation; (2) determination of a reasonable hourly rate …; and (3) the use of multipliers as merited.'" *Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995) (quoting *Save Our Cumberland Mountains, Inc.* ("*SOCM*") *v. Hodel*, 857 F.2d 1516, 1517 (D.C. Cir. 1988) (*en banc*)). *See also McKesson Corp. v. Islamic Republic of Iran*, --- F. Supp. 2d ----, 2013 WL 1224808 at \*\*4-6 (D.D.C. March 27, 2013 and supplemented August 2, 2013) (applying *Covington*). The "lodestar" amount obtained by multiplying the number of hours reasonably expended by counsel's reasonable hourly rate is presumed to represent a reasonable fee. *McKesson*, --- F. Supp. 2d at ----, 2013 WL 1224808 at \*3 (citing several cases).   In this case, Class Counsel have submitted documentation establishing the reasonableness of the time they have spent on the case and their hourly rates, and they therefore are presumptively entitled to such reasonable fees.

### a.   Reasonable time expended post-settlement

In order to establish the number of hours reasonably expended on litigation, a fee applicant is required to submit documentation of the number of hours actually worked and the tasks performed by its counsel. *McKesson*, --- F. Supp. 2d at ----, 2013 WL 1224808 at *6 (*citing Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  Attorney time records must be "sufficiently detailed to permit the District Court to make an independent determination whether the 'activities they purport to describe were … reasonable' and 'the hours claimed are justified.'" *McKesson*, --- F. Supp. 2d at ----, 2013 WL 1224808 at *6 (quoting *Miller v. Holzam*, 575 F. Supp. 2d 2, 21 (D.D.C. 2008), *rev'd in part, aff'd in part by United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 786 F. Supp. 2d 110 (D.D.C. 2011)) (ellipsis in *McKesson*).  Applicants are directed to exercise good billing judgment and to exclude from their requests any time entries that are excessive, redundant or wasteful, and the Court is entitled to reduce the requested amount in its discretion if it determines that the work performed was duplicative or otherwise unproductive. *See, e.g.*, *McKesson*, --- F. Supp. 2d at ----, 2013 WL 1224808 at *7. However, "'it is the law of this Circuit that the requirement of submitting detailed records should not be applied in a Draconian manner.'" *McKesson*, --- F. Supp. 2d at ----, 2013 WL 1224808 at *6 (quoting *Novak v. Capital Mgmt. & Dev. Corp.*, 496 F. Supp. 2d 156, 158-159 (D.D.C. 2007)).

The Plaintiffs have submitted detailed billing records that establish the reasonableness of the time expended by their counsel on the matters at issue.  The records were prepared as the work was performed by Plaintiffs' counsel, they identify and fully describe discrete tasks performed, and they set forth the time allocated to each such task in one-tenth of an hour increments.   Dorris Affidavit, ¶¶ 34-36; Gingold Affidavit, ¶¶ 2-4.   The records do not

represent after-the-fact "reconstructions" of hours worked, and vague descriptions and undifferentiated block billing have been avoided.  Furthermore, Class Counsel have reviewed the records and, where appropriate, excluded entries that reflected unproductive expenditures of attorney time and reduced time which was considered excessive.  In total, Class Counsel reduced the time spent by over $2.6 million to arrive at the $12,416,829.00 in fees to support this request for an interim payment of $11,250,000.  Dorris Affidavit, ¶ 77.

As a result, the billing records submitted in support of the Plaintiffs' fee request easily carry the burden of establishing the reasonableness of the hours expended on this litigation by Plaintiffs' counsel.

### b.    Reasonable hourly rates of Class Counsel

The request is based on Class Counsel's actual hourly rates, as required by the parties' agreements.  *Id.*  Those rates are also reasonable.  In order to demonstrate that hourly rates are reasonable, counsel must offer evidence of "at least three elements: [1] the attorneys' billing practices; [2] the attorneys' skill, experience, and reputation; and [3] the prevailing market rates in the relevant community." *Covington*, 57 F.3d at 1107 (citing *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984) and *SOCM*, 857 F.2d at 1524).  In the D.C. Circuit, an attorney's "usual billing rate" is presumptively reasonable so long as it is in line with the rates typically charged in the community by attorneys of reasonably comparable skill, experience, and reputation. *See, e.g.*, *McKesson*, --- F. Supp. 2d at ----, 2013 WL 1224808 at *3 (citing *Kattan ex rel. Kattan v. District of Columbia*, 995 F.2d 274, 278 (D.C. Cir. 1993)); *Heller v. District of Columbia*, 832 F. Supp. 2d 32, 38 (D.D.C. 2011) (citing *Kattan*).

