UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ELOUISE PEPION COBELL, *et al.*,

                      **Plaintiffs,**

     v.                                 Civil Action No. 96-01285 (TFH)

SALLY JEWELL, Secretary of the
Interior, *et al.*,

                      **Defendants.**

## **MEMORANDUM OPINION**

Pending before the Court is Plaintiffs' Motion for Reconsideration of Class Representatives' Expense Application [ECF No. 3839]. The motion seeks to have this Court reconsider its June 20, 2011 decision declining to further diminish the common fund benefitting class plaintiffs by granting the Class Representatives' request to recover expenses related to recoverable grants third-party organizations made to the Blackfeet Reservation Development Fund ("BRDF") to finance this lawsuit. Because the pending motion advances arguments and evidence that could have been raised by the plaintiffs before the Court ruled and entered judgment, the motion will be denied.

## **BACKGROUND AND PROCEDURAL POSTURE**

On January 25, 2011, after reaching a congressionally-approved $3.4 billion settlement with the United States, the plaintiffs in this case filed a petition requesting that the Court grant the Class Representatives -- Elouise Cobell, Louise Larose, Thomas Maulson, and Peggy

Cleghorn -- incentive awards, expenses and costs. *See* Pls.' Mem. In Supp. of Class Representatives' Pet. for Incentive Awards & Expenses [ECF No. 3679]. With respect to expenses, the plaintiffs argued in the incentive-award petition that the Class Representatives were entitled to reimbursements totaling $10,556,274.59 for litigation-support services provided by the following third-party organizations: the Blackfeet Reservation Development Fund,[1] the Indian Land Tenure Foundation, Charles River Associates International, Inc., PricewaterhouseCoopers, and RSH Consulting. *Id.* at 17. According to the plaintiffs, these third-party organizations supported the litigation in various ways, such as contracting for expert witnesses, coordinating travel, preparing statistical and financial analyses and models, and lobbying Congress. *Id.* at 17-19.

Nowhere in the plaintiffs' incentive-award petition or the accompanying exhibits was there any indication that the Class Representatives personally guaranteed grants or loans made by the third-party organizations for the purpose of funding the litigation of this case. To the contrary, the reply brief supporting the plaintiffs' incentive-award petition stated that litigation expenses were paid by Elouise Cobell "and organizations to which Ms. Cobell is indebted, <u>not personally</u>, but solely in her capacity as lead plaintiff in the prosecution of this case." Pls.' Reply to Defs.' Objections to Class Representatives' Pet. for Incentive Awards & Expenses 17 [ECF No. 3706] (emphasis added). Although the reply brief stated that the Blackfeet Reservation Development fund was "heavily obligated to third party foundations," the reply brief otherwise

---

[1] The Blackfeet Reservation Development Fund was a nonprofit organization established by class representative Elouise Cobell "to ensure adequate funding for the prosecution of this case." Pls.' Mot. for Recons. of Class Representatives' Expense Application 3 [ECF No. 3839]. At the time the settlement was reached, Cobell was the Fund's director. Pls.' Mem. In Supp. of Class Representatives' Pet. for Incentive Awards & Expenses 17.

offered no hint that the Class Representatives were personally liable for such or similar obligations. *Id.* at 22.

On June 20, 2011, the Court held a lengthy fairness hearing to consider whether the settlement agreement proposed by the parties was fair, reasonable and adequate, and to rule on the Class Representatives' petition for incentive awards as well as other pending motions. During the fairness hearing class counsel offered the following arguments in support of the Class Representatives' incentive-award petition:

