IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELOUISE PEPION COBELL, by and through TURK R. COBELL, as the personal representative of her estate, *et al.* ) ) ) ) | |
| Plaintiffs, ) ) | Civil Action No. 1:96 CV 01285 (TFH/GMH) |
| v. ) ) | |
| RYAN ZINKE, Secretary of the Interior, *et al.*, ) ) ) | |
| Defendants. | |

**PETITIONER MARK KESTER BROWN'S MOTION FOR ATTORNEYS' FEES**

## INTRODUCTION

So-called "class counsel," at all stages of this dispute, has acted in bad faith in denying Mark Kester Brown ("Brown") the attorneys' fees this Court has found he was legally owed after class counsel froze him out of the *Cobell* case and failed to secure even a single dollar of payment for the thousands of hours he expended on behalf of the class. Because of that bad faith—also reflected in subsequent wrongful actions—Brown is entitled to recover the fees he was forced to expend in order to recover the fees he was legally owed.[1]

More than a decade ago, class counsel effectively excluded Brown from representing the Cobell class. Dkt. No. 4249 (1/31/17 Memorandum Opinion), at 56. Class counsel transparently hoped that by forcing Brown to appear to abandon the representation, they would be able to convert Brown's efforts for their own benefit: They would be able to keep the attorneys' fees that would be otherwise reserved to recompense Brown for his work. Class counsel was so avaricious that they spent considerable time arguing that Brown should get zero dollars for his more than 6 years of devoted work, despite lead counsel's prior representation that Brown would be entitled to be paid at current hourly rates when the case was settled.

Class counsel's plan came to in 2011, when it scrubbed any reference to Brown's work from their post-settlement motion to recover attorneys' fees. Since class counsel's betrayal, Brown has been fighting to recover what has always been rightfully his. Brown was forced to engage in years of costly litigation simply to recover the fair value of his time spent on behalf of the class. What is more, class counsel forced Brown to spend hundreds of thousands of dollars on legal fees. Indeed, while Brown was required to incur the inherent risk and expense of expending hundreds of thousands of dollars in additional fees merely to reclaim what he was owed, class counsel was using the class's recovery to engage in their bad faith efforts to deny him his rightfully earned fees.

---

[1] Class counsel has injudiciously attempted at every turn to cloak themselves in the "Plaintiffs" label when, in reality, as this Court has recognized, they are laboring solely for their own account. Dkt. No. 4249, at 81.

1

The circumstances of this case demand that this Court order Brown's recovery of his attorney fees from class counsel. First, class counsel has displayed improper motives—animus and greed—both before and during the litigation. These motives color all of their sharp-practice actions in this case. Second, given Plaintiffs' actions, it would be inequitable to require Brown to bear the entire financial burden of recovering fees he has been owed for more than six years, while class counsel was compensated for opposing Brown's fee petition from the fund set aside for post-settlement work on behalf of the class, without any apparent consent by the class or the Plaintiffs. Class counsel had the ability to ensure Brown was reimbursed for his work on behalf of the class, and failed to do so. It was solely class counsel's crusade against Brown that has led to this petition. Because the law clearly permits recovery under circumstances of bad faith, the only issue here is whether to finally hold class counsel accountable for its conduct. Because class counsel's actions in this matter amount to bad faith, Brown is entitled to recoup his legal fees, in the amount of $902,911.53. *See* Declaration of Mark K. Brown ("Brown Decl."), ¶ 3

## LEGAL STANDARD

The District of Columbia recognizes the "bad faith" exception to the general rule that each party pays its own legal fees. *6921 Georgia Avenue, N.W., Ltd. P'ship v. Universal Community Development, LLC*, 954 A.2d 967, 971 (D.C. 2008). Bad faith may be established if a claim is litigated in a frivolous manner. *Id.* In making this determination, courts evaluate whether a party utilized procedural maneuvers that either lacked justification or were used to harass or delay. *Jung v. Jung*, 844 A.2d 1099, 1108 (D.C. 2004). Awarding attorneys' fees is appropriate if it would "deter abusive litigation in the future, thereby avoiding harassment and protecting the integrity of the judicial process." *Synanon Foundation, Inc. v. Bernstein*, 517 A.2d 28, 37 (D.C. 1986).