Here, the plaintiffs have submitted evidence that the rates requested reflect those that their attorneys typically charge under established billing scales. *Id.* "There is no question" that such evidence satisfies the first *Covington* factor relating to attorney billing practices. *McKesson*, --- F. Supp. 2d at ----, 2013 WL 1224808 at *3. And under D.C. Circuit law, this evidence likewise establishes the presumptive reasonableness of the requested hourly rates. *See id.*

Plaintiffs have also satisfied the second element of the *Covington* analysis by setting forth the credentials of the various attorneys for whom they request attorneys' fees. Dorris Affidavit, ¶¶ 41-70; Gingold Affidavit, ¶¶ 4-7.

Finally, the Plaintiffs have shown that the requested rates are consistent with the prevailing market rates in the D.C. area. As this Court has noted previously, "'the best measure of the rates the market will allow are the rates actually charged.'" *McKesson*, --- F. Supp. 2d at ----, 2013 WL 1224808 at *5 (quoting *Yazdani v. Access ATM*, 474 F. Supp. 2d 134, 138 (D.D.C. 2007)). In addition to evidence of their own attorneys' standard billing practices, plaintiffs have proffered the testimony of Paul F. Brinkman, who testified that Class Counsel's actual rates are "in line with rates typically charged in the D.C. legal community in complex litigation by attorneys of reasonably comparable skill, experience and reputation." Brinkman Affidavit, ¶ 6. This evidence fully corroborates the reasonableness of the standard billing rates requested by Class Counsel and establishes that those rates are in keeping with those charged by attorneys of similar experience and skill in the Washington, D.C. area. In fact, the evidence shows that the rates for many of the Kilpatrick attorneys are below the normal D.C. market rates. *Id.;* Dorris Affidavit, ¶ 35.

### c.   Post-settlement expenses and costs

Through June 30, 2013, Class Counsel have incurred $397,856.33 in expenses and costs representing the plaintiffs.  Dorris Affidavit, ¶ 71 and Ex. 3-4.  All of these expenses and costs were reasonable and necessary in connection with Class Counsel's post-settlement work.  *Id.*

### 6.   Plaintiffs are posting this motion on their website.

The Settlement Agreement provides that members of the plaintiff classes shall have an opportunity to object to Class Counsel's post-settlement fees. Settlement Agreement, ¶ J.4.  In keeping with the procedures for the pre-settlement fee petition, plaintiffs are posting this Motion on their website, along with notification that Class Members have until October 10, 2013 within which to object.

### Conclusion

Following the settlement, Class Counsel performed a substantial amount of work to adequately represent the interests of the plaintiffs, including leading the effort to obtain Congressional approval of the Settlement Agreement, communicating extensively with the plaintiff classes to inform them of the settlement terms before and after Congressional approval of the settlement, advocating for the fairness of the settlement before this Court, successfully defending this Court's judgment on appeal, and overseeing the start of the distribution to the plaintiff classes.  Though Class Counsel has incurred fees, expenses and costs through June 30, 2013 of over $12.8 million, in light of the $12 million cap and the fact that additional work will be required to complete the distribution of the proceeds, plaintiffs ask for an order approving an interim payment of $11,250,000.00 from the Settlement Account to Kilpatrick Townsend & Stockton, LLP.

Class Counsel have discussed this Motion with counsel for defendants, who report that defendants take no position on the Motion at this time.

Respectfully submitted, this 10th day of September, 2013.

/s/ William E. Dorris
WILLIAM E. DORRIS
Georgia Bar No. 225987
Admitted *Pro Hac Vice*
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street
Suite 2800
Atlanta, Georgia  30309
404-815-6500

DAVID C. SMITH
D.C. Bar. No. 12558
KILPATRICK TOWNSEND & STOCKTON LLP
Suite 900
607 14th Street, NW
Washington, D.C.  20005
(202) 508-5844

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing PLAINTIFFS' MOTION TO APPROVE AN INTERIM PAYMENT TO CLASS COUNSEL FOR POST-SETTLEMENT FEES AND EXPENSES was served on the following via facsimile, pursuant to agreement, on this 10th day of September, 2013.

Earl Old Person (*Pro se*)
Blackfeet Tribe
P.O. Box 850
Browning, MT 59417
406.338.7530 (fax)


/s/ William E. Dorris