> [MR. HARPER:] A couple of issues related to incentive fee awards. First, Your Honor, of course this court has broad authority to make an incentive fee award that it deems fair and just under the circumstances.
>
> We have sought incentive fee awards from $150 to $200,000 for three of the named plaintiffs, and $2 million for Ms. Eloise Cobell.
>
> All of these named plaintiffs have made important contributions to the success of this case. A handful of individuals have objected to the incentive fee awards, and most have targeted Ms. Cobell's -- the request made for Ms. Cobell.
>
> Let's be clear, Your Honor. The request for Ms. Cobell is extraordinary. It is not unprecedented, but it is extraordinary. The Alkatal case awarded, as Your Honor is aware, $1.6 million to each of eight named plaintiffs. So this is not unprecedented.
>
> THE COURT: The one in Florida?
>
> MR. HARPER: This is the one in Florida, Your Honor.
>
> What I would submit to you today, Your Honor, is Ms. Cobell's contributions in this matter have been far greater than the ones made in other matters. She has devoted her life to righting this wrong. She has had day-to-day contact with counsel. She's been involved in every important decision.
>
> When this case needed a spokesperson, she was there. When this person -- this case needed somebody to raise funds, she was there. When we needed somebody to testify in Congress, she stood up. She took the brunt of the criticism for doing so. When this case needed additional funds, she took $390,000 of her own money that she had won in a McArthur Genius Foundation Award, and she utilized it for experts in this case.

> Those are extraordinary contributions. Ms. Cobell has answered the call. This case, this settlement is a testament to her strength, courage and perseverance. We think that the request is extraordinary, but we also think that it is well worth it for her contribution.
>
> THE COURT: There was some challenge to her by Mr. Frank as to the $7 billion offer that she testified to, et cetera.
>
> MR. HARPER: Yes. With respect to the $7 billion offer, again, we presented this in detail in our papers. There has never been a $7 billion offer for settlement of this case. The $7 billion number came from the Bush administration, Your Honor.
>
> It included the settlement of all tribal trust cases, the reform of the entirety of the trust, the dealing with IT security issues, with fractionation, with not only individual claims from the past but in the future, and the termination of the trust.
>
> That is what the settlement offer was for $7 billion. It was considered widely a poison pill. It is not being resolved here.
>
> You take alone the tribal trust cases, which at one point the Attorney General, Alberto Gonzales, testified in Congress that those were worth potentially up to $200 million. I am not attesting one way or the other to it. That was his testimony.
>
> And you say -- and that is included in the $7 billion offer. Obviously, that is not the resolution of what was we are resolving here. That includes so much more, and when you are talking about including future claims, then there is a grave concern.
>
> There is another aspect of that which is that Mr. Frank has posed that this somehow makes Ms. Cobell have some kind of a conflict of interest.
>
> Well, Your Honor, the answer to that -- and a similar objection is made regarding attorney fees -- is that you get to decide, Your Honor, exercising discretion, whether or not to make an award for an incentive award, and because of that there is no conflict of interest. Otherwise there would always be a conflict of interest whenever am incentive fee -- an incentive award was asked for and determined by a court.

Pls.' Mot. for Recons. of Class Representatives' Expense Application Ex. 3, Hr'g Tr. 162:22-165:22 (June 20, 2011) [ECF No. 3839-3] (hereinafter cited as "Pls.' Mot. for Recons."). This quotation represents the entirety of class counsels' arguments regarding the plaintiffs' request that the Class Representatives be awarded incentive fees and expenses. At the conclusion of the

fairness hearing the Court granted in part the plaintiffs' petition for incentive awards but denied the request to award an additional $10,556,274.59 for expenses incurred by the third-party organizations on the grounds that "[t]here [was] no class representative that [incurred] those out-of-pocket expenses" and there was no authority to support a separate award for those expenses. *Id.* at 243:4-11. The plaintiffs did not object to the Court's determination that no Class Representative personally incurred the $10,556,274.59 in litigation expenses attributed to third-party organizations identified in the incentive-award petition.