Bad faith exists when a party acts with an improper motive. *In re Jumper*, 909 A.2d 173, 177 (D.C. 2006). Importantly, the District of Columbia applies the exception "both when bad faith occurred in connection with the litigation and when it was an aspect of the conduct that gave rise to the lawsuit." *Hundley v. Johnston*, 18 A.3d 802, 811 (D.C. 2011) (quotations

omitted) (emphasis added). When this is the case, fee shifting is warranted as a matter of equity. *Georgia Avenue,* 954 A.2d at 971. As such, an award of attorneys' fees is proper when dominating reasons of fairness demand it, and it would rebalance the equities of the litigation. *Jung,* 844 A.2d at 1108; *Andrews v. District of Columbia,* 443 A.2d 566, 569 (D.C. 1982).

## ARGUMENT

This matter arises out of class counsel's decade-long quest to bilk Brown, out of millions of dollars, because they wanted his rightfully earned fees for themselves. Motivated by personal animus and greed, class counsel repeatedly attempted to stymie Brown's recovery efforts. In doing so, they have employed a laundry list of tactics designed to prolong this matter and force Brown to exhaust precious resources only to recover what was always rightfully his. Because class counsel's actions in this matter amount to bad faith, Brown is entitled to recoup his legal fees, in the amount of $902,911.53. *See* Brown Decl., ¶ 3, Ex. A (Arent Fox bills); Declaration of Stephen G. Larson ("Larson Decl.), ¶ 4, Ex. A (Larson O'Brien bills).

    **A.**    **Brown is Entitled to His Attorneys' Fees Because Class Counsel Has Litigated This Action in Bad Faith**

        1.  <u>Class Counsel Have Litigated This Case With a Transparently Improper Motive</u>

"It is clear … that bad faith may be found … in the conduct of the litigation." *Hall v. Cole,* 412 U.S. 1, 15 (1973). One such way to establish bad faith is to show that a party litigated its case with an improper motive. And under District of Columbia law, "[a] bad faith motive can germinate well before it develops into vexatious conduct…" *Hundley,* 18 A.3d at 811. It is a sign of bad faith when an "action should have been unnecessary and was compelled by the [party's] unreasonable, obdurate obstinacy." *Stolberg v. Bd of Trs.,* 474 F.2d 485, 490 (2d Cir. 1973). Obstinacy is an enduring hallmark of class counsel's conduct in this matter, and is obviously the case here given class counsel's inherent, unwaived, and unwaivable conflict of interest with the very clients they purport to represent.

Class counsel have been planting the seeds of bad faith since 2005. Even though Brown was one of "the original members of the *Cobell* team," and "kept Plaintiffs' claims alive during the initial, often difficult years of the litigation," Brown was eventually "frozen out" of the case. Dkt. No. 4249, at 56, 67. Class counsel perpetuated what was "like a bad high-school breakup"—shunning Brown with the "apparent hope that he would leave of his own volition." *Id.*, at 57. Class counsel's primary purpose was to carry out their long-term plan to retain any eventual attorneys' fees award entirely for themselves. *See* 4/22/2016 Tr. at 144:11-145:19. This Court is fully familiar with the subsequent history of the case, and Brown will not recount it in detail here. In sum, class counsel took the extraordinary step of failing to even submit Brown's time to the Court, inexplicably taking upon itself the decision to withhold all recovery from Brown. Dkt. No. 4249, at 3. Class counsel left Brown out of the fee application—without explanation—even though class counsel had negotiated with Brown prior to submitting the fee. *Id.*, at 41-42. Class counsel excluded Brown even though they included other withdrawn counsel like Thaddeus Holt, an attorney who had resigned from the case nearly a decade prior to class counsel's filing of the fee application. *Id.*, ¶ 2.

Even more egregiously, class counsel's fee petition also included Geoffrey Rempel, a non-attorney who received approximately $1.4 million in the fee award, even though he had been compensated for his time as a cost of the litigation on a salaried basis. *Id.*, ¶¶ 3-4. Class counsel not only sought fees for a non-attorney, they did so at an hourly rate of $475—a figure far higher than that received by Brown—and a rate that Plaintiffs' never actually paid for Rempel's work. There is no evidence that Plaintiffs ever retained Rempel, and there is also no evidence that they ever paid him for his work. *Id.*, ¶¶ 3-5; Dkt. No. 4249, at 82. That is because Rempel was paid by his employer, Blackfeet Reservation Development Fund, Inc. ("BRDF"), the very organization that was created to support the underlying litigation. *See* Dkt No. 4113, at 2-7. Rempel was never more than a stalking horse for class counsel to further pilfer the settlement fund. And that explains why class counsel never disclosed that Rempel was already being compensated by BRDF to the Court when they filed their fee petition. Again, this is but another

4

data point in establishing the improper motive that has driven class counsel to oppose Brown's petition: namely, their interest in retaining as much of the fee award as possible for themselves by inflating their initial fee petition with non-attorney hours. *Hundley*, 18 A.3d at 811.