One week after the fairness hearing, the plaintiffs' filed the pending motion, which is styled as a motion for reconsideration. Contrary to the typical motion for reconsideration, which asks a court to take a second look at an issue that was previously raised and ruled upon, the plaintiffs' motion for reconsideration in this case interjected an entirely new argument that was never presented to the Court, namely that the Class Representatives were personally liable for $4,540,622.72 that the Blackfeet Reservation Development Fund owed to the Lannan Foundation, an organization that was never mentioned in the incentive-award petition or during the fairness hearing. Pls.' Mot. for Recons. 1, 5. The plaintiffs claimed that the Class Representatives were personally liable for the Blackfeet Reservation Development Fund's obligation to the Lannan Foundation because the Class Representatives executed assignments that guaranteed the repayment of recoverable grants the Lannan Foundation made to the Fund. *Id.* at 5. The plaintiffs also reasserted their request for the reimbursement of expenses that were solely the Blackfeet Reservation Development Fund's liability, but the plaintiffs modified the amount sought from the original $10,556,274.59 to $3,144,732.91, which reflected $600,000.00 owed to the Otto Bremer Foundation – which also was never mentioned in the incentive-award

petition or during the fairness hearing – $500,000.00 owed to the Lannan Foundation, $1,210,598.00 owed to PricewaterhouseCoopers, $704,134.91 owed to Charles River Associates, and $130,000.00 owed to RSH Consulting. *Id.* at 6. The plaintiffs did not request that the Court reconsider its denial of expenses in the amount of $496,393.00 that the Blackfeet Reservation Development Fund reportedly owed the Indian Land Tenure Foundation. And the only explanation the plaintiffs proffered for the difference in expense amounts sought in the incentive-award petition versus those sought in the motion for reconsideration was that the "plaintiffs, with reluctance, seek reconsideration only of those amounts necessary to pay outstanding loans, repayable grants and plaintiffs' experts to which they remain in arrears." *Id.* at 2 n.4.

On June 10, 2013, the plaintiffs filed a Notice of Supplemental Information and Correction Regarding Plaintiffs' Motion for Reconsideration of Class Representatives' Expense Application [ECF No. 3956] (the "Notice of Supplemental Information"), which served to "correct the amount of expenses sought in the Motion to Reconsider to the amount of $8,181,748.63 as a result of the $496,393.00 in funds loaned by [the Indian Land Tenure Foundation] to Blackfeet Reservation Development Fund ("BRDF") and used by plaintiffs to pay expenses in the litigation." Notice of Supplemental Info. 1. The Notice of Supplemental Information also attached affidavits from Cris Stainbrook, the President of the Indian Land Tenure Foundation,[2] and Charlotte Johnson, a trustee of the Otto Bremer Foundation, for the purpose of explaining why loans and grants were made to the Blackfeet Reservation Development Fund rather than to Elouise Cobell. *Id.* at 2.

---

[2] Notice of Supplemental Info. Ex. 1, Stainbrook Decl. ¶ 1 (June 5, 2013) [ECF No. 3956-1].

## LEGAL STANDARD

Although the plaintiffs filed their motion for reconsideration about a week after the Court issued a ruling from the bench at the conclusion of the public fairness hearing and before the Court issued judgment on August 4, 2011, almost two years later the plaintiffs filed the notice of supplemental information, which amended the motion for reconsideration to add a new claim for expenses relating to the Indian Land Tenure Foundation that was not raised in the original motion. The Court nevertheless will treat the plaintiffs' motion for reconsideration as a timely motion to alter or amend the judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure.

It has long been the rule in this circuit that "[a] Rule 59(e) motion is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curiam) (internal quotation marks omitted); *accord Dyson v. District of Columbia*, 710 F.3d 415, 420 (D.C. Cir. 2013). Accordingly, a Rule 59(e) motion is "aimed at reconsideration, not initial consideration" and may not be used to raise arguments or present evidence that could have been raised before the entry of judgment. *GSS Grp. Ltd. v. Nat'l Port Auth.*, 680 F.3d 805, 812 (D.C. Cir. 2012).