Class counsel's actions forced Mr. Brown to intervene in the litigation on his own behalf, and led to a multi-year legal odyssey in which Brown had to retain his own legal counsel and expend significant resources merely to recover the value of the thousands of hours he had expended on behalf of the class. It was only as a result of these efforts that class counsel's gambit failed. This Court ultimately saw through class counsel's transparent attempt to claim Brown's fees for their own, and granted Brown approximately $3.6 million in recovery. Dkt. No. 4249, at 57, 83 ("Counsel for Plaintiffs will not now be heard to claim that Brown should not be paid because he "abandoned" the case"); *see also* Dkt. No. 4268, at 1 (finding that Brown was also entitled to more than $736,000 in prejudgment interest on his unpaid fees).

While class counsel's vendetta against Brown was certainly a causative reason for their actions, much of their conduct can be boiled down to pure greed. Class counsel saw Brown not as a colleague, but as a competitor for the attorneys' fees pot of gold at the end of the rainbow. Class counsel froze Brown out of Plaintiffs' legal team, giving themselves control of the purse strings. The temptations of that power ultimately proved too tempting. Dkt. No. 4924, at 57. Indeed, class counsel was driven by the zero-sum game of blocking others from receiving their fees so class counsel could recover everything. *See* Dkt. No. 4249, at 5 ("[T]he Court also appreciates that, as was made clear at the hearing, every dollar not awarded to Brown will go from the escrow account to Kilpatrick Stockton, the firm that provides sole representation for Plaintiffs today." Because of this, he only way Brown could recover was by filing his petition. *Stolberg*, 474 F. 2d at 490.

This improper motive is further exemplified by the lack of any evidence that Plaintiffs or the class have sanctioned or approved of class counsel's opposition to Brown's petition for fees. There are no declarations from current class representatives regarding their approval of class

5

counsel's objection to Brown's fee petition, and when challenged to present such authority at the hearing on Brown's petition, class counsel has resolutely refused to do so. Larson Decl., ¶ 1.

But even more galling is the fact that class counsel has charged the class for their work in opposing Brown's fee petition by raiding the post-settlement fees fund. *See* Dkt. No. 4249, at 79-80. Class counsel has not produced a single piece of evidence showing that they adequately informed the Class that they would charge the class for opposing Brown's fee applications or even had authority to do so – a paradigmatic example of their unethical conduct.

Indeed, class counsel has created a "heads I win, tails you lose" situation. Regardless of whether class counsel defeated Brown's fee petition, class counsel's campaign against Brown was fully paid by the class recovery. If class counsel had won their challenge to Brown's fee application, it simply would have meant a bigger slice of the proverbial pie at no real cost to class counsel. Dkt. No. 4249, at 81. More importantly, there would have been no benefit to the class. *Id.* But class counsel did not win their challenge to Brown's fee application. *Id.*, at 83. But they are no worse for the wear because they used class money to fund their losing strategy. *See* Dkt. Nos. 3975 [Motion for Order on Plaintiffs' Motion to Approve An Interim Payment To Class Counsel For Post-Settlement Fees and Expenses], 4133 [Motion for Order On Plaintiffs' Second Motion To Approve Payment To Class Counsel For Post-Settlement Fees and Expenses], 3/22/16 Minute Order; *see also* 4/22/2016 Tr. at 141:1-11.

Class counsel's actions make clear they would do anything to maximize their financial return – even when doing so was inherently and obviously detrimental to the class without any prospect of benefit to the class. Their failure to get consent from the class (or from the Court) before expending class funds to oppose Brown's fee petition is both unethical, constitutes a inexcusable and unwaivable conflict of interest,[2] and is profound evidence of their bad faith. It also transparently makes clear why this litigation has dragged on for so long.

---

[2] The existence of conflicts of interest – at least where they can be presumed to have affected the course of the litigation – can be an important factor in determining whether a bad-faith attorney-fees award should be granted. In *Schexnayder v. Hartford Life and Acc. Ins. Co.*, 600 F.3d 465 (5th Cir. 2010) the court was faced with a possible award of ERISA-based fees.