## DISCUSSION

The entire premise of the plaintiffs' motion for reconsideration is that the plaintiffs "may not have been sufficiently clear that [Elouise] Cobell and, in certain cases, the other named plaintiffs are personally liable for much of" the expenses the Class Representatives sought to

recover in their incentive-award petition. Pls.' Mot. for Recons. 1 (emphasis in original). There are two flaws regarding this premise that doom the motion for reconsideration. First and foremost, the plaintiffs were not simply "unclear;" to the contrary, they never raised this argument before the Court issued its ruling, although they had the opportunity to do so both during the briefing of the incentive-award petition and during the presentation of oral arguments at the fairness hearing.[3] For this reason alone the Court will deny the motion. *See GSS Grp. Ltd.*, 680 F.3d at 812 (holding that new arguments raised in a motion for reconsideration were waived because the plaintiff failed to raise them earlier during legal briefing).

Second, even if the Court were inclined to overlook the delinquency of the argument and proceed to the merits of it, the argument would not survive reconsideration because it is unsubstantiated. The plaintiffs asserted that each of the Class Representatives executed assignments to the Blackfeet Reservation Development Fund according to which the Class Representatives agreed to pay to the Fund all amounts they recovered from the United States "related to attorney's fees and/or costs and/or expenses of the Litigation." Pls.' Mot. for Recons. 5 (quoting Ex. 1, Rempel Aff. ¶ 4). As a result, the plaintiffs argue, the Class Representatives are "personally liable and will be thrust into a precarious financial position" if the Court continues to deny the requested reimbursement of expenses from the common fund. *Id.* To date, though, the plaintiffs have failed to produce copies of the assignments to support their claim of personal liability. At best, the only copy of an assignment submitted in this case that purportedly

---

[3] At a minimum, the plaintiffs should have objected during the fairness hearing when the Court determined that no Class Representative personally incurred the expenses at issue.

was executed by the Class Representatives was filed by the United States as Exhibit 1 to its opposition brief.[4] That assignment states:

> This assignment is made between the Blackfeet Reservation Development Fund ("Fund") and Elouise Pepion Cobell, Earl Old Person, Thomas Maulson, and James Louis Larose.
>
> In consideration of payment by the Fund of certain fees and expenses incurred in relation to Civil Action 96-01285 in the United States District Court for The District of Columbia ("the Litigation"), an action in which each of the undersigned is a plaintiff, each of the undersigned assigns to the Fund all rights to any attorney's fees and/or costs and/or expenses of the Litigation, recovered from the United States, whether pursuant to judgment or to settlement, that the undersigned recovers as a result of the Litigation.

Defs.' Opp'n to Pls.' Mot. for Recons. of Class Representatives' Expense Application Ex. 1 at P000478. The assignment submitted by the United States was signed by Elouise Cobell and a former Class Representative named Earl Old Person, *id.*, but no other Class Representatives, so it is unclear whether it would even be enforceable against all Class Representatives, assuming it is enforceable at all. If it is enforceable, by the plain terms of the assignment all rights to the $99

---

[4] The Lannan Foundation -- which recently filed a separate lawsuit against Class Counsel to enforce agreements promising that legal fees obtained in this case would be used to repay grants the Foundation made to the Blackfeet Reservation Development Fund, *see Lannan Found. V. Gingold*, No. 13-cv-01090 (TFH) -- has moved to intervene in this case and asserts that "the four named representatives of the Plaintiff class (Ms. Cobell, Earl Old Person, Thomas Maulson, and James Louis Larose) entered into a written agreement that assigned the BRDF all rights to any attorney's fees and/or costs and/or expenses of the Litigation . . . recovered from the United States, whether pursuant to judgment or to settlement." The Lannan Found.'s Mem. In Support of Its Mot. to Intervene 3. That assignment has not been submitted to the Court in this case but was attached as Exhibit B to the Complaint in *Lannan Found. V. Gingold*, No. 13-cv-01090 (TFH), and states that "[i]n consideration of payment by the Fund of certain fees and expenses incurred in relation to Civil Action 96-01285 in the United States District Court for The District of Columbia ('the Litigation'), an action in which each of the undersigned is a plaintiff, each of the undersigned assigns to the Fund all rights to any attorney's fees and/or costs and/or expenses of the Litigation, recovered from the United States, whether pursuant to judgment or to settlement, that the undersigned recovers as a result of the Litigation." The Court's decision herein should not be construed as suggesting any judgment about the merits of the Lannan Foundation's lawsuit.