6

### 2. Equity Requires that Brown Receive Attorneys' Fees

Brown succeeded in finally recovering his rightfully earned fees under a theory sounding in equity. *See* Dkt. No. 4268, at 5. He should succeed in recovering the fees expended in this recovery for similar reasons, because he was forced into court as a last-ditch effort to recover what this Court agrees he was entitled to. In this circumstance, an award of attorneys' fees would "vindicate[] judicial authority," because it would "make[] [Brown] whole for expenses caused by his opponent's obstinacy." *Andrews v. District of Columbia*, 443 A.2d 566, 569. An award of attorneys' fees is likewise proper because fairness demands it. *Synanon*, 517 A.2d at 37. Here, the calculus is simple. In 2007, Plaintiffs' promised Brown that they would request an award for his time at final resolution. Dkt. No. 4249, at 57. Yet four years later, when class counsel submitted their motion for an award of fees, Brown was conspicuously omitted. *Id.*, at 3. Nevertheless, class counsel received their share (along with extra improper amounts for Rempel), in the tens of millions, several years ago. But Brown has had to fight tooth and nail, spending hundreds of thousands of dollars on legal fees along the way—just to recover what Plaintiffs promised to him a decade ago. *Id.*, at 3, 56-57. All the while, class counsel have enjoyed the fruits of their recovery for six years. And in fighting tooth and nail to limit Brown's parallel recovery, class counsel's conduct in this matter is the textbook definition of obstinate. *Andrews*, 443 A.2d at 569.

It should come as no surprise to class counsel that Brown was always entitled to be compensated for the many years he worked for Plaintiffs and the class. *Id.*, at 57. It should never have come to this. Instead of running Brown out of the case, and then running interference on him as he sought what was rightfully his, class counsel should have simply stuck to their

---

While the Fifth Circuit decided not to award fees, its analysis made clear that where the party's conflict of interest appears likely to have furthered or been impacted by the financial gain flowing from such conflict of interest, the consequences of such conflict of interest may include a bad-faith attorney-fees award. *Id.* at 470-71. For a case following *Schexnayder* and awarding fees based on its bad-faith analysis, *see Miller v. Braud*, 2013 WL 6666832 (E.D. La. 2013)(where there was "very little" to support defendant's position it litigation, bad-faith fee award warranted. *Id.* at *4.).

word. *Id.* It is only fair that Brown recoup the money he needlessly spent on attorneys' fees. *Synanon*, 517 A.2d at 37.

Finally, the doctrine of equitable estoppel precludes class counsel from objecting to an award of fees in this matter. "[A] party with full knowledge of the facts, which accepts the benefits of a transaction … may not subsequently take an inconsistent position to avoid the corresponding obligations or effects." *Thoubboron v. Ford Motor Co.*, 809 A.2d 1204, 1212 (D.C. 2002) (quotations omitted). Class counsel has sought fees in fighting Brown without any basis, in a situation where all potential value flows to them. That very fact blocks them from objecting to this motion. If they are entitled to fees—which the District Court has held they are—then Brown is also entitled to fees for prevailing on the same issue for which class counsel has already been compensated.

## CONCLUSION

For the foregoing reasons, Brown and his Counsel respectfully request that this Court grant this Motion for Attorneys' Fees.

/ / /

/ / /

/ / /

/ / /

/ / /

Dated: April 24, 2017                           Respectfully submitted,

/s/ Stephen G. Larson
Stephen G. Larson (admitted *pro hac vice*)
LARSON O'BRIEN LLP
555 S. Flower Street
Suite 4400
Los Angeles, CA 90071
(P) 436-4888
(F) 623-2000
slarson@larsonobrienlaw.com

AND

Randall A. Brater (Bar No. 475419)
ARENT FOX LLP
1717 K Street, NW
Washington, DC 20006-5344
(P) 202-857-6000
(F) 202-857-6395
Randall.brater@arentfox.com
*Attorneys for Intervenor MARK KESTER BROWN*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **PETITIONER MARK KESTER BROWN'S MOTION FOR ATTORNEY'S FEES** was served on the following via facsimile on April 24, 2017:

Earl Old Person (Pro Se)
Blackfeet Tribe
P.O. Box 850
Browning, MT 59417
Fax: 406-338-7530

By: _____
Jacqueline Neal