million attorneys' fee award would be vested in the Blackfeet Reservation Development Fund so any obligations the Fund had to other third-party organizations arguably would be satisfied from that award. Although the plaintiffs never acknowledged whether the copy of the assignment submitted by the United States accurately reflects the assignments cited in the plaintiffs' motion for reconsideration, the plaintiffs nonetheless concede that the Class Representatives "'have agreed to pay to the Blackfeet Reservation Development Fund <u>all amounts that any or all of them recover from the United States . . . related to attorney's fees . . . .</u>'" Pls.' Mot. for Recons. 5 (quoting Ex. 1, Rempel Aff. ¶ 4). Consequently, the Class Representatives will not be thrust into a "precarious financial position," *id.*, because any repayment obligation guaranteed by the Class Representatives and incurred by the Blackfeet Reservation Development Fund could be satisfied from the plaintiffs' $99 million attorneys' fee award rather than the remainder of the common fund benefitting the class plaintiffs, the amount of which would be decreased by more than $10 million if the Court followed the approach advocated by the plaintiffs for reimbursing the expenses of third-party organizations that supported the litigation.

At this juncture, the Court admits to some concern about whether the Class Representatives might have been misled about the legal significance of the assignments, assuming, again, that the assignments exist and state what the plaintiffs say they state. Based on the plaintiffs' own characterization of the assignments in their motion for reconsideration, it appears to the Court that the $99 million attorneys' fee award would be subject to the assignments whereas the incentive awards would not because an incentive award is not "'related to attorney's fees and/or costs and/or expenses of the Litigation,'" *id.* (quoting Ex. 1, Rempel

Aff. ¶ 4).[5] To the contrary, an incentive award is "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). During the fairness hearing this Court made no award of expenses or costs to the Class Representatives, either individually or as members of the class. Indeed, with respect to Elouise Cobell's personal expenses, the Court stated that they were not addressed in the incentive-award petition so she would have to rely on her incentive award for recompense. Pls.' Mot. for Recons. Ex. 3, Hr'g Tr. 243:4-15.

Finally, in their motion for reconsideration the plaintiffs argued that the Settlement Agreement provided for the payment of costs and expenses "wholly independent of, and in addition to, expenses and costs of Class Counsel." Pls.' Mot. for Recons. 4. The Court need not take a position on the merits of this issue because it could have been raised before the Court ruled on the incentive-award petition and, therefore, is not a proper subject of the motion for reconsideration. That being said, the Court notes that this argument is irrelevant to the question of whether the $99 million attorney's fee award is subject to contracts that guarantee rights in the award to the Blackfeet Reservation Development Fund or other third-party organizations.

---

[5] The Court notes that if any dispute about the claimed assignments had arisen at the time the Court was considering the incentive-award petition, the Court would have questioned whether a conflict of interest existed between class counsel and the plaintiffs with respect to the interpretation of the assignments as they relate to the $99 million attorney's-fee award.

--11--

## **CONCLUSION**

For the reasons set forth in this Memorandum Opinion, the Court will deny Plaintiffs' Motion for Reconsideration of Class Representatives' Expense Application [ECF No. 3839]. An appropriate order will accompany this Memorandum Opinion.

March 20, 2014

_____
Thomas F. Hogan
Senior United States District Judge